# CAMPBELL COUNTY SHERIFF'S DEPARTMENT
## - Policies & Procedures -







# OPERATIONAL SUPPORT SERVICES, INC.

This manual was created in association with the Campbell County Jail by Operational Support Services, Inc., a law enforcement advising agency, specializing in management control and staff development. For more information on policies and procedures development or other specialized procedures please contact:

Contact:
website:  www.ossrisk.com
email:    opsupp@getus.com
phone:   281-288-9190
fax:       281-288-7019
address: 19018 Candleview Drive
           Spring, Texas 77388

# Table of Contents

**I:**   General rules of conduct
Uniforms
Appearance
Media relations

**II:**   Equal employment
Hiring & Retention
American Disabilities Act
Psychological & Physical Examinations
Drug free workplace
Workplace Harrassment
Disciplinary action

**III:**  Training
Firearms Training

**IV:**  Patrol functions
Radio procedures
Traffic enforcement
Accidents
Report writing
Community relations
Arrest procedures
Transporting arrested persons
Field interviews
Bank robberies and alarms
Juvenile procedures
Jail & Booking Procedures

**V:**   Criminal Investigation
Major Crime Scenes
Emergency Call Outs
Undercover Operations
Child Abuse
Domestic Abuse
Covert Electronics
Overt Electronics
Missing Persons
Search Warrants

# Table of Contents

**VI:** Use of Force
 Vehicle Pursuit
 Emergency Vehicle Operations

**VII:** Internal Affairs
 Corruption Prevention
 Off Duty Conduct
 Conduct & Abuse of Position
 Insubordination

**VIII:** SWAT
 Hostage situations
 Bomb Threats & Mass Destruction
 Special Munitions
 Civil Disturbances
 Strike & Labor Disputes
 Chemical Agents

# Sample Letter from Department Head

[Date]

To: All Officers and Employees

    Re: Policy & Procedure Manual

Dear Ladies & Gentlemen:

The publication of these *policies and procedures* marks an important milestone in our continued development as a local leader in law enforcement. For those of you who participated in creating this document, please accept my hardiest thanks for a *job well done!* If you did not have an opportunity to provide input, we now ask for your assistance.

Over the next few days and weeks, the entire department will be learning and applying the details of our new procedures. As we do so, we will re-visit some of the old practices as well. Take time to study and learn. Then give us your ideas on how we can make this an even better guide toward achieving a safer and more efficient operation. With warmest personal regards to each of you, I remain

Sincerely,


[Name of Department Head]
[Title]

## Receipt for
## Policies & Procedures Manual

I, _____, hereby receipt for one (1) copy of the Campbell County Sheriff's Department Policies and Procedures Manual.

It is understood that this manual is entrusted to me for safekeeping, study, and compliance. I will use my best effort to study, learn, and comply with the instructions contained in this manual. The updating, maintenance, and safe storage of this manual are my personal responsibility.

I understand this manual contains *restricted law enforcement data*, and that release of its contents to anyone not having an official need to know may place residents of this community, and officers and employees of this department at risk.

I will retain this manual in my possession or safekeeping, and will not allow it to be copied or reproduced in any manner. Further, I will immediately report to the Chief any attempt made by those outside of the department to borrow, acquire a copy, view, or use this manual. Likewise, I will immediately report the loss of this manual or portions of its contents to the Chief .

I affirm my commitment to honor this agreement this _____ day of _____, 200__.

_____
Signature

_____
Witness

## Campbell County Sheriff's Department
## How to Use This Manual

Contained in this manual are Policies and Procedures of the **Campbell County Sheriff's Department**. This manual deals with the specifics of operating this law enforcement agency both administratively and operationally, and it addresses issues relating to how we manage, supervise, and provide law enforcement services to the community we serve.

Our policies are developed with you and good order in mind. They are of critical importance to your safety, the safety of fellow officers, and the community at large. These policies will be periodically updated. You will be notified when changes are made at roll calls, during training sessions, and by written notice. It is your responsibility to understand these policies and follow the procedures set forth in this manual.

Policies and procedures are written to provide a basis for the day-to-day operations. Their purpose is to standardize the department's approach and response to recurrent and predictable situations. Policies and procedures are intended to provide you with guidance regarding the performance of your responsibilities as a sworn law enforcement officer or employee of this department. They contribute to the overall achievement of the mission by defining performance expectations, ensuring conformity to legal standards, defining and institutionalizing "best practices," and establishing a basis for accountability.

It is an important requirement that each of us be familiar with the details of this manual, and readily applies its guidelines in every aspect of what we do in carrying out our vital mission. How well you study and use what you learn directly affects the safety and well being the citizens we are sworn to protect, and ourselves.

Begin your education process by paging through the manual. Familiarize yourself with the format; review how subjects are categorized and numbered; and look for specific topics of interest to you. Next read the *use of force policy*, and the *emergency vehicle pursuit policy*. Ask yourself, *can I understand and apply these policies?* Continue and read each policy, and when you come to something you don't understand, find confusing, or simply question, write it down and talk with your supervisor to seek the answers. Repeat the process until you are confident you know the policy well enough to apply it in spirit as well as in practice.

During your reading of the manual, if you find something incorrectly stated, or you have a better idea, we want to know about it. This is a *living document*. It was put together with change in mind – the kind of change that brings improvement. Your assistance is needed to make it work, and keep it working as a quality guide.

Use the following suggestion form to make written suggestions. You may use the original in the book to make copies. Then put your suggestions on a copy of the form, and turn it in to your supervisor. No recommendation is too small or unimportant, so please share your ideas.

# Campbell County Sheriff's Department
## Policy & Procedure Manual
### Suggestion Form

Officer Name_____ Date_____

Policy & Procedure Number _____ Page_____

Recommended Change _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## Campbell County Sheriff's Department

### MISSION STATEMENT

The mission of Campbell County Sheriff's Department is to maintain social order and provide professional law enforcement services to citizens in the community, within prescribed ethical, budgetary, and constitutional constraints. This department strives to enforce the law and maintain order in a fair and impartial manner, recognizing the need for justice, and consistent appearance of justice. The Sheriff recognizes that no law enforcement agency can operate at its maximum potential without supportive input from the citizens it serves. This department actively solicits and encourages the cooperation of all citizens to reduce and limit the opportunities for crime, and to assist in bringing to justice those that break the law.

_____

Sheriff's Signature

## *Campbell County Sheriff's Department*

## OBJECTIVE STATEMENTS

The following objectives have been established to accomplish the mission, within in the budgetary and manpower constraints imposed on the department:

1. **Protection of Life and Property:** To provide reasonable and cost effective service that contributes to the preservation of life, the protection of property, and the safety of the community.

2. **Prevent & Deter Crime:** To prevent and deter crime against persons, property, and the State by an active series of programs that make crimes more difficult to commit, detection more likely, and punishment that deters repeat offenses.

3. **Maintenance of Public Order:** To maintain peace and public order in support of the value system established by the community. To assist the public during times of natural or manmade disasters.

4. **Defense of the State & National Constitution:** To support and defend the Constitution of this State, and the Constitution of the United States.

5. **Compliance with Ethical Standards and Professionalism:** To encourage and support integrity and adherence to the professional standards of the department by investigating all complaints against staff personnel. To provide for the training needs of officers and promote a high degree of proficiency in officers of the agency.

# OATH OF OFFICE (CALEA 1.1.1)

All law enforcement employees will, before exercising any type police powers, be required to take the following oath of office:

*I do solemnly swear / affirm that I, _____*
*will support the Constitution of the United States of America and of the*
*State of Tennessee; that I will in all respects observe the provisions of the*
*charter and ordinances of the Campbell County Sheriff's Department; I will*
*well and truly perform the duties of the office of Police Officer, and will to*
*the utmost of my skill and ability, endeavor to promote the interest and*
*property of said county, without fear, favor or affection.  So help me God.*

## ORDERS AND INSTRUCTIONS

Within this law enforcement department orders will be issued in several forms. As a sworn officer or employee of this department, you are responsible for knowing, understanding, and complying with all lawful orders. The immediate and consistent compliance with orders is essential to the accomplishment of our mission and the protection of human life. Orders will be given in the following forms:

### 1. General Orders

General orders are sometimes referred to as the *Ten Commandments* of a law enforcement agency. There may not be exactly, ten, and these rules will not be religious in nature, but adherence to these rules is vital to successful accomplishment of our objectives. *General orders* are published in writing. You are expected to know these rules, and follow them both in letter and spirit. No deviations should occur without the expressed personal authority of the Sheriff. General Orders will be provided and discussed in your training, and widely disseminated. Any questions about compliance or known violations of a General Order should be referred to your supervisor as soon as practical.

### 2. Special Orders

Special orders are always written. They are authorized and signed by the Sheriff or Chief. Special orders provide short-term instructions in matters of critical concern to the Sheriff. Special orders are numbered one-up, each bearing an effective date, expiration date, and the signature of the Sheriff or Chief. Special Orders are provided and discussed in training, announced at roll call, and published as the need arises. It is your responsibility before starting your tour of duty each day to know what Special Orders are in effect and to comply with the requirements. Any questions about compliance or known violations of a Special Order should be referred to your supervisor as soon as practical.

### 3. Post Orders

Post Orders, sometimes referred to as *job descriptions,* are written and published for each job or duty station in the department. Each job has a published set of post orders, which detail the responsibilities, and the job. When assuming a post, duty position, or assignment for the first time, each officer and employee will read, understand, and sign the post orders located

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency.
Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 12 of 340   PageID #: 477

at that position, station, or in the patrol unit. The employee reporting for duty will not assume the duties of the position until post orders are read, and fully understood.

During subsequent assignments to the same post, the officer or employee will review the post orders immediately upon arrival at the place of assignment to determine if there have been changes in the duty instructions. In those cases where another employee or officer is being relieved of the duties at that post, the arriving officer or employee will review the post orders before the other officer is allowed to be relieved or depart the general area. Officers will discuss the activity at this particular post verbally before the relieved officer is free to depart. Officers being relieved will never leave a post until instructed by the *relief officer*, and after insuring that the newly arrived officer is fully appraised of prior events, any threats, or other conditions of interest.

If there are any questions about the performance of work required at this duty assignment, the officer or employee will notify the supervisor on duty for immediate help, instruction, or assistance. Except in a *declared emergency* officers or employees will not assume or work a duty position without fully understanding the requirements of the position, and satisfying themselves that they are mentally and physically capable of carrying out the responsibilities of the assignment. In such cases where an employee is incapable of carrying out the responsibilities of a particular post, the employee will ask their supervisor to be immediately relieved of duty.

### 4. Direct or Verbal Orders

Direct orders are most often issued through the spoken word. These orders may be given at roll call, but most often are issued verbally during the course of the shift. Personnel are to respond to verbal orders given by supervisors, the Chief, and the Sheriff. In those cases where someone who is not your supervisor, Chief, or the Sheriff, gives you a direct or verbal order or command it is the responsibility of the officer receiving the order or instruction to verify the order through their post orders or supervisor, **before complying with the order or instruction**. For example, it is inappropriate for a law enforcement officer of another department to issue orders to an officer of this department without prior written approval from the Chief or Sheriff. This includes federal officers or agents.

Compliance with direct or verbal orders is only required or appropriate when the order given is a *lawful order*. To be a lawful order, the order or instruction must be in harmony or compliance with the *law, special orders, general orders* and *policies* established by the Sheriff. For example, management

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency.
Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 13 of 340    PageID #: 478

and supervisory personnel of this department are not authorized to order officers to physically abuse a suspect or employ excessive or unreasonable force.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency.
Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 14 of 340    PageID #: 479

## Sheriff
## General Orders

I. I will perform my duties in a professional manner, while keeping on the alert for any threats to human life or the safety of the community.

II. I will not abandon, or leave my area of assignment until I am properly relieved.

III. I will obey all lawful orders of those appointed to positions of authority over me.

IV. I will report all violations of my orders and the established policies of this department.

V. I will protect all members of society, especially those that are weak, physically or mentally impaired, or accused of a crime.

VI. I will not allow, encourage, or turn a blind eye to officers that abuse, threaten, or terrorize any member of society.

VII. I will not violate the constitutional civil rights of any citizen, resident, or suspect, nor will I tolerate others violating these civil rights.

VIII. I will, immediately upon determining an individual is a suspect, and before any interrogation or interview, advise the individual of their constitutional civil rights, to include:

    a. The right to remain silent;

    b. Understanding that anything said by the suspect may be used against them in a court of law;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 15 of 340    PageID #: 480

    c. The right to an attorney; &

    d. The right to have an attorney furnished at government expense, if the individual cannot afford an attorney.

IX. I will immediately take action to stop all interviews and interrogations, and make provision to provide a suspect their constitutional rights, upon request.

X. I will not have any personal relationship with a suspect, accused, or person placed in my charge, beyond that which is necessary and appropriate in carrying out my official duties.

XI. I will not accept money, or any other gratuity from the public for performing police or any police related duty, unless expressly approved by the Sheriff.

XII. I will be faithful to the trust and responsibility the public has placed in my profession and me.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency.
Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022  Document 21-2  Filed 09/26/08  Page 16 of 340  PageID #: 481

# Canons of Police Ethics

All sworn law enforcement officers in the Campbell County Sheriff's Department or those members vested with law enforcement authority as a result of their employment with Campbell County Sheriff's Department will, at all times, abide by the following Canons of Police Ethics.

## Article. 1.
### Primary Responsibility of Job
The primary responsibility of the police service, and of the individual officer, is the protection of the people of the United States through the upholding of their laws; chief among these is the Constitution of the United States and its amendments. The law enforcement officer always represents the whole of the community and its legally expressed will and is never the arm of any political party or clique.

## Article 2.
### Limitations of Authority
The first duty of a law enforcement officer, as upholder of the law, is to know its bounds upon him in enforcing it. Because he represents the legal will of the community, be it local, state, or federal, he must be aware of the limitations and proscriptions which the people, through law, have placed upon him. He must recognize the genius of the American system of government, which gives to no man, groups of men, or institution, absolute power, and he must ensure that he, as a prime defender of that system, does not pervert its character.

## Article 3.
### Duty to be Familiar with the Law and with Responsibilities of Self and other Public Officials
The law enforcement officer shall assiduously apply himself to the study of the principles of the laws, which he is sworn to uphold. He will make certain of his responsibilities in the particulars of their enforcement, seeking aid from his superiors in matters of technicality or principle when these are not clear to him; he will make special effort to fully understand his relationship to other public officials, including other law enforcement agencies, particularly on matters of jurisdiction, both geographically and substantively.

## Article 4.
### Utilization of Proper Means to Gain Proper Ends
The law enforcement officer shall be mindful of his responsibility to pay strict heed to the selection of means in discharging the duties of his office. Violations of law or disregard for public safety and property on the part of an officer are intrinsically wrong; they are self-defeating in that they instill in the public mind a like disposition. The employment of illegal means, no matter how worthy the end, is certain to encourage disrespect for the law and its officers. If the law is to be honored, it must first be honored by those who enforce it.

## Article 5.
### Cooperation with Public Officials in the Discharge of Their Authorized Duties

The law enforcement officer shall cooperate fully with other public officials in the discharge of authorized duties, regardless of party affiliation or personal prejudice. He shall be meticulous, however, in assuring himself of the propriety, under the law, of such actions and shall guard against the use of his office or person, whether knowingly or unknowingly, in any improper or illegal action. In any situation open to question, he shall seek authority from his superior officer, giving him a full report of the proposed service or action.

## Article 6.
### Private Conduct

The law enforcement officer shall be mindful of his special identification by the public as an upholder of the law. Laxity of conduct or manner in private life, expressing either disrespect for the law or seeking to gain special privilege, cannot but reflect upon the police officer and the police service. The community and the service require that the law enforcement officer lead the life of a decent and honorable man. Following the career of a policeman gives no man special perquisites. It does give the satisfaction and pride of following and furthering an unbroken tradition of safeguarding the American republic. The officer who reflects upon this tradition will not degrade it. Rather, he will so conduct his private life that the public will regard him as an example of stability, fidelity and morality.

## Article 7.
### Conduct toward the Public

The law enforcement officer, mindful of this responsibility to the whole community, shall deal in a manner calculated to instill respect for its laws and its police service. The law enforcement officer shall conduct his official life in a manner such as will inspire confidence and trust. Thus, he will be neither overbearing nor subservient, as no individual citizen has an obligation to stand in awe of him nor a right to command him. The officer will give service where he can, and require compliance with the law. He will do neither from personal preference or prejudice but rather as a duly appointed officer of the law discharging his sworn obligation.

## Article 8.
### Conduct in Arresting and Dealing with Law Violators

The law enforcement officer shall use his powers of arrest strictly in accordance with the law and with due regard to the right of the citizen concerned. His office gives him no right to prosecute the violator nor to mete out punishment for the offense. He shall, at all times, have a clear appreciation of his responsibilities and limitations regarding detention of the violator; he shall conduct himself in such a manner as will minimize the possibility of having to use force. To this end he shall cultivate a dedication to the service of the people and the equitable upholding of their laws whether in the handling of law violators or in dealing with the law-abiding.

### Article 9.
#### Gifts and Favors
The law enforcement officer, representing government, bears the heavy responsibility of maintaining, in his own conduct, the honor and integrity of all government institutions. He shall, therefore, guard against placing himself in a position in which any person can expect special consideration or in which the public can reasonably assume that special consideration is being given. Thus, he should be firm in refusing gifts, favors, or gratuities, large or small, which can, in the public mind, be interpreted as capable of influencing his judgment in the discharge of his duties.

### Article 10.
#### Impartial Conduct
The law enforcement officer shall be concerned equally in the prosecution of the wrongdoer and the defense of the innocent. He shall ascertain what constitutes evidence and shall present such evidence impartially and without malice. In so doing, he will ignore social, political, and all other distinctions among the person involved, strengthening the tradition of the reliability and integrity of an officer's word.

The law enforcement officer shall take special pains to increase his perception and skill of observation, mindful that in many situations his is the sole impartial testimony to the facts of the case.

### Article 11.
#### Attitude Toward Profession
The law enforcement officer shall regard the discharge of his duties as a public trust and recognize his responsibility as a public servant. By diligent study and sincere attention to self-improvement, he shall strive to make the best possible application of science to the solution of crime and, in the field of human relationships, strive for effective leadership and public influence in matters affecting public safety. He shall appreciate the importance and responsibility of his office, and hold police work to be an honorable profession rendering valuable service to his community and his country.

*Composed in 1957 by a Committee of the International Association of Chiefs of Police, Inc.*

# Campbell County Sheriff's Department

Policies And Procedures

This manual is the property of the Campbell County Sheriff's Department, Jacksboro
Tennessee

The Officers to whom this manual is issued to is responsible for its care and good condition and for inserting supplements and making corrections necessary to keep it current.

This manual, as well as the badge, uniforms and equipment, is part of the official department, is part of the official department property issued to police officers. It will be treated as such, in accordance, with the procedures and rules contained here in and is subject to review and inspection by a supervisor. This manual must be returned in good condition when the member severs connection with the department.

The contents of this manual will not be divulges to any person, other than another member of this department, except on approval of the Sheriff or Chief Deputy

**Issued to:**

**I.D. #:**

**Date:**

**Signature:**

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| Subject: General Rules of Conduct | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

## Purpose:
The purpose of this policy is to define *general rules of personnel conduct* that apply to officers & employees and employees of this department.

## Policy:
It is the policy of Campbell County Sheriff's Department to provide high quality police support to our community. A key ingredient of this service is maintaining the trust and confidence of the citizens and residents that we serve. We recognize that officers & employees and employees of our department are *high profile* members of our community, and as such are subject to constant scrutiny by our fellow citizens. As a result, officers & employees and employees of this department must always strive to set a quality example. Often this means using restraint, avoiding conflict, and working with the public good as our hallmark.

## Procedure:
Officers & employees and employees of this department will follow the following rules of personal conduct. Additionally, officers & employees and employees will support both the spirit and actual content of these rules, and encourage compliance by their fellow officers & employees and employees. Those individuals in positions of authority will strive to set the highest example.

### Section One: Obedience to Orders, Rules And Laws

1.1     Obedience to Rules of Conduct

Officers & employees, regardless of rank, will be governed by the following general rules of conduct. Violation of any of these rules of conduct by any officer or employee of the department will be considered sufficient cause for dismissal, demotion, suspension, or other disciplinary action.

1.2     Obedience to Laws

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Officers & employees will abide by the laws of the United States, the state of Tennessee and the ordinances of the county.

1.3     Adherence to Departmental Rules

Officers & employees will abide by the personnel policy, and the general, special, and tactical orders, rules of conduct, and other properly issued internal directives of the department.

1.4     Insubordination

Officers & employees will promptly obey all lawful orders and directions given by supervisors and radio dispatchers. The failure or deliberate refusal of officers & employees to obey such orders will be deemed insubordination and is prohibited. Flouting the authority of a superior by displaying obvious disrespect or by disputing his orders will likewise be deemed insubordination.

1.5     Issuance of Unlawful Orders

No supervisory officer or employee will knowingly or willfully issue an order that violates a federal or state law, a county ordinance, or a departmental rule or policy.

1.6     Obedience to Unjust or Improper Orders

If an officer or employee receives an order he believes is unjust or contrary to a departmental order or rule, he must first obey the order to the best of his ability and then may appeal the order to the Sheriff.

1.7     Obedience to Unlawful Orders

No officer or employee is required to obey an order that is contrary to the laws of the United States, the state of Tennessee, the ordinances of the county, or policies established by this department. If an officer or employee receives an unlawful order, he will report in writing the full facts of the incident and his action to the Sheriff thru the chain of command.

1.8     Conflict of Orders

If an officer or employee receives an order that conflicts with one previously given him by a superior officer or employee, the officer or employee receiving the order

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

will respectfully point this out to the superior officer or employee who gave the second order. If the superior officer or employee giving the second order does not change the order in a way that eliminates the conflict, the second order will stand and will be the responsibility of the second superior officer or employee. If the second superior officer or employee so directs, the second order will be obeyed first. Orders will only be countermanded when necessary for the good of the department, and accomplishment of the mission.

## 1.9 Duty to Read, Understand, & Comply With Orders

Failure to read and/or comply with laws, rules and regulations, general and special orders, policies and procedures of the department, or written or verbal orders of a supervisor is prohibited. It *is neglect of duty* to fail to inquire of a supervisor the meaning or application of any directive or order that is not clearly understood.

## 1.10 Issuance of Orders

Orders from supervisors to subordinates will be in professional, clear, understandable English; civil in tone, and manner; and, issued in pursuit of departmental business.

## 1.11 Conduct Unbecoming

Engaging in conduct on or off duty which adversely affects the efficiency of the department, and has a tendency to destroy public respect for the employee and the department, or destroys confidence in the operation of the government service is conduct unbecoming and is prohibited. Examples of such conduct includes, but not be limited to:

a. Fraud in securing employment;

b. Conviction of any felony or of a misdemeanor involving moral turpitude, or the entry of a plea *of nolo contendere* to either;

c. Misuse of government funds or property;

d. Falsification or misuse of government records, including application forms, time and financial records, incident reports, case files, or personnel;

e. Reporting to work or working under the influence of alcohol or mind altering substances, or the partaking of such substances during working hours; except

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

prescribed medication that does not adversely affect the ability to perform assigned work tasks;

f. Instigation of, participation in, or leadership of a *strike, sit-down, stay-in, sympathy strike, walk-out, slow-down, sick-out*, or any other interference with normal, efficient workflow;

g. Concealment or failure to report any employment, ownership interest, or personal activity in conflict with the legitimate interests of the county;

h. Engaging in infamous, or notoriously, or disgraceful conduct that adversely affects the countylegitimate interests;

i. Insubordinate, rebellious, disruptive, harassment, or disrespectful behavior toward other employees or government officials; or

j. Fighting during working time or on countyproperty.

## Section Two: Attention to Duty

### 2.1 Performance of Duty

Officers & employees will be attentive to their duties at all times, and will perform all duties assigned to them, even if such duties are not specifically assigned to them in any departmental rules or procedures manual.

### 2.2 Duty of Supervisors

Supervisors will enforce the rules, regulations and policies of the Campbell County Sheriff's Department. They will not permit, or otherwise fail to prevent, violations of the law, departmental rules, policies or procedures. They will report violations of departmental rules, policies, or procedures to their immediate superior without delay. Where possible, they will actively prevent such violations or interrupt them as necessary to ensure efficient, orderly operations.

### 2.3 Truthfulness

Officers & employees will not knowingly give any false or misleading information concerning the duties, responsibilities or actions of the department or any member

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

thereof, nor withhold any information that is their duty to report, nor falsify any department documents.

## 2.4 Conduct and Behavior

Officers & employees whether on-duty or off-duty will follow the ordinary and reasonable rules of good conduct and behavior and will not commit any act in an official or private capacity tending to bring reproach, discredit, or embarrassment to their profession, the department. Officers & employees will follow established procedures in carrying out their duties as law enforcement officers & employees of the department.

## 2.5 Responsibility to Serve the Public

Officers & employees will consider it their duty to be of service to the general public and to render that service in a kind, considerate, and patient manner. Officers & employees will promptly serve the public by providing direction, counsel and other assistance that does not interfere with the discharge of more critical police duties.

## 2.6 Respecting the Rights of Others

Officers & employees will respect the rights of others, and will not engage in discrimination, oppression or favoritism. Officers & employees will maintain a strictly impartial attitude toward complainants and violators. Use of profane, demeaning, or insulting language will not be tolerated, nor will disrespect for the political or religious views of others be accepted.

## 2.7 Officers Always Subject to Call of Duty

Officers will respond to lawful orders of supervisors and to the call of citizens in need of police assistance. Officers technically off-duty will not relieve them from the responsibility of taking prompt and proper police action, when comparable of safely performing police duties. Officers & Employees are subject to call twenty-four (24) hours a day and may be recalled from vacation leave or off day whenever necessity demands. Off-duty, out of uniform officers in personal vehicles will not respond to on-view traffic offenses.

## 2.8 Reporting for Duty

Officers & employees will promptly report for duty properly prepared at the time and place required by assignments, subpoenas or orders. Officers & employees will

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

remain at their posts or place of assignment until properly relieved by another officer or employee or until officially dismissed by a supervisor. It is the relieving officers & employees' responsibility to locate and meet with the officer or employee he is relieving. The officer or employee who is being relieved has the responsibility to pass onto his relief any and all pertinent information. The relieving officer or employee will assist the officer or employee he is relieving in any way possible so as to expedite the relief & complete the officer or employee's tour of duty in a timely way.

## 2.9 Availability While on Duty

Officers & employees while on duty will not conceal themselves, or maintain a hidden or low profile except for some assigned police purpose. Officers & employees will keep themselves immediately and readily available at all times while on duty.

## 2.10 Prompt Response to All Calls

Employees will respond to all dispatched assignments without argument and unnecessary delay. No officer will fail to aid, assist, or protect a fellow officer, deputy, employee, or citizen to the fullest extent of his or her professional capabilities. Calls will be answered in compliance with policy and traffic laws.

## 2.11 Duty to Report All Crimes and Incidents

Officers & employees will promptly report all serious crimes, emergencies, incidents, dangers, hazardous situations and relevant information that come to their attention. Officers & employees will not conceal, ignore or distort the facts of such crimes, emergencies, incidents and information.

## 2.12 Responsibility to Know Area of Jurisdiction

Officers & employees will strive to know the boundaries of the county and will be familiar with the names of streets and highways within those boundaries. Officers & employees will also be familiar with the names and locations of businesses, public buildings, and as many residents as possible.

## 2.13 Sleeping on Duty

Officers & employees must be alert throughout their tour of duty. Sleeping while on duty is strictly forbidden.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## 2.14 Assisting Criminals

Officers & employees will not communicate in any manner, directly or indirectly, any information that may delay an arrest or enable persons suspected of criminal acts to escape arrest or punishment. Nor will officers or employees dispose of property or goods seized or taken from a suspect, or destroy evidence of unlawful activity.

## 2.15 Reading on Duty

Officers & employees will not read newspapers, books, or magazines while on duty and in the public view unless a supervisor has assigned these duties.

## 2.16 Studying on Duty

Officers & employees will not, during their regularly assigned working hours, engage in any studying activity, which is not directly related to their current job assignment.

## 2.17 Maintaining Communications

While officers & employees are on duty or officially on call, they will be directly available by normal means of communication, and promptly respond when called. On-duty officers will maintain radio communications with the Campbell County Sheriff's Department dispatcher while he/she is on-duty and radio equipped.

## 2.18 Keeping Notes on Police Activities

Officers & employees will maintain written notes on police matters such as calls, arrests and other activities to the extent that they may later complete official reports and accurately testify in official proceedings.

## 2.19 Completing Official Reports

Unless otherwise directed, officers & employees will promptly submit all reports completed prior to going off duty. All reports, forms, memoranda, citations, or other papers utilized in this department will be completed in black ink, computer printed, or typed. Special projects may require deviation from this requirement.

## 2.20 Reporting Accidents and Injuries

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Officers & employees will immediately report the following accidents and injuries:

a. On-duty traffic accidents in which they are involved
b. Personal injuries received in the line of duty
c. Personal injuries not received in the line of duty but which are likely to interfere with performance of police duties
d. Property damage or injuries to other persons that resulted from the performance of his police duties.

## 2.21 Reporting Address and Telephone Number

Officers & employees will have a working telephone at their residence, and will register their correct residence address and telephone number with the police department. Any change in address will be reported immediately.

## 2.22 Testifying in Departmental Investigations

When directed by a competent authority to make a statement or furnish materials relevant to a departmental investigation, officers & employees will comply with the directive.

## 2.23 Overtime

An authorized supervisor prior to the actual work being performed will approve all overtime.

## 2.24 Duty to be Prompt and Punctual

Employees will be prompt and punctual when reporting to their official duties, or assignments.

## 2.25 Remaining at Duty Station

Employees and officers will remain at their assigned duty assignment unless and until they are properly relieved. Absence from assigned workstation or duty without permission is prohibited.

## 2.26 Excessive Absenteeism

Habitual or patterned use of sick leave, or leave without pay, not supported by competent medical evidence or other proof of necessity is prohibited.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## 2.27 Prohibited Association / Frequenting

Frequenting or associating with person(s), organizations, or places, known to be involved in criminal activity unless necessary for law enforcement business, where such associating or frequenting would be detrimental to the image of the department is prohibited.

## 2.28 Subversive Organizations

Officers & employees will not knowingly be members of, or affiliated with, any subversive organization whose avowed purpose advocates the overthrow or disruption of the lawful function of any federal, state, county, or municipal government.

## 2.29 Duty With Regard to Civil Proceedings

No employee will start any civil proceedings arising out of a law enforcement activity without first notifying the Sheriff. Private civil actions that have no connection with a member's department position or official action are not within the scope of this rule.

## 2.30 Supplies or Services

Officers & employees of this department will not use departmental supplies or resources for their personal use. The use of the time, facilities, equipment or supplies of the department for private gain or advantage is prohibited.

## 2.31 Bulletin Boards

Employees are responsible for reading posted notices on bulletin boards provided for this purpose.

## 2.32 Refrained From Conducting Personal Business While On-Duty

Employees will refrain from conducting personal business while on-duty.

## 2.33 Use of Tobacco Products

Use of tobacco products while in any county building, or at any time while in personal contact with the public is prohibited. This policy does not apply to

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 29 of 340   PageID #:
494

designated smoking areas at government or other public buildings such as restaurants.

## 2.34 Confidentiality / Protection From Retaliation

Persons reporting sexual harassment will have their identity protected to the extent allowed by law. Any employee making a report of harassment or unwanted conduct will be protected from retaliation. Any employee who engages in such retaliation will be discharged.

## Section Three: Cooperation with Fellow Employees and Agencies

### 3.1 Respect for Fellow Officers & Employees

Department personnel will treat other members of the department with respect, and as they themselves would prefer to be treated. They will be courteous, civil, and respectful of their superiors and their associates.

Command and supervisory personnel will support subordinates in their actions and orders when they can do so reasonably. They will avoid censuring subordinates in the presence of others and will not injure or discredit those under their authority by intentional or abusive conduct. This does not prohibit informal oral reprimands or constructive criticisms directed to a subordinate. Any acts of counseling, disciplining, complaining or criticizing must be done positively and constructively in an appropriate setting.

### 3.2 Supporting Fellow Employees

Employees will cooperate, support, and assist each other at every opportunity. Employees will not maliciously criticize the work or the manner of performance of another. It is the duty of every officer & employee to refrain from originating or circulating any malicious gossip to the intended detriment of the department or any member thereof.

### 3.3 Case or Operations Interference

Officers & employees will not interfere with cases assigned to others without receiving clearance from the officer to which the case is assigned or as by a supervisor. Should interference occur, the assigned officer will submit a written grievance to his immediate supervisor.

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

### 3.4    Cooperation with Other Agencies

Officers and employees of Campbell County Sheriff's Department will cooperate with all governmental agencies by providing whatever aid or information such agencies are legally entitled to receive. Any doubts will be passed to a supervisor for approval, before cooperation is rendered.

### 3.5    Disclosing Information Relating to Police Activities

Discussion of operations and official business of the department is prohibited outside of those authorized individuals that have a *need to know.*

### 3.6    Misconduct Known to Personnel

Failure to report an employee's violation of a law, rule or regulation, policy or procedure, or a general or special order is prohibited.

## Section Four: Restrictions on Behavior

### 4.1    Interfering with Private Business

Employees of the Campbell County Sheriff's Department will not interfere with the lawful business of any person.

### 4.2    Use of Intimidation

Officers & employees will not use their official positions to intimidate persons engaged in a civil controversy.

### 4.3    Soliciting and Accepting Gifts and Gratuities

Unless approved in writing by the Sheriff, officers & employees of the department may not solicit or accept any *reward, gratuity, gift or compensation* for services performed as a result of their relationship with the department. This *restriction applies regardless of whether the service was performed on-duty or* off-duty.

### 4.4    Soliciting and Accepting Gifts from Suspects and Prisoners

Officers & employees are strictly prohibited from soliciting or accepting any *gift,*

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

*gratuity, loan, fee* or other item of value, or from *lending* or *borrowing*, or from *buying* or *selling* anything of value from or to any suspect, prisoner, defendant or other person involved in any case, or other persons of ill repute, or professional bondsmen, or other persons whose vocations may profit from information obtained from the police.

## 4.5 Reporting Bribe Offers

If an officer or employee receives a bribe offer, he will immediately make a written report to the Sheriff and submit it to his immediate supervisor.

## 4.5 Accepting Gifts from Subordinates

Without approval from the Sheriff, employees will not receive or accept any gift or gratuity from subordinates.

## 4.6 Giving Testimonials and Seeking Publicity

As it may pertain to their employment with the department, officers & employees will not give testimonials or permit their names or photographs to be used for commercial advertising purposes. Officers & employees will not seek personal publicity either directly or indirectly in the course of their employment.

## 4.7 Soliciting Business

Officers & employees will not, while on duty, solicit subscriptions, sell books, papers, tickets, merchandise or other items of value nor collect or receive money or items of value for any purpose except as authorized in writing by the Sheriff.

## 4.8 Intoxication

Officers & employees will not be under the influence of any intoxicating beverage or substance during their tour of duty or immediately prior to their tour of duty. Nor will officers & employees be intoxicated off duty while in the public view. Also while off duty, officers & employees will not use any intoxicating substance to such an extent that they become unfit to report for duty.

## 4.9 Drinking While in Uniform or On –Duty

At no time will officers or employees consume alcoholic beverages while in uniform, on duty, on government property, or in an official vehicle of this department.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Likewise, officers & employees will not drive or operate a motor vehicle within eight hours after consuming alcoholic beverage(s).

## 4.10 Liquor on Official Premises

Officers & employees will not bring containers of intoxicating beverages into a department or government building or vehicle except as *bagged & tagged* evidence in a criminal or juvenile case.

## 4.11 Entering Bars, Taverns & Liquor Stores

Other than for the purpose of performing their official duties, officers & employees on duty or in uniform will not enter or visit any bar, lounge, parlor, club, store or any other establishment whose primary purpose is the sale and on-premise consumption of alcoholic beverages. Officers & employees on duty or in uniform will not purchase alcoholic beverages.

## 4.12 Playing Games on Duty

Officers & employees on duty or in uniform will not engage in any game of cards, billiards, pool, chess, dominoes, electronic, or other games.

## 4.13 Political Activity

Officers & employees are will not participate (e.g., make political speeches, pass out campaign or other political literature, write letters, sign petitions, actively and openly solicit votes) in political campaigns on duty or in uniform.

## 4.14 Seeking Personal Preferment

Officers & employees will not solicit petitions, influence or seek the intervention of any person outside the department for purposes of personal preferment, advantage, transfer, advancement, promotion or change of duty for themselves or any other person.

## Section Five: Identification & Recognition

### 5.1 Giving Name and Badge Number

Officers & employees will give their names, badge number, and other pertinent information to any person requesting such facts unless doing so would jeopardize a

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

successful completion of a police assignment.

## 5.2    Carrying Official Identification

Officers will carry or about their person official police identification at all times unless involved in sanctioned covert activities, or engaged in athletic or activities.

## 5.3    Personal Cards

Officers & employees are not permitted to have or use personal business cards showing their connection to the department except as approved by the department.

## 5.4    Exchange, Alteration or Transfer of Badge, Patch or Logo

The official badge, patch, or logo of the department will not be altered, transferred, or exchanged except as authorized by Sheriff.

## **Section Six: Maintenance of Property**

### 6.1    Use of County Property or Service

Officers & employees will not use or provide any county equipment or service other than for official county business unless specifically authorized by the Sheriff.

### 6.2    Responsibility for county Property

Each officer or employee is responsible for keeping all departmental issued equipment clean, in good working order, and protect it against loss, damage, or destruction. Employees deemed responsible for the loss or damage of issued items may, in addition to any disciplinary action given, be required to compensate the department for the loss or damage.

### 6.3    Reporting Needed Repairs

Officers & employees will promptly report the need for repair of county-owned property to their supervisor.

### 6.4    Responsibility for Private Property

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Officers & employees are responsible for protecting private property or equipment that has come into their possession by reason of their office against loss, damage, or destruction.

### 6.5    Care of Quarters

Officers & employees will keep their offices, vehicles, lockers, and desks neat, clean and orderly.

### 6.6    Property and Evidence

Officers & employees will, as soon as possible, tag and place all evidence in the evidence room.    Officers & employees will not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with, or withhold any property or evidence held in connection with an investigation or other official action except in accordance with established procedures.

### 6.7    Alteration or Modification of Police Equipment

Officers & employees will not use any equipment that does not conform to departmental policy or specifications.  All equipment will be carried and utilized only as issued and authorized, and no changes, alterations, modifications or substitutions will be made to such equipment unless approved by the Sheriff.

### 6.8    Parking in Unauthorized or Reserved Parking Spaces

Parking in designated *handicap permit* spaces, *reserved or restricted* space, or *marked fire lanes*, unless responding to an actual emergency is prohibited.

## Section Seven: Relationships with Courts and Attorneys

### 7.1    Attendance in Court

Officers & employees will arrive on time for all required court appearances and will be prepared to testify.

### 7.2    Recommending Attorneys or Bondsmen

Officers & employees will not suggest, recommend, advise or counsel the retention of a specific attorney or bondsman to any person coming to their attention as a

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

result of police business.

### 7.3 Testifying for a Defendant

Any officer or employee subpoenaed or requested to testify for a criminal defendant or against the county or against the interest of the department in any hearing or trial will immediately notify the Sheriff through the chain of command. Likewise, employees or officers who are subpoenaed to any judicial hearing (criminal or civil) will honor said subpoena and notify their immediate supervisor in a timely manner.

### 7.4 Interviews with Attorneys

Interviews between an officer or employee and a complainant's [criminal] or Plaintiff's [civil] attorney about a case arising from the officer's employment by the department will be done in the presence of or with the knowledge and consent of the Sheriff only.

### 7.5 Assisting in Civil Cases

Officers & employees will not serve civil-process papers nor render assistance in civil cases except as required by law, and approved by the Sheriff. Officers & employees will not volunteer to testify in any civil action arising out of the officer or employee duties for this department.

### 7.7 Notice of Lawsuits Against Officers & Employees

Officers & employees who have had a suit filed against them because of an act performed in the line of duty will immediately notify the Sheriff in writing and furnish a copy of the complaint as well as a full and accurate account of the circumstances in question.

### 7.8 Notice of Investigation, Arrest, or Citation

Officers & employees who become the subject of a citation or arrest action will immediately notify the Sheriff in writing. Likewise, any officer or employee who has reason to know they are the subject of a criminal or civil action will immediately notify their supervisor, who will in turn notify the Sheriff.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Uniforms | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority · Title and Signature: | |

### POLICY:

Officers of Campbell County Sheriff's Department are representatives of this community and in that capacity it is very important that all employees present a professional image to the public. It will be the policy of this agency that all officers will consistently maintain a neat and clean appearance at all times during the performance of official duties or at any time that he/she is representing Campbell County Sheriff's Department in any manner.

### PURPOSE:

The purpose of this policy is to provide all employees with guidelines concerning proper uniform requirements when on duty or when representing Campbell County Sheriff's Department.

### Uniform- Licensed Officers:

Officers are expected at all times to be dressed in complete and proper uniform. The law enforcement officer will receive a regulation uniform consisting of:

1. Felt cowboy hat for winter;
2. Straw cowboy hat for summer;
3. Jacket;
4. Long-sleeved shirt for winter;
5. Short-sleeved shirt for summer;
6. Pants;
7. Tie;
8. Raincoat;
9. Duty belt;
10. Departmental badge;
11. Departmental pins and name plates;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 37 of 340    PageID #: 502

12. Departmental patch;
13. Rank insignia; and
14. Years of service insignia.

Additional required items may be the responsibility of the officer, rather than the department, to include:

1. Body Armor Vest;
2. Service weapon;
3. Night-stick or its equivalent;
4. Holster;
5. Flashlight;
6. Footwear;
7. Handcuffs;
8. Handcuff pouch;
9. Cartridge pouch or Magazine holder;
10. Ammunition;
11. 'O' ring; and
12. Socks.

## Uniform- Non Licensed Officer:
Non-licensed law enforcement officials, new employees, and detention personnel will wear a similar uniform consisting of:

1. Hat;
2. Jacket;
3. Short-sleeved shirt for both summer and winter;
4. Pants;
5. Identification plate; and
6. Departmental patch.

## Uniform-Plain Clothes Personnel:
In interacting with the public, or working in the office, plain clothes employees will maintain a conservative style of dress as outlined in the Appearance Policy. Male personnel will wear slacks, a dress shirt, suit or sport jacket, dress shoes, and a tie. Female personnel will wear conservative type business suits or ensembles.

## Uniform Requirements:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. All uniform clothing items will be clean and pressed.
2. All uniform clothing items will not be torn, frayed or patched.
3. All leather items, belt, holster, handcuff case, etc. will be the appropriate color and style as determined by the Sheriff.
4. All silver or brass items will be clean and properly polished.
5. When in uniform, all pieces of the uniform and all uniform equipment will be worn.
6. Shoes or boots will be the appropriate color and styles as determined by the Sheriff and will be shined/polished appropriately on a regular basis.
7. Socks that are exposed will be an appropriate color that matches the uniform.
8. All personnel will be held accountable for the return of all departmental issued uniform items.
9. No issued item is to become the property of any individual.
10. Items lost or damaged during law enforcement activities will be reported to Campbell County Sheriff's Department.
11. Replacement of items of personal purchase, which are lost or damaged in law enforcement activities, will be determined on a case-by-case basis.
12. Property lost or damaged as a result of law enforcement activities will be promptly reported, and replacement costs determined so the officer involved may request to the courts that prosecution of the individual include reimbursement costs to the department.

## Uniform for Court Appearances:

In attendance of court proceedings, male officers will wear a suit to include a dress shirt, slacks, suit or sport jacket, dress shoes, and a tie. Female officers will wear a dress, coordinated blouse and skirt, or a conservative business suit.

## Uniforms- Visual Aids:

Following this policy are a number of visual aids, which represent proper placement of department issued items for different ranking officers. Although the visual aids represent the long-sleeved winter shirt, the placement of departmental items will be the same for both the winter and summer shirts.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| Subject: Media Relations | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

## POLICY:

It is the policy of Campbell County Sheriff's Department to cooperate fully and impartially with authorized news media representatives in their efforts to gather factual, public information pertaining to activities of the department, as long as these activities do not unduly interfere with departmental operation, infringe upon individual rights or violate the law.

## PURPOSE:

The purpose of this policy is to provide guidance for all employees of Campbell County Sheriff's Department concerning interactions with the news media.

## PROCEDURES:

### Duties of Sheriff:
In regards to media relations, it will be the responsibility of the Sheriff to:

1. Disseminate all information to the news media, and to other employees within the department following the procedures of Campbell County Sheriff's Department; and
2. Properly inform the media of any major public event that will require an extended presence of department personnel.

### Duties of Department Personnel:
Regarding the release of information to the media, it will be the responsibility of all departmental employees of Campbell County Sheriff's Department to:

1. Assist news personnel on an on-call basis in covering routine news stories, and at the scenes of incidents;
2. Prepare and distribute news releases as authorized;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Coordinate and authorize the release of information about victims, witnesses and suspects; and
4. Coordinate the release of authorized information concerning confidential agency investigations and operations.

## Cooperation with the Media:

The following guidelines will be maintained by employees of Campbell County Sheriff's Department in cooperating with the media:

1. Authorized news media representatives will have reasonable access to the Sheriff, or designee, and operations of this department as governed by this policy;
2. Public information will be released to the media as promptly as circumstances allow, without partiality, in as objective a manner as possible;
3. Public information may be provided to media representatives by telephone if the identity of the representative is known or can be authenticated;
4. Information will be released either by the Sheriff or his designee;
5. Ranking officers at crime or incident scenes may release information of a factual nature to the media as governed by this policy or if given prior approval by Sheriff; and
6. Written press statements will be released only following approval of the Sheriff or designee.

## Release of Information:

Information that may be released in connection with an investigation of an event or crime includes:

1. The type or nature of an event or crime;
2. Any unusual or hazardous road conditions;
3. Location of destruction due to a natural disaster;
4. The location, date and time, injuries sustained, damages, and a general description of how the incident occurred;
5. The type and quantity of property taken;
6. The identity and approximate address of a victim with the exception of sex crime victims, and in other cases where reprisals or intimidation may be employed;
7. Requests for aid in locating evidence, a complainant or a suspect;
8. Numbers of officers or people involved in an event or investigation, the length of the investigation, and the different departments involved;
9. The name of the officer in charge of a case, unless undercover; and
10. The name, address, and age of:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

a. Any arrested individual; or
b. Any juvenile under adult jurisdiction.

## Non-Release of Information:

Information that may not be released in connection with an investigation of a crime, unless authorized by the Sheriff, includes:

1. The identity of a suspect prior to arrest unless:

   a. The release of information would aid in apprehending the suspect or warn the public of potential danger; and
   b. Probable cause has been established and a warrant of arrest has been obtained.

2. The identity of any victim of a sex crime or any related information which, if divulged, could lead to the victim's identity;
3. The identity of any victims or witnesses which may prejudice an investigation or place the victim or witnesses in personal danger;
4. The identity of any juvenile who is a suspect or defendant in a case subject to the jurisdiction of the juvenile court;
5. The identity of any critically injured or deceased person prior to notification of next of kin;
6. The results of any investigative procedure such as lineups, polygraph tests, fingerprint comparison, or ballistics tests;
7. Information, which, if prematurely released, may interfere with the investigation or apprehension of a suspect, such as:

   a. The nature of leads;
   b. Specifics of an "MO";
   c. Details of the crime known only to the perpetrator and law enforcement personnel; or
   d. Information that may cause the suspect to flee or more effectively avoid apprehension;

8. Information that may be of evidentiary value in criminal proceedings;
9. Specific cause of death unless officially determined by the medical examiner;
10. The home address or telephone number of any department member; and
11. Information concerning the crime or event in question under the issuance of a gag order.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Release of Arrest Information:

Following arrest, issuance of an arrest warrant or filing of an information or indictment, it is permissible to release:

1. The name, age, residence, occupation, and family status of the accused;
2. The time and place of arrest, whether pursuit or resistance was encountered, whether weapons were used, charges placed against the suspect and description of contraband seized;
3. The identity of the arresting officers, unless undercover and the duration of the investigation; and
4. The amount of bond, schedule of court dates, and place of detention of the suspect.

## Non-Release of Arrest Information:

Following arrest and formal charging of a suspect, but prior to adjudication, the following types of information should not be released without the express permission of the Sheriff to include:

1. The prior criminal conviction record, character or reputation of a defendant;
2. The existence or contents of any confession, admission or statement of a defendant, or his failure or unwillingness to make a statement;
3. Performance or results of any tests, or a defendant's refusal or failure to submit to tests;
4. The identity, statement or expected testimony of any witness or victim;
5. Any opinion about the guilt or innocence of a defendant or the merits of the case; and
6. Any opinion or knowledge of the potential for a plea bargain or other pretrial action.

## Special Considerations - Criminal Matters:

Personnel of Campbell County Sheriff's Department will extend every reasonable courtesy to news media representatives at crime scenes, to include:

1. Closer access to an area or scene of an incident than the general public to the degree that:

   a. It does not interfere with the law enforcement function; and
   b. Evidence is not destroyed or otherwise prejudiced by being published or portrayed.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. Photographing or videotaping:

   a. Private property, if given prior approval by the owner;
   b. Suspects or departmental employees at a crime scene.

Suspects or accused persons in custody will not be posed or arrangements made for photographs, telecasts or interviews, nor will department personnel pose with suspects or accused persons in custody.

## Special Considerations – Non-Criminal Matters:

News media representatives should not be prevented from access to any area solely because of the possibility of their injury or death. If this is the only consideration, the media representative should be advised of the danger, make a decision on whether or not to enter, and have an officer escort through the area if they decide to enter. This will allow for media coverage without disturbing any of the physical evidence present. Daily administrative reports of criminal activity will be made available on a routine basis to media representatives within this jurisdiction, or representatives outside this jurisdiction upon request. All employees of this department will at all times be courteous and cooperative when dealing with members of the news media as well as with all other individuals or groups requesting information.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| **Subject:** Ride Along Policy | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

## POLICY:

Civilian passengers in police vehicles are permitted only when specifically authorized for ride-along or when transported under official police business. Civilian observers may occasionally accompany law enforcement officers while on patrol in order to observe and learn about law enforcement procedures and practices. Civilian observers must be authorized by the Chief Deputy or designee. Employees who violate this policy will be subject to disciplinary action and assume responsibility and personal liability for their actions.

## PURPOSE:

To provide the general public the opportunity to experience actual problems and complexities involved in providing law enforcement services while reducing the possibility of injury or death to civilian occupants of law enforcement vehicles, and to reduce the potential liability associated with civilian occupants in agency vehicles.

## DEFINITION:

*Public Information:* Information that may be of interest to the general public regarding policy, procedures or events involving the department or other newsworthy information that is not legally protected, does not unduly interfere with the mission of the department, infringe upon the rights of a defendant, or compromise the legitimate safety and privacy interests of officers, victims, witnesses or others.

## PROCEDURES:

### Authorization Process- Ride Along:

Any person or group wishing to participate in this program will be referred to the Chief Deputy or designee for processing of a "Ride Along Program Application" and a "Ride

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Along Program Release of Liability Form". Both the application and form will be processed, and based on information reviewed the applicants will be notified as to whether or not they are qualified to participate. In most situations, law-abiding citizens wishing to participate, who have completed all necessary requirements, will be granted that opportunity.

Convicted felons or suspects in criminal activity will not be allowed to participate. A criminal background check will be performed on all applicants to verify criminal record.

### Civilian Rules:
If the civilian is approved to ride along with a sworn law enforcement officer, they will be responsible for following a number of rules and regulations to ensure a safe and enjoyable experience. The civilian rider will:

1. Not participate in the ride along program more than five (5) times in a calendar year;
2. Not ride with the same officer more than five (5) times in a calendar year;
3. Only ride with officers approved by the shift supervisor;
4. Not be allowed to exit the police vehicle, at any time, to assist the officer on a call, except in officer down situations; and
5. Never carry a firearm or any other weapon while on a ride along.

### Officer Rules:
The officer will:

1. Explain the hazards associated with riding in a police vehicle;
2. Explain radio safety equipment including emergency radio procedures;
3. Ensure that the passenger wears seat belt;
4. Ensure that the passenger exits the vehicle in a relatively safe location prior to participating in high-risk activities such as high-speed pursuit or response to "shots fired" calls; and
5. Explain that the passenger may required to testify as a witness to criminal activity observed during the ride-along.

### Media Ride Along:
Media representatives must complete a "Ride Along Program Application", and a "Ride Along Program Release of Liability Form". The Chief Deputy will review both documents and approve or disapprove the applicant. If approved, individuals will be allowed to ride along with a police officer approved by the shift supervisor.

Representatives of the media are prohibited from:

1. Entering private residences or any other location where there is a reasonable

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 3

expectation of privacy. (Supreme Court decision, Wilson v. Layne);
2. Assisting the officer on call except in officer down situations;
3. Carrying a firearm or any other weapon while on the ride along; and
4. Releasing any information, photographs, or videotape to the general public unless regarded as public information by the department.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Ride Along Program Application

All civilian personnel are required to complete the following application in order to participate in a ride along with a sworn police officer. At least two forms of identification must be presented, (one with photo), with this application before any authorization is completed.

1. Full Name: _____

2. Drivers License Number and State: _____

3. Address: _____
   _____
   _____

4. Previous address: _____
   _____

5. Date of birth: _____

6. Social Security Number: _____

7. Place of employment: _____
   _____
   _____

8. Length of employment: _____

9. Previous employer: _____
   _____

10. Name of spouse: _____

11. Maiden name (if applicable): _____

12. Have you ever been arrested, and if so for what reason: _____
   _____
   _____
   _____
   _____

13. Nickname(s) used: _____

14. Number to call in case of emergency_____

15. Current illnesses or medications_____

16. Known allergies_____

17. Blood type_____

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Ride Along Program
## Release Of Liability Form

I, (full name of civilian) _____ will not hold liable Campbell County Sheriff's Department of any liability resulting from any injury as a result of *ordinary negligence* that I might receive as a result of riding with a police officer in a police vehicle. I have been informed of the possible dangers associated with law enforcement work and understand that there are dangers involved in riding in a police vehicle for which a police officer is on patrol, issuing traffic citations, serving warrants for arrest, responding to various types of crimes or calls for service, and making physical arrests when necessary. I also agree to abide by all the rules associated with the ride along program. Rules include the following:

1. Riders will remain in the police vehicle at all times unless otherwise instructed by the officer with whom they are riding.
2. Riders will not communicate with anyone who is the subject of a police investigation, arrested, or otherwise involved in any police action.
3. Riders will not carry or attempt to use any type of weapon.
4. Riders will follow instructions of the officer with whom they are riding.

Signature of Rider: _____

Signature of Officer arranging the ride along: _____

Signature of Witness: _____

Date: _____ Time: _____

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| Subject: Conduct | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:

Honesty, efficiency, and integrity are the fundamental guidelines for employee conduct. All employees are employed to serve the citizens of this jurisdiction. The public is entitled to courteous, efficient response to requests for law enforcement service.

### PURPOSE:

To provide guidance for all departmental personnel concerning proper behavior, either on or off duty, while communicating with, making contact with, or in the eye of the public.

### PROCEDURES:

1. All departmental personnel will be courteous at all times when interacting with the general public.
2. All departmental personnel will maintain a respectable lifestyle whether on or off duty.
3. All non-sworn personnel (dispatchers, secretaries, clerks, etc.), regardless of the reporting citizen's attitude, will be courteous and professional at all times.
4. All law enforcement officers when off duty, but in uniform, will conduct themselves as though they were on duty. Officers will interact with the general public, regardless of citizen attitude, in a courteous and professional manner.
5. Officers will not make known to any person any order or information which they have knowledge of or have received, unless it is in the performance of official duty and given to a person entitled to have the information.
6. Law enforcement officers, whether on or off duty, will be governed by ordinary and reasonable rules of good conduct and behavior. Officers will always display

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

good morals and values and will not commit any act, which could adversely effect the department.

7. Law enforcement officers will always remember that he/she has sworn to uphold the law, abide by the law, and protect the rights of all people as afforded by the constitution of the United States of America and the constitution of the state of Texas.

8. The Law Enforcement Code of Ethics has been formulated as a professional code of ethics for law enforcement personnel. The Law Enforcement Training Academy requires personnel to take an oath to uphold and abide by the Law Enforcement Code of Ethics prior to graduation from the Academy. Members of this department are expected to fulfill this oath, and abide by the Code of Ethics.

## The Law Enforcement Code of Ethics:

As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all men to liberty, equality and justice.

I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession-----Law Enforcement.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

I have read and fully support the <u>Canons of Police Ethics</u> as adopted by my department. The <u>Canons of Police Ethics</u> will be found in the introduction of the policy and procedure manual.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Court Appearance | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It will be the policy of Campbell County Sheriff's Department that all department personnel appearing in court in any capacity be well-groomed, prepared and professional.

### PROCEDURES:

### Court Appearance:

1. Attendance at a court or quasi-judicial hearing, as required by subpoena, is an official duty assignment. Permission to omit this duty must be obtained from the prosecuting attorney handling the case or other competent court official. All members are to be punctual in appearance.
2. When appearing in court, the complete, official uniform should be worn. Whether or not to wear the side arm should be left to the discretion of the prosecuting attorney or presiding judge. Non-sworn employees may appear in conservative business attire or officers may substitute such attire for uniforms when appropriate.
3. Members will present a neat and clean appearance avoiding any mannerisms, which might imply disrespect to the court.
4. Appearances in Municipal Court on days-off can be made in casual dress when approved by the Municipal Court Judge.
5. All employees will have their case files properly prepared, and all evidence suitably arranged for presentation in court.

### Subpoena Precedence:
If an employee should receive more than one subpoena to appear at any court or quasi-judicial hearing on the same date and the same time, subpoena precedence will be as follows: Circuit Court, Municipal Court, City Court and then civil cases. In the event that this should happen, other courts will be notified of the situation.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Court Absences:

If an officer is scheduled to be in court and cannot be in attendance, he must notify the court clerk of the reasons for non attendance within seventy-two [72] hours or three [3] days prior to the scheduled court date, in writing. In the case of an unforeseen emergency, verification of that emergency must be submitted to the court clerk immediately in writing. If the emergency arises before court and the officer is able to contact the court, the judge will determine if the absence is excused. If the officer is unable to contact the court, the Sheriff will determine if the absence is excused.

## Penalties for Unexcused Court Absences:

All unexcused absences will be forwarded to the Sheriff or his designee by the court clerk after each court day. Disciplinary action for not appearing in court may include the following:

1. First Offense: Letter of written reprimand to be placed in the officer's personnel file.
2. Second Offense: Officer will receive a two [2] day suspension without pay from duty.
3. Third Offense: Officer will receive a four [4] day suspension without pay.
4. Fourth Offense: Review of employment and possible termination.

## Respect and Testimony:

While in court, the officer will:

1. Be truthful when testifying, making reports, or conducting any police business;
2. Observe the utmost attention and respect toward magistrates and judges at all times;
3. Speak calmly and explicitly in a clear, distinct, and audible tone so as to be heard by the court and jury when giving testimony.
4. Testify with the strictest accuracy, confining themselves to the case before the court, and neither suppress nor overstate the slightest circumstances with a view for favoring or discrediting any person.
5. Answer with the same readiness and civility as when testifying in support of the charge, remembering that the ends of justice will be served by showing a desire to tell the whole truth, whether it is in favor of or against the defendant during cross examination.

## Testifying for the Defendant:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Any employee subpoenaed to testify for the defense in any criminal trial or hearing will notify the office of the prosecuting attorney upon receipt of the subpoena.

## Civil Action, Court Appearances – Subpoenas:

An employee will not volunteer to testify in civil actions and will not testify unless legally subpoenaed. Employees will accept all subpoenas legally served. If the subpoena arises out of departmental employment or if the employee is informed that he is a party to civil action arising out of departmental employment, he will immediately notify the Sheriff, the governmental attorney of the service of notification, and of the testimony he is prepared to give.

## Civil Depositions and Affidavits:

1. Employees will confer with the Sheriff before giving a deposition or affidavit on a civil matter.
2. Employees will not institute any civil action arising out of their official duties without first notifying the Sheriff.
3. Employees will not use their position with the department as a means of forcing or intimidating persons with whom they are engaged in civil matters to settle the case in favor of the departmental employee.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Appearance | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Employees of this agency are customer service representatives of this county and in that capacity it is important that all employees, both sworn and non-sworn, present a professional image to the public. It will be the policy of this agency that all employees will consistently maintain a neat, clean, and professional appearance at all times during the performance of official duties or at any time that he or she is representing this agency in any manner.

### PURPOSE:

The purpose of this policy is to provide all employees with guidelines concerning proper appearance, dress, and grooming requirements when on duty or when representing this agency.

### PROCEDURES:

In the performance of duty all officers are expected and required to wear uniforms as dictated by departmental policy, except in special circumstances authorized by a superior. Determination of compliance with this policy is completely at the discretion of the Sheriff or designee.

Employees who fail to meet the appearance standards may be sent home and not permitted to work until their appearance meets departmental standards. Failure to comply with five [5] working days is insubordination, and disciplinary action will be taken.

Male officers authorized to dress in plain clothes will wear a suit or sports jacket with dress shirt, slacks and necktie. The jacket will be worn at any time the officer is out in

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022     Document 21-2     Filed 09/26/08     Page 56 of 340     PageID #: 521

the public view. All non-sworn male personnel whose duties require that they interact with the public will wear slacks, buttoned down dress shirts, or polo or golf style collared shirts, and dress shoes. Necktie is optional.

Female employees are expected to uphold a conservative style of dress while on duty which will EXCLUDE:

1. Low-cut tops;
2. Extremely short skirts or dresses (nothing three [3] inches above the knee);
3. Excessive make-up or jewelry;
4. Excessively long or flashy colored fingernails;
5. Excessively high heels (no heels above three [3] inches or platform shoes above one [1] inch).

Any female officer authorized to dress in plain clothes will wear *conservative* business type suits or ensembles when on duty. Clothing such as warm up suits, blue jeans, stretch pants or shorts are not appropriate attire when on duty, unless authorized by a supervisor.

**Male Employees:**
While on duty, and in uniform, male employees and officers will keep their hair trimmed according to the following guidelines:

1. The back will be neatly tapered, rounded or squared and may extend down to the top of the collar.
2. The length of the hair in front will not fall lower than one-half inch above the tops of the eyebrows.
3. The length of the bulk of the hair on the sides will not extend lower than half way down the ear.
4. Side burns will not extend below the lowest part of the ear nor flare any wider at the bottom than their natural width at the top.
5. Male officers may maintain a neatly trimmed moustache not to extend ¼ inch below the bottom lip.

Male employees and officers are prohibited from wearing earrings while on duty. Male employees and officers will maintain clean and neatly trimmed fingernails of a non-excessive length.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Female Employees:**
While on duty, and in uniform, female officers' hairstyle will be worn according to the following guidelines:

1. Hair will not extend below the bottom of the collar.
2. Hair will be styled in a fashion that will allow a cap to be worn over the hair.
3. Conspicuous pins, barrettes, and combs are not authorized.

Female employees and officers working in non-uniform positions may wear their hair in a style that is not as restrictive, however, the hair should be kept neat and in a style and color that is non-offensive to the general public.

**All Employees:**
Both male and female employees will maintain cleanliness by bathing daily, practicing good hygiene, and by wearing clean clothes that are free from unpleasant odors.

All non-sworn employees who do not interact with the public in the performance of their duties will dress casually, as directed by the Sheriff, depending on the type of work performed.

Whether on or off duty, an officer of this agency will not wear a firearm or a police badge in view of the public while not in uniform. An exception to this will be made in specific situations such as executing a search warrant/raid or at the scene of a similar type incident where the identity of plain clothes officers will need to be established.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

# Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Equal Employment Opportunity | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** <br> **Title and Signature:** | |

## POLICY:

This agency will be committed to complying with all laws, both state and federal, pertaining to equal employment opportunity, affirmative action, and discrimination or harassment of any type in the workplace.

## PURPOSE:

To establish and define the policy for this agency concerning fair employment practices and to ensure equal employment opportunities, free from harassment or discrimination, to all employees and applicants for employment.

## PROCEDURES:

All employment decisions will be based on principles of equal opportunity. This agency will not discriminate against any employee or applicant for employment on the basis of the following:

1. Race
2. Color
3. Religion
4. Sex
5. National Origin
6. Disability
7. Age
8. Veteran status
9. Handicap
10. Sexual Orientation
11. Marital Status

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

Employment opportunities will not be distinguished on the basis of age, national origin, or disability except for the position of police officer as per the State of Tennessee Commission on Law Enforcement Standards and Training. The said ACT establishes the following minimum requirements:

1. At least 21 years of age before being eligible for the position of police officer.
2. Must be a citizen of the United States (to be eligible for the position of police officer) **NOTE:** This law would not be applicable to an individual who has obtained citizenship by means of other than national origin.
3. Be physically and mentally capable of performing the duties of a police officer. An applicant must successfully complete physical and mental examinations performed by qualified professionals licensed to practice in each respective field.

This department fully supports the Americans With Disabilities Act, (ADA), and will respond to reasonable requests for job accommodations and will take affirmative action to recruit, hire, reassign, compensate, train, demote, and to advance in employment: minorities, women, qualified individuals with disabilities and veterans. This agency is committed to making sustained, diligent efforts to identify and consider such individuals for employment and for opportunities arising during employment.

Harassment, in any form, against any employee of this agency or applicant for employment is unacceptable and will not be tolerated. All employees must respect civil rights laws and refrain from discriminatory actions. It is everyone's responsibility to perform official duties in a way that maintains and fosters a non-hostile work environment free from discrimination. Prohibited discriminatory actions or conduct may include remarks and jokes regarding race, color, religion, sex, national origin, age, physical or mental ability, marital status, sexual orientation, etc..

This agency prohibits any retaliatory action against an employee for opposing a practice, which he or she believes to be discriminatory. This includes the filing of an internal complaint or the filing of a complaint with a state or federal civil rights enforcement agency.

The Sheriff or his designee, will be responsible for educating employees on equal employment opportunity, affirmative action, discrimination, and harassment issues. He will also be responsible for ensuring that staff members at all levels carry out the intent

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

of this equal employment action and take appropriate measures to correct any discrimination, which might occur.

*All employees are expected to abide by the procedures as outlined within this policy. Violation of this policy will subject an employee to disciplinary action, up to and including dismissal.*

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Workplace Harassment | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### Purpose:
This policy outlines the philosophy of the Sheriff regarding workplace harassment, and details the reporting responsibilities for officers, employees, and citizens regarding allegations of harassment.

### Definitions:
*Harassment:* is defined as persistently annoying or worry an individual.

*Sexual Harassment:* is defined as uninvited and unwelcome verbal or physical conduct directed at an employee because of his or her sex. Sexual harassment includes, but is not limited to, *unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact, and other verbal, visual or physical conduct* of a sexual nature when such conduct has a purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.

*Workplace:* means the department headquarters, government facilities, patrol vehicles, and any other place requiring officers and employees to perform law enforcement duties.

### Policy:
The Sheriff recognizes an employee's right to a workplace free of unlawful harassment and the rights of citizens to be free from harassment by officers and employees of the department. It is the policy of Campbell County Sheriff's Department to provide a reasonably safe and secure work environment, free of harassment for all employees, officers, and citizens. This is a particularly difficult task given the nature of the environment in which law enforcement department personnel must work.

Harassment by law enforcement officers or other department employees toward any member of the public, or any county employee or official is unacceptable and prohibited.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022     Document 21-2     Filed 09/26/08     Page 62 of 340     PageID #:
527

Officers and employees alike are to be vigilant in their efforts to reduce all forms of harassment while on duty or in public view.

Harassment on the basis of one's race, age, religion, disability, national origin, or sex is against the law. Further, that harassment on the job is subject to disciplinary action, up to and including termination of employment. No employee is expected to neither submit nor produce slurs, offensive jokes, inappropriate verbal or physical conduct based on race, age, religion, disability, national origin, or sex.

The department will not tolerate nor condone harassment or pressures that utilize job status as a factor in any way, including interviews, employment reviews, promotions, or dismissals relating to the performance of any job duties.

### Reporting Responsibility:
Any employee, who believes that he or she has been subjected to unlawful or inappropriate harassment, or has witnessed such conduct in the workplace, *must* immediately report the incident to his or her supervisor. If the supervisor is the subject of the alleged complaint, or if for any reason the employee does not wish to report such an incident to their supervisor, the employee will immediately report the matter directly to the Chief Deputy or Sheriff personally. In the event the employee alleges that the Sheriff are subjects of the complaint the report will be made directly to the elected county official of their choice.

In the event the alleged offender is a citizen, the offended officer, employee, or their supervisor will take immediate action to stop the harassment. This may include filing of criminal charges against the offender.

No person has to accept inappropriate harassment or verbal assaults; however, police officers in the course of his or her duties are expected to tolerate more than the average citizens.

### Investigations of Complaints:
All reported incidents of harassment alleged against an officer or employee will be thoroughly investigated in a timely fashion. Complaints will be treated confidentially to the extent that a thorough investigation reasonably allows. Officers of the department trained and experienced in internal investigation will conduct harassment investigations. Statements of the complaining party, and key witnesses will be completed on official *witness statement* forms, signed, and witnessed. Prior to any signing, each complainant, witness or subject of an investigations will be reminded of the perjury laws of the state.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Any individual suspected or accused of an offense will be read their *Miranda Warning*, prior to any interview or interrogation. All law enforcement officers and employees must cooperate fully in any investigation of such a complaint.

## Disciplinary Action:
If the facts support the allegations, the perpetrator of the harassment will be subject to disciplinary action, or possible dismissal or prosecution.

The Sheriff will not authorize or permit any form of retaliation against any employee or citizen who has made a truthful, good faith claim of harassment. However, the filing of a false official report by anyone is subject to the perjury laws of the state, and disciplinary action.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

# Campbell County Sheriff's Department
## Law Enforcement
### Policies and Procedures

| **Subject:** Hiring & Retention of Personnel | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

## POLICY:

This policy is established to provide minimum standards and qualifications for employment within Campbell County Sheriff's Department.

## PROCEDURE:

### Equal Employment Opportunity:
No individual inquiring about employment within Campbell County Sheriff's Department will be discriminated against based on:

1. Race
2. Sex
3. Religion
4. National origin, or
5. Political affiliation.

### Employment Requirements:
All persons seeking employment with department must:

1. Be a United States citizen;
2. Be a resident of county, Tennessee or become a resident within ninety [90] days of employment;
3. Be at least twenty-one [21] years of age;
4. Possess a valid Tennessee Driver's License;
5. Have a high school diploma or GED;
6. Never have been convicted of a *felony* or *misdemeanor involving moral turpitude*;
7. Be free of misdemeanor convictions for the last twelve [12] months;
8. Have no previous or current charges of *driving while Intoxicated* or *driving under the*

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 65 of 340    PageID #: 530

*Influence of drugs or alcohol*;

9. Be subject to a thorough background investigation and personal interviews by Campbell County Sheriff's Department personnel;
10. If served in the armed forces of any country, demonstrate stability, reliability, and integrity, by having an Honorable Discharge [*Dishonorable, General,* or *Medical* discharges are not acceptable];
11. Demonstrate having *good* financial credit rating for the last five [5] years;
12. Demonstrate reading and comprehension skills in the English language to at least the 10th grade level thought interviews and written testing;
13. Demonstrate honesty and integrity, by successfully completing pre-employment polygraph and drug testing;
14. Demonstrate good general medical health as determined by a medical doctor, and physical performance testing;
15. Free from illegal drug use, or legal drugs that impair mental or physical performance, for the past 5 years, as determined by interview, medical, or polygraph testing;
16. Be declared in satisfactory psychological and emotional health by the county psychologist; &
17. Be fingerprinted and subjected a search of local, state, and national records and finger print files.

## Physical & Mental Testing of Sworn Officers:

Individuals applying for or wishing to retain a position as a sworn officer of this department must continually demonstrate the ability to perform physical and mental tasks under stressful, and often confusing circumstances. At time of application and periodically thereafter, officers may be required to demonstrate these abilities without assistance. Minimum demonstrations of ability are:

1. Disassembling, reassembling, loading, firing, and performing malfunction drills with a *revolver, semi-automatic pistol,* and *shotgun*;
2. Handcuffing and restraining *resisting suspects*;
3. Giving loud verbal and hand signal commands that can be understood at 50 yards;
4. Standing, walking, sprinting, laying down, rolling-over, and jumping on verbal command, and in rapid order;
5. Dragging 100 pounds of dead weight over 25 yards;
6. Picking up and carrying 100 pounds of dead weight over 25 yards;
7. Using a long baton, and chemical dispensing weapons on command; &
8. Accurately and consistently following verbal, written, and hand signal commands, without hesitation, or assistance.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

An applicant for a sworn position that cannot perform these minimum tasks will not be accepted. Sworn officers of the department that cannot demonstrate proficiency in these areas will be reassigned to non-sworn duties or dismissed from the department.

## Acceptance of Applications:

Employment applications will be accepted at any time, even if all positions are filled, for future evaluation. The completion of a regular application form will ensure that each candidate be considered for all positions within the department for which he is qualified. Applications will be kept on file for at least twelve months, after which the application will be destroyed. However, applications of hired individuals will be maintained in their employee file.

## Disqualification of Applicants:

Applicants may be disqualified for a number of reasons, including, but not limited to:

1. Not possessing the minimum qualifications for the position;
2. Failing to be punctual in taking prescribed tests or undergoing evaluation;
3. Making fraudulent statements during interview, or on any application; or
4. Failing to properly complete the application in the manner prescribed.

## Guidelines for Filling a Position:

Whenever a vacant position is to be filled within Campbell County Sheriff's Department, a number of guidelines must be maintained to ensure all applicants are treated equally to include the following:

1. A position vacancy notice will be posted within the department.
2. The appropriate departmental supervisor will evaluate applications, including:

    a. Any applicant nominated by the Sheriff;
    b. Qualified persons already employed by the city; &
    c. Any other qualified persons.

3. After screening, applicants will submit to written, physical, mental, and performance based testing.

## Continued Employment Standards:

To be eligible for continued employment employee must, in addition to other conditions,

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 67 of 340   PageID #: 532

and standards, meet the requirements as specified in Employment Requirements, above.

## Will and Pleasure:

The employment of employees of Campbell County Sheriff's Department is for an indefinite term and continues at the pleasure of county. At any time, Campbell County Sheriff's Department may dismiss and discipline employees within the guidelines of departmental policy as determined by Sheriff or his designee.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 4

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** ADA and Disabled Persons | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** **Title and Signature:** | |

### INTRODUCTION:

For many years, police and public safety agencies have expressed a commitment to providing quality response and service to all people in a fair, impartial manner. Traditionally, agencies have addressed fairness and impartiality on the basis of race, color, sex, sexual preference, national origin, religion, and, more recently, age.

People with disabilities represent the largest minority group in the nation. With the passage of the Americans with Disabilities Act in 1990, it has become imperative that departments restate their commitment, ensuring accessibility to services and employment opportunities by people with disabilities.

Every department should recognize the needs of people with disabilities in their mission statement and agency values. Departments must develop policies and procedures that address specific accommodations to be afforded to people with disabilities. Through enforcement of these policies, agencies must ensure equal provision of law enforcement services.

Beyond adopting policies and procedures, it will be necessary for agencies to train law enforcement and public safety employees and physically modify facilities to make them accessible to and usable by people with disabilities. Agencies must eliminate physical and communication barriers that interfere with equality of employment. Agencies must ensure that workers with a disability are provided with the same benefits and privileges of employment as those enjoyed by employees without disabilities.

### PURPOSE:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 69 of 340    PageID #: 534

The purpose of the following policy is to provide guidance to the agency in committing itself and its employees to providing quality services to people with disabilities and complying with provisions of the Americans With Disabilities Act.

The Americans With Disabilities Act of 1990 (Title II) provides that departments of any state or local government may not exclude qualified individuals with disabilities from participation in any program, service, or activity or deny qualified individuals with disabilities the benefits of programs, services, or activities, or otherwise subject them to discrimination on the basis of disability.

## POLICY:

It will be the policy of this agency to ensure that a consistently high level of law enforcement services are provided to all members of the community including people who may require special consideration in order to access these services. It is the policy of this agency to afford people with disabilities the same access to programs, services, and employment provided to all citizens. This includes, but is not limited to, services such as first responder recognition of the nature and characteristics of various disabilities and appropriate physical and emotional support to people with disabilities who seek to access law enforcement services or who come into contact with law enforcement officers. Examples include, but are not limited to:

1. Recognition of symptoms and appropriate medical and emotional support for people experiencing seizures;
2. Sensitivity to and appropriate physical support in aiding people who are mobility challenged;
3. Rapid access to interpreters for people with hearing and/or speech disabilities who have a need to communicate with law enforcement personnel;
4. 24-hour access to professional support systems for people with mental disabilities;
5. Access to law enforcement information, programs, and publications for people who have impaired vision or hearing;
6. Recognition of the difference between characteristics common to certain disabilities (such as epilepsy, diabetes, and deafness) and those associated with antisocial or criminal behavior or reaction to alcohol and drug abuse; and,
7. Other accommodations to ensure service and access to all people with visual, mental, emotional and medical disabilities including "invisible' disabilities such as diabetes, epilepsy, multiple sclerosis, loss of hearing and others.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## DEFINITIONS:

*Qualified individual with a disability* - an individual who, with or without reasonable modifications to rules; policies or practices; the removal of architectural, communication, or transportation barriers; or, the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Disability* - a physical or mental impairment that substantially limits one or more of the major life activities of an individual; a record of such impairment; or being regarded as having such an impairment.

*Reasonable accommodation* - includes the modification of existing facilities to facilities that are readily accessible to and usable by individuals with disabilities; job restructuring, part-time, or modified work schedules; reassignment of an employee with a disability to a vacant position; acquisition or modification of equipment; and appropriate alteration of examinations, training materials, or policies.

## Procedural overview:

No single policy or procedure can address law enforcement responses to all people with disabilities. This policy and procedure addresses common law enforcement interaction with people with disabilities including those who are complainants, victims, witnesses, arrestees, members of the community who desire to participate in department-sponsored programs, people seeking information, and uninvolved bystanders. In all cases, employees must take all steps necessary to assist people with disabilities in accessing the full range of immediate and follow-up services provided by this agency.

## Responsibility of Officers:

In providing law enforcement services to the public, it is incumbent on every employee to ensure that people with disabilities are afforded all rights, privileges, and access to the department provided to those without disabilities.

People with disabilities may also be suspects or arrestees and require detention, transport, and processing. Employees must familiarize themselves with the proper methods of transport, arrest, and detention to ensure officer safety while providing all reasonable support to an arrestee with a disability.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Employees must develop the ability to recognize the characteristics of various disabilities, including symptoms, and physical reactions and realize responses of certain disabilities may resemble those of people are under the influence of alcohol or drugs. At times, such traits may be exhibited by people with diabetes, epilepsy, multiple sclerosis, hearing impairments, and other disabilities.

Employees should be able to identify and apply appropriate responses, such as emergency medical aid, protecting and/or calming the individual, using basic sign language, securing professional medical attention, locating and enlisting support of family and friends, and rendering proper physical support.

Officers should be able to identify and apply appropriate restraint to a person with a disability, if needed to facilitate an arrest. When effecting an arrest of a person with a disability, officers should be able to access the support systems necessary to secure the rights of the individual. This may include use of interpreters, attorneys, and legal guardians.

In all cases, officer safety must prevail. No employee should jeopardize his or her safety or that of others in an attempt to accommodate a person with a disability.

## Department Responsibilities:

The department will provide training to all officers on appropriate response to both non-arrest and arrest situations involving people with disabilities. The department will provide training and information to all employees on recognition of various disabilities and the provision of appropriate law enforcement services to people with disabilities.

In order for employees to provide the highest level of service or safe custodial care to people with disabilities, the department will develop and regularly update a list of agencies available to provide guidance, support, and direct assistance and maintain a roster of support agencies and individuals who may be contacted on a 24-hour-per-day basis to provide support in situations involving people with disabilities. The department will provide reasonable accommodation to all qualified individuals who have disabilities.

## Routine and Emergency Interaction:

In providing routine and emergency services, equality in response, support and protection will be provided to all people including those with disabilities. Officers will make every effort to access appropriate support organizations when needed.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

(Successful liaison between law enforcement and support services agencies has led to improved service to people with disabilities in major cities and counties throughout the United States.)

## Response to routine calls for service:

1. Department employees should be aware that people with disabilities have special needs that may have to be met in order to provide the best possible law enforcement response to calls for service. Officers should be able to identify specific needs of people with disabilities.
2. Employees should be sensitive to the fact that some people with disabilities may be targeted as crime victims as a direct result of their disability.
3. Employees should be familiar with techniques they may employ at a scene (during the initial call for service and follow-up) to provide support to people with disabilities. All reasonable steps should be taken to aid people with disabilities in bringing calls for law enforcement service to successful completion.

## Response to emergency calls for service:

1. All dispatchers will be trained to recognize characteristics of people whose disabilities may require special communications techniques and methods for providing service.
2. Employees should be able to identify characteristics common to specific disabilities in a crisis or emergency so that appropriate action may be taken to render aid and assistance. If the person with the disability is unable to communicate, employees should seek a medical alert bracelet or similar form of ID and input from family, witnesses, and others to aid in identifying the nature of the disability.
3. As first responders, all employees should be aware of emergency medical techniques applicable to various disabilities.
4. All employees should be able to apply emergency signs to people who are deaf to obtain basic information on matters such as nature of the incident, location and extent of injury, name and address, and family member or other person to be contacted.
5. The department will maintain TDD services for deaf and hard of hearing people and provide direct access to telephone emergency systems for individuals who use TDD'S.

## Response to criminal and disruptive behavior:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Some people with disabilities commit crimes. Some people with disabilities also exhibit disruptive behavior.
2. Generally, people with disabilities who commit crimes or engage in disorderly conduct should receive no preferential treatment. However, disorderly conduct should not be treated as a criminal activity when it is the manifestation of a disability. For example, when such conduct is the result of a seizure or mental disability, the call for service should be handled as a medical call rather than an arrest situation.
3. Officers should be aware that, in such situations, it is common for people with disabilities to seek sympathy as a way to lessen the outcome of the law enforcement response.
4. In all such situations, officers should take reasonable precaution to protect themselves and others.

## Arrest and Incarceration:

1. Employees should employ appropriate precautions and safety techniques in arresting and incarcerating all people, whether or not they have a disability. Officers should follow all policies and standard techniques for arrest and incarceration when taking a person with disabilities into custody.
2. Consideration should be given to the special needs of some people with disabilities in an arrest situation. Response in these situations requires discretion and will be based, in great part, on the officer's knowledge of characteristics and severity of the disability, the level of resistance exhibited by the suspect, and immediacy of the situation. In arrest and incarceration situations, employees may encounter the following:
3. A person whose disability effects the muscular and/or skeletal system may not be able to be restrained using handcuffs or other standard techniques. Alternative methods (transport vans, seat belts) should be sought.
4. Some people with disabilities require physical aids (canes, wheel chairs, leg braces) to maintain their mobility. Once the immediate presence of danger has diminished and the suspect is safely incarcerated, every effort should be made to return the device. If mobility aids must be withheld, the prisoner must be closely monitored to ensure that his or her needs are met.
5. Prescribed medication may be required at regular intervals by people with disabilities (diabetes, epilepsy). Medical personnel (the suspect's physician, on-call medical staff, emergency room medical staff) should be contacted immediately to determine the importance of administering the medication, potential for overdose, etc.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

6. Some people with disabilities may not have achieved communications comprehension levels sufficient to understand their individual rights in an arrest situation. (For people who are deaf, there is no sign language for the term "waive" in regard to the Miranda rights. Yet, in an effort to be cooperative, a suspect who is deaf may acknowledge that he or she is willing to give up his or her rights.) Officers must take extra care to ensure that the rights of the accused are protected.

7. Lack of speech or other speech impairment may make it difficult for a suspect to notify the arresting officer or jailer of an urgent need. Frequent cell checks should be conducted.

## Visual Disabilities:

1. One of the most difficult issues facing people in need who are blind or vision impaired is identifying law enforcement officials. Employees should offer detailed information in identifying themselves as members of this agency. Whenever possible, if the presence of a visual disability is known, officers may have dispatch contact the victim or complainant to verify to him or her that a member of the department has arrived. If needed, badges may be offered to the individual to verify the officer's identity.

2. Knowing what not to do is as important as knowing what to do to assist a person who is vision impaired. Employees do not need to raise their voice when speaking. Employees should not grab the person's arm to lead him or her in a particular direction. If needed, the individual will take the officer's arm for guidance.

3. Signs and printed information at law enforcement facilities should be in large print in order to assist people with vision impairments. Room identification signs and elevator information in those facilities where people may proceed unaccompanied should be in Braille for blind people.

## Mental, Emotional and Psychological Disabilities:

1. The terms "mental illness," "emotional illness," and "psychological illness," describe varying levels of a group of disabilities causing disturbances in thinking, feeling, and relating. It has been estimated that ten percent of the population of the United States has some type of mental illness.

2. Providing accessibility to law enforcement services for people with mental, emotional, and psychological disabilities usually involves providing only general assistance. At times, exceptional law enforcement services and safe custodial care may be required.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Employees must ensure that people with mental, emotional, and psychological disabilities are assisted in accessing agency services, which may require time and patience beyond that usually provided. For example, time spent on a call for service may have to be extended in order to reassure the individual, sort facts, interact with family members and others, and bring the call to successful resolution.
4. If an individual with a mental, emotional, or psychological disability is taken into custody, employees must make reasonable efforts, while taking precautions, to use the least restraint possible and protect the arrestee from self-injury.
5. Frequently, a family member or friend is of great value in calming an individual exhibiting unusual behavior as a result of mental or emotional impairment. If needed, steps should be taken to gain placement for the individual in an appropriate emergency medical, health care, or shelter facility.
6. Officers must become familiar with appropriate government agencies, nonprofit agencies, volunteer organizations, and emergency medical services available to provide assistance to people with mental, emotional, and psychological disabilities.
7. Officers must remain familiar with appropriate emergency commitment/detention procedures to be used when providing shelter care and related support to people with mental, emotional or psychological disabilities.

## Mental Retardation:

1. Mental retardation encompasses a broad range of developmental disabilities from mild to profound. Mental retardation and mental illness are distinct conditions, with no similarity. The largest percentage of people with mental retardation are in the ranges termed "mild" or "moderate."
2. Employees should recognize that people who have mental retardation have varied degrees of limited intellectual functioning. In all situations, employees should ask short questions, be patient when waiting for answers, repeat questions and answers if necessary, have individuals repeat the question in their own words, and provide reassurance. in many situations, and particularly when dealing with someone who is lost or has run away, the employee may gain improved response by accompanying the person through a building or neighborhood to seek visual clues.
3. In responding to the needs of people with severe or profound mental retardation, the aid of family, friends, and neighbors is invaluable.

## Mobility Impairments:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Among the disabilities that are the most visibly identifiable are mobility impairments. People with mobility-related impairments include those who have difficulty walking, those who use a wheelchair or other mobility aid, and those who are immobile.
2. In a critical or emergency situation, employees should be aware of the safest and most rapid methods for assisting people with mobility impairments to avoid causing them unnecessary strain or injury.
3. In an arrest encounter, once an arrestee with a mobility impairment is secure in a cell and safety concerns are resolved, an effort should be made to return use of any mobility aids (wheel chair, cane, etc.).
4. Department facilities should be accessible to people with mobility impairments. Entrances, interior routes, stairs, drinking fountains, rest rooms, and telephones should accommodate people with mobility impairments including those who use wheelchairs.

## Invisible Disabilities:

1. Many disabilities are difficult to notice. A law enforcement officer's failure to recognize characteristics associated with certain invisible disabilities could have serious consequences for the person with the disability. For example, outward signs of a disability such as epilepsy generally do not exist unless the person with the disability experiences a seizure. People with diabetes may have reactions from either too little insulin or too much insulin. Low blood sugar reactions are common and are usually treated by ingesting sugar. Detaining someone and preventing them from getting sugar could have serious health implications for the individual and liability consequences for the officer and department.
2. Officers should realize that involuntary behavior associated with some invisible disabilities may resemble behavior characteristically exhibited by intoxicated or, less frequently, combative individuals. For example, a person experiencing a mild seizure may appear incoherent and physically imbalanced. The response is temporary.
3. An officer's patience and understanding of the characteristics commonly associated with invisible disabilities will lead to a successful outcome. An inaccurate assessment may lead to unnecessary confrontation, injury, and denial of needed medication and/or medical treatment.
4. As with all types of disabilities, an employee's first obligation is to protect the individual from unnecessary harm. When aiding a person experiencing a seizure, protection from obstacles, a calm reassuring manner, and patience are

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

important responses. Family members and friends should be sought to provide information and assistance. Their presence may prove invaluable in understanding the needs of the person with the disability and guiding the officer's actions.

### Speech and Hearing Disabilities:

1. Like other invisible disabilities, officers may confuse the behavior of individuals with hearing and speech disabilities with those of people who intentionally refuse to cooperate or those who abuse illegal substances. Officers should be aware that an individual's failure to comply with or respond to verbal orders does not always constitute defiance, but may be the result of that individual's inability to hear the officer or respond verbally. Before committing themselves to a course of action, officers should attempt to identify whether or not they are dealing with a person who has a communication-related disability.

2. It is essential that officers take extra measures to protect the rights of suspects who are deaf and hard of hearing, as well as others who may not have educational or communications comprehension levels sufficient to fully understand the basic Miranda rights. Simply reading the rights to someone with a hearing disability and having the individual acknowledge that they are understood is insufficient.

3. All law enforcement facilities should be appropriately posted with clearly visible signs that provide essential information to people with hearing impairments.

4. Each facility should be equipped with a variable volume public telephone and a TDD in order to provide telephone access to people who are deaf or hard of hearing who desire to call the law enforcement facility from an external location and those at the facility who desire to make a call to another.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Blood Borne Pathogens | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** **Title and Signature:** | |

### PURPOSE:

The purpose of this policy is to provide officers with guidelines for preventing the contraction of the AIDS virus, hepatitis B, and other blood borne pathogens.

### POLICY:

It is the responsibility of Campbell County Sheriff's Department to take all reasonable measures to allow its members to perform their duties in a safe and effective manner. The safe performance of daily operations is threatened by the AIDS and hepatitis B viruses that can be contracted through exposure to infected blood and several types of bodily secretions. Therefore, it is the policy of this agency to continuously provide employees with information and education on prevention of these diseases, provide up-to-date safety equipment and procedures that will minimize their risks of exposure and to institute post-exposure reporting evaluation and treatment for all members exposed to these diseases.

### DEFINITIONS:

*Bodily Fluids*: Blood, semen and vaginal fluids or other secretions that might contain these fluids such as saliva, vomit, urine or feces.

*Exposure Control Plan*: A written plan developed by this agency and available to all employees that details the steps taken to eliminate or minimize exposure and evaluate the circumstances surrounding exposure incidents.

*Personal Protective Equipment*: Specialized clothing or equipment worn or used by members for protection against the hazards of infection. This does not include

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 7

standard issue uniforms and work clothes without special protective qualities.

*Universal Precautions*:   Procedures promulgated by the Centers for Disease Control (CDC) that emphasize precautions based on the assumption that all blood and bodily fluids are potentially infectious of the AIDS (HIV) and hepatitis B (HBV) viruses.

## PROCEDURES:

### Disease Prevention and Control Guidelines:

1. This agency subscribes to the principles and practices for prevention of HIV and HBV exposure as detailed in the "universal precautions" prescribed by the CDC and the federal regulations of the Occupational Safety and Health Administration.   Where otherwise not detailed in this policy, officers will be guided by these practices and procedures.
2. In order to minimize potential exposure, officers should assume that all persons are potential carriers of HIV or HBV.
3. When appropriate protective equipment is available, no member will refuse to arrest or otherwise physically handle any person who may carry the HIV or HBV virus.
4. Officers will use protective gear under all appropriate circumstances unless its use would have prevented the effective delivery of health care or public safety services or would have imposed an increased hazard to his safety or the safety of another co-worker.
5. Leather gloves or their protective equivalent will be worn when searching persons or places, or when working in environments, such as accident scenes, where sharp objects and bodily fluids may reasonably be encountered.
6. Searches of automobiles or other places should be conducted using a flashlight, mirror or other devices where appropriate.   Subsequent to a cautious frisk of outer garments, suspects should be required to empty their pockets or purses and to remove all sharp objects.
7. Needles will not be recapped, bent, broken, removed from a disposable syringe or otherwise manipulated by hand.
8. Needles will be placed in departmentally provided, puncture-resistant, leak proof containers that are marked as biohazardous when being collected for evidence, disposal or transportation purposes.
9. Officers will not smoke, eat, drink or apply makeup while around bodily fluid spills.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

10. Any evidence contaminated with bodily fluids will be completely dried, double bagged and marked to identify potential or known communicable disease contamination.

## Custody and Transportation of Prisoners:

1. Officers will not put their fingers in or near any person's mouth.
2. Individuals with bodily fluids on their persons will be transported in separate vehicles from other persons. The individual may be required to wear a suitable protective covering if he is bleeding or otherwise emitting bodily fluids.
3. Officers have an obligation to notify relevant support personnel during a transfer of custody when the suspect has bodily fluids present on his person, or has stated that he has a communicable disease.
4. Suspects taken into custody with bodily fluids on their persons will be directly placed in the designated holding area for processing. The holding area will be posted with an "Isolation Area-Do Not Enter" sign.
5. Officers will document on the appropriate arrest or incident form when a suspect taken into custody has bodily fluids on his person, or has stated that he has a communicable disease.

## Housekeeping:

1. Supervisors and their employees are responsible for the maintenance of a clean and sanitary workplace and will conduct periodic inspections to ensure that these conditions are maintained.
2. All supervisory personnel will determine and implement written schedules as appropriate for cleaning and decontamination based on the location within the facility or work environment, the type of surface or equipment to be cleaned, the type of soil present and the tasks and procedures to be performed in the area.
3. All equipment and environmental and work surfaces must be cleaned and decontaminated after contact with blood and other potentially infectious materials.
4. Any protective coverings used in laboratory, evidence custody or enforcement operations for covering surfaces or equipment will be removed or replaced as soon as possible following actual or possible contamination.
5. Bins, pails and similar receptacles used to hold actual or potentially contaminated items will be labeled as biohazardous. These receptacles will be decontaminated as soon as feasible following contamination and then inspected

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

and decontaminated on a regularly scheduled basis.

6. Broken and potentially contaminated glassware, needles or other sharp instruments will not be retrieved by hand but by other mechanical means and will not be stored in a manner that requires that they be retrieved manually.

7. Officers will remove clothing that has been contaminated with bodily fluids as soon as practical and with as little handling as possible. Any contacted skin area will be cleansed in the prescribed fashion.

8. Contaminated laundry and personal protective equipment will be bagged or containerized at the location where it is used in departmentally approved leak proof containers.

9. Departmental personnel working within this agency's criminalistics laboratory will adhere to departmental policy and procedure as well as laboratory policy and procedure.

10. Only employees specifically designated by the Sheriff will discard actual or potentially contaminated waste materials. All such disposal will conform to established federal, state and local regulations.

## Disinfection of Skin Surfaces:

Any unprotected skin surfaces that come into contact with bodily fluids will be thoroughly washed as soon as possible with hot running water and soap for at least 15 seconds before rinsing and drying. Alcohol or antiseptic towelettes may be used where soap and water are unavailable. Disposable gloves should be rinsed before removal and hands and forearms should then be washed. Skin surfaces will be washed and mucous membranes flushed as soon as feasible following the removal of any personal protective equipment. Hand lotion should be applied after disinfection to prevent chapping and to seal cracks and cuts on the skin. All open cuts and abrasions will be covered with waterproof bandages before reporting to duty.

## Disinfection of Vehicle Surfaces:

Disinfection procedures will be initiated whenever bodily fluids are spilled or an individual with bodily fluids on his person is transported in a departmental vehicle. A supervisor will be notified and the vehicle taken to the service center as soon as possible. Affected vehicles will be immediately designated with the posting of an "Infectious Disease Contamination" sign upon arrival at the service center and while awaiting disinfection. Service personnel will remove any excess bodily fluids from the vehicle with an absorbent cloth, paying special attention to any cracks, crevices or seams that may be holding fluids. The affected areas should be disinfected using hot water and detergent or alcohol and allowed to air dry. All police vehicles taken to a

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

service center for scheduled washing and routine maintenance will, as part of that routine, be cleaned in the interior with an approved disinfectant. Non-disposable equipment and areas upon which bodily fluids have been spilled will be disinfected as follows:

1. Any excess bodily fluids should first be wiped up with approved disposable absorbent materials.
2. A freshly prepared solution of one part bleach to 10 parts water or a fungicidal/ mycobactericidal disinfectant will be used to clean the area or equipment.

## Supplies:

1. Supervisors are responsible for continuously maintaining an adequate supply of disease control supplies in a convenient location for all affected personnel in their unit. This includes, but is not limited to, ensuring that:

   a. Personal protective equipment in appropriate sizes, quantities and locations are available;
   b. Hypoallergenic gloves and other materials are available for those who are allergic to materials normally provided, and cleaning laundering and disposal, as well as repair or replacement of these and other items is provided; and
   c. First aid supplies and disinfecting materials are readily available at all times.

2. Officers are responsible for maintaining and replacing disease control supplies in their patrol vehicle to include:

   a. Personal protective equipment in appropriate size and quantity for affected personnel to include face and eye protective devices, coveralls, disposable gloves and booties, leather gloves, puncture-resistant and leak proof containers for needles and other sharp objects, barrier resuscitation equipment and leak proof plastic bags;
   b. Liquid germicidal cleaner;
   c. Disposable towelettes (70 percent isopropyl alcohol);
   d. Waterproof bandages;
   e. Absorbent cleaning materials;
   f. "Isolation Area-Do Not Enter" signs;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Vaccination, Exposure, Evaluation and Treatment:

1. All members of this agency who have been determined to be at risk for occupational exposure to the hepatitis B virus will be provided with the opportunity to take the HBV vaccination series at no cost within 10 working days of assignment to an occupationally exposed duty. The vaccination will be provided unless the officer has previously received the vaccination or medical reasons contradict the procedure.
2. Any person who has unprotected physical contact with blood or other bodily fluids of another person while in the line of duty will be considered to have been potentially exposed to HBV and/or HIV.
3. In cases of exposure, a supervisor will be contacted who will complete appropriate duty injury and medical forms and will take appropriate steps to document the means and circumstances under which the exposure occurred.
4. Immediately after exposure, the officer will proceed to the designated health care facility for tests of evidence of infection and treatment of any injuries.
5. This agency will ensure continued testing of the member for evidence of infection and provide psychological counseling as determined necessary by the health care official.
6. The members will receive a copy of the health care provider's written opinion within 15 days of the evaluation and information on any conditions resulting from the exposure that require further evaluation or treatment.
7. Unless disclosure to an appropriate departmental official is authorized by the officer or by state law, the officer's medical evaluation, test results and any follow-up procedures will remain confidential.
8. Any person responsible for potentially exposing a member of this agency to a communicable disease will be encouraged to undergo testing to determine if the person has a communicable disease.
9. The person will be provided with a copy of the test results and a copy will be provided to the exposed agency officer. The officer will be informed of applicable state laws and regulations concerning the disclosure of the identity and infectious status of the source individual.
10. Criminal charges may be sought against any person who intentionally exposes a member of this agency to a communicable disease.
11. Officers who test positive for HIV or HBV may continue working as long as they maintain acceptable performance and do not pose a safety and health threat to themselves, the public or other members of this agency.

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

12. This agency will make all decisions concerning the employee's work status solely on the medical opinions and advice of the agency's health care officials.
13. The agency may require an employee to be examined by the department health care officials to determine if he is able to perform his duties without hazard to himself or others.
14. All members of this agency will treat employees who have contracted a communicable disease fairly, courteously and with dignity.

## Record Keeping:

1. This agency's personnel function will maintain an accurate record for each employee with occupational exposure that includes information on vaccination status; the results of all examinations, tests and follow-up procedures; the health care professional's written opinion; and any other germane information provided by the health care professional.
2. These health care records will be retained in a secured area with limited access for the duration of the member's employment plus 30 years and may not be disclosed or reported without the express written consent of the member.

## Training:

1. This agency's training coordinator will ensure that all members of this agency with occupational exposure are provided with a complete course of instruction on prevention of blood borne diseases prior to their initial assignment.
2. All affected employees will receive annual refresher training and additional training whenever job tasks or procedures are modified in a manner that may alter their risk of exposure.
3. All trainees will have access to applicable federal and state regulations pertaining to the regulation of blood borne pathogens.
4. The training coordinator will ensure that complete records are maintained on member training to include information on the dates and content of training sessions, names and qualifications of persons conducting the training and the names and job titles of all persons attending the training sessions. These records will be maintained for a period of three years from the date of training.

1.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Communicable Diseases | Policy Number: |
| --- | --- |
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

To provide agency personnel with communicable disease information and current safety procedures which will assist in minimizing potential exposure, while increasing knowledge of the nature and potential risks of communicable diseases. It will also be the policy of Campbell County Sheriff's Department that every person receives appropriate service and emergency care regardless of their physical condition.

### PURPOSE:

To establish procedures for the proper investigation of incidents involving persons who have, or are suspected of having a communicable disease. The procedures will establish:

1. Guidelines to reduce the risk of law enforcement or emergency service officers of contracting a communicable disease during the performance of official duties;
2. Procedures to be followed when an officer has a line of duty exposure to a communicable disease; and
3. The ability to assure the confidentiality and the prevention of discrimination against of victims of communicable diseases.

### DEFINITIONS:

*Body fluids*: Liquid secretion including, but not limited to, blood, semen, vaginal fluids, saliva, vomit, urine, feces or other secretions.

*Communicable Disease*: Those infectious illnesses that are transmitted through direct or indirect (including airborne) contact with an infected individual including, but not limited to, the body fluids of the infected individual.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## PROCEDURES:

### Communicable Disease Prevention:
In order to minimize potential exposure to communicable diseases, officers will:

1. Assume that all persons are potential carriers of a communicable disease;
2. Cover all open cuts and abrasions with waterproof bandages prior to reporting for duty;
3. Keep disposable gloves in their possession at all times;
4. Wear disposable latex gloves when handling any person, clothing, or equipment with body fluids on them, or when the officer anticipates becoming involved in assaultive behavior through which the officer may potentially become exposed to blood or body fluids containing blood;
5. Replace latex gloves after each use, before handling a different person, or touching uncontaminated items;
6. Wear latex gloves underneath leather or cotton gloves during crime scene work for added protection;
7. Wear a mask, protective eye goggles, and protective disposable coveralls where body fluids may be splashed on the officer, or where airborne contamination of a communicable disease is anticipated;
8. Wear plastic mouthpieces or other authorized barrier resuscitation devices whenever an officer performs CPR or mouth-to-mouth resuscitation;
9. Handle all sharp instruments such as knives, scalpels, and needles with extraordinary care;
10. Wear leather gloves when searching for or handling sharp instruments;
11. Use extreme caution when searching a suspect's pockets or have the suspect pull the pockets inside-out;
12. Search a purse by carefully dumping the contents onto a flat surface;
13. Never handle bent or broken disposable syringes or needles;
14. Place needles or similar sharp-edged instruments into puncture-resistant, non-porous containers for evidence collection or disposal purposes;
15. Refrain from smoking, eating, drinking, or applying makeup around body fluid spills or when wearing protective gloves;
16. Air dry and double bag any evidence contaminated with body fluids to identify suspected or known communicable disease contamination;
17. Use departmental issued sealable evidence bags for any evidence collection; and

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

18. Utilize departmental issued prongs to assist in gathering contaminated evidence.

## Transporting and Custody:

When appropriate protective equipment is available, no officer will refuse to interview, assist, arrest or otherwise physically handle any person who may have a communicable disease. Should an officer be involved in an incident where proper safety materials are not available, the officer will immediately contact the shift supervisor and request assistance.

Officers will not put their fingers in or near the mouth of any conscious person. Officers utilizing protective gloves can, in life threatening situations, insert their finger into the mouth of an unconscious person to attempt to clear a blocked airway. This action should be performed in accordance with prescribed foreign body airway obstruction procedures.

When possible, persons with body fluids on their body or clothing will be transported in separate vehicles from other individuals.

During a transfer of custody, officers will discreetly notify support personnel that the suspect/victim has body fluids on the person or that the suspect/victim has said that he or she has a communicable disease. Care must be taken to insure that the information is given only to those who have a need to know.

When possible, suspects taken into custody with body fluids on their body or clothing, and not in need of medical attention, will be isolated from other persons until clean up has been completed and a change of clothes has been provided. Officers will document that a suspect taken into custody has body fluids on their person and has stated that he or she has a communicable disease. The shift supervisor on duty at the detention facility will be immediately advised of the suspect's status.

All officers dealing with persons who have blood or other body fluids on their body or clothing will be personally responsible for following precautionary procedures and using the protective materials provided.

## Decontamination:

Any skin surfaces that have had the slightest contact with body fluids will be immediately and thoroughly washed with hot running water and soap for one (1) minute

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

then rinsed with an antiseptic solution before drying. Alcohol, antiseptic solutions, or towelettes may be used when soap and water are not available. Disposable gloves should be removed inside out with the contaminated side not exposed. The hands and forearms should then be washed. Officers should remove clothing that has been contaminated with body fluids, and cleanse any contacted skin areas (showering if necessary) prior to putting on clean clothing.

Disinfection procedures will be initiated whenever body fluids are spilled in or when an individual with body fluids on his or her person is transported in a municipal vehicle. The shift supervisor will be notified and the vehicle will be taken out of service. A "Do Not Use-Possible Communicable Disease Contamination" sign will be posted on the steering wheel of the vehicle. The affected vehicle will remain out of service until it has been disinfected with a commercial disinfectant approved by the Chief Deputy.

Non-disposable items such as handcuffs, etc., should be disinfected with either a bleach solution (1 part bleach to 9 parts water), rubbing alcohol, or commercial disinfectant. Contaminated shoes and boots, including soles, should also be disinfected with an approved disinfectant. Extreme care should be taken to assure that contaminated footwear is not worn home or taken into a work area.

## Supplies:
Campbell County Sheriff's Department is responsible for purchasing, storing, and issuing communicable disease prevention supplies to all personnel within the police department. Officers are responsible for notifying the shift supervisor for the replacement of any item. All department and emergency service vehicles will be continuously stocked with:

1. Disposable coveralls, aprons, and shoe covering in appropriate sizes;
2. Disposable latex gloves and leather gloves;
3. Puncture resistant containers and sealable plastic bags;
4. Barrier resuscitation equipment, protective eye goggles, and surgical face masks;
5. Disposable towelettes (70% isopropyl alcohol);
6. Waterproof bandages;
7. Absorbent cleaning materials;
8. "Do Not Use - Possible Communicable Disease Contamination" signs;
9. Biohazard disposal bags;
10. Portable metal mirrors; and

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

11. Non-porous tongs.

## Line of Duty Exposures to Communicable Disease:

Any officer who has been bitten by a person, or who has had physical contact with body fluids of another person, while in the line of duty, will be considered to have been exposed to a communicable disease. In such a case, the shift supervisor will be contacted and all appropriate injury forms completed.

Immediately after exposure, the officer will be transported to the appropriate health care facility for clinical and serological testing for evidence of infection. The health care professionals will evaluate the test results, along with the circumstances surrounding the incident, and make a determination as to the extent, if any, of exposure to a communicable disease. Any person responsible for potentially exposing the officer to a communicable disease will be encouraged to undergo testing to determine whether the person has a communicable disease.

Officers who test positive for a communicable disease may continue working as long as they maintain acceptable performance and do not pose a health threat to themselves, the public, or the department. All personnel will treat employees who have contracted a communicable disease fairly, courteously, and with dignity.

## Legal Rights of Victims of Communicable Disease:

Victims of communicable diseases have the right to expect and will receive the same level of service and law enforcement as any other individual would receive.

Officers assume that a certain degree of risk exists in law enforcement and emergency services work in contracting a communicable disease. Any officer, who refuses to take proper action in regard to a victim of a communicable disease, when appropriate protective equipment is available, will be subject to disciplinary action.

When an officer mentions in a report that an individual has or may have a communicable disease, he will write "Classified - Contains Medical Information - Not Subject To Freedom of Information Act" across the top margin of the first page of the report. The shift supervisor will ensure that the above statement is on all reports by signing his signature upon review.

The Supervisor making press releases will make certain the medical information is not given to the news media. Under the Tennessee Freedom of Information Act (FOI),

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

medical records are exempt from disclosure.

All requests, including subpoenas, for copies of reports marked "Classified - Contains Medical Information - Not Subject To FOI" will be referred to the county attorney for authorization to release the document. Prior approval will be obtained from the county attorney before advising a victim of sexual assault that the suspect has, or is suspected of having, a communicable disease.

All circumstances, not covered in this Policy, that may arise concerning releasing confidential or medical information regarding a victim, or suspected victim, or a communicable disease will be referred directly to the Sheriff.

Any employee who divulges confidential or medical information in regard to a victim, or suspected victim, of a communicable disease will be punished in a manner authorized by law.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Disciplinary and Non-Disciplinary Action | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to avoid terminating an employee when conduct, behavior, or performance problems occur, unless it is shown that the employee knew, or should have known, that such conduct, behavior, or performance failed to comply with established directives. The officer will not be held accountable for problems arising out a lack of skills or ability that the typical member would not be expected to possess.

### DEFINITION:

*Equity:* A review of the employee's performance deficiency to determine a course of disciplinary action. The Sheriff will weigh a number of items equally in rendering a disciplinary decision, including;

1. The seriousness of the offense;
2. Management's expectation that the type and level of disciplinary action will facilitate or deter the conduct or behavior of others;
3. The member's overall conduct, work productivity, time between other violations (if other offenses occurred), and behavior record;
4. Management's expectation, based on the member's overt behavior, that the type and level of administrative action will improve the member's future performance (does the member respond positively to discipline); and
5. The member's seniority.

### PROCEDURES:

### General Guidelines - Disciplinary Action:
When discipline is deemed appropriate, Campbell County Sheriff's Department will use a progressive system, when practicable. Furthermore, discipline will be for cause and will follow the basic concepts of due process.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 92 of 340    PageID #: 557

Campbell County Sheriff's Department does not intend to illegally discriminate against current members, potential members, or member groups on the basis of sex, ethnic background, race, religion, color, age, or physical disability in any disciplinary or termination proceedings. Supervisors must ensure that fair enforcement decisions are made in the use of disciplinary or termination action to incorporate the concepts of equality and equity.

## General Reasons for Disciplinary Action:

An officer may be terminated for a number of reasons to include, but not limited to:

1. Conviction of a criminal offense, including a felony or certain misdemeanors;
2. Insubordination to the directives of a superior;
3. Violation of the Civil Service Law;
4. Reporting to work under the influence of alcohol or any drug not prescribed by a licensed physician;
5. Offensive conduct or language toward the public, superior, or other employees;
6. Carelessness or negligence in the use of departmental property;
7. Accepting bribes from any individual;
8. Encouraging other an person to commit illegal acts;
9. Failing to report to work without reasonable cause to excessive tardiness;
10. Falsifying documents or misrepresenting facts within the department;

## Reporting of Disciplinary Action:

Whenever disciplinary action is used, inform the member in writing of:

1. The exact offense violated;
2. How the violation affects ability to be an effective, efficient, or safe employer;
3. What the member must do to avoid future disciplinary action;
4. How much time the member has to correct the problem; and
5. What further disciplinary action, possibly including termination, will occur if performance does not improve.

## Non-Disciplinary Action:

Not every supervisory interaction or intervention with a member is to be construed as discipline. The following are examples of non-disciplinary courses of action:

1. Supervisory Consulting: Except in cases of culpability, correcting undesirable conduct is best handled by the shift supervisor in an informal atmosphere. This means taking the member aside and discussing the problem, candidly and openly. These actions may or may not be formally documented, depending on

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

the supervisor's discretion.

2. Counseling: At times, personal problems may interfere with the member's ability to perform normally. When the results are not serious enough for discipline but call for a more formal type of supervision than consulting with the member, counseling is the proper tool to help the member. Counseling is not a form of discipline but is a tool available to correct a problem if the member is not capable of doing so.

3. Administrative Leave: Administrative leave occurs any time the member must be removed from duty until a proper investigation or other administrative proceeding can be held. Usually the situation involves a case of suspected misconduct, such as alleged criminal activity, fighting, or being mentally or physically unfit for duty. In such cases, leaving the member in position would create an unreasonable liability or safety issue for this agency. The shift supervisor can order a relief from duty and then immediately report the action to the Chief Deputy. The Chief Deputy then initiates an investigation and makes a decision within 24 hours about whether the relief will continue, and for how long.

4. Administrative Furloughs: Following a deadly use of force, a furlough will help the member adjust and handle any personal or emotional needs resulting from traumatic events. Administrative furloughs are mandatory, initiated by the shift supervisor. Furloughs should continue until the officer involved has received professional counseling from a licensed psychologist who will notify the Sheriff when the officer is capable of returning to work.

5. Layoffs: It may be necessary to layoff employees if the department is experiencing a shortage of funds, work, or a technological advancement eliminates a job. Any decision to layoff employees will be the responsibility of the Sheriff, after approval by the county board.

## Steps of Progressive Disciplinary Action:

The following are progressive steps to be taken in efforts to discipline employees of Campbell County Sheriff's Department. It is not necessary to start at step one if the seriousness of the employee's conduct exceeds that form of discipline. At the discretion of the Chief Deputy, the following manners of discipline will be pursued:

1. *Written Warning or Reprimand:* Written warnings or reprimands are a way of recording the employee infraction. Such records will be placed in the employee's file and provided to the employee within 48 hours of the infraction.

2. *Suspension:* An employee may be suspended without pay by the Sheriff for no more than five [5] working days. Suspension is the second step in discipline if the act, and/or the result of the act, is serious enough that a written warning or

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

reprimand would not be sufficient for disciplinary action. Members may have a hearing when suspensions occur.

3. *Demotion:* The employee may be demoted to a position of a lower grade by the Sheriff. Demotion as a form of discipline is intended to be punitive and can occur concurrently with a suspension when a supervisor is involved.
4. *Termination:* If all other forms of discipline fail to correct the conduct of the employee, termination will be the last resort.

## Termination:

It is the policy of Campbell County Sheriff's Department to terminate members when:

1. Economic necessity requires reductions in the workforce;
2. A member fails to demonstrate a willingness or ability to improve his or her conduct, behavior, or performance deficiencies without intense supervision; or
3. Failing to terminate the member would create an unreasonable risk of negligently retaining a member who has failed to display the necessary competencies to remain in his or her position.

## Types of Termination:

When an employee of Campbell County Sheriff's Department is terminated, one of two types of termination will be noted, including:

1. Termination with fault, for such reasons as:

    a. Insubordination;
    b. Threatening a supervisor;
    c. Fighting and assaults or provoking a fight or assault;
    d. Forbidden harassment;
    e. Endangering another;
    f. Drug or alcohol abuse; or
    g. Theft, and false reporting or witnessing.

2. Termination without fault, for such reasons as:

    a. Excessive excused and non-excused absences;
    b. Failure to consistently accomplish expected levels of performance results on assigned tasks;
    c. Chronic complaining about operations to the extent that supervisors must spend excessive time dealing with the problems caused by the complaints;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    d. Substantial impairment of the employee relationship including unreasonable disruption to normal operations of Campbell County Sheriff's Department;

    e. Endangering the organization's mission purpose through actions or inaction's that contribute to an unnecessary risk to the public image;

    f. Creating conflicts of interest; and

    g. Any situation where performance is not reasonably expected to improve or where problems are not expected to be resolved in a reasonable time.

## Notice of Termination:

If a member's performance requires an investigation, the member may be placed on administrative leave pending outcome of the investigation. Depending on the findings, the member may then be terminated. If this occurs, the terminated member will be provided with information that includes:

1. The reasons for the termination;
2. The effective date of the termination;
3. Whom to contact regarding status of fringe and retirement benefits;
4. A statement that the content of the member's record, relating to the termination, will be made available to the member according to state public law; and
5. A statement regarding the employee's right to file an appeal.

## Appeals Process:

The employee may file a written appeal specifying his reasons for objecting to a suspension, demotion, or termination within seven [7] days of receiving disciplinary notice. The appeal will be sent to the Sheriff or designee for consideration.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 96 of 340   PageID #: 561

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Psychological and Physical Examination | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** <br> **Title and Signature:** | |

### PURPOSE:

The purpose of this policy is to provide guidelines for all employees to follow concerning the physical and psychological examination requirements of Campbell County Sheriff's Department.

### PROCEDURES:

### Police Officer Applicants:

All persons applying for a position within Campbell County Sheriff's Department are required to undergo a full physical and psychological examination by a licensed physician. If a physician or mental health professional indicates the presence of a condition that could limit an officer's physical or emotional ability to cope with the stress of law enforcement duties, he or she will not be eligible for certification as a law enforcement officer within Campbell County Sheriff's Department.

### Law Enforcement and Civilian Personnel:

The following guidelines will be maintained by all sworn, and civilian employees of Campbell County Sheriff's Department:

1. After employment, the department may reexamine an employee at anytime to determine his or her continued fitness for duty including:

   a. For purposes of a criminal or internal investigation; or
   b. For suspicion of emotional or physical problems due to documented accounts of an employee's psychological behavior or decline in physical health.

2. If a qualified physician or mental health professional indicates the presence of a

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



condition that could limit an employee's physical or emotional ability to perform his or her duties, that employee will be placed on sick leave and not be allowed to return until:

a. Released from care of a medical facility; and
b. A letter is submitted from a health care professional indicating the physical or emotional stability of the employee.

## Responsibility:

It will be the responsibility of the Sheriff to enforce this policy. However, any employee who is witness to a decline in mental or physical stability should report the behavior to the Sheriff. Any employee refusing to submit to a physical or psychological examination, following the request of the Sheriff will be     subject to dismissal.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 2



## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Firearms: Training and Qualifications | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Without exception, all officers or armed employees [regular, part-time, reserve, auxiliary or guard] will semi-annually demonstrate proficiency with all firearms they carry on duty. This includes handguns [pistol, or revolver], long guns [shotgun and/or rifle], and any secondary weapons. No officer may carry a firearm that the officer has not demonstrated proficiency with in the last six months.

### PURPOSE:

To provide firearm training and *proficiency demonstration* guidelines for employees of this department.

### FIREARMS & RANGE OFFICER QUALIFICATIONS:

Firearms instructors of the department meet the following qualifications:     Each instructor and range officer of the department has:

1. Completed an approved *law enforcement firearms instructor course* conducted by certified instructors of a State, National Rifle Association, or US Military.
2. Demonstrated 90% proficiency with each category of firearm carried by officers and employees of the department. Is proficient in teaching *firearms safety, care and cleaning, safe storage, tactical firearms use,* and *weapons retention.*

### PROCEDURES:

1. Initial qualification, semi-annual demonstration of proficiency, and training will be conducted at times appointed, and at an approved firing range.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 1 of 4

2. All firearms training and proficiency demonstrations is conducted by a *qualified firearms instructor.*

3. Prior to any proficiency course or test, department firearms instructors will schedule an off-duty course, and practice session that may be attended by officers at no cost.

4. Employees who do not qualify will have the option of attending a remedial weapons course to be conducted off duty.

5. Minimum firearms proficiency demonstration score for armed employees of Campbell County Sheriff's Department is 75% percent of the required courses of fire. This standard applies to all firearms carried or used by individual officers.

6. Officers will also demonstrate proficiency in *tactical loading, reloading, clearing of malfunctions, safe gun handling*, and *care and cleaning of the firearms.*

7. Officers will be provided with two opportunities to meet proficiency standards.

8. Officers unable to demonstrate proficiency will be scheduled for a conference with the Sheriff. Any officer who is unable to meet the minimum Firearms Qualification Score established by the department will not be eligible to perform duties of an armed employee, past the six month proficiency period elapses. The inability to consistently demonstrate proficiency with a firearm will cause the employee or officer to be reassigned or dismissed from the department.

## Proficiency Course of Fire & Demonstration:

At lease three months prior to the first date set for firearms proficiency demonstration, the firearms instructor, will determine the course of fire, and demonstration requirements, and publish a description of these standards, to all officers, subject to the approval of the Sheriff. The firearms instructor will vary the requirements from time to time to provide officers will innovative training and real life situations. Physical movement, seeking of cover and concealment, and verbal command responses on the part of employees may be required.

All shooting exercises require the employee to clear all *malfunctions, jams*, and *misfires* in an attempt to complete the exercise in the time allotted. Supplemental ammunition reloading is allowed, without limit, but only to the extent that an employee only fires the required number of rounds.

## Qualification Scoring & Award:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Each course of fire will be as set by the firearms instructor. Officers may be awarded badges and awards that demonstrate the following proficiency level.

- a. MARKSMAN, (75% to 85%)
- b. SHARPSHOOTER, (86% to 91%)
- c. EXPERT, (92% to 100%)

## Range Safety Rules and Regulations:

1. Employees fire the actual weapon, and the actual type and make of ammunition carried on the job.
2. A record of all approved firearms training will be maintained at the department level, with a listing of *pass or fail only*. Actual scores will not be recorded on training records.
3. No loaded weapons will be on the range except when on firing line.
4. Strict discipline will be maintained by the Range Officer and by the officers receiving the training.
5. When picking up a firearm, open the cylinder or action and check to see that it is loaded. Check the weapon the second time to assure that it is safe.
6. Do not give a firearm to anyone unless the cylinder or action is open and no rounds are in the weapon.
7. Do not anticipate a command on the range.
8. Always check the barrel of a firearm for obstructions before loading.
9. Load your weapon only after you are on the firing line and given the command to *load*.
10. Unload when and as instructed.
11. Keep the barrel of your firearm down range in the target area at all times when in your hands.
12. Do not remove a weapon from its holster with your finger on the trigger.
13. The index finger will be indexed [placed on the frame of the weapon] until the command to *fire* is given.
14. When on the firing line, smoking, chewing, or dipping tobacco products are absolutely prohibited.
15. Full attention will be given to instructions and commands of the Range Officer.
16. If a firearm is dropped or the muzzle touches the ground, notify the Range Officer immediately, unload the weapon, check the barrel for obstructions and follow the commands of Range Officers before resuming a firing exercise.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

17. Do not let the hammer down on a live round in the firing chamber without placing your thumb in front of the hammer and releasing the pressure on the trigger.

18. In the event of a misfire, jam, or malfunction, clear the weapon immediately, and attempt to complete the firing exercise in the time allowed. The loading of additional rounds is permissible to accomplish the proficiency objective [in the time allowed]. Demonstration of proficiency includes prevention and recovery from mal-functions.

19. Do not go in front of the firing line until the Range Officer has given the command to *Cease Fire*, and the line has been cleared and the order to *Go Forward* has been given.

20. Dry firing on the range is prohibited except when under the supervision of the Range Officer.

21. If you are taking any type of medication or have consumed alcoholic beverages within eight (8) hours of firing a weapon, the Range Officer must be notified.

22. Repeated violations of any Safety Rule or Regulation, whether intentional or unintentional, will result in loss of proficiency or removal from the range.

23. Ear and eye protection is required to be worn while firing a weapon during range training. Equipment will be provided, however, employees are also allowed to use personal items. Privately owned equipment is subject to approval by the firearms instructor.

24. Firearms instructors, regardless or rank, are in charge of the firearms training. All officers, including superior officers, will follow the firearms instructor's commands concerning range operation, and demonstration of proficiency procedures. The firearms instructor will report to the Sheriff any problems he/she might encounter as a result of this policy provision.

25. Employees attending firearms training will be attentive and cooperative in class and on the firing range. Class misconduct, horseplay, or negligence of any kind will not be tolerated. Any officer has the right to challenge the scoring of his or her target. The challenge must be made to the Range Officer at the time of the original scoring.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Training and Officer Proficiency | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to train officers of this department in excess of law enforcement training requirements mandated by the State. Further, to provide officers and employees of this department with the skills necessary to efficiently and effectively carryout their duty assignments.

### PURPOSE:

To provide information to all departmental employees concerning the goals of our training program and the responsibilities of each officer and employee to remain proficient in their duties.

### DISCUSSION:

Training has often been cited as one of the most important activities in any law enforcement agency. Training in our department serves three broad purposes. First, trained officers are generally better prepared to act decisively in an ever-widening range of situations. Second, effective training results in greater productivity and effectiveness. Third, it fosters cooperation and unity of purpose.

### PROCEDURES:

### Goals:

The goals of the Campbell County Sheriff's Department training program include:

1. Meeting mandatory and in-service training requirements;
2. Exceeding mandatory and in-service training requirements, by at least 10%;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Better educated, more professional personnel;
4. Each officer receiving no less than twenty hours of in-service training each calendar year;
5. Maintaining officer *demonstrated proficiency* levels regarding key enforcement tools such as:

   a. Firearms
   b. Chemical weapons
   c. Handcuffs and other restraint devices
   d. Long, short, collapsible, or other batons
   e. Special weapons and tactics
   f. Emergency vehicles

6. Efficient and effective accomplishment of departmental objectives;
7. Improving law enforcement and community relations;
8. Career development opportunities within the department;
9. Training in specialized areas of law enforcement;
10. Uniformity of service, response capabilities, and understanding for officers and employees of the department; and
11. Developing officer skills in working with the law-abiding citizens of the community.

## Training Responsibilities:

Although training is a continuous process, which involves all members of Campbell County Sheriff's Department, the overall training function is a primary responsibility of the Sheriff. To carry out this mandate, the Sheriff will appoint a Department Training Officer. These responsibilities, at a minimum, involve:

1. Providing access to training for both sworn and civilian personnel;
2. Planning, developing, and overseeing training programs;
3. Notifying personnel in writing of required training and *demonstrated proficiency* examinations, and other approved courses;
4. Assuring that training programs are attended by personnel as assigned;
5. Maintaining liaison with educational and training resources;
6. Maintaining accurate and up to date training files on all departmental employees;
7. Scheduling and making arrangements for employees to attend training classes;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 3

8. Filling out all required forms for employees upon completion of training, on a timely basis;
9. Setting dates for proficiency training and tests, in conjunction with other technical instructors [such as firearms, driving, baton, and chemical agents];
10. Implementing disciplinary action against any employee who fails to attend mandatory training; and
11. Notifying supervisors of officer proficiencies that are about to lapse or have elapsed.

## Proficiency Ratings:

No officer or employee of this department will carry or use any of the following key law enforcement tools without having completed an initial course in it's application, and periodically *demonstrating proficiency* in its application. Usually, the initial training for each of these tools will occur during a basis law enforcement academy course. These law enforcement tools include the following items and demonstrated proficiency requirements:

1. Firearms – See and comply with Firearms Training Policy & Procedure
2. Chemical weapons – Every three years
3. Handcuffs and other restraint devices - Every three years
4. Long, short, collapsible, or other batons – Every two years
5. Special weapons and tactics – Each year
6. Emergency vehicles – Every five years
7. Breathalyzer – As required by the State
8. Radar – Every two years or as required by the State

The training officer will set the dates of proficiency training and evaluations, testing requirements, and *pass or fail* standards. Evaluation will be on a pass or fail basis, and this data will be recorded in the officers training file.

Generally, refresher training will be provided by the department just prior to evaluation. Where and to the extent possible, officers will be evaluated on actually performing hands-on drills, as apposed to taking a written examination. No officer may use or carry any of the above described items, who has not demonstrated proficiency during the period specified. There are not exceptions to this policy.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Patrol Functions & Tactics | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:
It is the policy of **Campbell County Sheriff's Department** to maximize visibility of this department, and it's vital law enforcement and protection responsibilities by vigorously patrolling the jurisdiction that we serve.

### DISCUSSION:
The patrol function is a primary law enforcement function that embraces much more than the act of patrolling. Patrolling is a part of the general duty that this department owes to the community. During effective patrols officers engage in a wide variety of activities to include: *enforcing traffic and criminal laws, answering complaints, conducting follow-up investigations, community relations, transporting prisoners, crime prevention, and a host of other community support activities.*

### PROCEDURES:

### Communications, Coordination, & Cooperation Between Components:
Patrol officers are an integral part of the policing process, and as such cooperate to the fullest extent possible with other personnel of department. This cooperation includes exchange of information with criminal investigators, crime prevention specialists, and those assigned other tasks. This cooperation and exchange is accomplished by, but not limited to:

1. Attendance at staff meetings, where matters of departmental interest are discussed and ideas are exchanged.
2. Daily review of patrol, investigative and offense reports and other information. This review should trigger the sharing of information and assistance.
3. Review and compliance with new policies and procedures.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 8

4. Making recommendations that will improve the effectiveness, or efficiency of the department.

## Patrol Coverage:

Campbell County Sheriff's Department provides law enforcement services to the community on 24 hours a day, seven days a week basis. Generally, the department provides the same services at all hours of the day or night in relation to calls for service, emergency response, prevention patrols, and traffic enforcement.

## Assignment of Officers to Patrol Areas:

The assignment of officers to particular areas will be the responsibility of the Chief Deputy based on the following criteria:

1. Number of calls for service
2. Number of offenses & incidents
3. Number of businesses
4. Available manpower
5. Other specific needs
6. Special requests for service

## Area Rotation Frequency:

Normally, an officer will be assigned to the same area on a *semi-permanent basis.* Partial rotation may be necessary when a particular officer is required to perform a specific type of assignment in another part of the jurisdiction. The Chief Deputy will rotate area assignments as frequently as believed necessary to maintain a high level of officer interest and responsiveness to the law enforcement needs of the community. Area assignment on a *semi-permanent basis* is a preferred practice for the following reasons:

1. Officer can become better acquainted with persons, businesses, organizations, and hazards.
2. Helps place accountability for events occurring in a certain area to a specific set of officers.

## Sharing Significant Law Enforcement Information:

Officers assigned to areas are encouraged to share significant law enforcement information concerning their area with other officers. Such information may be written in an Informational Memorandum or passed on verbally.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Supervision & Scheduling:

Adequate supervision and support is important in any job, and never more so than in police work where the immediate objective is always shifting. Scheduling is an important part of this responsibility and includes:

1. Ensuring sufficient officers are available to meet minimum staffing levels.
2. Daily inspection of officers for *completeness of uniform, serviceability of equipment,* and *fitness for duty.*
3. Anticipating pre-planned major events to insure adequate coverage.
4. Monitoring compensatory time accumulation and payback.
5. Monitoring of leave time accumulation and scheduling time-off to best meets the needs of the community.
6. Coordinating officer attendance at required meetings, training, qualification sessions, and physical fitness evaluations.
7. Encouraging officer participation in college and continuing education courses.
8. Requesting auxiliary or reserve officer assistance in support of routine, or emergency law enforcement activities.
9. Briefing information to officers before daily patrol activity, with particular attention given to *unusual situations, directed patrol activity, and changes in the status of wanted persons and stolen property,* and *major investigations.*
10. Publishing changes in schedule and assignments.
11. Publishing new directives or changes in directives.
12. Counseling officers on job performance, compliance with policies & procedures, and ways to improve in areas needing attention.

## Safety & Health Procedures: ~Need add a Clean-up (meth)

Most law enforcement patrol vehicles are high profile, even unmarked units. Citizens see these vehicles and instinctively know . . . *the police are nearby.* It is critical to the welfare of your fellow officers, and the accomplishment of the mission that the public views our officers as examples of **safety first.** Officers will adhere to the following safety procedures at all times:

1. Come to work mentally and physically prepared to assume your duties. If, for any reason, you are not capable of performing your duties, notify your supervisor immediately.. In addition to other conditions, officers assuming patrol duties will not be impaired with *sleep depravation.*
2. Before starting patrol inspect your patrol vehicle and complete the *Vehicle Maintenance Form.*

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Wear seatbelts at all times the vehicle is moving, or sitting on a public street, and require passengers to always do the same. See *Transporting Individuals*, below for possible exceptions.
4. Position head rests to fit your physical condition.
5. Lock doors when vehicle is in motion.
6. Windows should be up, or rolled all the way down when driving.
7. Do not leave the vehicle unsecured, or the key in the ignition when away from the vehicle.
8. Officers are encouraged to wear bullet resistant vests while on duty.
9. Obey all traffic laws, including speed limits, unless in an *authorized emergency*, and with audible and visual emergency equipment activated.
10. When patrolling at night take steps to *protect night vision*.
11. In the event there is a known spilling or release of human body fluids [urine, blood, saliva, or feces] in the patrol vehicle by an individual being transported, the area of probable contact should be thoroughly cleaned with an approved disinfectant, before transporting other persons.
12. Always wear foul weather apparel in during inclement conditions.
13. Always wear reflective vests or strips when directing traffic in low-light conditions.
14. Use *blood borne pathogen* safety equipment including *gloves, glasses, hepatitis vaccines, and reporting procedures.*

## Vehicle Inspection Safety Checklist:

Before beginning each patrol inspect the vehicle and it's equipment to insure that the vehicle is prepared for duty. Likewise, in the event the vehicle is to be turned over to another officer for use, both officers should simultaneously complete this checklist, and correct any deficiencies before commencing patrol.

## Patrol Activities:

Response to some calls may ideally require several officers to effectively and safely control the situation. These situations may include:

1. An assault on an officer;
2. On-scene arrest for a violent offender;
3. A potential or actual resistance to arrest;
4. Use of force incident;
5. A violent or potential violent crime in progress;
6. A fleeing suspect; or
7. Domestic Abuse Incidents.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 8

In the event a second officer is unavailable, the first responder will exercise their discretion in determining the best course of action. These options range from *immediate intervention* to *identification and reporting*. The safety of officers and innocent life will always be a prime factor when considering options.

## Incidents Requiring Presence of Sheriff:

Sheriff will be notified and determine whether to proceed to and assume command of the following types of incidents:

1. Serious injury to a police officer.
2. Accident involving a police vehicle when an officer or another person is seriously injured, or major damage is involved.
3. Major crimes to include *murder, bank robbery, jailbreak, violent kidnapping, heinous crime,* and *assault where death may occur.*
4. A barricade or hostage situation.
5. Officer discharging his firearm while on duty, and personal injury is involved.
6. Disasters, catastrophes, or severe weather producing emergency conditions.
7. A serious complaint or any incident causing a law enforcement officer or another agency personnel serious injury.
8. Any other incident when in the discretion of the patrol officer notification is appropriate.

## Public Hazards or Potential Hazards:

A wide variety of hazardous situations in this jurisdiction such as *bad road or weather conditions, unsafe structures, potentially dangerous calls for service, flooding,* etc., will be identified by the patrol officers on the street, called in to communications by citizens, or announced by local media. Information as to any of these hazardous or potentially hazardous situations will be reported, shared among officers and other agencies, and passed on to subsequent shifts.

Information concerning hazardous or potentially hazardous situations that is received by the dispatcher will be passed to all personnel either immediately or at shift change depending on the nature of the threat.

## Transporting Individuals:

Any officer, while performing regular duties, may be assigned to transport *witnesses, juveniles, victims, detainees,* and *prisoners duties.* In such cases, prisoners will be restrained and secured in the patrol vehicle to the extent deemed necessary under the

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

circumstances. Officers will use their discretion in determining, if, and when to use restraints while transporting these individuals. *Ride-a-longs* of non-departmental personnel must be approved by a supervisor, prior to the event.

All persons transported in a department vehicle will be provided with safety seat belts. Those individuals that are restrained will be assisted in securing safety seatbelts, prior to movement of the patrol vehicle. This procedure does not apply to individuals who are violent, or are non-compliant with officer verbal instructions. In such cases, simply placing the individual in a secure portion of the patrol vehicle is considered reasonable and prudent under the circumstances. Refer to the policy & procedures for *transport of prisoners* for more details.

**Special Notifications:**
Notifying next-of-kin in a case where there is a death, serious injury, or serious illness, will place the officer in a delicate and uncomfortable situation. Such message will be delivered in a timely and caring manner. The following procedures will be used whenever practical:

1. Notification is made promptly.
2. Obtain the presence of a minister, relative whenever possible prior to notification.
3. If notification is made alone, the officer will offer assistance in contacting a relative, close friend, or minister.
4. The person receiving notification will be advised of the means used in transmitting the notification to the department, i.e., *teletype or call from another law enforcement agency, unverified telephone call to the department*, etc.
5. Notified party will be provided with contact information regarding disposition of their loved one. Usually a hospital, funeral home, morgue, US Armed Force representative, other law enforcement agency, etc.

**Coroner:**
The Coroner will be notified in situations where a human death has occurred. The dispatcher will normally make the notification at the instruction of the reporting officer. The *name of the victim, location, telephone number, and any preliminary facts pertaining to the death* will be provided to the Coroner, if known.

**Street, Highway, & Public Utility Hazards:**
Anytime an officer a potential hazard, the officer will take immediate to neutralize the hazard, and notify the responsible parties through the dispatcher. Neutralizing action

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

by the office may involve *redirection of vehicle or foot traffic, taping off the area, on guarding,* or *providing verbal warnings until help arrives.*

Some potentially hazardous situations may demand immediate notification to local news media requesting *public service announcements.* Recommendations for these notices should be passed to the dispatcher. Normally, the Sheriff will advise dispatchers to notify the stations when such a hazard exists.

Examples of immediate notification are:

1. Essential traffic light in need of repair;
2. Large holes in road;
3. Electrical power lines down;
4. Large debris etc., in roadway;
5. Breaks in water, gas, or other utility;
6. Weather road hazards such as snow, ice, flooding, damaged bridge;
7. Toxic or chemical spills and releases; &
8. Fires, or fire hazards.

Typical notification at beginning of next business day:

1. Non-essential traffic lights in need of repair;
2. Small (non-hazardous) holes in road;
3. Street lights in need of repair;
4. Telephone or video cables down but not creating hazards;
5. Dead animals in road;
6. Potential fire hazards not requiring immediate attention; &
7. Excessive growth of weeds, grass, etc.

**Patrol & Security Checks of Private Businesses:**
It is vital to good public order and crime prevention for patrol officers to generally know the location, hours of operation, and routines of businesses and public facilities in their area of responsibility. When not making response calls, and on routine patrol, officers will include in their activities the checking of security conditions on commercial property, and public facilities. Officers will make at least 10 such checks per week, while varying the locations. Hazards, or major safety and security deficiencies should be reported to the property owner as a *courtesy.* Observations and notifications might include:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Unsecured entrance doors windows;
2. Defective burglar alarms;
3. Safety and security lighting that is out;
4. Loitering on the property;
5. Undesirable use of property after normal business hours; &
6. Potentially hazardous conditions or equipment left unsecured.

With the completion of each courtesy inspection or check, patrol officers will leave a business card, or note for the business indicating that the check was performed.

## Preliminary Court Appearances Not Required:
Officers will attend court on the date scheduled. Court appearance by officers is not required in the following types of cases, unless requested by the court, prosecutor, or Subpoena:

7. Initial appearance, which requires appointment of counsel to the defendant;
8. Initial appearance of *driving under the influence*;
9. Prepaid traffic infraction;
10. Other instances when notified by the court or prosecutor that presence are not required.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022     Document 21-2     Filed 09/26/08     Page 113 of 340     PageID #: 578

# Campbell County Sheriff's Department
## -POLICE VEHICLE MAINTENANCE FORM –

NAME: _____ DATE: _____

VEH#_____VEH MAKE:_____ MOD:_____ MILEAGE: _____

**EXTERIOR:**

DAMAGE TO VEHICLE:     COMMENTS

_____NONE - _____

_____LFQ - _____

_____LRQ - _____

_____RFQ - _____

_____RRQ - _____

TIRES:    Cold (36-40)_____ Hot (40-44) _____

PSI:    FL_____ FR_____ RL_____ RR_____ TREAD_____ SIDEWALLS_____

WINDSHIELD:    Clean and free of debris _____ Cracked _____ Working Wipers _____

**INTERIOR:**    Insure there are no loose objects or contraband in the vehicle _____ Clean and free of debris_____

Safety belt operational _____ Headrest set properly _____ Fuel level _____ Warning lights

functional (check by turning key on, do not start engine) _____

ENGINE COMPARTMENT: *(Do not start engine)* Oil Level _____ Coolant Level _____ Brake Fluid Level _____

Power Steering Level _____ Belts _____ Windshield Washer Fluid _____

START ENGINE: Automatic Transmission Fluid (check idling while in park) _____ Emergency Brake _____

LIGHTS AND EMERGENCY EQUIPMENT:   Headlights _____ Turn Signals _____ Hazard Lights _____

WigWags _____ Horn _____ Siren _____ Spot Light _____ Radio _____ PA _____

Overheads _____ Take Downs _____ Grill Lights _____ Brake Lights _____

TRUNK:    Complete First Aid kit _____ Tire Secured _____ Jack _____ Lug Wrench _____ Reflective

Rain Gear _____

OPERATION OF VEHICLE ON PATROL:   Brakes _____ Transmission _____ Unusual Noise _____

COMMENTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

SIGNATURE: _____

**Campbell County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| Subject: Patrol Functions | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

## POLICY:

The patrol function is a primary law enforcement function that embraces much more than the act of patrolling. It is a generalized function in which officers engage in a wide variety of activities to include, but not limited to: enforcing traffic and criminal laws, answering complaints, conducting follow-up investigations, community relations, transporting prisoners, crime prevention activities, etc.

## PROCEDURES:

**Communications/coordination/cooperation between components:**
All patrol officers must cooperate and exchange information with criminal investigators and personnel of other functional areas of the department. This cooperation and exchange is accomplished by. but not limited to:

1. Attendance of all personnel at staff meetings. where matters of departmental interest are discussed and ideas are exchanged.
2. Daily review of patrol and investigative offense or incident reports and miscellaneous information. This review should trigger the sharing of information and assistance.
3. Review of and input from all personnel in development of new policies and/or procedures.

**Patrol Coverage:**
Campbell County Sheriff's Department operates 24 hours a day, seven days a week, to provide the citizens with law enforcement services. The department will provide, generally, the same services at all hours of the day or night in relation to answering calls for service, emergency, preventive patrol, traffic enforcement, etc.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated. disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Assignment of Officers to Patrol Areas:

The assignment of officers to particular areas will be the responsibility of the Chief Deputy based on the following criteria:

1. Number of calls for service
2. Number of offenses/incidents
3. Number of businesses
4. Available manpower
5. Other specific needs

## Area Rotation Frequency:

Normally, an officer will be assigned to the same area on a permanent basis. Partial rotation may be necessary when a particular officer is required to perform a specific type of assignment in another part of the jurisdiction. The Chief Deputy will rotate area assignments as frequently as believed necessary to maintain a high level of officer interest and responsiveness to the law enforcement needs of the district. Area rotation is a preferred practice for the following reasons:

1. The officer will be able to become better acquainted with persons, businesses, organizations, and hazards in his area.
2. Helps place responsibility and accountability for events occurring in a certain area on a specific officer.

## Sharing Significant Law Enforcement Information:

Officers assigned to areas are encouraged to share significant law enforcement information concerning their area with other officers. Such information may be placed in an Informational Memorandum or passed on personally.

## Supervision/scheduling:

Supervisor scheduling responsibilities include:

1. Ensuring sufficient personnel are available for daily assignment to meet prescribed minimum staffing levels.
2. Anticipating pre-planned major events and ensuring availability of personnel as required.
3. Monitoring accumulation of, and mandatory pay back requirements for compensatory time.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

4. Monitoring of leave time to ensure that no individual leave is lost due to excess accumulation at year-end.
5. Coordinating officer attendance at required and optional training, range firing, physical fitness evaluation, etc.
6. Encouraging officer participation in college courses.
7. Requesting Auxiliary officer assistance in meeting emergency or other planned law enforcement activities.
8. Briefing officers with information regarding daily patrol activity, with particular attention given to unusual situations, directed patrol activity, and changes in the status of wanted persons and stolen property, and major investigations.
9. Notifying officer of schedules and assignments or changes therein.
10. Informing officers of new directives or changes in directives.

## Prisoner Transport Vehicles:

Any officer, while performing his regular duties, may be utilized to transport prisoners as the need arises.

## Patrol Activities:

Response to some calls may require several officers to deal effectively and safely with the situation. In general, most calls will require at least two officers; these situations may include:

1. A potential or actual assault on an officer;
2. A possibility of or actual on-scene arrest for a felony or violent misdemeanor;
3. A potential or actual resistance to arrest;
4. The possibility of or actual use of force;
5. A crime in progress;
6. A fleeing suspect;
7. Domestic Abuse Incidents;

## Incidents Requiring Presence of Sheriff:

Sheriff will be notified and determine whether to proceed to and assume command of the following types of incidents:

1. Serious injury to a police officer.
2. Accident involving a police vehicle when an officer is injured, other persons are injured, or major damage is involved.
3. Major crimes to include murder, bank robbery, jail break, heinous crime, and assault where death may occur.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

4. A barricade or hostage situation.
5. Disasters, catastrophes, or severe weather producing emergency conditions.
6. A serious complaint or any incident causing a law enforcement officer or another agency personnel serious injury.
7. Any other incident where he is requested.

## Public Hazards or Potential Hazards:

A wide variety of hazardous situations in this jurisdiction such as bad road or weather conditions, unsafe structures, potentially dangerous calls for service, etc., will be identified by the patrol officers on the street, called in to communications by citizens, or announced by local media. Information as to any of these hazardous or potentially hazardous situations should be reported, shared among officers and other agencies that ought to know, and passed on to subsequent shifts.

Information concerning hazardous or potentially hazardous situations that is received by the dispatcher should be passed on to all personnel during shift change in order to prepare and plan for the situations.

## Special Notifications:

Any message pertaining to a death, serious injury, or serious illness will be delivered in a timely manner. Notifying next-of-kin in a case where there is a death, serious injury, and/or serious illness, can place the officer in a delicate and uncomfortable situation. The following procedures should be utilized when ever possible and practical:

1. Notification should be made as promptly as possible.
2. The presence of a minister, relative, or close friend (if known) should be obtained whenever possible prior to notification.
3. If notification has to be made alone, the officer should offer assistance to the next-of-kin in contacting a relative, close friend, or minister.
4. The person receiving notification should be advised of the means used in transmitting the notification to the department, i.e., teletype or call from another law enforcement agency, unverified telephone call to the department, etc.
5. When requested by another agency to make notification of next-of-kin, the dispatcher or officer should attempt to obtain any pertinent information about the situation in order to assist the relative receiving the message.

## Coroner:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

The Coroner will be notified in all situations where an officer responds to a location where a death has occurred. Notification will normally be made by the dispatcher on request from the responding officer. The name of the victim, location, telephone number, and any preliminary facts pertaining to the death will be given to the Coroner.

## Street/Highway/Public Utility Personnel:
At anytime when a situation exists that creates a hazard or potential hazard, the officer identifying the situation will request that the dispatcher make proper notification of the situation so it may be corrected as soon as possible. Some hazardous situations may demand immediate notification of the local radio station(s) in order to request immediate public service announcements. Normally, the Sheriff will advise dispatchers to notify the stations when such a hazard exists.

Immediate notification to proper agency:

1. Essential traffic light in need of repair;
2. Large holes in road;
3. Electrical power lines down;
4. Large debris etc., in roadway;
5. Breaks in water, gas, or other utility;
6. Snow, ice, etc. on roads; and
7. Fire hazards needing immediate attention.

Notification at beginning of next business day:

1. Non-essential traffic lights in need of repair;
2. Small (non-hazardous) holes in road;
3. Street lights in need of repair;
4. Telephone or video cables down but not creating hazards;
5. Dead animals in road;
6. Potential fire hazards not requiring immediate attention; and
7. Excessive growth of weeds, grass, etc.

## Preliminary Court Appearances Not Required:
Court appearance by the officer is not required in the following types of cases:

1. Any initial appearance, which requires appointment of counsel to the defendant.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. Any initial appearance of a driving under the influence charge unless requested by the court.
3. Any prepaid traffic infraction.
4. Any other cases when officer is notified by the court or prosecuting attorney that his presence is not required.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Bank Robbery or Alarm Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

All officers of Campbell County Sheriff's Department will maintain the following guidelines when responding to robbery alarms to enhance the possibility of the arrest of suspects and to ensure the safety of themselves, other officers, employees and bystanders.

### PROCEDURES:

### Bank Alarm Procedure - Normal Response:
The following procedures will be maintained by all employees of Campbell County Sheriff's Department when responding to a bank alarm, including:

1. When an alarm from a bank or alarm company is received:

    a. Dispatch will notify the bank and on-duty officers of the situation;
    b. Two [2] units will respond to the scene;
    c. Responding officers will identify themselves and their agency, and determine if there is a problem.

2. If there is no problem, the responding officers will:

    a. File a report which states their name, the name, address, and telephone number of the bank, and why the alarm was activated; and
    b. Not enter the bank unless requested.

### Bank Alarm Procedure - Robbery Response:
When a robbery occurs, the response of Campbell County Sheriff's Department officials will include the following:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 2

1. If dispatch establishes communication by telephone, the bank employee will be told to stay on the phone.
2. Only three [3] units should respond to the scene under the following provisions:

   a. The first unit will observe the most logical point of escape while maintaining reasonably concealed.
   b. The second unit will observe a secondary point of escape while maintaining reasonably concealed.
   c. The third unit will remain a block away from the scene to assist any other units in stopping the suspects' vehicle, if escaping by motor vehicle.

3. A shotgun is recommended on these types of calls.
4. Responding officers will respond in emergency mode by activating both the patrol unit blue light and siren until within sight or sound of the location.
5. Upon arrival to a robbery location, an officer may enter the building if there is a notice, visible from the entrance, indicating that the suspect has left the scene.
6. If no notice is visible, an officer will not enter the building until instructed to do so by a bank employee or dispatch communicating with bank employees.
7. Officer's arriving at the bank will be responsible for:

   a. Securing the crime scene, including all possible exits;
   b. Identifying and obtaining information from witnesses; and
   c. Informing other officers of information as it becomes available.

8. No attempt will be made by any official of Campbell County Sheriff's Department to arrest an individual until they have left the building.
9. Responding officers should remember that it is possible that the suspects have left the scene and employees are unable to communicate with the officers.
10. The responding officer will immediately determine if the suspect or suspects left in a vehicle or on foot. If a vehicle was used the officer will obtain a description, direction of travel and occupant information. This information will be given to the dispatcher for immediate broadcast.
11. Any facility which has a holdup alarm wired directly into the department will be observed by officers from a discrete location when advised of an alarm or false alarm.
12. An incident report will be prepared on all calls made to any facility having a holdup alarm wired direct into the department.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| **Subject:** Traffic Enforcement | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to aggressively enforce traffic laws in an effort to improve safety in our community, and ultimately reduce the occurrence of traffic accidents and deaths.

### DEFINITIONS:

*Racial profiling:* The interdiction, stopping, detention, or other unequal treatment of any person based on race, ethnicity, gender, or any combination thereof.

*Reasonable suspicion:* Also known as *articulable suspicion*. More than a mere hunch, and based on a set of articulable facts or circumstances that cause a reasonable person to believe that an infraction of the law has been committed, is about to be committed, or is in the process of being committed, by the person(s) being observed. Reasonable suspicion in traffic enforcement is often based on officer observations, in combination with training and experience, and/or reasonably reliable information from a credible source.

### PROCEDURES:

### Officer Sets The Example:
Officers on vehicle patrol should be ever conscience that they are *being observed, while observing others*. The public is watching every move you make. As a result officers are to:

1. Obey all traffic laws, including posted speed zones;
2. Be courteous, and polite to other motorists and pedestrians;
3. Be a defensive driver;
4. Yield right of way, when on routine patrol; &

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 8

5. Not engage emergency lights or siren except in *declared emergencies, during vehicle stops, in pursuits,* or *to warn of hazards.*

While on patrol or traffic enforcement duties, officers of Campbell County Sheriff's Department will patrol their assigned area, while paying particular attention to zones that may require a greater concentration of enforcement. Officers will also conduct stationary, overt observations in which their parked patrol vehicles will serve as a reminder for drivers to comply with traffic laws. Officers will not leave their assigned patrol areas without prior authorization from their supervisor.

## Types of Enforcement Actions:
The first level of enforcement while performing street and foot patrol is the *mere presence* of the officer. A reasonable citizen, when seeing a peace officer, will conduct their affairs in a more cautious and safe manner. The more we patrol and are highly visible, the more likely we are to deter crime, while reassuring the public that we are alert, good examples for the public to follow, and protecting their interests.

Prior to enforcing traffic laws, the officer must have *reasonable suspicion* to believe the person being stopped has, is, or is about to commit an infraction of the law. A person's *race, ethnicity, gender, religion, political affiliation,* or *any combination of these* will not be a factor in determining *reasonable suspicion* for a stop, or determining *probable cause* for an arrest. The primary factor to consider is . . . *was there an observable offense committed, or is one about to be committed?*

During a traffic stop, officers can exercise one of three courses of action regarding traffic violations:

1. *Warnings* - A warning may be issued, at the officer's discretion, when:

    a. Minor traffic violation has been committed;
    b. Suspect driver has an emergency; or
    c. Violation is committed due to ignorance of local ordinances that may be unique or unknown to the driver.

2. *Traffic Citations* – Generally, a traffic citation should be issued for any moving or non-moving violation, which hinders the safe and effective flow of vehicular or pedestrian traffic.

3. *Arrest* - Officers will make a physical arrest when:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

   a. *Driving while intoxicated,* or *driving under the influence of alcohol* or other Intoxicants has occurred;
   b. Felony has been committed, involving a vehicle;
   c. Vehicle operator refuses to sign a promise to appear on the traffic summons; or
   d. Officer has *articulable reason* to believe that the person will not comply with the summons.

## Officer Responsibility - Traffic Citations:
When issuing a traffic citation, the officer will notify the motorist of:

   1. Court appearance schedule;
   2. If court appearance is mandatory;
   3. If he may prepay the fine to the court prior to court on entering a *guilty plea*; &
   4. Any other necessary information.

Officers will be especially mindful of drivers who are not familiar with the State or jurisdiction in which they are driving, as to *normal procedures* for resolving a ticket. Under no circumstance will officers accept money, valuables, or favors from motorists for any reason, to include pre-payment of fines or tickets.

## Specific Traffic Violations:
Officers of Campbell County Sheriff's Department will follow the listed guidelines when deciding whether or not a traffic citation is warranted:

   1. *Speeding violations* – A *citation* may be given to anyone who violates the posted speed limit. The decision to cite a violator may depend on the location of the violation, previous accident history of location, and directed patrol emphasis.
   2. *Equipment violations* – A *warning* will normally be given unless the violation is repetitive or flagrant.
   3. *Multiple violations* – For multiple violations, a traffic citation can be issued for each violation, however, the more flagrant violation is generally cited and *warnings* issued for the remainder.
   4. *Newly enacted laws* – As a general rule, a grace period of six months is reasonable for newly enacted laws during which only a *warning* will be given. After the grace period, the officer will use discretion.

## Issuance of a Traffic Citation:
After stopping a suspect traffic violator, the officer will:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Be alert for the unexpected;
2. Be certain observations of traffic violations are accurate;
3. Present a professional image in dress, grooming, language, bearing, & emotional stability;
4. Have all necessary equipment and forms available to conduct the stop in an efficient proper manner;
5. Decide on the probable enforcement action before making initial contact based upon the violator's driving behavior, rather than their attitude;
6. Greet the violator with an appropriate title and in a courteous manner;
7. Inform the violator what traffic law has been violated and the intended enforcement action;
8. Ask the violator for a driver's license, vehicle registration, and proof of vehicle insurance;
9. Ask the driver if they are . . . *aware of why they were stopped,* allowing the driver to discuss the violation while maintaining a positive attitude;
10. Use discretion and take action, explaining to the violator exactly what he is supposed to do in response to the action and how the action will affect him;
11. Complete the citation form to include description of the vehicle and driver, but do not consider or record *gender, race,* or *ethnicity* of the person being stopped, beyond that information required on the citation;
12. Be alert to any emotional stress exhibited by the driver, by repeating any pertinent information;
13. Return violator's driver's license, registration, insurance information, and a copy of the traffic or warning citation, if issued;
14. Resolve any stress or physical impairment that will prohibit the driver from operating an emergency vehicle on the road;
15. Recommend the driver and passengers are wearing seat belts;
16. Assist the violator in safely re-entering traffic;
15. Not follow the violator;
16. Turn in all citations after completion of a shift, maintaining a copy for future court use; &
17. Appear in court if notified, prepared to support your actions, in compliance with department policies and procedures.

## Stopping Traffic Violators:

The following steps in stopping and approaching a traffic violator are intended to provide maximum safety for the officer, the alleged violator, and to other users of the roadway. Under ideal weather conditions, officers of Campbell County Sheriff's Department will:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Position their patrol vehicle behind the violators vehicle;
2. Notify dispatch of the intended location of the traffic stop, the license number, vehicle description, and number of occupants observed in the vehicle;
3. Gradually change lanes to the right side of the road, on multi-lane roadways, to insure the safety of the violator and other drivers;
4. Stop the violator in an appropriate location, on the right side of the roadway, or off the road, so as to not impede traffic;
5. Give the responsibility of radio communication and observation of the scene to the backup officer, if one is available;
6. Instruct the violator to move to a safer location if necessary, either verbally or by public address, if stopped in an unsafe location;
7. Not permit movement of the vehicle if the driver is suspected of impairment due to drugs, alcohol, injury, or illness;
8. Position the patrol vehicle on a left oblique angle, two feet outside, and to the left, and approximately one car length behind the violator's vehicle;
9. Dismount from the patrol vehicle and watch for any suspicious movement or actions of the violator;
10. Approach the violator's car:

    a. Looking into the rear seat area, if there are only occupants in the front seat of the vehicle;
    b. At a point near the leading edge of the left front door, if there are occupants in both the front and rear seats; &

11. Require all occupants to remain in the vehicle, unless there is probable cause to remove occupants and search.

## Stops at Night or During Inclement Weather:

Night and inclement weather traffic enforcement operations are especially hazardous to officers and citizens. Distances are hard to judge, and images are not clear, and closure rates of moving vehicles are difficult to judge. Officers will take the following cautionary steps when working traffic under these conditions:

1. Keep the patrol vehicle head lights on low beam for the safety of oncoming traffic;
2. Use spotlights or forward white light to illuminate the offender vehicle;
3. Wear reflective vests, straps, or brightly colored inclement weather gear when outside of the patrol vehicle; &
4. Carry and use a handheld flashlight for supplemental illumination.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Stopping a Known or Suspected Felon:**

Special procedures will be followed in stopping the vehicle of a suspected felon to include:

1. Notifying the dispatcher immediately of location, description of the vehicle and occupants, and backup;
2. Waiting for the arrival of backup support, before initiating the stop;
3. Stopping the suspect vehicle, using all necessary emergency equipment to warn other traffic, in a location which presents minimal danger to others;
4. Having a firearm or other weapon easily accessible and ready for immediate use;
5. Dismounting the patrol vehicle quickly, but remaining behind the door for protection;
6. Commanding occupants of the vehicle, by public address system or by voice, to get out of the vehicle individually, into a safe area, and into the appropriate search position;
7. Having support officers provide cover while arresting and searching the suspect;
8. Exercising extreme caution to not get within each other's line of fire; &
9. Focusing all lights on the interior of the suspect vehicle, including spotlights, if at night.

**Revoked or Suspended Driver's License:**

A *traffic citation* may be issued when an officer has stopped a vehicle and identified the driver as driving with a *revoked* or *suspended license*. If the officer is unable to stop the individual in a timely manner, he may seek a warrant for the violator's arrest.

**Radar Unit:**

Radar units are an important tool in verifying violations of speed limits. However, several guidelines must be followed in order to effectively use the radar, including:

1. Officer training and certification in the use of the particular radar equipment in use;
2. Understanding the effective range of the radar so visual observations can support the speed meter reading;
3. Properly calibrating the radar to insure accuracy in checking speed;
4. Establishing in court:

    a. The time, place, and location of the vehicle that was checked, the identity of the operator, the speed of the vehicle, and the visual and radar speed of the vehicle;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 8

    b. That the radar unit was operated properly, and tested for accuracy prior to the stop; &

    c. That speed limit signs were posted in the zone in which a violation occurred.

5. Maintaining proper care and maintenance off the radar unit.

## DWI Enforcement Procedures:

In order to effectively apprehend a person suspected of *driving while intoxicated* or *under the influence of alcohol or drugs*, the following guidelines apply:

1. Detecting driving behavior indicative of impairment, including:

    a. Sitting through a green light;

    b. Weaving;

    c. Excessively crossing the center-line or driving on road shoulder;

    d. Driving excessively slow or fast; or

    e. Disregarding stop signs, signals, or the normal flow of traffic.

2. Use extreme caution when stopping a suspected intoxicated driver. When making contact:

    a. Be polite and business-like;

    b. Get the violator out of the vehicle and to a safe location, carefully observing all actions and statements;

    c. Obtain the violator's driver's license or other identification; &

    d. Request field sobriety test, and related test for proof of impairment of suspected drivers.

3. Arresting the violator on the basis of the test:

    a. When a suspect is injured during a traffic accident and alcohol or drug use is indicated, request the suspected violator submit to a blood test by hospital staff within two hours of the accident;

    b. At the point where the officer has *articulable probable cause* to believe a DWI or DUI offense has been committed, read the suspect their rights; &

    c. Complete forms for the type of incident and indicate the results of any tests that have been administered on the forms.

## Citizen Complaints:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Campbell County Sheriff's Department regards citizen, resident, or visitor's complaints as serious, and potentially indicative of how we perform our duties. Complaints regarding traffic enforcement operations, to include allocations of *racial profiling* will be processed in the following manner:

1. Anyone can file a complaint if they feel they have been improperly stopped or searched. Employees will not discourage, intimidate, or coerce individuals from filing complaints.
2. Persons who wish to file a complaint will be provided with a *citizen complaint form.*
3. The complainant is responsible for completing and returning the form to the department.
4. The complaint form is forwarded to *internal affairs* for investigation, and the results of the review returned to the complainant in a reasonable amount of time.
5. The report and the reviewer's conclusion will be forwarded to the Sheriff along with any suggestions regarding disciplinary action, changes in policy, training, or tactics.
6. On an annual basis, *internal affairs* will complete a statistical summary of all complaints for the year, including the findings as to whether allegations against the officer were *sustained, not sustained,* or *cleared*. This report will be made available to the public.
7. Supervisors will be briefed at least monthly by *internal affairs* regarding complaints.
8. Supervisors will respond, at random, to back up officers on vehicle stops, observe conduct and procedure compliance, and provide on-the-spot corrections and training as needed. Each Officer will be observed at least once per week in the performance of traffic stops, and a *Quality Assurance [QA] Report* submitted to the QA Officer by the supervisor conducting the review.
9. Officers found to be in serious non-compliance, or repetitive non-compliance with policy and procedures will be removed from patrol duties, pending further review and action.
1.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Field Interviews and Searches | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

The purpose of this policy is to help officers determine when field interviews and searches are warranted and to establish the proper way to conduct them while protecting the rights of citizens and the safety of the officers.

### POLICY:

The field interview and searches are an important point of contact for officers in preventing and investigating criminal activity, as well as ensuring their own safety. Even when conducted with respect for involved citizens and in strict compliance with the law, field interviews and searches can be perceived by some as police harassment or intimidation conducted in a discriminatory manner against groups or individuals. Therefore, officers must perform such tasks in a professional and courteous manner, without compromising their own safety, while attempting to protect the citizen from undue embarrassment or harassment.

In order to maintain the effectiveness and legitimacy of this practice and to protect the safety of officers who must approach suspicious individuals, law enforcement officers will conduct field interviews and searches in conformance with procedures set forth in this policy.

### DEFINITIONS:

*Reasonable Suspicion:* An officer is lead to suspect that criminal activity has been, is being, or is about to be committed given the facts and circumstances of the situation.

*Field Interview:* The brief detainment of an individual, whether on foot or in a vehicle, based on reasonable suspicion, for the purposes of determining the individual's identity and resolving the officer's suspicions concerning criminal activity.

*Pat-Down Search:* A "frisk" or external feeling of the outer garments of an individual for weapons, contraband, or concealed evidence.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Notice of this restriction is contained throughout this publication.

Page 1 of 5

*Rub Search:* Rubbing of the individual's body including the genitals, buttocks, and breasts, for weapons, contraband, or concealed evidence.

*Strip Search:* A visual inspection of an unclothed individual for weapons, contraband, or concealed evidence.

*Body Cavity Search:* A strip search that involves probing the mouth, anus, and genitals of the individual for weapons, contraband, or concealed evidence.

## PROCEDURES:

### Justification for Conducting a Field Interview:
Law enforcement officers may stop individuals for the purpose of conducting a field interview only where reasonable suspicion is present. The officer must be able to point to specific facts that, when taken together with rational inferences, reasonably justify the stop. Such facts include, but are not limited to, the following:

1. The appearance or actions of an individual suggests that he or she is part of a criminal enterprise or is engaged in a criminal act.
2. The hour of day or night is inappropriate for the suspect's presence in the area.
3. The suspect's presence in a neighborhood or location is inappropriate.
4. The suspect is carrying a suspicious object.
5. The suspect's clothing bulges in a manner that suggests he or she is carrying a weapon.
6. The suspect is located in proximate time and place to an alleged crime.
7. The officer has knowledge of the suspect's prior criminal record or involvement in criminal activity.
8. The individual flees at the sight of a police officer.

### Procedures for Initiating a Field Interview:
Based on observance of suspicious circumstances or upon information from investigation, an officer may initiate the stop of a suspect following these primary guidelines:

1. When approaching the suspect, the officer will clearly identify himself as a law enforcement officer and display departmental identification.
2. Officers will watch the suspect carefully for movement to retrieve weapons, conceal or discard contraband, or any other suspicious actions.
3. Before approaching more than one suspect, individual officers should determine whether the circumstances warrant a request for backup assistance and whether contact with the suspect can and should be delayed until assistance arrives.
4. Officers will confine their questions to those concerning the suspect's identity, place of residence, and other inquiries necessary to resolve the officer's

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or disseminated without the written permission of this agency. It is subject to this restriction is contained throughout this publication.

suspicions. However, in no instance will an officer detain a suspect longer than is reasonably necessary to resolve suspicions.

5. Officers are not required to give suspects *Miranda* warnings in order to conduct field interviews unless the person is in custody and about to be interrogated.

6. Suspects are not required to answer any questions posed during field interviews. Failure to respond to an officer's inquiries is not sufficient grounds to make an arrest, although it may provide sufficient justification for additional observation and investigation.

7. If after conducting a field interview the officer has no basis for making an arrest, the officer should record the facts of the interview and forward the documentation to the appropriate reporting authority as prescribed by departmental procedure.

## Justification for Conducting Pat-Down Searches:

A law enforcement officer has the right to perform a pat-down search of the outer garments of a suspect for weapons if (1) the suspect has been legitimately stopped with reasonable suspicion and (2) the officer has reason to believe that the suspect possesses weapons and poses a threat to the officer's or another person's safety. Not every field interview poses sufficient justification for conducting a pat-down search, but any of the following factors may constitute a search:

1. The type of crime suspected—particularly in crimes of violence where the use or threat of deadly weapons is involved.

2. Where more than one suspect must be handled by a single officer.

3. The hour of the day and the location or neighborhood where the stop takes place.

4. Prior knowledge of the suspect's use of force and/or propensity to carry deadly weapons.

5. The appearance and demeanor of the suspect.

6. Visual indications that suggest that the suspect is carrying a firearm or other deadly weapon.

7. The age and gender of the suspect. Whenever possible, pat-down searches should be performed by officers of the same sex as the suspect.

## Procedures for Performing a Pat-Down Search:

When reasonable suspicion justifies a pat-down search, the search should be performed with due caution, restraint, and sensitivity. These searches may only be performed to protect the safety of officers and others and may never be used as a pretext for shaking down individuals or groups of individuals to obtain evidence or for any other purpose. Pat-down searches should be conducted in the following manner.

1. Whenever possible, pat-down searches should be conducted by at least two officers, one who performs the search while the other provides protective cover.

2. Pat-down searches will be performed with:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or disseminated without the written permission of this agency. Persons subject to this restriction is contained throughout this publication.

    a. The suspect's hands high on the wall or on the patrol vehicle, with extended fingers.
    b. The feet positioned in a wide stance, approximately three [3] feet apart, to inhibit escape.
    c. The back arched and in a straight line with the legs.
    d. The officer's left leg wedged behind the suspect to subdue any attempted escape.
    e. One hand placed in the middle of the back.

3. In a pat-down search, officers are permitted only to feel the outer clothing of the suspect. Officers may not place their hands in pockets unless they feel an object that could reasonably be a weapon.
4. If the suspect is carrying an object such as a handbag, suitcase, briefcase, sack, or other item that may conceal a weapon, the officer should not open the item but instead place it out of the suspect's reach.
5. If the external feeling of the suspect's clothing fails to disclose evidence of a weapon, no further search may be made. If evidence of a weapon is present, an officer may retrieve that item only. If the item is a weapon, the possession of which is a crime, the officer may make an arrest of the suspect and complete a full-custody search of the suspect.

**Rub Searches:**
If reasonably necessary, a more intrusive frisk may be performed on the individual in which the body is rubbed systematically through the clothing in search of weapons, contraband, or concealed evidence. If available, rub searches will be performed by an officer of the same sex as the individual being searched.

**Strip Searches:**
Field strip searches of detainees shall be conducted only in the rarest of circumstances when the life of the officer or others may be at risk, and only with the explicit approval of a supervisory officer. These searches will be conducted:

1. By specially trained and designated personnel;
2. In conformance with approved hygienic procedures and professional practices;
3. In a room specifically authorized for this purpose;
4. By the least number of personnel necessary to maintain privacy and only by those of the same sex as the suspect.

**Body Cavity Searches:**
The search of an individual's blood stream, body cavities, and subcutaneous tissues are only to be conducted by a physician or a licensed nurse. Any such search, conducted incidental to arrest, may be made without a search warrant only:

1. If there is a strong probability that items will be seized which relate to the offense for which the individual was arrested;

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or disclosed, without the written permission of this agency. Data subject to this restriction is confidential throughout this publication.

Page 4 of 5

2. If delay of a search warrant would probably result in the disappearance or destruction of the objects of the search; and

3. If it appears that the search is reasonable under the circumstances of the case, including the seriousness of the offense and the nature of the invasion of the individual's person.

**Procedures for Performing a Body Cavity Search:**

Should any search lead an officer to believe that the suspect is concealing a weapon, evidence, or contraband within a body cavity, the following procedures will be followed:

1. The officer will consult with his immediate supervisor to determine whether probable cause exists to seek a search warrant for a body cavity search. The decision to seek a search warrant is reasonable only where the suspected offense is of a serious nature and/or poses a threat to the safety of the officer or others, and/or the security of the department's detention operations. If probable cause exists for a body cavity search, an affidavit for search warrant will be prepared that clearly defines the nature of the alleged offense and the basis for the officer's probable cause.

2. On the basis of a search warrant, a body cavity search will be performed only by an authorized physician or licensed nurse.

3. For safety and security reasons, the search will be conducted in the room designated for this purpose at the department's detention facility.

4. Body cavity searches will be performed with due recognition of privacy and hygienic concerns.

5. The authorized individual conducting the search will file a report with the requesting law enforcement agency. The witnessing law enforcement officer will cosign that report.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| **Subject:** Canine Operations | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

## POLICY:

It is the policy of this department to utilize canine support in the conduct of law enforcement operations in situation where the dog's superior sense of smell, hearing, and physical capabilities, can efficiently aid in the accomplishment of tactical objectives. However, utilization of canines requires adherence to procedures that properly control their use-of-force potential and that channel their specialized capabilities into acceptable enforcement activities.

## PROCEDURES:

### Canine Team Relationship to General Law Enforcement Functions:

The canine unit or canine team is composed of an officer-handler and a trained canine. It is the objective of this team, when requested, to *assist and support* other divisions within the department.

Arrests made or evidence located as the result of canine assistance is documented as having been accomplished by the requesting officer. In those instances when a canine team responds as a back up unit, the handler will be responsible for completing a supplemental report, documenting actions taken by the canine team.

### Administration and Management:

The officer-handler is responsible for maintaining and assuring the accuracy and completeness of *procurement, health, operational, incident reports,* and *training records relating to the canine team.* Team records will be reviewed at least semi-annually by the Sheriff or his designee. As a part of this semi-annual review, the need for additional training for both officer-handler and canine will be considered and scheduled as needed.

The canine will be obtained from a kennel or other supplier who has a verifiable record of satisfactory performance in providing dogs and training to other law enforcement

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

agencies. Any canine that is approved for purchase by the department will, prior to acceptance, have a certificate or letter of good health issued by a licensed veterinarian authorized to conduct examinations and certify the physical and emotional condition of the dog.

Each canine owned or controlled by the department will receive an annual medical examination by a qualified veterinarian to determine the canine's suitability for retention by the department. A canine may have a fitness for duty examination at anytime as determined necessary.

The type, quantity of food, and recommended feeding schedule will be provided by a licensed veterinarian. Any housing or sanitary requirements for the canine when off duty will be in compliance with these recommendations. At any time the canine is kept in a kennel a supervisor or veterinarian will randomly and routinely inspect conditions. The kennel will be maintained in a manner, which is in compliance with established standards for temperature, food, watering, and sanitation.

No dog that has been trained as a "guard dog" (a dog that will attack on detection of intrusion or will attack a human being without command) is acceptable for utilization by Campbell County Sheriff's Department. Any dog owned or controlled by the department that exhibits any tendency of loss of control or when unprovoked, attacks or attempts to bite another person, or creates a public or individual liability, will be removed from law enforcement service and disposed of in a manner acceptable to the county.

## Requirements for a Department canine Officer:

In addition to other employment standards of Campbell County Sheriff's Department, officer-handlers will meet as a minimum the following conditions:

1. Minimum of two years of law enforcement experience;
2. Carry the assigned canine on his shoulders for fifty [50] yards at a normal walking pace;
3. Run one-hundred [100] yards with the assigned canine on a forty [40] foot lead;
4. Pick-up the assigned canine using arms and hands and hold the canine at waist height for ten [10] seconds;
5. Have an enthusiastic and positive attitude, and a high energy level;
6. Demonstrate proper motivation for the canine both verbally and physically;
7. Be self-motivated and able to work with minimum supervision;
8. Be willing to devote personal time to maintenance training, care, and socialization of the canine;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

9. Be willing to report for duty after normal working hours when a canine team is needed;
10. Have family support in having a working police dog in the home to care for, as a companion, and as a member of the family;
11. Demonstrate a willingness to assist, support, and cooperate with other departments and personnel;
12. Make a commitment to remain the officer-handler of the canine for the remainder of the dogs working life;
13. Have a strong desire to deploy the canine at every opportunity available regardless of inconvenience, weather conditions, time of day, difficult circumstances or personal problems;
14. Demonstrate discretion in highlighting the canine when credit is given for accomplishments;
15. Place the canine second to *officer survival* in life-threatening situations;
16. Use only the degree of the dog's protection abilities necessary to assure officer and suspect safety during an apprehension; &
17. Be able to put the canine's well being and physical comfort above his own.

## Basic Rules for Canine Officers:

At all times, proper care will be taken of the canine. As a part of their basic responsibilities officer-handlers will:

1. Clean the canine living areas daily;
2. Never take the dog into private clubs, bars, or other public places except as a part of required duties;
3. Groom the canine each day prior to reporting for duty;
4. Never perform demonstrations of the canine's skills and abilities, other than as directed by a supervisor;
5. Not permit the canine to be petted or fed by anyone while on duty;
6. Never discipline the canine by striking, kicking, or other physical abuse;
7. Provide care for any illness or injury to the dog, and seek veterinarian assistance as needed;
8. Never permit an unsupervised dog to run at large within the department, at home, or in a public area;
9. Examine and replace as needed all collars, choke chains, and other equipment daily to assure operational readiness;
10. Maintain uniforms and patrol vehicle interiors clean and free of excessive hair and odors;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

11. Do not utilize agitation or aggressive response training except as a part of an authorized training session;
12. Make frequent rest and exercise stops in an effort to prevent the dog from urinating or defecating inside or around the outside of a property when responding to calls for service;
13. Never leave the canine unattended in the patrol vehicle; and
14. Never smoke inside the unit that transports the canine, whether the dog is in or out of the vehicle.

## Rules for Department Personnel:

In the commission of police work, other Campbell County Sheriff's Department personnel will:

1. Pet or show affection to a canine only in the presence and with the permission of its officer-handler;
2. Not hug a police work dog, or lean closely to the dog's head when petting the dog;
3. Never tease or act aggressive toward a canine;
4. Comply with the directions of the officer-handler when the canine team is working a specific problem and it is necessary for the handler to direct officers in a canine related tactical situation; and
5. Never give commands to a canine except in emergency circumstances, or with prior approval of an assigned dog handler.

## Operational Procedures:

Depending on the circumstances, any act where a canine team is deployed may be considered *use of force or deadly force*. Under no circumstances will a canine handler command the dog to use more force than is necessary to enforce the law, or to protect himself, anyone else, or the dog from loss of life or the threat of serious injury. Refer to the department *Use of Force Policy*.

## Request for Canine Services:

When on duty any certified law enforcement officer may request the assistance of a canine team. The on duty supervisor will determine approval or disapproval of the request. Likewise, when the canine team is *off duty and on call*, any officer may request their services. Approval or disapproval of the request will be made by the Sheriff or the highest-ranking officer on duty at the time of the request.

## Certification for Police Canine Teams:

Before a canine team is placed on *operational status* certain requirements must be met

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

in order to insure that the team meets a high level of service readiness. The certification process is conducted by a law enforcement dog trainer with at least three [3] years of experience and having completed a forty-hour course dog training and evaluation. This certification process should be performed at least annually during the service life of the canine team.

Canine teams will train at least sixteen (16) hours per month in addition to the annual re-certification testing and evaluation. To remain proficient the canine will be able to:

1. Respond to hand and voice commands to include: *stay, sit, down, stop, and out [stop attack or pursuit], bark, and stop*;
2. Overcome physical obstacles that may occur on the job;
3. Search the inside of a building and detect the presence of any person or persons hiding inside;
4. Track a scent, in reasonable environments, to at least 400 yards that is 20 to 60 minutes old; &
5. Protect its handler by a demonstration of aggression; and
6. Stop a fleeing suspect by biting and releasing its hold of the suspect on a spoken command.

**Procedure for Building Searches, and Tracking Missing Persons by Canine Units:**
When investigating a burglary or hiding violent suspect, the officer at the scene may request canine team support. Officers will ensure that no one touches, picks up, or moves any suspect materials, which may be used by the canine team as a scent trace.

When the canine team arrives, the officer in charge will brief the team on the situation, paying particular attention to the location of exits, and potential hiding areas. If the supervisor is not on the scene, the officer-handler will decide whether or not the canine will be employed. Officers on the outside of a building will not enter the scene of operation while the canine team is working unless specifically requested by the handler. Officers will secure all possible avenues of escape and eliminate as much noise as possible in order not to distract the canine. If the canine team apprehends the suspect, the handler will request assistance from other officers if needed. All apprehended suspects will be turned over to the first responding officer for prosecution unless otherwise directed by the on-site supervisor.

**Narcotics or Controlled Substance Searches by Canine Units:**
Canine teams trained in narcotics and controlled substances searches will be utilized to the greatest extend possible when conducting searches of vehicles and buildings. All

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

outside areas and buildings that are to be searched for drugs should be cleared of all persons and animals prior to the arrival of the canine team. Efforts will be made to leave the scene exactly as the perpetrators left it. Other officers should not attempt to do a physical or visual search prior to the arrival of the canine team. Controlled substances that are in plain view, or substances that may be harmful to the canine will be shown to the canine officer upon arrival. When the canine team arrives, the on site supervisor will brief the canine team on the situation, identifying the location of exits, and concealed areas. The on-site supervisor, and in his absence the officer-handler, will make the final decision on the use of the dog.

### Dog Bites:
In the unlikely event a person should be bitten by the canine, the officer-handler will complete a detailed incident report. In addition to other data normally contained in a *use of force* report, this document will include:

1. Listing of all officers at the scene who observed the action;
2. Listing of all non-officers that observed the incident;
3. Number of prior incidents during last twelve [12] months when this canine was tactically employed;
4. Number of incidents during the last twelve [12] months where this dog did not bit someone during a tactical deployment; &
5. Number of incidents during the last twelve [12] months when the dog did bite someone during a tactical deployment;
6. Commands given to the canine and the dog's response to those commands; and
7. Any other bite incidents during the last twelve months.

A copy of this report will be submitted to the shift supervisor for approval, which will then be forwarded to the Sheriff.

### Injury to Canine:
Should a canine be injured as a result of job performance on while off-duty, the officer-handler will take the canine to a departmental approved veterinarian for examination and a determination of fitness for future duty. The officer-handler is responsible for the health and safety of the canine, whether on or off duty.

### Injury to Handler:
In the unlikely event that the officer-handler is seriously injured while working with his canine partner, other officer on the scene will:

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Never approach the canine that is protecting the officer-handler or attempt to assist the officer unless it is apparent that the failure to respond to the officer would be detrimental to the health or safety of the officer-handler;
2. Request medical assistance for the injured officer immediately;
3. Make contact with another officer-handler or animal control officer to remove the dog or control its actions;
4. Contact the department veterinarian and attempt to tranquilize the dog, if all other efforts to respond to the emergency needs of the officer fail;
5. If other efforts are unsuccessful, and the officer is in imminent danger of loosing his life or compounding an existing injury, the canine may be neutralized. If shot, one correctly placed round will be used in order to reduce the possibility of the canine being made to suffer for doing what he is trained to do . . . protecting his handler. Although such a procedure is seemingly heartless, the officer must remember that a canine can be replaced but a canine officer cannot.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| Subject: Arrest Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Campbell County Sheriff's Department uses only legal justification and established procedures to initiate and affect an arrest. As a part of the arrest process, officers will provide all suspects *legal warning and protection* as required by the United States Constitution and State law.

### PROCEDURE:

### Officer Responsibilities During an Arrest:
When making an arrest, officers will:

1. Use caution, planning, and established techniques to help reduce dangers to officers, bystanders, and suspects;
2. Only arrest when they have an *arrest warrant, reasonable belief there is an outstanding arrest warrant*, or *probable cause to believe a crime has been committed*;
3. Verbally advise the suspect that they are *under arrest, so a reasonable suspect will know they are* under arrest;
4. Take some physical action to prevent the suspect from leaving the controlled presence of the officer; &
5. Advise suspect of their civil rights in compliance with the United States Constitution and State law.

After each of these steps has been completed the suspect is *under arrest*. Fortunately most citizens who are arrested will comply with the arrest procedure without incident. However, occasionally a citizen will become argumentative or violent in their refusal to submit to a lawful arrest.

### Arrest Procedures for Non-Compliant Individuals:
During instances where a suspect becomes argumentative, violent, or resistant to a lawful arrest the following guidelines will be followed:

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Only that force necessary to efficiently and safely make the arrest will be used [See: Use of Force Policy & Use of Force Ladder];
2. When a suspect is *only argumentative* and *passive-resistant* with an officers orders, they will be led to more neutral location [generally a police vehicle], by the officer(s) holding the individuals arm as a method of guidance [minimum force necessary]. *Verbal assault* by itself is not justification to apply additional force.
3. If a suspect becomes *active-resistant* such as *violent, fighting, struggling,* or *attempting to flee*, at any time during an arrest, officers may use whatever non-deadly force is reasonably necessary to complete the arrest.
4. If a suspect produces a deadly weapon at any time during an arrest, officers will be justified in using deadly force to protect themselves or others from what is reasonably perceived by the officer to be an immediate threat to human life; and
5. Officers will exercise discretion and use caution whenever reasonably possible. In those instances where physical force appears imminent, officers will call for back up assistance.

## Non-Warrant Arrest Procedures:

Officers may make non-warrant or warrant-less arrests when:

1. A felony or misdemeanor offense has been committed in their presence or view;
2. Officer reasonably believes suspect has committed a felony offense; or
3. Officer has *probable cause* to believe the suspect has committed a criminal offense.

## Arrests Outside Jurisdiction of This Agency:

An officer operating outside the jurisdiction of this department may make non-warrant arrests for felony or misdemeanor offense when the officer:

1. Observes a felony, *or life threatening* offense being committed; and
2. After the arrest, immediately notifies the law enforcement agency where the arrest was made. The notified agency will take custody of the suspect.
3. Completes all reports or documents required by this department, and the agency having primary jurisdiction.

## Officer Actions Incidental to Arrest:

When an officer arrests a suspect the officer will complete the arrest action by completing the following applicable tasks:

1. Frisk the suspect for any potential weapons, evidence, or extraneous that could potentially aid in escape;
2. Provide or request any medical first aid;
3. Secure, bag, and tag and actual or potential evidence;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 144 of 340    PageID #: 609

4. Make arrangements for the security of the suspect's motor vehicle, if any;
5. Transport suspect in an authorized emergency vehicle to the hospital, jail, investigative office, or other secure facility; and
6. Complete all required report incidental to the arrest.

## Officer Care & Responsibility:

As a note of caution, officers are reminded that the care, custody, control, and safety of a suspect is the sole responsibility of the arresting officer. This responsibility remains in effect until the suspect is turned over to an appropriate higher authority. Arresting officers are required to protect suspects from other suspects, victims, fellow officers, and self-inflicted injuries. In some instances this may not be an easy task and will require assistance from other officers.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 145 of 340    PageID #: 610

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Community Relations | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to involve all department personnel in a county wide community relations effort. Each employee will establish an attitude that the law enforcement personnel are an integral part of the community and that citizen participation and interaction with law enforcement personnel are necessary. This agency, through established programs, will identify law enforcement policies and procedures to its citizens and the media for the enrichment of the entire community. This department is committed to correcting actions, practices, and attitudes, which may contribute to community tensions and grievances. It is also the policy of this department that community relations are the shared responsibility of each and every member of the department.

### PROCEDURES:

### Community Relations Objectives:

1. Create and maintain liaison with community groups and organizations including:
   a. Exchanging information;
   b. Identifying law enforcement service needs of the community;
   c. Promoting law enforcement and citizen contacts;
   d. Acquainting each other with mutual problems and encouraging action aimed at solving these problems.

2. Develop community relation's policies for Campbell County Sheriff's Department;
3. Publicize department objectives, problems, and successes;
4. Obtain input from community groups to ensure that department policies reflect the needs of the community;
5. Identify sources of conflict between law enforcement and the community and encourage efforts to resolve them;

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 1 of 2

6. Establish neighborhood watch groups where such groups do not now exist;
7. Identify training needs relating to community relations through input from citizens, groups, supervisors, and complaint reports;
8. Provide the Sheriff any information regarding concerns of the community, potential law enforcement/citizen problems, and recommended actions;
9. Evaluate all department community relations programs on a semi-annual basis and to participate in an annual survey of citizens' attitudes and opinions with respect to law enforcement service; and
10. Conduct an annual survey of citizen attitudes and opinions with respect to:
    a. Overall department performance;
    b. Overall competence of department employees;
    c. Officer attitude and behavior toward citizens;
    d. Concern over safety and security in the community; and
    e. Recommendations and suggestions for improvements.

## Public Information Programs:

These programs seek to publicize department objectives, problems and successes through the media, brochures, guest speakers, news releases, press conferences and newsletters.

## Community Relations Programs:

The focus of these programs will be with meeting civic groups, minority groups, neighborhood councils, crime watch groups and individuals to exchange information and convey information back to the department. Present programs such as DARE, GREAT, McGRUFF, or other similar programs of interest to all area schools.

## Crime Awareness Programs:

These programs will provide citizen groups information on making their families, homes, and business more secure and work to establish crime watch neighborhoods where none exist to include, but not limited to:

1. Neighborhood Crime Watch;
2. Burglary Prevention;
3. Rape Prevention;
4. Fraud Prevention;
5. Emergency Reporting Procedure;
6. Home Security Survey;
7. Operation ID;
8. Robbery Prevention; and
9. Commercial Burglary Prevention.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 2



## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: 911 Communications Center | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:

It will be the policy of Campbell County Sheriff's Department to utilize a standard operating procedure in response to all 911 emergency telephone calls received. All 911 emergency telephone calls received will be answered promptly and on a priority basis.

### PURPOSE:

To establish guidelines for all departmental employees to follow in receiving, managing, and dispatching all 911 emergency telephone calls.

### DEFINITIONS:

*Call Taker:* The employee(s), either civilian telecommunications personnel or police officer(s), who are qualified, by virtue of training or experience, to answer the 911 emergency telephone calls and further manage the calls based on circumstances surrounding each emergency situation.

*Computer Aided Dispatch (CAD):* All enhanced 911 emergency telephone calls received are aided by computer. The computer automatically displays an address from where the call originated and the telephone number from which the call is being made onto the computer monitor. The automatic display of the address is referred to as the "ALI" (automatic location indicator). The automatic display of the telephone number is referred to as the "ANI" (automatic number indicator).

### PROCEDURES:

### Receiving a 911 Call:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 5

2. Attempt to determine if any circumstances have changed that make executing the search warrant at that time undesirable;
3. Include at least one uniformed officer in the execution of the search warrant;
4. Ensure that all non-uniformed officers may be clearly identified as law enforcement officers with a distinctive armband, jacket or some other indicator of office; and
5. Equip all search team personnel with body armor and a safety holster.

## Entry Procedures – Execution of a Search Warrant:

When executing a search warrant, all employees of Campbell County Sheriff's Department should maintain the following guidelines:

1. Entry into a property for the purpose of serving a search warrant may occur at any time of the day or night if the affidavit provides good cause and permission is granted in the warrant.
2. The approach to the scene will be executed without sirens.
3. If a pre-execution surveillance team is on the scene, radio contact will be made to ensure that it is an appropriate time to serve the search warrant.
4. The supervisory officer will be responsible for ensuring that the:

   a. Search warrant is valid;
   b. Property about to be searched is the property listed on the warrant; and
   c. Entire search warrant execution process is documented using photographs and videotape, from beginning to end, and continued until the search team leaves the premises.

5. The supervisory officer will notify persons inside the search site, in a voice loud enough to be heard inside the premises, that he/she is a police officer and has a warrant to search the premises, and that he/she demands entry to the premises at once.
6. No-knock entries will be used only as a last resort and executed under the personal supervision of the supervisory officer. Such a method of entry will be noted in the search warrant prior to entry if officers believe adherence to the knock-and-announce rule would:

   a. Endanger their safety or the safety of others;
   b. Enable wanted persons to escape; or
   c. Likely result in the destruction of evidence before entry could be made.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 5

7. Search team personnel will be positioned so that:

   a. All exits from the property are covered;
   b. Uniformed officers are the most visible, and able to enter the property first; and
   c. Non-uniformed officers may enter last.

8. Once inside the property, the supervisory officer will ensure that a member of the search team conducts a security sweep of the search site.
9. After the search site has been secured, search personnel will develop a prioritized strategy that details the likely whereabouts of the items to be seized and an order of operation for conducting the search.
2. One [1] officer will be designated to collect, preserve and document all items seized from the property.
3. Any property that is damaged during an entry:

   a. Will be secured or a guard posted until the property is secured, if the property is left vacant; and
   b. Be detailed in special report prepared on the actions that caused the damage and the nature and extent of the damage.

## Record of the Search Warrant:

Upon return of a search warrant, officers will record and provide a receipt of any property taken during a search, and ensure return of the warrant and delivery of the property inventory to the appropriate judicial authority within specified time limits.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Traffic Enforcement | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to aggressively enforce traffic laws in an effort to reduce the incidence of traffic violations and ultimately reduce the occurrence of traffic accidents.

### PROCEDURES:

### Types of Enforcement Actions:

Officers of Campbell County Sheriff's Department are responsible for exercising one of three courses of action regarding traffic violations;

1. *Warnings* - A warning may be issued, at the officer's discretion, when:

   a. A minor traffic violation has been committed; or
   b. A violation is committed due to ignorance of a local ordinance which may be a unique violation or for which the driver may not be aware.

2. *Traffic Citations* - A traffic citation should be issued for any moving or non-moving violation, which hinders the safe and effective flow of vehicular and pedestrian traffic.

3. *Arrest* - Officers will make a physical arrest when:

   a. A Driving Under the Influence of Alcohol or other Intoxicants has occurred;
   b. Any felony has been committed, involving a vehicle;
   c. The vehicle operator refuses to sign the promise to appear on the traffic summons; or
   d. The officer has reason to believe that the person will not comply with the

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 6

summons.

## Special Categories of Violators:

Officers may consider issuing a warning for non-residents of the county, juveniles, or any law enforcement official who has committed a minor, non-hazardous traffic violation. However, the officer should use a stricter means of enforcement, at his discretion, for any flagrant disregard of the traffic laws of Campbell County Sheriff's Department.

## Officer Responsibility - Traffic Citations:

When issuing a traffic citation, it will be the responsibility of the officer to notify the motorist:

1. The court appearance schedule;
2. If court appearance is mandatory;
3. If he may prepay the fine prior to court on entering a guilty plea; and
4. Any other necessary information.

## Specific Traffic Violations:

All officers of Campbell County Sheriff's Department should maintain the following guidelines when deciding whether or not a traffic citation is warranted for each of these specific traffic violations:

1. *Speeding violations* – A citation may be given to anyone who violates the posted speed limit. The decision to cite a violator may depend on the location of the violation, the previous accident history of location, and the current directed patrol emphasis.
2. *Equipment violations* – A warning will normally be given unless the violation is repetitive or flagrant.
3. *Multiple violations* – For multiple violations, a traffic citation can be issued for each violation, however, the more flagrant violation is generally cited and a warning issued for the remainder.
4. *Newly enacted laws and/or regulations* - A grace period is generally established for newly enacted laws during which only a warning will be given. After the grace period, the officer will use discretion.

## Traffic Law Enforcement Practices:

In the enforcement of traffic laws, officers of Campbell County Sheriff's Department will patrol their assigned area, and any areas that may require a greater concentration of

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 6

**Campbell County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Police Vehicle Maintenance | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

## POLICY:

It will be the policy of this agency that all departmental vehicles will be properly maintained, cleaned, and serviced regularly.

## PURPOSE:

To provide guidelines for all employees to follow, concerning proper maintenance and care of departmental vehicles.

## PROCEDURES:

1. The shift supervisor will ensure all departmental vehicles (units) used on the shift are properly maintained. Any problems associated with any of the vehicles will be documented on a Vehicle Check Form and forwarded to the Chief Deputy.
2. A Vehicle Check Form will be distributed by the shift supervisor to all subordinates operating a departmental vehicle during the tour of duty.
3. Completed Vehicle Check Forms will be turned in by the employee operating the vehicle at the beginning of the shift or as soon as possible thereafter.
4. Vehicle Check Forms will document information pertaining to the condition of the vehicle to include:

    a. Mileage;
    b. Condition of Tires;
    c. Condition of exterior, (dirty, damaged, etc.);
    d. Condition of interior, (dirty, damaged, etc.);
    e. Gas;
    f. Oil;
    g. Battery cables;
    h. Battery water;
    i. Exterior lights, (headlights, taillights, blinkers, parking lights);

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    j. Horn;
    k. Emergency equipment, (emergency lights, siren, overhead speaker);
    l. Spotlights;
    m. Spare tire;
    n. Communications equipment, (police radio);
    o. Fire extinguisher;
    p. Prisoner passenger area; and
    q. Any property, (contraband or other), located in the vehicle, where the item(s) was located and a brief summary of property disposition---placed in evidence---secured by senior officer, etc.

5. A comments section on the form is for the purpose of explaining any problems associated with the vehicle such as mechanical or other.
6. Following inspection, any defects, including body or interior damage, will be properly documented and reported immediately to the supervisor prior to beginning the tour of duty.
7. Each officer will search the vehicle they are operating, not only prior to the start of a shift, but also after any person is placed in or transported in the vehicle.
8. The shift supervisor will be responsible for assuring that all departmental vehicles are washed and cleaned regularly. This shouldn't be necessary every day, but the vehicles should always be neat in appearance.
9. The shift supervisor will be responsible for assuring that all preventive maintenance, oil change, brakes repaired, etc. is accomplished on any departmental vehicle that is in need of such service.
10. The Chief Deputy will be made aware of any problems with departmental vehicles by reviewing all of the vehicle check sheet forms forwarded to his or her attention.
11. The supervisor on each shift will be responsible for making sure any departmental vehicle is decontaminated, (properly cleaned with necessary bio-hazard chemicals), after any incident in which the vehicle becomes contaminated. NOTE: A vehicle will become contaminated at any time that an individual, prisoner or non-prisoner, releases bodily fluid, (blood, urine, vomit, feces, etc.), into the vehicles interior.
12. The Sheriff will assure that OSHA, (Occupational Safety and Health Administration), guidelines are followed when a contaminated vehicle is cleaned.
13. The following procedures will be followed when cleaning a contaminated vehicle:

    a. Proper protective equipment will be provided to the person(s) involved in the cleaning task. Equipment will always include a pair of disposable

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

gloves and depending on the circumstances will sometimes require the use of a gown, a mask, and protective eyewear.

b. An anti bacterial soap will be provided for hand washing purposes and any individual involved in the cleaning effort will be instructed to use the soap when the cleaning is finished.

c. All disposable material, as a result of the cleaning effort, will be disposed of in accordance with OSHA regulations which specify the use of containers labeled a "biohazard". The purpose of the container is to warn employees or any other person(s) of the potential danger associated with the waste, and that the container should be handled with care.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 155 of 340    PageID #: 620

## Campbell County Sheriff's Department
## Law Enforcement
## Polices and Procedures

| **Subject:** Line of Duty Deaths | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** **Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to immediately respond to an employee's death by conducting a thorough investigation into the circumstances, and by providing comprehensive support to the family.

### PROCEDURES:

### Responsibilities – Scene of the Death:

In the event of a felonious or accidental line of duty death of a Campbell County Sheriff's Department employee:

1. The arriving officer to the scene will call for the nearest available back-up officer. The back-up officer will be briefed on the circumstances of the death and immediately notify the family. However, the back-up officer will remain at the scene if other officers are in imminent danger.
2. The first officer on the scene will notify dispatcher by radio that an employee death has occurred, and whether the death is accidental or felonious. The deceased employees name will not be used over the transmission.
3. The dispatcher will immediately notify the Sheriff. Again, if the radio is used for means of communication, the deceased employees name will not be used.
4. The first officer on the scene will complete a detailed written report, and remain at the scene until the investigation is complete or relieved by the Sheriff.

### Family Notification:

The back-up officer will contact the dispatcher and request the assistance of another officer in aiding the notification. The notification officer team should consist of a male and female officer, if possible. However, the back-up officer will not wait for another officer if there is an opportunity to get the family to the hospital prior to the demise of the employee. In such a case, the family should be transported to the hospital by police vehicle.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 156 of 340    PageID #: 621

## Assisting the Family at the Hospital:

The notification officer or another member of Campbell County Sheriff's Department will be present the entire time the family is at the hospital and will arrange whatever assistance the family needs. If the employee dies at the hospital, arrangements will be made for transportation of the family back to their residence. All medical bills of services rendered to the deceased employee will be sent to this agency, and not the surviving family.

## Family Support:

The following proactive steps will be taken by Campbell County Sheriff's Department to ensure that the family of the deceased receives ample support:

1. After a line of duty death of an employee of Campbell County Sheriff's Department, a departmental officer will work as a liaison between the department and the family of the deceased. The facilitating duties of the liaison officer will include:

   a. Insuring the needs of the family come before the wishes of the department by remaining constantly available to the family;
   b. Meeting with the family to discuss the possibility of a law enforcement funeral;
   c. Answering any questions of the family regarding the circumstances behind the death and the continuing investigation;
   d. Overseeing arrangements for travel and lodging for out-of-town family members;
   e. Ensuring that the surviving parents are afforded recognition and proper placement during the funeral and funeral procession;
   f. Ensuring a family support group is assigned the responsibility of preparing the home for the influx of visitors;
   g. Ensuring baby sitting needs for all family members have been met;
   h. Coordinating pallbearers, ushers, and 21-gun salute manpower requirements with other law enforcement agencies if the family desires a law enforcement funeral;
   i. Making available departmental patrol vehicles to the family if they desire transportation to and from the funeral home;
   j. Providing information and assistance to obtain benefits to the surviving family;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. The same person appointed as liaison officer for family support will be appointed as a benefits coordinator following the funeral. His primary responsibilities will include:

    a. Gathering information and filing paperwork regarding all death benefits available to the family.
    b. Visiting the family a few days following the funeral to notify them of benefits, who to contact regarding benefits, and when they can expect payment of the benefits.

## Death Benefits:

Those benefits, which are typically endowed to family of the deceased, may include the following:

1. Workers compensation;
2. Social security;
3. Federal public safety officer death benefit;
4. State public safety officer death benefit;
5. National Chief of Police's Association death benefit;
6. Personal life insurance;
7. Educational benefits for dependent children;
8. Veterans Administration death benefit; and
9. Continuation of health benefits until six [6] months after the death.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Death or Serious Injury Notification | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

### POLICY:

All officers will follow proper procedure for notifying next of kin and family of the death or serious injury of a family member in a manner consistent with professionally accepted crisis intervention techniques.

### PROCEDURES:

### Preparation – Notification:
The following guidelines will be maintained in preparing to confront family members of the death or serious injury of a family member:

1. *Verify and confirm the identity of the deceased and their next of kin.*
2. All notifications regarding the death or serious injury of an individual will be made in person, with the exception of a serious injury notification where delay might prevent the family from arriving at the hospital before the injured person's death.
3. Officers will be prepared to spend as much time as necessary with survivors to provide assistance.
4. Prior to contacting next of kin, notification officers will gather and become familiar with information concerning the deceased or seriously injured person, to include:

    a. Full details of the event;
    b. Name, age, race and home address of the victim;
    c. Location of the body, if deceased; and
    d. Any other pertinent information regarding the event.

5. The order of priority for notifying the family of a death or serious bodily injury will be the spouse, followed by parents, brothers or sisters, then any children. Next of kin will be notified if immediate family members are unavailable.
6. When another agency must be contacted to notify a family of a death or serious bodily injury, officers will request:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 4

       a. Notification be made in person; and

       b. Immediate verification when notification has been accomplished.

7. Officers should gather information, to aid in communication, on whether the family members or next of kin to be notified are:

       a. Elderly;

       b. Disabled or have medical problems;

       c. Visually or hearing impaired; or

       d. Not fluent in English.

8. Officers will not use the name of the deceased or seriously injured person over the radio or release the name to news media until assured that next of kin notification has been made.

9. A male and female officer should be assigned to a death or serious injury notification, if available.

10. Notification officers should request the assistance of a local minister, preferably the survivor's minister, where feasible.

11. Personal effects of the deceased will not be delivered to survivors at the time of death notification.

## Making Notification:

Once preparation for notification has been made, the notification officers will maintain the following guidelines regarding the actual notification:

1. Upon arrival at the residence or place of business, the notification officers will:

       a. Check the accuracy of the location;

       b. Request to speak to the next of kin;

       c. Identify themselves by name and agency;

       d. Verify the relationship of the next of kin to the deceased or seriously injured person; and

       e. Ask permission to enter the residence or (in the case of a business or other location) move to a place of privacy.

2. Every reasonable effort will be made to make the death or serious injury notification in the privacy of the next of kin's home or in another location away from public scrutiny.

3. Prior to making notification, officers should, where possible, bring members of

---

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 4

the family together.

4. In notifying family or next of kin of a death, notification officers will address the next of kin in a straight-forward manner by:

    a. Avoiding graphic aspects of the incident;
    b. Avoiding the use of law enforcement jargon;
    c. Referring to the deceased by first name.

5. Be prepared for unexpected responses from survivors to include hysteria and possible verbal or physical attack.

6. Provide survivors with sufficient time to regain composure before proceeding. Avoid attempts in the interim to provide comfort by using such phrases as "I know how you feel" or "I know how hard this is for you."

7. Officers should provide the survivors with pertinent information including:

    a. Disposition of the body:
    b. Location of personal effects;
    c. Identification requirements/procedures; and
    d. Notification officers' names, agency and telephone numbers.

**Providing Assistance and Referral:**

Notification officers will not leave upon completion of the notification until the following guidelines have been achieved:

1. In deciding whether the family or next of kin has received adequate support, the notification officers will consider:

    a. The emotional reaction and the physical condition of the next of kin;
    b. The availability of other adults in the home;
    c. Whether infants or small children are receiving the proper attention;
    d. The condition of the home environment (i.e.- evidence of excessive alcohol use or drug use, lack of means of financial support, shortage of food, problem with shelter, etc.); and
    e. The availability of a support system (i.e.- including friends, family, close neighbors, access to clergy, means of transportation, etc.).

2. For those in need of shelter, transportation, food, or other support, provide numbers for local assistance agencies.

3. Only if requested by the survivors, officers may provide additional information regarding the incident in more detail.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 161 of 340    PageID #:
626

4. Remain alert to the possible need for medical assistance. When officers are aware of serious medical conditions in advance of notification, they should place a local medical response unit on alert.
5. Before leaving, the notification officers should be reasonably assured that survivors can take care of themselves and those they are responsible for.
6. Reasonable efforts will be made for lone survivors to obtain support from family, friends, co-workers, neighbors, family clergy or counselors.
7. Notification officers will conduct a follow-up within 24 hours with any survivor when there is a concern for the survivor's well-being.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 162 of 340    PageID #:
627

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Transporting Arrested Persons | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It will be the policy of this law enforcement agency to take the precautions necessary while transporting detainees to protect the lives and promote the safety of the officers, the public, and the person in custody.

### PURPOSE:

To provide guidelines for all officers to follow when a person in police custody is transported by an employee of this department.

### PROCEDURES:

### Transport:

1. Prior to transport, all detainees will be *thoroughly* searched for any weapons or contraband (See policy regarding Searches).
2. If practical, the search should be conducted by an officer of the same sex of the detainee.
3. The transporting officer should search the detainee, unless a search was conducted in his presence.
4. When transporting detainees, the officer will provide the dispatcher with the following information when possible:

   a. Identity of the detainee, (this information, along with a DOB, should be given so a warrants check can be completed);
   b. Arrest location and destination of transport; and
   c. Time and mileage readings before and after transport.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 163 of 340    PageID #: 628

The officer should use care when assisting a detainee into the vehicle for transport. Detainees will be transported in the following manner:

1. Where the vehicle has a security screen but only one transporting officer, the detainee will be placed in the back seat on the right hand side of the vehicle. When the vehicle is not equipped with a security screen and has only one transporting officer, the detainee will be placed in the right front seat.
2. When a detainee is being transported in a two-officer vehicle without a security screen, the detainee will be placed in the right rear seat. The second officer will sit in the left rear seat behind the driver. An officer occupying the rear seat will take extra precautions in securing a duty weapon.
3. Leg restraints will be used when a detainee is exhibiting violent behavior or an officer believes the detainee has a potential for violent behavior.
4. One transporting officer will not attempt to transport more than one detainee in a vehicle without a security barrier.
5. All detainees will be secured in the vehicle by proper use of a seatbelt except in situations where circumstances exist that would otherwise present more danger to the officer or the person being transported.
6. Any wheelchairs, crutches, prosthetic devices, and medication should be transported with, but not in the possession of, the detainee.
7. Transport of detainee's, for any reason after incarceration, will be accomplished by a sworn officer.
8. Detainees will not be left unattended during transport.
9. In the event of a detainee escape all information will be immediately reported to the communications center by means of the police radio.

**Vehicle inspection:**

1. At the beginning and end of each shift, all vehicles regularly used for detainee transport will be inspected for as follows:
2. The safety screen will be securely in place and undamaged;
3. All windows will be intact, and outer door latches in proper working order;
4. Rear seat door handles and window controls should be deactivated;
5. The interior will be thoroughly searched to ensure that no weapons or contraband have been left or hidden within the vehicle. Special emphasis will be placed on inspecting under the rear seat and floorboard area.
6. Should any problems with the vehicle be discovered or any contraband or property of any kind is located inside the vehicle, the information will be documented on the Vehicle (Unit) check sheet as outlined in the departmental policy manual.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

7. After each detainee transport, the vehicle will be searched again after the detainee has been delivered to the detention facility or other destination.

**Handcuffing:**

1. Officers will handcuff (double locked) all detainees with their hands behind their back and palms facing outward.
2. The officer may only handcuff the detainee with his or her hands in front, or utilize other appropriate restraining devices where the detainee:

   a. Is in an obvious state of pregnancy;
   b. Has a physical handicap; or
   c. Has injuries that could be aggravated by standard handcuffing procedures.

3. Detainees will not be handcuffed to any part of the vehicle during transport.
4. Additional approved restraint devices may be used to secure a detainee who violently resists arrest or who manifests mental disorders such that he poses a threat to himself, the transporting officer(s) or the public.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Jail and Booking Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:

The entire jail and booking process must be accomplished in an efficient manner that combines firmness with respect for the rights and needs of the person to be detained.

### PURPOSE:

To provide guidelines for all departmental employees in the processing of arrested persons from the time of arrest until transported to the detention facility.

### PROCEDURES:

NO weapons (firearms, batons, knives, gas devices, etc.) are allowed in the detention facility.

1. When delivering a detainee, weapons will be secured in lockers, if provided, or in the trunk of the patrol vehicle before entering the detention facility.
2. When removing a detainee, weapons will be placed in lockers before entering the detention facility. After securing the detainee, weapons will be retrieved at which time the jailor will turn the detainee over to the officer.

Detainees will not be accepted into the detention facility, and will remain in the custody of the transporting officers under the following conditions:

1. Inaccuracies exist in the arrestee's paperwork;
2. A question as to the identity of the arrestee in comparison to the accompanying paperwork;
3. Transporting officers refuse or cannot furnish reasonable background data about the inmate;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 166 of 340    PageID #: 631

4. Inmate is in need of medical attention;
5. Inmate is in need of psychiatric evaluation or observation; & Inmate requires special needs that the facility cannot reasonably provide.

## Duties of Arresting Officer:

A detainee will remain with and is the responsibility of the arresting officer until the jail officer accepts the detainee. When any officer is delivering a detainee to the detention facility he or she will remain with the detainee until the detainee is locked up or when the detainee has been accepted by the booking officer. The arresting officer will:

1. Assist jail officer when necessary.
2. Provide an arrest report filled out clearly and legibly by the officer prior to releasing the arrested subject to the jail officer.
3. In cases of multiple arrests, an arrest report will be completed for each detainee.
4. After the jail officer has taken custody of the detainee and the arresting officer has given him the Arrest report, the jail officer will then be responsible for booking the detainee.

## Fingerprint cards:

Jail Fingerprint cards will be completed by a technician or jail officer for detainees who have committed the following offenses:

1. Adults:
    a. All felony offenses.
    b. All Class A misdemeanor offenses wherein violence or the use of a weapon was involved.
    c. All offenses involving the manufacture, delivery, possession of a controlled substance, or possession with intent to manufacture or deliver a controlled substance.

2. Juveniles:
    a. ONLY when a juvenile is arrested for any offense, which if committed by an adult, would constitute a felony, or a Class A misdemeanor wherein violence or the use of a weapon was involved, the juvenile will be fingerprinted and photographed.

The following fingerprint cards will be completed:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. One (1) state card (gray).
2. Three (3) F.B.I. cards (red), one (1) of which will have to be furnished to the detention facility at the time of incarceration.

Disposition of fingerprint cards:

1. The state card (gray) and one (1) F.B.I. card (red) will be mailed to the State Police Identification Bureau within 48 hours after making the arrest.
2. One (1) F.B.I. card (red) will be maintained in the detainee's personal folder at this agency.
3. Copies of juvenile fingerprint cards and photographs will be made available only to other law enforcement agencies, the State Crime Information Center, prosecuting attorneys, and the juvenile court. *This agency will maintain a separate file of photographs and fingerprints, ensuring that juvenile photographs and fingerprints are not maintained in the same file as adult fingerprints.*

Three (3) mug-shot photographs will be taken of each detainee.

1. Two (2) are to remain at this agency; and
2. One (1) furnished to the detention facility at the time of incarceration.

All detainees will make bond at the detention facility. All detainee property (excluding evidence) will be turned over to the booking officer at the detention facility.

All other forms, such as Bail Determination forms, ID Forms, etc., needed by the detention facility, will be copied and supplied to the detention facility at the time the detainee is transported.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Report Writing | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

Campbell County Sheriff's Department prepares written reports in order to better manage the department, document events, and support the criminal justice process; all through effective communications.

### PROCEDURES:

### Written reports:
Departmental employees are required to initiate, maintain, and safeguard written reports, in appropriate form, for the following situations:

1. Citizen Complaints
2. Citizen reports of crime
3. Follow-up investigations
4. Incidents involving arrests, citations, or summons
5. Situations where an officer is dispatched
6. Situations where an officer is assigned to take action at a later time
7. Criminal and non-criminal cases initiated by officers

In some instances the department uses standard forms for the purpose of aiding officers and employees in preparing written communications. However, the failure to have a proper form does not relieve the officer or employee of the responsibility of producing the report. When in doubt, and no standardized form is available, a blank sheet of paper will be used.

### Permanent Notebook System:
All officers and specialized employees of Campbell County Sheriff's Department carry and use a permanent notebook. Guidelines for this notebook system are:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 6

1. Put your name, badge or identification number on the notebook for verification that the book contains your original notes. This also serves as a means of identification if the notebook is lost.
2. Keep all notes in the notebook, and not on loose scraps of paper.
3. Notes taken must be neat and accurate. When introduced in court, illegible notes may cause a case to be dismissed.
4. Pages should be kept intact. These pages are kept in sequence of date and time with daily inquiry activities included.
5. Information from separate investigations or inquiries is not placed on the same page. This causes confusion.
6. Take complete notes at the time of the incident or inquiry. Too much information is preferred to insufficient information.

## Report Preparation:

Reports prepared by employees and officers of Campbell County Sheriff's Department:

1. Contain correct information based on accurate notes;
2. Are brief and explicit, including relevant information regarding the elements of the crime;
3. Clearly communicate ideas to the reader in an understandable manner;
4. Answer the following questions:

   a. **Who** was involved?

   All persons involved are identified by their role, as suspects, victims, witnesses, etc. Obtain first, middle, and last names of as accurately as possible. Obtain aliases if one is used. Also, write down home and work address, telephone numbers, dates of birth, and race or ethnitsity.

   b. **What** happened?

   Exactly what type of offense was committed, and what means of transportation, tools, or equipment was apparently used. What was the actor's *modus operandi?* Did the actor use direct attack, or were his tactics more indirect or crafty.

   c. **When** did it occur?

   Record the crime discovery time, and the time the crime is likely to occur. For example, when discovering a body, and there is fresh blood nearby, use a term such as *recent*, and look for other clues to time of death. Conversely, if rigor mortis has set in, and blood is dry, it has been *at least hours*. Also indicate the time witnesses and victims are contacted, and arrests made.

   d. **Where** did it happen?

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Location is to be as exact as possible. If unable to obtain an address, record the nearest intersection or permanent landmark. Describe the area as *business, residential, open country, apartment complex*, etc. Look for evidence that the crime could have started somewhere else, and ended up at the *reported location.*

e. **Why** did this incident occur?
Was the apparent motive or purpose of the crime *revenge, monetary or personal gain, thrill, drug-related, accidental,* etc.

f. **How** did it happen?
Based on reasonable observations at the scene, and information provided by witnesses, explain *how entry was made, how property was obtained,* or *how the suspect chose and approached the victim.*

5. Avoid inappropriate language, such as slang or jargon, unless quoting a suspect, witness or victim;
6. Never use radio codes, numerical designations or other terms peculiar to law enforcement in report narratives;
7. Print or write legibly, except for officer's signature;
8. Be objective and unbiased, recording information whether positive or negative;
9. Contain correct grammar and spelling, avoiding abbreviations not readily understood by persons outside law enforcement;
10. Prepare in the first person writing style;
11. Place events in chronological order; &
12. Keep a copy of the report for future reference.

## Report Style:

The term *official report* conjures up in most minds a high degree of formality, and stiff repetition. Good reports, even technical reports contain a lot of facts, but should be easy to read and understand. Remember, the reports you write today will be seen by a jury tomorrow, and you will be judged by the way you write, what you say, and they way it is stated.

1. Write the *way you talk* in a normal conversation. Add details, the way you speak. *We don't say Unit 16 approached the door and spoke to Suspect #2.* Say, *I walked to the door and spoke with Mr. Doe.*
2. Write in the *first person singular.* We don't say, *Officer Johnson,* when we mean *I,* or *me.*
3. Write in the past tense, if it happened in the past. Do not say . . . *approaching the car I see the gun in the back seat.* Instead write, . . . *when I walked along the driver's side of the car, I saw the gun in the back seat.*

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

4. Carry and use a dictionary and a thesaurus. Using the right word to describe your meaning is important.
5. Use everyday words and avoid unfamiliar wording.
6. Avoid using police jargon.
7. Be very careful about using the word *suspect*. Are they really suspects or simply individuals? Suspects must be suspected of something and read their Constitutional Warnings. Get their names and use them in the report.
8. Lastly, read over your report when you are finished. Ask yourself, would a regular citizen clearly understand this report. If the answer is *no*, a jury will not understand it either. Redo it!

## Offense Reports:

Offense reports are designed to provide:

1. A means whereby officers can conduct and record a *preliminary investigation* of a criminal offense;
2. Complete and accurate information for follow-up investigation and prosecution;
3. Patrol officers and investigators with certain decision-making points that enable them to identify follow-up investigative needs;
4. Improve control of the report flow process within the department thereby improving report access and statistical recording; and
5. Aid other officers in the collection of *crime data, patterns, suspect information, and determine modus operandi*, etc.

Offense reports must be completed for all serious criminal acts and suspected acts. These reports clearly and concisely report elements of the crime by answering critical *who, what, when, where, how,* and *why* questions. It is the responsibility of the first officer arriving on the scene to complete the first handwritten copy. Offense reports are timely written, either during or shortly after the shift on which the incident was reported. Officers turn in the report to their supervisor for evaluation, approval, and further action by the department. Once approved, the supervisor passes the report to distribution, and notifies the dispatcher for entry or clearance with NCIC and state reporting systems.

## Arrest Reports:

Arrest reports accurately records the circumstances surrounding the taking of physical custody of a *suspect* or *escapee*. The arresting officer completes the report and includes sex, race, and date of *birth, age, home address, specific charge, and probable cause* for the arrest. Supervisors review the arrest report for clarity, completeness and accuracy, and once satisfied, forward the report for action. If a final disposition is

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 6

reported, the supervisor updates the indexed arrest record. Arrest files are alphabetically filed in the departmental arrest index.

**Supplementary Reports:**
Supplementary reports are used when additional information is discovered through an investigation. The officer who discovers this new data is responsible for the supplementary report. The updated portion is attached to the related report with a supplement number and date. Every officer arriving at or entering onto a major crime scene will complete a *supplemental report* detailing the reason for their response, and the actions taken once arriving at the crime scene. These supplemental reports will contain the same level of detail as contained in the original *offense report*, but as observed by the officer completing each supplemental report.

**Case Files:**
Case files are primarily designed to assist investigators by collecting all documents relating to a criminal or intelligence case into one location. Case files often consist of the following items:

1. Contents sheet
2. Original offense reports
3. Investigator's field notes
4. Complaint reports
5. Supplementary reports
6. Arrest reports
7. Accident reports
8. Property receipts
9. Vehicle tow slips

10. Autopsy reports
11. Crime scene photos
12. Suspect photographs & data
13. Latent Prints
14. Criminal profiles
15. Statements
16. Record checks and NCIC inquiries
17. State reports

**File Maintenance:**
Campbell County Sheriff's Department maintains a comprehensive report filing system. This system includes:

1. Reports are filed and indexed as data is received and approved by supervisors.
2. Case files remain *opened*, until the case is solved by *arrest and accepted by the prosecutor for prosecution*; or, the *statute of limitations* has expired.
3. When a case is closed, all unneeded copies are destroyed.
4. Master index card is prepared listing each report and filed. When a file is updated such information is entered into the case file and on the offense index card.

**Radio Dispatch Logs:**

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Radio dispatch log entry's are recorded on all alleged or reported crime, and in some cases, are the only record of law enforcement action taken. The requirements for a radio dispatch log entry include, at a minimum, the:

1. Date and time of the initial report of the incident;
2. Name, address, and telephone number of the officer, citizen, victim or complainant requesting service;
3. Supplemental reports or calls for services;
4. Any reported injuries or deaths;
5. Nature of the incident; &
6. Date, time, and type of action taken by the officer.

## Confidentiality of Records:

Law enforcement records contain critical and potentially life threatening information. Such mundane information as *complainants address, location and phone number; trial and appearance dates; potential witness lists;* and *status of a case* if released into the wrong hands can cost an officer or resident their life.

Police reports and files are reported, collected, and disseminated on a need-to-know basis. Just because an officer or employee is an employee of the department does not mean that he or she needs or should know vital information about an open case or a case pending for trial. As a result:

1. Case information will not be discussed or released outside of those officers and employees having a strict *need-to-know*.
2. An officer or employee will not release to non-law enforcement personnel case information until after verification of a *need-to-know* is established.

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 6

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Investigation: Motor Vehicle Accidents | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Campbell County Sheriff's Department performs a variety of traffic accident investigative functions including emergency services to injured, protecting accident scenes, conducting accident investigations and follow-ups, preparing reports, and taking proper enforcement action relative to incidents.

### PURPOSE:

The purpose of accident investigation is to properly determine the causative factors involved in an automobile crash and utilize these factors to develop enforcement that will reduce the incidence of accidents.

### PROCEDURES:

### Response to Motor Vehicle Accident Scenes:
Law enforcement officials of Campbell County Sheriff's Department will respond to any accident involving:

1. Death or injury;
2. Property damages exceeding reportable amount established by the Tennessee legislature;
3. Hit and run;
4. Caused by use of alcohol or drugs;
5. Hazardous materials;
6. Property, vehicles, equipment, or facilities of Campbell County Sheriff's Department;
7. Creates major traffic congestion;
8. Vehicles damaged to the extent towing is required; or
9. To assist persons involved with information exchange.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 4

## Officer Responsibilities – Motor Vehicle Accident Scenes:

When a traffic accident occurs, the officer initially dispatched to an accident scene will normally be the primary investigating officer in charge. His responsibilities will include:

1. Basic emergency medical care to accident victims, pending the arrival of proper medical authorities;
2. Avoiding the movement of victims from the accident scene, unless non-removal would place the victims in further danger of injury;
3. Summoning additional help as required by the severity of the accident;
4. Notifying parents or legal guardians of any minors injured in the accident;
5. Protecting the accident scene;
6. Preserving, collecting, and processing any evidence to include:

   a. Examining and recording vehicle damage, and the effects of the accident on the surrounding environment; and
   b. Taking appropriate photographs.

7. Establishing a safe traffic pattern around the scene;
8. Locating witnesses and recording accident information;
9. Exchanging information among all involved parties;
10. Never advising involved parties about the possibility of civil action;
11. Removing, if able, vehicles off the roadway allowing for smooth traffic flow; and
12. Taking the appropriate enforcement action when:

    a. Believed appropriate by the investigating officer;
    b. The officer has detected a violation of a traffic law or ordinance; and
    c. Evidence exists to satisfy all the elements of that particular violation.

13. Filing the report within five [5] days following the investigation.

## Follow-up Investigations:

A follow-up investigation may be necessary in order to:

1. Collect supplementary scene data;
2. Obtain formal statements from witnesses;
3. Reconstruct the accident scene;
4. Submit evidentiary materials for laboratory examination; and
5. Prepare accident and/or offense reports to support criminal charges arising form the accident.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 4

If a follow-up investigation does identify an offender or offense, an arrest warrant should be obtained.

### Safety Guidelines – Motor Vehicle Accident Scenes:

In order to minimize the possibility of further injuries, it will be the responsibility of all officers arriving on the traffic accident scene to maintain the following safety guidelines:

1. Park police vehicles without endangering pedestrians, motorists, or citizens. The police vehicle may be used as a shield for the protection of the officer and all accident victims.
2. If reduced visibility or darkness, wear a reflector safety vest. Flares are also available in each police vehicle for use in creating an illuminated warning pattern to alert other motorists. The objective is to protect the scene and participants and to temporarily detour traffic safely around the scene.
3. The Fire Department should be called out:

   a. In case of danger of fire from leaking ruptured gas tanks;
   b. Where there is any major crash entanglement of two or more vehicles; or
   c. Where there is any sign of hazardous materials having been transported.

4. All police vehicles should be equipped with a copy of the current Emergency Response Guidebook, which permits both rapid identification of DOT vehicles and contained placards for hazardous materials and gives information concerning the nature of the hazard, emergency procedures, evacuation disasters, etc. The Fire Chief will assume control of any scene involving hazardous materials and all law enforcement officers will provide support as required. Any investigation of the accident will only occur after approval by the Fire Chief.
5. Any property belonging to accident victims will be protected from theft or pilferage, and brought to Campbell County Sheriff's Department, properly tagged and held for any accident victims unavailable to receive those items at the time of the accident.

### General Guidelines – Accident Reports:

All officials of Campbell County Sheriff's Department will maintain the following guidelines regarding accident reports:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. All motor vehicle accident reports of Campbell County Sheriff's Department will be open to public inspection at all reasonable times, within five [5] days of the date of occurrence.
2. An accident report will be filed on all accidents occurring on public property within this jurisdiction including any highway, roadway, street or public parking lot maintained by Campbell County Sheriff's Department.
3. Accident reports will not be filled out if property damage does not exceed the reportable amount established by the Tennessee legislature for any accident occurring on private property.
4. Accidents involving only property damage, occurring during extremely inclement weather, may be handled in the following manner by dispatch if approved by the Sheriff:

   a. The employee taking report will record name, address, operator license number, and telephone number of all involved drivers.
   b. All involved parties will be advised to file an incident report at Campbell County Sheriff's Department within forty-eight [48] hours of the accident.

### DWI Related Motor Vehicle Accidents:

Immediate law enforcement action will be taken by officers of Campbell County Sheriff's Department when DWI appears to be a causal factor in the accident. If the DWI suspect is still available, an arrest will be made unless medical treatment is needed. If the DWI suspect has already been transported to a hospital, action will be taken at an appropriate time following his treatment.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Radio Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to follow the regulations of the Federal Communications Commission (FCC) regarding the use of police radio. All employees will limit use of police radio to messages, which pertain to official law enforcement business.

### PURPOSE:

To provide guidelines for all employees to follow in the use of police radio equipment for the purpose of communicating law enforcement information.

### PROCEDURES:

### Care of Radio Equipment:
All radio equipment will be handled using care and common sense. Only technicians authorized by Campbell County Sheriff's Department may adjust or repair radios. Any member of Campbell County Sheriff's Department who damages departmental equipment will notify a supervisor immediately.

### Radio Malfunctions:
In the event of a possible radio malfunction, members should check their radios by:

1. Making sure the radio switch is on and the volume is up;
2. Making sure the visible connections are plugged in securely and the switches and frequency selector knobs are in proper positions;
3. Removing the radio from the charger and using it in a portable manner;
4. Changing frequencies and trying to transmit and receive, as a last resort.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 6

If the officer is unable to make communication with the departmental dispatch unit by changing frequencies, he should find the closest telephone, contact department officials about the malfunction, and deadline the radio.

### Instructions for Transmitting Radio Messages:

The following guidelines should be followed regarding the transmission of a message by the police radio:

1. Utilize the frequency designated by Campbell County Sheriff's Department.
2. Keep radio on at all times when in or out of the unit.
3. If equipped with a portable radio, always make sure this equipment is on and operational when out and away from the unit.
4. Keep radio volume control on all equipment loud enough to easily be heard.
5. Avoid transmitting a radio message if motion on a police motorcycle.
6. Have a notebook and pencil ready so messages may be written.
7. Do not acknowledge receipt of message until the complete text is accurately known.
8. Pronounce words slowly and distinctly.
9. Whenever transmitting a message to an officer, refer to the officer by call number.
10. An officer in the field will use his or her call number prior to transmitting any information.
11. Always try to compose yourself and speak with as little emotion as possible.
12. Do not transmit until message is clearly in mind, but don't hesitate in emergency situations.
13. If necessary to transmit a lengthy message and time permits, write it down in logical order before transmitting.
14. Break a lengthy message periodically, (especially a message having more than one part).
15. Keep mouth close to microphone and speak as if you were using a telephone, (do not shout).
16. Use the minimum number of words necessary to convey the message.
17. In describing persons, give information in the following order:

| | |
|---|---|
| a. Name | g. Height |
| b. Alias | h. Weight |
| c. Race | i. Color of Hair |
| d. Sex | j. Color of Eyes |
| e. Age | k. Complexion |
| f. DOB | l. Scars or Tattoos |

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 180 of 340    PageID #: 645

m. Clothing Description
n. Home Address

o. Felony-misdemeanor or reason for broadcast

1. Names of persons should be spelled using initials coded (A-Adam; B-Boy; C-Charles, etc.). Unusual words will be spelled.
2. When transmitting numbers, group them in groups of three.
3. When an emergency exists, the officer with the emergency and the dispatcher will have first priority use of the radio until emergency traffic is concluded.
4. Officers not involved in the emergency will not call with requests for information. By listening, officers can get the available information and if their assistance is needed, it will be requested.

## Radio Procedures – Traffic Stops:

When stopping a vehicle for any reason, the officer will notify the communications center of the following:

1. Intent to stop a vehicle;
2. Location where vehicle is stopped;
3. Complete description of the vehicle;
4. Number and description of occupants;
5. Need for back-up;

## Radio Procedures - Felony Stop:

When a vehicle is observed that is thought to be occupied by felons or suspected felons, officers will notify the communication center and provide the location of the vehicle if stationary, or the location and direction of travel, if moving. Officers should keep the vehicle in sight, notify the communications center, and request sufficient back-up to have manpower superiority;

## Radio Procedures - Courtesy Messages:

Law enforcement radio facilities may be used to locate persons for emergency purposes whenever public service facilities have failed, are inadequate, non-existent, or whenever a person sought is en-route to destination when emergency arises. The following guidelines should be followed regarding the use of police radio for courtesy messages:

1. Courtesy messages should be carefully considered before acceptance. Communications, which are not urgent, should not be transmitted.
2. In handling or delivery of a courtesy message, no employee will convey the text of the message or the nature of the emergency. Employees will inform the

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

person that an emergency exists and the name and telephone number of the person who is trying to reach them.

3. The law enforcement radio system is for official law enforcement messages only and will not be used as a paging system for any private individual or organization.

## Radio Procedures - Disasters and Other Serious Incidents:

Any employee learning of any crime, civil disorder or disaster such as an explosion, tornado, etc., will immediately give the description of what happened to the dispatcher by radio or any other available source of communication. The Dispatcher will immediately contact and dispatch a supervisor. The employee reporting the incident will further evaluate the situation and provide further communication concerning the event, including resources needed immediately, request back up, street needs closing, re-route traffic, etc.

## Radio Procedures - Hit and Run:

Officers reporting hit-and-run cases will transmit the information in the following manner:

1. Location of hit-and-run accident.
2. Was personal injury involved?
3. Date and time of the accident.
4. The color, year, make, body style, accessories, license information, and any Identifying features or damage to the vehicle that left the scene.
5. Description of the driver and passengers, if known, occupying suspect vehicle.
6. Direction of travel of hit-and-run vehicle when last seen.

## Radio Procedures – Car to Car Transmissions:

Employees using the law enforcement communications system are prohibited from using slang expressions, jokes, humorous remarks, profanity or keying the microphone to music, internal or external noises, etc. All communication will be in the performance of official law enforcement business, using as few words as possible to complete transmissions.

## Alphabetical Word Code:

Employees will use the following word code when transmitting by police radio:

| A - Adam | G - George | L - Lincoln | Q - Queen |
|----------|------------|-------------|-----------|
| B - Boy | H - Henry | M - Mary | R - Robert |
| C - Charles | I - Ida | N - Nora | S - Sam |
| E - Edward | J - John | O - Ocean | T - Tom |
| F - Frank | K - King | P - Paul | U - Union |

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| | | |
|---|---|---|
| V - Victor | X - X-Ray | Z - Zebra |
| W - William | Y - Young | |

## Ten-Code List:
The following codes will be used as a verbal communication between all employees of Campbell County Sheriff's Department:

1. 10-0 Caution
2. 10-1 Unable to copy -- change location
3. 10-2 Signal good
4. 10-3 Stop transmitting
5. 10-4 Acknowledgement (OK)
6. 10-5 Relay
7. 10-6 Busy -- stand by unless urgent
8. 10-7 Out of service
9. 10-8 In service
10. 10-9 Repeat
11. 10-10 Fight in progress
12. 10-11 Dog case
13. 10-12 Stand by (stop)
14. 10-13 Weather -- road report
15. 10-14 Prowler report
16. 10-15 Civil disturbance
17. 10-16 Domestic disturbance
18. 10-17 Meet complainant
19. 10-18 Quickly
20. 10-19 Return to ...
21. 10-20 Location
22. 10-21 Call ... by telephone
23. 10-22 Disregard
24. 10-23 Arrived at scene
25. 10-24 Assignment completed
26. 10-25 Report in person (meet) ...
27. 10-26 Detaining subject, expedite
28. 10-27 Drivers license information
29. 10-28 Vehicle registration information
30. 10-29 Check for wanted
31. 10-30 Unnecessary use of radio
32. 10-31 Crime in progress
33. 10-32 Man with gun
34. 10-33 Emergency
35. 10-34 Riot
36. 10-35 Major crime alert
37. 10-36 Correct time
38. 10-37 (Investigate) suspicious vehicle
39. 10-38 Stopping suspicious vehicle
40. 10-39 Urgent -- use light, siren
41. 10-40 Silent run -- no light, siren
42. 10-41 Beginning tour of duty
43. 10-42 Ending tour of duty
44. 10-43 Information
45. 10-44 Permission to leave ... for ..
46. 10-45 Animal carcass at ...
47. 10-46 Assist motorist
48. 10-47 Emergency road repairs at
49. 10-48 Traffic standard repair at ...
50. 10-49 Traffic light out at ...
51. 10-50 Accident (fatal, personal injury, property damage)
52. 10-51 Wrecker needed
53. 10-52 Ambulance needed
54. 10-53 Road blocked at ...
55. 10-54 Livestock on highway
56. 10-55 Suspected DUI
57. 10-56 Intoxicated pedestrian
58. 10-57 Hit and run (fatal, personal injury, property damage)
59. 10-58 Direct traffic

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

60. 10-59 Convoy or escort
61. 10-60 Squad in vicinity
62. 10-61 Isolate self for message
63. 10-62 Reply to message
64. 10-63 Prepare to make written copy
65. 10-64 Message for local delivery
66. 10-65 Net message assignment
67. 10-66 Message cancellation
68. 10-67 Clear for net message
69. 10-68 Dispatch information
70. 10-69 Message received
71. 10-70 Fire
72. 10-71 Advise nature of fire
73. 10-72 Report progress on fire
74. 10-73 Smoke report
75. 10-74 Negative
76. 10-75 In contact with ...
77. 10-76 En route ...
78. 10-77 ETA (estimated time of arrival)
79. 10-78 Need assistance
80. 10-79 Notify coroner
81. 10-80 Chase in progress
82. 10-81 Breathalyzer
83. 10-82 Reserve lodging
84. 10-83 Work school crossing at ...
85. 10-84 If meeting ... advise ETA
86. 10-85 Delayed due to ...
87. 10-86 Officer/operator on duty
88. 10-87 Pick up/distribute checks
89. 10-88 Present telephone number of ...
90. 10-89 Bomb threat
91. 10-90 Bank alarm at ...
92. 10-91 Pick up prisoner/subject
93. 10-92 Improperly parked vehicle
94. 10-93 Blockade
95. 10-94 Drag racing
96. 10-95 Prisoner/subject in custody
97. 10-96 Mental subject
98. 10-97 Check (test) signal
99. 10-98 Prison/jail break
100. 10-99 Wanted or stolen indicated

## Dispatch Codes:

When dispatching a message to a responding officer, the dispatch unit should give a priority number to every call to include;

1. Priority "1" (Emergency) is a call of an immediate life-threatening nature. Response by the officer will require the use of emergency equipment (lights and siren) except when the use of such equipment would likely result in alerting the violator and increasing the likelihood of escape.
2. Priority "2" (Urgent) is a call which requires an officer to be on the scene as soon as possible.
3. Priority "3" (Routine) is a call of a routine or less serious nature. The officer will respond as soon as possible or may handle the call while remaining in service.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Juvenile Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Officers and employees when reasonably practical will take steps to positively influence juvenile offenders and non-offenders. Officers will be ever mindful that juveniles are a protected class, and as such cannot surrender protection guaranteed by the State and U.S. Constitution.

### PURPOSE:

The purpose of this policy is to provide guidelines for dealing with juveniles in enforcement and custodial situations.

### DEFINITIONS:

***Juvenile Offender:*** A young person who has not yet attained the age at which he or she should be treated as an adult for purposes of criminal law who:

1. Violates a state or federal law, or municipal or local ordinance;
2. Engages in disobedient, immoral, or indecent behavior;
3. Is in need of treatment, rehabilitation, or supervision;
4. Has runaway from home or lawful place of residence without just cause;
5. Is beyond the control of parents or legal guardian; or
6. Has been habitually truant or overtly defiant in school.

***Status Offender:*** A juvenile who is charged with an offense that would not be a crime if committed by an adult.

***Responsible Adult:*** In the absence of the juvenile's parents or legal guardian, an adult with reasonable physical and mental capacities who is:

1. Responsible for the physical custody of a juvenile;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 185 of 340    PageID #: 650

2. An acquaintance of the juvenile's parents; or
3. Able to reasonably demonstrate supervision for the juvenile until parents, legal guardian, or next of kin can assume that responsibility.

**Non-secure Custody:** A condition under which a juvenile's freedom of movement is controlled by members of Campbell County Sheriff's Department, and during such time the juvenile:

1. Is held in an unlocked, multi-purpose area, such as a report-writing room or office;
2. Is at no time handcuffed to any stationary object;
3. Is held only long enough to complete identification, investigation, processing, and then released to a responsible adult, transferred into a juvenile facility, or court; &
4. Is under continuous visual supervision until released.

**Secure Custody:** A condition in which a juvenile is physically detained or confined in a locked room, set of rooms, or cell that is designated, set aside or used for the specific purpose of securely detaining persons who are in law enforcement custody.

## PROCEDURES:

### Conditions of Custody:

Juveniles, regardless of their detention status will always be separated by *sight and sound* from all adult witnesses, detainees, prisoners, or inmates. There are no exceptions to this policy. This policy applies at all times the juvenile is being detained, including transport.

### Enforcement Alternatives:

Officers dealing with juveniles in enforcement capacities may exercise reasonable discretion in deciding on appropriate actions. Alternatives that may be considered and employed include:

1. Release without further action;
2. Informal counseling, advising the youth of the consequences their actions;
3. Informal referrals to community services;
4. Referral to parents or responsible adult;
5. Informal counseling of parents or responsible adult;
6. Limited custody and a *station house warning*;
7. Issuance of a summons or complaint;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

8. Arrest under non-secure custody; or
9. Arrest under secure custody.

## Enforcement Criteria:

The following general guidelines may be used in determining the appropriate enforcement or crime deterrent action when dealing with juvenile incidents.

1. Following release without further action or informal counseling by the officer, referral of the juvenile to community resources or parents may be appropriate. Such measures could be taken in incidents where property damage or personal injury is not involved, but intervention is necessary to avoid potential delinquent actions, or when the youth has had no prior enforcement contacts. Examples of these incidents include, but are not limited to:

   a. Curfew violations;
   b. Loitering;
   c. Minor liquor law violations; or
   d. Disorderly conduct.

2. Officers may elect to transport the youth home or direct him to return home; make personal, telephone, or mail contact with the youth's parents or guardians to provide them with information and counseling on their child's actions; refer the youth to appropriate community service agencies with or without follow-up; or detain the youth at the station house until he is released to a parent or guardian if the:

   a. Incident is of a serious or potentially serious nature;
   b. Youth is fully aware of the seriousness or potential seriousness of actions and/or is acting in alliance or collusion with others to commit such acts;
   c. Youth fails to cooperate or to positively respond to intervention efforts and directions;
   d. Youth has prior informal warnings for engaging in delinquent acts; or
   e. Youth's parents or legal guardian have apparently failed to provide appropriate control and supervision.

3. Officers may file delinquency charges against a juvenile when the act:

   a. Would be considered a felony if committed by an adult;
   b. Involves deadly weapons;
   c. Is a serious or potentially life threatening gang-related offense;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    d. Involves assault;

    e. Occurs while the juvenile is on probation, parole or when they have charges pending against them; or the juvenile is a repeat offender;

    f. Juvenile refuses to participate in diversion or intervention programs; or

    g. It has been determined that parental or other adult supervision is ineffective.

4. An officer may also take a juvenile into custody if the youth is lost, seriously endangered, or a runaway. The following guidelines will be followed for any juvenile reported as a runaway:

    a. Confirm juvenile as a runaway through departmental reports, NCIC, or some other means.

    b. Take juvenile into custody and transport to agency department. If no departmental reports or NCIC data exist, release the juvenile.

    c. If transported, the juvenile intake or probation officer will be contacted for further direction such as incarceration or transport to a children's center.

    d. Complete an incident report.

    e. Copy all documents concerning juvenile contact and forward to Juvenile Probation Officer.

    f. Delete runaway from NCIC records. If the juvenile has been entered into NCIC by some other police agency, notify that agency for deletion of the entry. The police agency in question can also provide other useful information concerning the juvenile, and make further contacts as needed.

    g. Notify parents or guardian of the juvenile's status and location.

5. In cases of alleged child abuse, officers will contact a youth officer or their immediate supervisor in order to conduct an investigation of the complaint, unless probable cause justifies immediate action to protect child.

## Status Offenses:

The following guidelines apply to all *status offenses* committed by juveniles:

1. Based on the seriousness and circumstances surrounding the offense, background and demeanor of the juvenile and other relevant factors, an officer may release a juvenile to his parents, guardian or another responsible adult. This is a matter of officer discretion.

2. Juveniles taken into custody for status offenses will be frisked prior to being transported and may be handcuffed or restrained if, in the discretion of the officer, the juvenile poses a physical risk to the officer, themselves or others.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Officers will pay particular attention to juveniles under the influence of alcohol or drugs to determine whether emergency medical services are warranted.
4. Held in *non-secure custody* as provided by state law and for the briefest time necessary to conduct identification, investigation, and related processing requirements to facilitate their release to a parent, responsible adult, or transfer to a juvenile facility.
5. Transportation of a juvenile in a caged vehicle is not secure custody.
6. Status offenders and other juveniles taken into *temporary non-secure custody* for non-criminal type offenses will not be fingerprinted or photographed for purposes of establishing or supplementing criminal records.
7. Status offenders in temporary custody will:

   a. Not be placed in a holding area within *sight or sound* of adult suspects or detainees;
   b. Be maintained under constant visual supervision;
   c. Afforded reasonable access to toilets and washing facilities;
   d. Provided food if in need of nourishment to include any special diets necessary for health or medical purposes;
   e. Provided any medication approved by a licensed doctor, and an necessary emergency first aid;
   f. Provided with reasonable access to water or other beverages; &
   g. Allowed reasonable access to a telephone.

## Criminal Offenses:

Juveniles who have committed, or have been accused of committing, a criminal offense will be:

1. *Provided all appropriate warnings* (See Civil and Constitutional Warnings Policy) including Miranda and any department, state, court ordered juvenile warnings, or Magistrate warnings (if required);
2. Subject to the same security requirements as adults and may be handcuffed or otherwise restrained as necessary during transport and processing;
3. Fingerprinted and photographed. The fingerprint card and *mug shot* will be marked *"Juvenile"* and maintained in this agency's central repository for such purposes, separate from adult fingerprints and mug shots and subject to *controlled dissemination.*
4. Juveniles placed in secure detention, whether in cells, locked rooms, or other locations, will be:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    a. Separated by *sight and sound* from any incarcerated adults, and juveniles of the opposite sex;
    b. Informed of the estimated time they will be in detention;
    c. Provided with constant auditory access to officers responsible for their supervision; &
    d. Personally observed by supervisory personnel on both a routine and unscheduled basis no less than every 30 minutes.

5. A juvenile in custody will not be questioned about an alleged criminal act without the presence of his parent or a legal guardian. The juvenile and the adult will be advised of their constitutional rights prior to interrogation. If, prior to or during questioning, the juvenile, his parents, or legal guardian express the desire to speak with an attorney, all questioning will cease and will not be renewed until an attorney allows such questioning.
6. In the absence of a parent or guardian, a juvenile may be questioned and may provide statements, after a magistrate has provided warning to the juvenile.
7. Interrogation of juveniles should not extend over periods of time that could be considered unreasonable or harassing. Whenever possible, interrogation should be conducted by one officer at a time.
8. Inform juvenile of the procedures that will be followed with regard to custody, release, and transport to another facility, or to a custody hearing.

## Juvenile arrested on warrant:
When conducting a warrant arrest of a juvenile:

1. See and comply with items in Criminal Offenses Section, above; &
2. Advise juvenile of constitutional rights at first opportunity;
3. Take juvenile before the court that issued the warrant as soon as possible;
4. Contact juvenile intake officer concerning the arrest, if after regular court hours or on a weekend;
5. Notify parents or guardian; &
6. Delete arrest warrant from departmental records, if entered into the NCIC.

If the arrest warrant was entered into the NCIC by some other police agency, contact that agency and advise of the arrest.

## Parental Liability:
A parent or guardian may be liable for property damage done by a child in their care, custody, and for whom they exercise discipline, if the parent was negligent in their care, custody, and discipline, or the child willfully and maliciously damaged property.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



## School Related Offenses:

A child engaging in conduct, which is considered a prosecutable offense on property owned by a school district, or at a school-sponsored event, will be referred to the juvenile court for charges. The department will report orally to the superintendent of the child's school within 24 hours or on the next school day any instance of a child taken into custody for a criminal offense. A written notice will be prepared and sent to the superintendent of the child's school within 7 days of the oral notification.

## Emergency Medical Aid:

A juvenile in custody who is believed to suffer from a serious physical condition or illness that requires prompt treatment will be referred to emergency medical services for evaluation and treatment. The officer has the authority to *consent to treatment* of a juvenile who is in need of immediate medical attention.

## Disclosure of Juvenile Records:

Records of a juvenile are *confidential* and may not be disclosed to the public, except for reporting criminal activity of a juvenile to a school superintendent. Records may be inspected by other law enforcement and juvenile justice agencies having legitimate reason to view the records. The record of a juvenile missing from his home may be forwarded to NCIC for dissemination nationwide. Any records or files pertaining to a juvenile will be sealed upon court order. Upon receipt of a court order, the department will forward all records to the court, and delete all index references. Records pertaining to a juvenile will be disposed of according to the approved records management schedule of the department.

## Record Keeping:

Officers who select non-custodial alternatives or engage in informal enforcement contacts with juveniles will complete appropriate field interview and incident reports for each contact. These reports will clearly identify the juvenile involved, the nature of the incident and the rationale for the officer's disposition.

Juveniles taken into custody for criminal offenses will be subject to the same reporting requirements as adults. Such reports will be clearly marked *"Juvenile,"* maintained in a separate location from adult arrest records and be subject to state law regarding dissemination and access. A custody record will be maintained with each juvenile arrest report that specifies:

1. Time juvenile entered *secure detention* and the duration of each detention;
2. Type of restraining device, if any, used;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



3. Name of the officer responsible for visual supervision, and schedule of visual supervision, if the juvenile is placed in a locked room or cell;
4. Statement of the need for secure detention;
5. Confirmation that juvenile was provided all warnings;
6. Time periods of any interrogation, and the officers, parents, legal guardian, or attorney present.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Criminal Investigation | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

## POLICY:

All members of Campbell County Sheriff's Department must clearly understand their responsibilities for the conduct of preliminary and follow-up criminal investigations and of complaints of major infractions of the law.

## PROCEDURES:

### Preliminary Investigation:

The preliminary investigation begins when the first law enforcement unit arrives at the scene of a crime, or information is taken by an officer concerning a crime. The investigation will continue until postponed or until transferred to another officer. The following officer responsibilities are part of the preliminary investigation and will vary according to the type of crime being investigated and the circumstances associated with the crime scene:

1. Provide aid to the injured;
2. Protect the crime scene to insure evidence is not lost or contaminated;
3. Determine if an offense has actually been committed, and if so, the exact nature of the offense;
4. Determine the identity of the suspect or suspects, and effect an arrest if it can be accomplished either at the scene or through immediate pursuit;
5. Furnish other field units descriptions, method and direction of flight of suspects, and other relevant information concerning wanted suspect or suspects or vehicles;
6. Obtain complete identification of all witnesses;
7. Determine what information is known by the victim and each witness;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

8. Determine in detail the exact circumstances of the offense;
9. Arrange for the collection of evidence;
10. Obtain written and signed statements from victim(s), witnesses, and from the suspect(s);
11. Determine the necessity of some .degree of follow up surveillance of the crime scene;
12. Accurately and completely record all pertinent information on the report forms;

The initial stages of all preliminary investigations, including crime scene processing, will be conducted by patrol officers. The investigation of any serious crime will be the responsibility of a criminal investigator.

As soon as the preliminary investigation is concluded by a patrol officer, the initial field report should be completed including all information obtained at the scene of the offense.

It will be the responsibility of the shift supervisor to ensure that an adequate and complete preliminary investigation has been made and to review, screen, and approve the officer's report. The signature of the shift supervisor approving the report will be on each report in the proper space. In the case of those offenses reported directly to and handled completely by a criminal investigator, the Sheriff, or Chief Deputy, will review the report.

### Follow-up Investigation:
The follow-up investigation is an extension of the preliminary investigation. The purpose of the follow-up is to provide additional investigation in order to affect the arrest of an offender and/or recover stolen property. Officer or criminal investigator responsibilities of the follow-up investigation include:

1. Identifying and apprehending of the offender;
2. Collecting and preserving of additional evidence, arranging for the analysis and evaluation of the evidence, and reviewing the lab results of that evidence;
3. Recovering any stolen property;
4. Conducting any additional interviews of victims and witnesses as required;
5. Conducting any additional interrogation of suspects as required;
6. Seeking other information from law enforcement officers and informants;
7. Reviewing department records and coordinating with adjoining agencies pertaining to other similar offenses to determine if other crimes may have been

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

committed by the suspects;

8. Reviewing all information contained in the case file (preliminary investigation and earlier follow-up reports) concerning this offense;
9. Recording any information obtained and preparing supplementary reports as required;
10. Giving out information as appropriate;
11. Planning, organizing, and conducting searches if necessary;
12. Arranging for any polygraph examinations;
13. Preparing a case file folder on the suspect for court; and
14. Checking the suspect's local police record and criminal histories.

## Assignment of Investigators:

In assigning investigators for follow-up, the Sheriff, or Chief Deputy, will normally consider the following guidelines:

1. Patrol officers will conduct and complete the investigation of all non-criminal calls for police service and for misdemeanor or felony crimes not appropriate for referral to the criminal investigator.
2. A criminal investigator will conduct the follow-up investigations when one or more of the following conditions exists:

   a. The offense appears to be part of a pattern of such offenses.
   b. When the follow-up is required in widely separated locations outside this jurisdiction.

## Relationships with Prosecuting Attorney:

The prosecuting attorney's office prosecutes criminal cases, both felony and misdemeanor, in each court and for each law enforcement agency within the jurisdiction. Because of a tremendous caseload, all personnel are required to:

1. Coordinate appointments in advance;
2. Be on time;
3. Have a subject for discussion planned in advance; and
4. Keep conversations brief.

In every known contested case, misdemeanor or felony, the officer involved will make an appointment with the prosecuting attorney to discuss the case prior to trial.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 10

During any law enforcement investigation (or during prior planning for arrest or pretrial stages), any questions of law or criminal procedure will be addressed to the prosecuting attorney. Questions on law enforcement procedure will be addressed to the Sheriff or designee.

Any criminal cases referred to the prosecuting attorney which result either in a decision of declined to prosecute or dismissed, due to law enforcement mishandling, must be carefully reviewed and appropriate corrective action taken. The prosecuting attorney will bring any such case to the attention of the Sheriff.

**Serious Crimes - Criminal Investigator Response:**
A criminal investigator assigned to Campbell County Sheriff's Department and/or a Tennessee police criminal investigator will be available 24 hour's a day to conduct the following investigations:

1. Death of a violent or suspicious nature;
2. Rapes or suspected rapes;
3. Assaults, serious injury or death to the victim;
4. Armed robberies of commercial institutions;
5. Burglaries where there is excessive or unusual loss (high dollar value, cash, jewelry, silver, etc.);
6. Any major disaster (where investigators can assist in identification of victims);
7. Hostage situations;
8. Kidnappings, extortion;
9. Officer involved shooting;
10. Bombings; and
11. Any criminal offense or situation for which the on duty ranking officer or shift supervisor believes a criminal investigator should be immediately assigned.

In the event the criminal investigator on call is unavailable, the Sheriff or the Chief Deputy will be contacted immediately for further guidance.

If requested by the assigned criminal investigator, the dispatcher will direct available patrol personnel to assist with protection of crime scene, traffic, crowd control, witness canvas, etc.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## CRIME CHECKLIST

The following is a crime checklist. It contains questions, which should be addressed during the criminal investigation, as well as specific questions relating to different types of crimes. These lists are not intended to be all-inclusive, but will serve as guides in doing actual investigations, preparing reports, and in supervisory review of such reports.

### General Investigative Questions:

#### *Who is involved?*

1. Who is the victim?
2. Who is the suspect?
3. Who is a witness?
4. Who reported the case?

#### *What happened?*

1. What took place?
2. What offense was committed?
3. What are the elements of the offense?
4. What was the object of the attack?

#### *When did it happen?*

1. When in time did the occurrence take place?

    a. At what hour?
    b. On what day?
    c. In what month?
    d. In what year?

2. Was it day or night?
3. Was it clear or cloudy?
4. Was it foggy, misty, raining, smoggy, snowing, hailing, sleeting, etc.?

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 5 of 10

## *Where did it happen?*

1. Where did the offense occur?
2. Where was the object of the offense?
3. Where is the object of the offense now?
4. Where was the object of the offense found?
5. Where was the perpetrator of the offense?
6. Where is the suspect now?
7. Where was the suspect when apprehended?
8. Over what area did the offense extend?
9. Where were the witnesses in relation to the crime scene?
10. Where are the witnesses now?

## *How did it happen?*

1. How was the offense committed?

    a. What preparation was made to commit the offense?
    b. What was done to avoid detection?

2. How was the property or person attacked?

    a. What method was used to induce the victim to give up his property?
    b. What means were used to overcome resistance of the victim?
    c. What means or instruments were used in the perpetration of the offense?

3. How did the offender act?
4. How did the victim act?
5. How did the situation assist in the commission of the offense?
6. How did the offender enter the crime scene?

    a. What means were used?

7. How did the offender leave the crime scene?

    a. What means were used?

## Offenses Against Persons:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

The offenses of robbery, assault, battery, murder, kidnapping, abduction, mayhem, sex offenses, and extortion are considered offenses against the person. The following questions should be answered in assisting the investigation:

1. What device, trick, ruse, or other method did the perpetrator use to gain access to the victim?
2. What did the perpetrator say, using exact wording?
3. What in detail did the perpetrator do?
4. How did he act?
5. What means did he use to commit the act?
6. What preceded the offense?
7. What was the victim doing immediately preceding and at the time of the offense?
8. Were there any accomplices?

    a. What did they look like?
    b. What did the accomplices do in participation of the crime?
    c. Did they arrive with the perpetrator?
    d. Did they leave with the perpetrator?

9. How did the perpetrator arrive and depart?
10. What other facts surrounding the occurrence could be used to identify the perpetrator and accomplices?

## Offenses Against Property:

### Burglary

1. Precisely what type of premises were entered?
2. Where was the point of entry?
3. Where was the point of departure?
4. What instruments were used to gain entry?
5. What was done by the investigator to preserve evidence of entry and exit?
6. What acts were committed by the perpetrator at the scene?
7. Where were occupants of the premises?
8. How did the perpetrator arrive and depart?
9. Are there any other facts or acts that can be used to identify the perpetrator?
10. From what place was property stolen?
11. Were there occupants on the premises?

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

12. Where were they?
13. What means were used to take the property?
14. How did the victim discover the loss?
15. What means were used to distract attention of victims or persons in the vicinity?
16. How did the perpetrator arrive and depart?

## *Fraudulent Checks*

1. How were the checks written or otherwise prepared?
2. What type of paper was used?
3. How were the checks returned?
4. What purpose was to be served by check?
5. What claim was made by the passer to establish authenticity of check?
6. Was the victim able to note description of check passer?
7. What caused the victim to notice the worthless check?
8. What did the passer say when presenting the check to the victim?
9. What time of day was the check passed?
10. How did the check passer arrive and depart?
11. Are there any other pertinent facts?

## *Embezzlement*

1. What property was the subject of the embezzlement?
2. What was the value of the property?
3. Who had ownership?
4. Who had possession of the property at the time of the conversion?
5. Under what circumstances was the property received or held?
6. How was the loss of the property discovered?
7. Where was the property recovered?
8. Who had possession of the property at the time of recovery?

## *Arson*

1. How was the fire reported?
2. Who reported the fire?
   a. Name
   b. Address
   c. Telephone number

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    d. Occupation
    e. Description
    f. Circumstances causing person to note fire

3. When time was the fire discovered?
4. Who discovered the fire?
    a. Name
    b. Address
    c. Telephone number
    d. Occupation
    e. Description

5. Where was the person who discovered the fire?
6. How did he happen to be there?
7. What type of structure or property was set on fire?
8. Was the building vacant, and if so, for how long?
9. Was the building inhabited?
10. Was a human being in the structure at the time of the fire?
11. Would an ordinary person have reason to know or suspect the building was inhabited?
12. Who occupies the building?
13. What type of business is carried on in the building?
14. How long has this business been at this location?
15. Who owns the building?
    a. Name
    b. Address
    c. Age
    d. Description
    e. When acquired building

16. How was the fire started?
17. What materials, accelerants, and devices were used?
18. What was the value of the property destroyed?
19. What were the findings of the arson investigator, of the fire department, and other agencies? (Such reports are attached as exhibits.)
20. Was there a burning or charring as distinguished from mere scorching?
21. What evidence (traces on clothing of suspect or clue materials at the scene) are

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 9 of 10



associated the suspect with the scene?

22. What actions of the suspect offered evidence of criminal intent?

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Campbell County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Off-Duty Conduct and Powers of Arrest | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

To determine and regulate off-duty conduct and those situations and locations in which a sworn departmental member is permitted to make an arrest while *off-duty*.

### PURPOSE:

To establish guidelines for all employees to follow concerning actions to be taken by off duty officers in certain situations and to provide guidelines to police officers regarding acceptable conduct and criteria for affecting an off-duty arrest.

### DEFINITIONS:

*Off-duty:* Not assigned or working a prescribed shift or duty. Further in the process of conducting personal business, leisure activities, or working for another person or business other.

*Personally Involved:* An officer is deemed personally involved when the off-duty officer, a family member, or a friend becomes engaged in a dispute or incident involving a personal matter with the person being arrested or any other person connected with the an incident, or the officer is accepting money for law enforcement or security duties from other than this department. This does not apply to situations where the police officer is a victim of crime.

### DISCUSSION:

*Off-duty officers* are often faced with situations involving criminal conduct that they are neither equipped, nor prepared to handle, in the same manner as if they were while *on*

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 203 of 340   PageID #: 668

*duty.* This may lead to unnecessary injuries to officers or others, and initial confusion for those on-duty officers arriving at the scene trying to correctly assess the facts. If reasonably possible off-duty officers will report observed crime, and allow on-duty officers to respond. The major exception is to intervene to protect human life.

Peace officers performing official acts under *color or law, and applying reasonably good judgment* are generally immune from civil liability or criminal prosecution. However, this conditional protection does not extend to acts intended to cause injury or damage, or to those actions that the officer knew, or reasonably should have known, were in conflict with the law or the established policies of this department. As a result, officers must exercise discretion when taking action where there is a perceived conflict of interest.

## PROCEDURES:

The following procedures apply to all officers of this department:

### General Guidelines for Off-Duty Conduct:
All employees of Campbell County Sheriff's Department will be considered as being off duty at any time other than during regularly scheduled working hours. All employees of this agency will be subject to call during their off-duty time. Employees will be subject to emergency stand-by as deemed necessary by the Sheriff or designee.

### Law Enforcement Action While Off-Duty:
Law enforcement officials of Campbell County Sheriff's Department, while off-duty, have a responsibility to take immediate law enforcement action in order to safeguard life or property, or to prevent the escape of a criminal. An officer should never find himself *personally involved* in any situation. Any attempt to become involved in or make arrest regarding a neighborhood quarrel or dispute involving friends or family constitutes personal involvement. In such a case, the *personally involved* officer will contact the department for the deployment of uniform personnel who have no bias to the outcome of the situation. However, all off-duty officers will carry official police department identification and a duty weapon at all times.

### Neighborhood Disputes:
Officers will not intentionally become involved in or attempt to intervene in neighborhood quarrels or disputes involving their neighbors. Such disputes are

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 204 of 340    PageID #: 669

considered conflict of interest and will therefore be handled by a disinterested officer of Campbell County Sheriff's Department.

Officers will not make arrests in their personal quarrels or those of their family or neighbors unless such action is warranted by the immediate threat of serious bodily harm or property damage. Call out in all situations involving off-duty personnel will require the use of discretion by the supervisor highest ranking officer in charge and will depend on the circumstances associated with each incident.

## Permitted Off-Duty Arrests:
When off-duty and within the legal jurisdiction of this law enforcement agency, an officer may make an arrest only when:

1. Officer is not *personally involved* in the incident underlying the arrest;
2. There is an immediate need for the prevention of a serious crime or apprehension of a felony or violent suspect;
3. The crime involved is a jailable offense requiring a full custodial arrest;
4. Officer is in possession of appropriate police identification; &
5. There are no on-duty officers present or capable of responding in a reasonable period of time.

## Permitted Off-Duty Arrests When Working In Private Employment:
When engaged in off-duty employment not associated with the police department, the officer should not make arrests that solely, or primarily serve the interests of the employer as opposed to the public in general.

## Off-duty responsibilities:
While off-duty, it is the responsibility of the police officer to:

1. Immediately report any suspected or observed criminal activities to on-duty authorities.
2. Refrain from enforcing summary offenses or minor violations such as harassment, disorderly conduct or other quality-of-life offenses. Instead, on-duty personnel will be contacted to respond to such situations.
3. Abide by all departmental policies and procedures when affecting the arrest.

## Non-Permitted Off-Duty Arrests:
Officers of this agency may not make an arrest off-duty:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



1. When the arresting officer is personally involved in the incident underlying the arrest.
2. When engaged in off-duty employment and the officer's actions are only in furtherance of the interests of the private employer.
3. As enforcement of a minor traffic regulation, code, administrative matter.
4. When the officer has custody or responsibility for minor children in his immediate charge, the officer's immediate responsibility will always be to the protection of the minor children in his immediate charge, and not to affect an arrest.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 206 of 340    PageID #: 671

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Search: Motor Vehicles | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

To conduct motor vehicle searches that are both legal and thorough, while strictly observing the constitutional rights of the owner and occupants of the motor vehicle. Search will only be conducted with due regard for the safety of officers, other persons, and the property involved.

### PURPOSE:

To provide guidelines for officers of this department to follow in conducting motor vehicle searches in the performance of duties as a law enforcement officer.

### PROCEDURES:

### General Provisions for Vehicle Searches:

There are three conditions under which law enforcement officers may search a vehicle. These conditions are *warrant, warrant-less,* and *consent searches.* When conducting a vehicle search, officers of Campbell County Sheriff's Department will:

1. Request owner or operator's consent, regardless of the type of search [*warrant, warrant-less,* or *consent searches*] to be conducted;
2. Obtain a search warrant, if feasible;
3. Avoid vehicle damage, unless reasonably necessary to carry out a safe and thorough search;
4. Search all areas of the vehicle, unless specified otherwise in the warrant, or in the consent.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Warrant Searches:**

Upon *probable cause*, and time permitting, officers will execute searches of vehicles, to include cars, trucks, buses, boats, and airplanes by means of a duly authorized search warrant. The request for the warrant will detail the vehicle to be searched, the areas in the vehicle to be searched, and the items to be seized. Additionally, the warrant will specify the information or evidence upon which the search warrant is justified, before taking the search warrant to the judge for approval. Officers will exercise care to insure that the information in the warrant is correct and timely, to the best of the officers knowledge at the time presentation to the judge. Remember the judge issuing the warrant is doing so based solely on the credibility of the officer, and his representation that the facts presented are true and correct.

In executing the search warrant, officers will use their best effort to:

1. Obtain a search warrant, if feasible;
2. Request owner or operator's consent, regardless of the circumstances involved;
3. Avoid vehicle damage, unless reasonably necessary to carry out a safe and thorough search;
4. Search all areas of the vehicle, unless specified otherwise in the warrant, or in the consent;
5. With the exception of the items seized, leave the vehicle and it's contents in the same condition as found.
6. Provide the owner or operator with a receipt of any items lawfully seized.

**Warrant-less Searches:**

On occasion, it may be necessary to enter a motor vehicle with *probable cause*, but without a *warrant* or the *consent* of an owner to:

1. Examine a vehicle identification number or determine ownership of the vehicle;
2. Remove a person from a vehicle in an emergency situation;
3. Seize evidence, contraband which are in plain view;
4. Make a protective sweep of vehicle passenger compartments for weapons; or
5. Perform an inventory search of all containers in the vehicle trunk or bed, during arrest or vehicle impoundment.

Officers making a lawful arrest may, without a search warrant, conduct a warrant-less search of a vehicle occupied by or in control of the accused in order to:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Protect the officer, the accused, or others;
2. Prevent escape of the accused or others;
3. Furnish appropriate custodial care, if the accused is jailed, and the vehicle is in a public area;
4. Obtain evidence of the offense for which the accused has been has been arrested; or
5. Seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Officers will not abuse the conditions of warrant-less searches. And, if possible will ask permission of the owner or operator of the vehicle before conducting a warrant-less entry or search.

## Consent searches:

Officers may conduct a warrant-less search, with or without *probable cause*, after obtaining *consent* by the vehicle owner or operator of the vehicle. The extent of a consent search may be limited to specific areas of a vehicle, depending on the terms of the consent. A person granting consent to search may limit the scope of the consent, or may not consent to a warrant-less search. This is a constitutional right of the individual. A receipt will be made and delivered to the consenting party regarding seized illegal items.

## Location of Vehicle Searches:

Officers of Campbell County Sheriff's Department may use their discretion to search a vehicle, without a search warrant under the following conditions:

1. On a public way or waters, or other area open to the public;
2. In a private area unlawfully entered by the vehicle; or
3. In a private area lawfully entered by the vehicle in order to prevent destruction of evidence or contraband.

In the case of searches authorized by a search warrant, the search warrant will specify the location, conditions, and vehicle to be searched.

## Search of Containers Found in a Vehicle:

1. Containers, including paper bags, cardboard boxes, and wrapped packages, may be searched, under a *warrant* or *probable cause* if:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

a. Found within the vehicle passenger compartment;
b. Found during a consent search; or
c. Discarded from the vehicle.

2. Locked containers such as attaché cases, suitcases and footlockers may be opened under a warrant or consent of the owner only.
3. Containers will be searched at the location where the vehicle was discovered or detained.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 4

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Major Crime Scenes | Policy Number: |
| --- | --- |
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

The actions taken by patrol and investigative officers at crime scenes often determine the course and success of a criminal investigation. Initial responding officers play the lead role by protecting the crime scene, rendering emergency services and initiating the investigation. Thus, it is the purpose of this policy to provide officers with guidelines for responding to and dealing effectively with the operational demands at crime scenes.

### POLICY:

It is the policy of Campbell County Sheriff's Department that all officers understand and follow applicable procedures established herein to effectively protect, collect and preserve evidence of a crime and conduct initial investigative and other essential tasks at major crime scenes.

### PROCEDURES:

#### Initial Response:
Until otherwise directed by a superior officer, detective, or other officer specifically assigned to criminal investigations, initial responding officers will begin the preliminary investigation.

It will be the responsibility of the initial responding officer(s) to:

1. Remain aware of suspects/vehicles that may be in flight while in transit to the crime scene;
2. Verify that a crime has been committed and relay essential information to communications on arrival;
3. Administer first aid and/or summon emergency medical assistance if required and take those steps necessary to protect victims or others;
4. Arrest the perpetrator if at the scene. A decision to leave the crime scene to arrest or pursue the perpetrator should be made based on weighing the

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.
Data subject to this restriction is contained throughout this publication.

immediate needs of victims and others against the safety of the public if the perpetrator were allowed to escape;

5. Provide communications with such information as:

   a. Nature of the crime committed;
   b. Description of the perpetrator, mode, and direction of flight;
   c. Description of any vehicle used by the offender and any accomplices;
   d. Use of firearms or other deadly weapons; and
   e. Any support required at the crime scene.

6. Identify:

   a. Any witnesses to the crime, secure their identities, and request that they remain present at the crime scene until they can be interviewed;
   b. The identities of any other persons who were present upon arrival at the crime scene;
   c. The license tags of vehicles parked near the crime scene and remain aware of suspicious persons on hand at or near the crime scene.

7. Provide superior officers and any other investigative personnel arriving on the scene with complete information on the offense and the measures taken thus far by officers and others.

**Preservation of the Crime Scene:**

In preserving a crime scene, all initial responding police personnel will:

1. Enter the crime scene only for purposes of aiding victims or bystanders in need of immediate assistance, apprehending perpetrators, or securing the area. Officers will, where feasible, avoid touching, walking upon, moving objects, or otherwise altering or contaminating the crime scene;
2. Define the boundaries of the crime scene to include all areas that may reasonably be searched for evidence.
3. As necessary, considering the nature and seriousness of the crime, officers should:

   a. Request backup assistance to restrict access to the crime scene and control any on-lookers;
   b. Erect barricade tape, rope or cordon off, lock or otherwise secure the immediate crime scene and restrict access to defined crime perimeters; and

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.

Data subject to this restriction is contained throughout this publication.

    c. Record any alterations made at the crime scene due to emergency assistance to victims, the actions of persons reporting the crime, and handling of any items of evidentiary value or other actions.

4. Restrict all persons from the crime scene who are not directly involved in the investigation. In the case of homicides or other major crimes the officer-in-charge (OIC) will ensure that the identity of all persons entering the crime scene is recorded;

5. Approach homicides and other major crime scenes in a single defined line in order to avoid destruction of footprints and other impressions and the contamination of scent trails that may be useful in canine searches. The "place last seen" of a kidnapped or missing person should also be protected in a similar manner.

## Collection of Evidence:

Initial responding officers at major crime scenes will not engage in collection of items of potential evidentiary value unless absolutely necessary or unless directed by the OIC. If directed so by the OIC, officers may engage in the following tasks:

1. Officers will clearly and completely document the chain of possession of all evidence in accordance with agency policy beginning with initial collection, packaging, and labeling at the crime scene.

2. Officers will search the crime scene—in a manner or method prescribed by the OIC—for any items that may establish how the crime was committed or who committed the crime. This may include but is not limited to:

    a. Objects found in unexpected or unusual locations; and

    b. Weapons, tools, clothing, stains, blood spatters, fingerprints, footprints, tire or tool mark impressions, broken glass, fibers, soil or other items or substances.

3. Officers will comply with this agency's policy and procedures on "Evidence Control" for purposes of properly photographing, preserving, packaging, and labeling criminal evidence.

## Interviewing Witnesses:

Witnesses at the crime scene will be identified and preliminary interviews conducted as soon as possible. The neighborhood surrounding the crime scene should be canvassed promptly in order to identify additional witnesses or others who may have some knowledge of the crime. The purpose of these interviews is to gather basic information about the crime at the earliest point possible in order to identify the perpetrator and establish the basis for the follow-up investigation.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.

Data subject to this restriction is contained throughout this publication.

## Crime Scene Reporting:

Officers conducting the preliminary and follow-up investigations will complete appropriate reports in accordance with agency policy. At a minimum, reports will include:

1. Date and time of arrival at the scene;
2. Any relevant weather or situational conditions such as the status of the crime scene upon arrival (e.g., fire, crowds, and initial observations);
3. How the crime was discovered and reported and the relationship of reporting individuals to victims or others if appropriate;
4. The identity of other officers or emergency personnel present upon arrival and those who responded to the crime scene thereafter;
5. Physical evidence discovered and the identity of the officers responsible for its collection (special note should be made of any valuables collected at the scene, such as currency or jewelry);
6. Name, address, and telephone number or other appropriate identification of witnesses to the crime;
7. Results of interviews with victims and witnesses to include in particular the identity or best possible description of suspects, method of operation, means of escape and any other pertinent identifying information;
8. Diagrams, sketches, photographs video tape or other similar information made at the scene or the identity of officers or civilians who made such recordings; and
9. Recommendations for further investigation such as the names of witnesses or others who may be able to provide additional information.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.

Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Operations and Undercover Investigations | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

The purpose of this policy is to provide general guidelines for conducting operations and undercover investigations that will maximize enforcement effectiveness in the safest possible manner.

### POLICY:

Operations and undercover investigations are an important departmental activity used in anticipation of enforcement actions against criminal suspects who are possibly armed. Because these assignments are inherently dangerous, officers assigned to these duties will follow department policy and procedures designed to ensure operational effectiveness. If enforcement action is taken, it should be done so as to minimize potential harm to both civilians and officers.

### PROCEDURES:

**Preparation:**
Officers assigned to operations or undercover investigations will review this department's policy and procedures for conducting these operations and the department's use-of-force policy.

The officer in charge (OIC) of the operation or undercover investigation will "advance" the designated location to:

1. Interview appropriate parties to ascertain their level of cooperation, to inform them of the nature of the operation and their individual responsibilities related to conduct and safety, and impress upon them the importance of keeping the operation strictly confidential.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

2. Survey the establishment to determine manpower, equipment and logistical requirements and prepare a floor plan for the tactical briefing.
3. Prepare a tactical plan.

Prior to deployment, the OIC will assemble the team for a detailed briefing of the tactical plan of operation, to include:

1. All available intelligence on the suspects, their MOs, photographs or composites, armament used and potential for violence, tactics and routines, use of drugs, method of approach and escape, and other relevant information.
2. A detailed assessment of the location as developed by the advance team, to include all entry and exit locations, work stations, positions of cover and surveillance and information on building construction and other matters relating to unsafe fields of fire.
3. Weapons and other equipment needs and requirements to include the mandatory use of soft body armor and the use of videotape to record the operation whenever possible.
4. Individual and team assignments and responsibilities, for inside and outside personnel and manpower rotation and relief procedures.
5. Review of contingency plans in cases relating to the use of force, injury of officers or civilians, taking of hostages, barricaded suspects, threatened use of explosives or other unexpected events, as well as potential logistical problems such as communication or vehicle failure.

## Deployment:

1. Operations and undercover investigations may consist of an inside and outside team. Enforcement action should not be initiated by the inside team unless circumstances dictate such action for the safety of officers or others, or the tactical plan has designated such action. The inside team will be used primarily to relay information to the outside team for purposes of arrest.
2. The inside team will be responsible for final briefings of the establishment's employees, instructing them in the actions they should take in the event of an armed encounter and informing them that they are not to initiate any enforcement actions on their own.
3. Operations and undercover investigations teams are designated for enforcement actions only with regard to the tactical plan and will not be used to enforce less serious infractions.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 3

4. Uniform officers on patrol in the immediate vicinity of an operation or undercover investigation may be informed of the operation prior to beginning their shift, if such knowledge would not jeopardize the mission.

5. Inside team officers who are not in concealed positions may assume roles and attire similar to that of others in the establishment. Outside team members will observe good surveillance and concealment tactics at all times and maintain positions that provide easy and rapid access to the establishment.

6. In order to conceal their identity and equipment, officers will exercise particular caution when entering and exiting the location. Officers will not enter or leave as a group.

7. Weapons will be readily available to team members at all times but will not be hidden next to cash registers or in other common hiding places. All weapons will be maintained in a ready condition.

8. Officers should be assigned a dedicated radio channel for purposes of the operation and radios should be equipped with earplugs for security purposes.

9. Outside officers will be alert to the following types of situations and keep inside officers informed of the following suspicious persons or events:

   a. Persons loitering around the premises.
   b. Automobiles that drive by the establishment slowly and frequently.
   c. Persons wearing inappropriate, out-of-season clothing such as overcoats, raincoats, and ski caps.
   d. Suspicious persons carrying shopping bags, duffle bags, or coats.

10. Uniformed officers will be summoned as soon as possible following a crime. All plainclothes officers at the scene will ensure that they are properly and easily identifiable as law enforcement officers to responding officers.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Campbell County Sheriff's Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Investigating Child Abuse | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

**PURPOSE:**

The purpose of this policy is to provide officers with guidelines for recognizing instances and accepting reports of child abuse and neglect and coordinating the investigation of such cases with appropriate child protective service agencies, and prosecuting attorney's offices.

**POLICY:**

Child abuse and neglect has been traditionally regarded as the principle responsibility of child protective services and social welfare agencies. However, research has demonstrated that a large percentage of repeat offenses, many of which involve serious injury or death, involve known offenders. It is the position and policy of Campbell County Sheriff's Department that effective response to child maltreatment requires cooperative and coordinated efforts between social welfare and law enforcement agencies, and further, that under certain circumstances, arrest and criminal prosecution is an appropriate and preferred approach to the problem from a preventive standpoint. Therefore, all reports of child abuse and neglect will be thoroughly investigated in accordance with this policy and appropriate measures taken consistent with state law that will best protect the interests of the child.

**DEFINITION:**

*Child Abuse:* Any situation in which:

1. Parents, guardians, or other responsible adults have inflicted physical and/or sexual abuse upon a child;
2. The child has been exploited for sexual purposes through prostitution or pornography;
3. The child has been subjected to reckless endangerment that has or would likely

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

cause physical harm; or
4. The child has been subjected to emotional assault such as a closed, sustained confinement.

*Child Neglect:* Any situation in which parents, guardians, or other responsible adults have failed to provide:

1. Essential physical needs of the child to include food, clothing, and shelter and that caused or would likely cause serious physical injury, sickness, or disability;
2. Essential medical care to treat or prevent serious physical injury, illness, or emotional disability; or
3. Needed emotional nurturing and stimulation that has or could likely cause emotional injury over time.

*Abandonment:* Leaving a child alone or in the care of another under circumstances that demonstrate an intentional abdication of parental responsibility.

## PROCEDURES:

### Reporting/Initial Complaint Response:

State law requires that instances or suspected instances of child abuse or neglect be reported by public and private officials such as physicians, dentists, school employees, clergymen, and others. Officers will record and respond to all reports of child abuse, neglect, and abandonment in the following manner:

1. A preliminary interview will be conducted with the reporting individual, when known, to determine the basis for the report, to include determination of such factors as:

   a. The physical condition of the child;
   b. A description of the abusive or neglectful behavior;
   c. Evidence of parental disabilities such as alcoholism, drug abuse, mental illness, or other factors that demonstrate or suggest their inability to care for the child;
   d. Description of suspicious injuries or conditions;
   e. The nature of any statements made by the child concerning parental maltreatment; and
   f. Any evidence of parental indifference or inattention to the child's physical or emotional needs.

2. When the source of the report cannot be identified and/or time is not of the essence, a report of the complaint will be made to the state child protective

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

authority as prescribed by law. Where reasonable suspicion exists for further investigation, a coordinated investigative effort should be undertaken with the child protection authority.

3. Immediate action will be taken by officers when:

   a. The complaint warrants arrest or criminal prosecution;
   b. Child protective personnel are not available and time is of the essence;
   c. The child is in danger and child protective personnel cannot enter the home;
   d. The suspected perpetrator may flee;
   e. Police presence is required to maintain order or to protect the safety of child protection officers; or
   f. When the child must be taken into protective custody against parental wishes.

4. The preferred means of removing a child from the home is by court order. However, in cases of abandonment, severe abuse, or neglect, where the child is in imminent danger of death or serious bodily harm and time is of the essence, an officer will remove the child from the home for purposes of protective custody. The assistance of child welfare authority officers should be sought, if available, in a timely manner. Parental permission should also be sought, but is not required in order to remove the child under emergency circumstances.

5. In cases where protective custody is warranted and time permits, the state child protection agency will be notified and a court order for protective custody will be sought prior to the child's removal.

## Background Investigation:

Investigating complaints of child abuse generally requires contact with several sources of information depending upon the nature of the complaint and the scope of abuse. In all but emergency situations, the following sources of information should normally be contacted prior to interviewing the family and/or the child:

1. *Medical personnel:* Family practitioners, emergency room staff and medical examiners often acquire information that confirms or suggests abuse which may include:

   a. "Pattern" injuries that may be linked to specific objects used in an attack such as hot irons, coat hangers; fingertip marks caused by tight gripping; straight, curved, or jagged lesions indicating whipping; bite marks; and scald or peculiar burn marks;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



b. Injuries to specific body parts such as the genitals, buttocks or rectum as well as trauma to the torso, upper arms and thighs in the absence of other common injuries commonly suffered by children in play accidents such as skinned knees, elbows, and forehead;

c. Signs of old injuries to various parts of the body in different stages of healing, particularly those that are not common to childhood;

d. Bone fractures of small children and related injuries that are inconsistent with the child's level of maturity and risk of injury, such as spiral fractures (suggesting vigorous shaking), fractures to the rear and upper skull (suggesting blows to the head), subdural hematomas without scalp contusions (suggesting violent shaking with resultant head whiplash), and fractures of long bones and joints that are suggestive of violent pulling, twisting, or jerking of the extremities;

e. A history, pattern, or extent of injury that does not correlate with the alleged cause of death or means of injury;

f. Inordinate delay in seeking medical attention, evidence of administration of home remedies for relatively serious injuries, history of prior visits to different emergency rooms, frequent changes of physicians and prior diagnosis of "failure to thrive", and at autopsy, the presence of old injuries or other internal injuries that were not detectable through external examination.

2. *Social welfare officers:* They provide considerable insight into situations of suspected child abuse as many abusive families have had prior contact with local support agencies. These agencies may provide supportive information on:

   a. Family background;
   b. Employment;
   c. Economic and domestic stability; and
   d. Previous contacts with child protective service agencies.

3. *School teachers:* They also provide some insight into cases of suspected child abuse through records of the child's attendance, grades, demeanor, socialization, motivation and perceived emotional stability. Several behavioral indicators suggestive of child abuse include:

   a. Recurrent injuries or complaints of parental physical mistreatment;
   b. Marked changes in the child's behavior or level of achievement;
   c. Strong antagonism toward authority;
   d. Exaggerated reactions to being touched;
   e. Withdrawal from peers, assaultive or confrontational behavior;
   f. Delinquent acts, running away from home or truancy; and
   g. Refusal to dress for physical education or dressing inappropriately.

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Family Interview:**
Based on information generated in the background investigation, reasonable suspicion may exist to conduct an interview with the family and the child. The interview may comprise the following criteria:

1. If there is reason to believe that charges may be filed against the parents or others, interviews should be conducted at the law enforcement agency and prior contact, when appropriate, should be made with the prosecutor's office.
2. A child protective service officer should participate with the investigator in the interview.
3. The interview should be conducted in a non-accusatory, informal, fact-finding manner, and questions should be presented in an open-ended format to allow parents or others complete latitude in responding.
4. In determining whether to accept a parent's explanation, officers should consider the following questions:

    a. Is it reasonable to believe that the child's injuries were self-inflicted or accidental given the child's maturity, manual dexterity and ability to walk or stand? (No)
    b. Was the parent's story consistent with other evidence? (No)
    c. Do parents claim ignorance of critical details of the incident? (Yes)
    d. Does the home appear to be clean and well maintained? (No)
    e. Does the family live a socially isolated environment without the support of neighbors, friends, or family? (Yes)
    f. Do the parents appear to support one another in a positive home environment? (No)
    g. Does there appear to be frequent or ongoing crises in the family? (Yes)

5. Some parents may explain or excuse the incident as a legitimate attempt to discipline the child. However, in order to be reasonable and acceptable, the discipline should:

    a. Be appropriate to the misbehavior involved but never involves serious injury;
    b. Be consistent with the child's ability to understand its relevance to acts in question; and
    c. Be administered with prudence and caution rather than recklessly, brutally, or without sufficient regard for the child's power of endurance.

**Interviewing Children:**
    Officers conducting interviews with children in suspected child abuse cases

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

should be familiar with and follow this agency's policy on interviewing children. In general, the officer should:

1. Interview the child separately from his/her parents.
2. Avoid repeated interviews with the child, whenever possible.
3. Have joint interviews with the child protective worker or prosecutor to minimize the trauma of these sessions.
4. Avoid questions that can be answered with a "yes" or "no" response, and use open-ended questions.
5. Use anatomically correct dolls.
6. Conduct the interview with the child sitting in a casual and non-threatening manner rather than across a table.
7. Not lead the child or suggest answers, probe or pressure the child for answers, or express concern, shock or disbelief in response to answers.
8. Reassure the child that he/she is not to blame and is not in trouble for what happened or for being asked questions.

## Physical Evidence:

Collecting physical evidence to document abuse is very important for prosecuting these cases. In this regard, officers should be aware of the following:

1. Color photographs of injuries should be taken and preserved for evidentiary purposes. They may be taken by medical personnel or by a same-sex officer of this agency. All injuries should be described in writing and diagrammed.
2. X-rays should be taken if appropriate, and any that have been taken should be collected and preserved.
3. Photographs of home conditions bearing on the child's maltreatment should be taken.
4. Any instruments that were used in the physical attack should be identified and preserved as well as any clothing that bears evidence such as blood or semen stains.
5. Any other items that have bearing on the abuse or neglect, such as guns, knives, drugs, poisons or related items in possession of the suspected perpetrator, should be identified and collected.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Covert Electronic Recording | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority<br>Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to restrict the use of covert electronic monitoring or recording devices to those investigations where there is a reasonable suspicion of criminal activity and the use of this investigative technique is essential in determination criminal wrongdoing, or in gathering evidence of known criminal activity. Official use of covert electronic monitoring techniques by this agency is subject to approval by the Sheriffor Chief Deputy and with the concurrence of the Prosecuting Attorney.

### PURPOSE:

To provide officers of Campbell County Sheriff's Department with guidelines in the application of covert electronic recording devices.

### DEFINITIONS:

*Consensual Monitoring and/or Recording:* Monitoring and/or recording of private conversations of an individual or group of individuals whom investigating officers reasonably suspect are involved in, or are planning to commit a criminal offense and; that a consenting party is present during the monitoring and/or recording of such conversations. Consensually monitored conversations may be by *telephone recorders, body recorders, or transmitters* that are recorded on magnetic tape, digital media, CCTV, or other electronic recording equipment. To be consensual, at least one of the parties to the conversation(s) must be aware that the conversation(s) is being electronically monitored or recorded, and agree to the monitoring or recording.

*Non-Consensual Monitoring and/or Recording:* The monitoring and/or recording of private conversations of individuals or group of individuals whom investigating

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

officers reasonably suspect are involved in, or are planning to commit a criminal offense, and where no party involved in the conversion consents to the recording or monitoring of the conversation(s) is a *non-consensual monitoring* or recording. Federal and many state laws prohibit such recordings by law enforcement officers except under the strict terms of a specific court order.

*Covert:* An electronic device is *covert*, when it is hidden from normal view or otherwise secreted away, and at least one of the individuals to be recorded has a reasonable expectation of privacy. Examples of covert recording devices are body recorders or transmitters, miniature closed circuit televiston [CCTV], or parabolic microphones.

*Overt* surveillance – Is the use of electronic or photographic equipment that is not hidden from general view, regardless of whether on not the suspect actually see the monitoring device or knows of it's existence. Examples of overt surveillance devices include:

   a. *CCTV mounted in hallways;*
   b. *Officers carrying a tape recorder in their hand or placing it on a table;*
   c. *CCTV equipment mounted in a patrol car;* or
   d. *Use of handheld video camera.*

*No or low expectation of privacy* – In some instances residents have no or low expectations of privacy. For example:

   a. Officers recording telephone conversations where they are a party to the conversation.
   b. Officers recording face-to-face conversations where they are a party to the conversation.
   c. Recording information at a crime scene.
   d. Monitoring and recording public hallways, elevators, rooms [less restrooms], of a public building, including department facilities.
   e. Monitoring and recording sobriety tests.
   f. Recording of voluntary statements made by victims, witnesses, or suspects.
   g. Recording routine traffic stops with portable or fixed recording equipment.

For policy guidelines on *overt* or instances where there is *no or low expectation of privacy* see policy on "Overt Electronic Recording".

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 5

## LIMITATIONS:

With approval, officers may utilize a covert electronic recording device in conjunction with a *consenting party*, such as a *cooperating witness, informant, or undercover officer* in accordance with state and federal laws. Officers should be mindful that the interception of any form of communication which is not *consensual* and where the consenting party is not present, is not legal in Tennessee. In other words the consenting party needs to be present during all parts of the conversation.

## PROCEDURES:

### Use of Covert Electronic Recording Devices in Consensual Surveillance:

1. Prior to the use of any covert recording device in a consensual setting, the consenting party will agree to and sign a <u>Consensual Monitoring Consent Form</u>.
2. Once the surveillance activity is completed, all original recording tapes will be duplicated as needed, sealed, and stored as official evidence.
3. The use of electronic recording devices for surveillance or undercover purposes often requires a balance between the need for information gathering, against the rights of the individual(s) being investigated. With this in mind, officers will:

   a. Use lawful and non-intrusive investigative techniques to collect information necessary to prevent a criminal act from occurring, to identify suspects, and to aid in prosecution; &
   b. Complete a thorough investigative report, during each phase of the investigation process.
   c. Continually, evaluate the need for covert electric surveillance in this particular case.

4. All information gathered by electronic recording will only be disseminated on a strict *need to know basis.*

### Departmental Approval - Use of Electronic Recording Devices:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 5

The Sheriff is responsibility for approval and direction of investigation activities that utilize consensual covert monitoring technique. Departmental approval may be obtained by:

1. Any officer conducting a legitimate investigation, where covert monitoring may be an important aid to investigation.
2. Complete a formal written request, and forward document to the responsible supervisor.
3. Approval, if forthcoming will be confirmed in writing, and recorded in the investigative case file.

**Prosecuting Attorney Approval - Use Consensual Covert Electronic Devices:**
Once Departmental approval is obtained for consensual monitoring, approval of the Prosecuting Attorney must be obtained as follows:

1. The investigating officer will make telephone contact with the prosecuting attorney or a deputy prosecutor and present the facts of the case. The prosecuting attorney or deputy prosecutor must concur with use of the consensual monitoring technique stating that:

   a. The use of this technique, under the circumstances of this case, is legal; and
   b. The use of the consensual monitoring technique does not constitute entrapment.

2. Whether approved or disapproved, the investigating officer will finalize the Consensual Monitoring Request Form by completing the designated portion of the form. If approved, a copy of the completed form will be forwarded to the office of the prosecuting attorney within 5 days.

**Use of Electronic Recording Devices in Covert Non-Consensual Surveillance:**

1. Prior to the use of any covert recording in a non-consensual surveillance, the department, through the prosecuting attorney, will obtain a *court order* from a court holding jurisdiction in the case.
2. To start the approval process, investigators will verbally brief the prosecuting attorney on the necessity, means, and anticipated resources necessary to conduct the surveillance.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 5

3. The prosecuting attorney will make the final determination regarding any petition to the court for an authorizing court order.
4. Under no circumstances will an officer of this department conduct or be associated with a non-consensual covert monitoring or recording activity that is not authorized by a court order.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## CONSENSUAL MONITORING REQUEST AND CONSENT FORM

The following Consensual Monitoring Request and Consent Form may address a number of monitoring techniques to include:

1. Installation of a recording device on a telephone;
2. Installation of a closed-circuit television (CCTV) or other type of video recording device; or
3. Placement of a transmitter or body recorder on a person or officer.

*All monitoring techniques must be documented fully under the section labeled Summary of Facts to include any relevant information.*

**General Information:**

Date: _____ Time: _____

Address of location to be monitored:

_____
*Address*                                    *City*                                    *State*

Name of Officer Requesting the Consensual Monitoring:

_____

Name of Consenting Party:

_____

Monitoring Technique:

_____

Summary of Facts (attach additional paper if necessary):

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature of Requesting Officer(s):

_____

Signature of Witness #1:

_____

Signature of Witness #2:

_____

**Approval by «Approval_title»:**

Date:_____Time: _____

Name of «Approval_title»: _____

Signature of «Approval_title»: _____

Request Approved (Yes or No): _____

**Step 3- Approval by Prosecuting Attorney:**

Date: _____Time: _____

Signature of Investigating Officer Presenting Facts of the Case to the Prosecuting Attorneys Office: _____

Name of Prosecuting Attorney: _____

Signature of Prosecuting Attorney: _____

Request Approved (Yes or No): _____

*Based on the facts as presented, this request is approved for a period of thirty (30) days. Any further monitoring after the thirty (30) day period will require further review of the investigation.*

## CONSENSUAL MONITORING CONSENT FORM
### Transmitter or Body Recorder

Date: _____

I,_____,

*Full Name of Consenting Party*

_____

*Address*

hereby authorize _____ of

*Name of Officer(s)*

_____

*Name of Department or Agency*

to place a transmitter or body recorder on my person for the purpose of recording any conversations with _____,

*Name of Subject(s)*

which, I may have on or about _____

*Date*

I have given this written permission to the above named officers knowingly, voluntarily and without threats or promises of any kind. I understand that I must be a party to any conversation in order to record that conversation.

I, therefore, agree not to leave the recording equipment unattended or take any other action, which is likely to result in the recording of conversations to which I am not a party.

_____

*Signature of Consenting Party*

_____

*Signature of Witness #1*

_____

*Signature of Witness #2*

# CONSENSUAL MONITORING CONSENT FORM
## Telephone Recording

Date: _____

I,_____, _____
      *Full Name of Consenting Party*                   *Address*

**hereby authorize** _____ **of**
                           *Name of Officer(s)*

_____
                   *Name of Department or Agency*

**to install a recording device in a telephone located at** _____

**for the purpose of recording any conversations that I may have on that telephone**

**with** _____, **on or**

**about** _____
                   *Date*

**I have given this written permission to the above named officers knowingly, voluntarily and without threats or promises of any kind.**

_____
*Signature of Consenting Party*

_____
*Signature of Witness #1*

_____
*Signature of Witness #2*

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Overt Electronic Recording | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to use overt electronic surveillance techniques and equipment whenever reasonably possible to deter crime and provide a record of events that might be used as evidence in a criminal case.

### PURPOSE:

To provide officers of Campbell County Sheriff's Department with guidelines in the application of Overt electronic recording devices.

### DEFINITIONS:

*Covert:* An electronic device is *covert*, when it is hidden from normal view or otherwise secreted away, and at least one of the individuals to be recorded has a reasonable expectation of privacy. Examples of covert recording devices are body recorders or transmitters, miniature closed circuit television [CCTV], or parabolic microphones. For department guidelines on covert surveillance see our policy on Overt Electronic Recording.

*Overt* surveillance – Is the use of electronic or photographic equipment that is not hidden from general view, regardless of whether on not the suspect actually see the monitoring device or knows of it's existence. Examples of overt surveillance devices include:

a. *CCTV mounted in hallways;*
b. *Officers carrying a tape recorder in their hand or placing it on a table;*
c. *CCTV equipment mounted in a patrol car;* or
d. *Use of handheld video camera.*

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

*No or low expectation of privacy* – In some instances residents have no or low expectation of privacy. For example:

a. Officers recording telephone conversations where they are a party to the conversation.
b. Officers recording face-to-face conversations where they are a party to the conversation.
c. Recording information at a crime scene.
d. Monitoring and recording public hall ways, elevators, rooms [less restrooms], of a public building, including department facilities.
e. Monitoring and recording sobriety tests.
f. Recording of voluntary statements made by victims, witnesses, or suspects.
g. Recording routine traffic stops with portable or fixed recording equipment.

## PROCEDURES:

Officers may utilize during both routine and special investigation *overt recording equipment* when the recording equipment is generally in view or when there is *no or low expectation of privacy*.

*Overt recording equipment utilized by officers may be issued by the department or carried as personal equipment. Such overt recording equipment may include:*

a. *Personal hand held tape recorders;*
b. *Personal handheld CCTV recorders;*
c. *CCTV mounted in department hallways, interview rooms, and assembly areas;*
d. *CCTV or audio recording equipment installed in patrol cars; and*
e. *CCTV equipment installed in sobriety test rooms.*

## Personal tape Recorders:

Some officers may choose to carry and use personal tape recorders or portable video cameras. These devices can be used for a lot of administrative uses, to include making notes, dictating reports, or recording accident locations. When using these devices officers may use their own discretion regarding retaining video or audio tape. As a general rule of thumb, if the recorded tape can possibly be used

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

as evidence in a criminal case the tape will be saved and secured as any other evidence. Otherwise the tape may be used again after one week.

**Evidence and Recording Tape Rotation:**

For other than personal audio and video tape recorders, surveillance tapes from patrol units, department CCTV installations, and any other similar device will be maintained for thirty days, before they are allowed to be reused. Only the tapes that lack evidentiary value will be placed back in inventory and reused. Recordings that have evidentiary value will be tagged and stored as any other evidence, until the case is closed.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
### Policies and Procedures

| **Subject:** Computer Issues | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

## POLICY:

It is the policy of Campbell County Sheriff's Department to establish a set of guidelines for governing use and access of information contained in departmental computers. Campbell County Sheriff's Department will comply with applicable federal laws regarding electronic communications and software copyright regulations, safeguard the department from computer virus infections, and limit Internet use to business purposes only.

## PROCEDURES:

### Authorization and Use:

Authorized use of the police computer system is restricted to entries, modifications, research, investigations, and inquiries on local, state, and national computer files,. The police computer system is intended solely as an aid to assist employees in the performance of their assigned responsibilities. Employees therefore, will limit their transactions and activities to necessary assigned responsibilities. Security clearance and access to information is restricted to official business and does not permit the employee to access information for personal reasons. Any misuse of the police computer system or violation of the provisions of this general order will be considered grounds for disciplinary action.

### Use of information:

Much of the information obtained through the police computer system contains confidential and sensitive data, which must be carefully controlled to ensure that the department is in compliance with applicable local, state, and federal guidelines. Any employee accessing police files or obtaining information from the police system will be held accountable for the appropriate and correct use of the information and for the proper disposal of the information. This information should be considered in

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

conjunction with other information about the circumstances of the offense before any arrest is made.

## Responsibility:
Employees who use the computer will be held accountable for proper operation and for each transaction made. The in-house police computer will maintain tracking of all entries; recording the time, date, person making the entry, and the file entered. Employees operating the police computer system will exercise reasonable care of the equipment and held responsible for any damage resulting from intentional abuse or negligence.

## Software Guidelines:
In compliance with software piracy laws, no software from this agency may be removed from the premises or copied for personal use. No software may be brought into this department and installed into agency computers without the express written permission of the Sheriff or designee. When permission is obtained, the software will be installed by a qualified individual in accordance with licensing agreements. Requests for new software may be made through the office of the Sheriff or designee. If approved, the software will be purchased and registered to the department. Software loaded on individual computers is subject to review at any time. Unauthorized software will be removed. No unauthorized personnel are to be allowed access or use of departmental computers in the agency or in homes of employees.

## Internet and E-mail Guidelines:
In accordance with departmental procedure, access to the internet and e-mail are intended for official business. Messages transmitted or received by e-mail are considered property of this agency rather than personal, confidential messages of the employee. The supervisory staff has the right to enter the agency e-mail system and review, copy, delete, or disclose any message. Passwords will be used to gain access to the e-mail system, and will be changed frequently. E-mail messages should not be left on the computer screen when the employee is away from their desk. No information protected by copyright laws, including software, will be sent or copied via e-mail. All messages on the e-mail system will be businesslike. There will be no tolerance for using the system for personal messages or for any message containing profanity, vulgarity, and/or harassing or defamatory language.

## Laptop Guidelines:
Items, which are subject to theft, such as laptop computers, require extra diligence in

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

safeguarding for travel. Following are guidelines to be followed when a laptop is carried outside of the department:

1. Always carry the laptop in its specially padded carrying case.
2. When traveling by air, always carry the laptop on the airplane. Never check the laptop as baggage and never put the laptop inside another case checked as baggage. The only exception to this is that a laptop can be shipped in a special shipping container with padded foam for shipping sensitive electronic items.
3. Always hand-carry the laptop when traveling to and from the airport. Don't put it in the trunk of a cab or on the rack of an airport shuttle.
4. Always make sure that there is not a disk in the floppy drive or a CD in the CD ROM drive while traveling. This could cause damage to the laptop.
5. If you have the need to carry one of the computers home to work on agency projects, the computer must be carried to and from the office on a daily basis during the workweek. Under no circumstances will Campbell County Sheriff's Department property be left at your residence while you are at work.
6. Laptop computers may be assigned individually or signed out at departmental discretion.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Evidence Collection, Control, & Storage | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to collect, secure, store, readily retrieve, and record any change in custody all suspected or actual criminal evidence collected or held under the jurisdiction of this department.

### DEFINITIONS:

*Chain of Evidence*:  The continuity of the custody of physical evidence from the time of original collection to final disposal, as may be introduced in a judicial proceeding.

*Impounding Officer*:  The law enforcement officer that initially receives evidence and initiates the chain of custody.

*Physical Evidence*:  Any substance or material found or recovered in connection with a criminal investigation.

*Evidence Custodian*:  The department employee who is accountable for controlling and maintaining all evidence accepted by or stored in the evidence room.

*Evidence Room*:  Facilities used by this department to store and secure evidence.

### PROCEDURES:

### Officer Responsibilities Upon Arrival of Crime Scene:
When arriving at an actual or suspected crime scene, the responding officer's responsibilities include:

1. Locating and assisting any person(s) who are injured, ill, or need personal assistance or protection;
2. Determining the area of the potential crime scene to be secured and protected;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

3. Initiating security measures to protect the crime scene from destruction or contamination of evidence;
4. Preventing unauthorized persons from entering the crime scene or the immediate area;
5. Restricting access to the crime scene to those law enforcement personnel that have an *absolute need to know*;
6. Not touching, moving, or picking up any article, mark, or impression that may have been made by the person(s) committing the crime; and
7. Maintaining rigid security until all evidence is collected.

## Preservation & Protection of the Crime Scene:

Selecting the size and shape, protecting the integrity of the crime scene, and the manner in which evidence is collected and recorded are keys to good detective work. Officers should not assume that the crime scene is only the immediate area of the event. For example, a murder occurring in a residence will most likely have a crime scene that includes the room, house, yard, and maybe adjoining lots. When in doubt, officers should expand the size of the protected crime scene area to include effective collection. As the areas are thoroughly searched the size of the crime scene can be reduced.

Often support officers and other emergency personnel arrive at a crime scene to . . . *see what is happening.* To eliminate the potentially destructive effects of these actions each officer arriving at a crime scene should be assigned a specific duty, and if at all possible, restricted from entering critical crime scene areas without proper direction and protective apparel. Each officer arriving at a crime scene is required to complete a full report of his actions and observations.

## Collection, Identification, and Preservation of Evidence:

After locating an item of potential relevance to the case, it will not be disturbed until it has been photographed, measurements taken, its position recorded on a crime scene sketch, and entered into the officer's notebook or form.

All recovered evidence must be immediately and properly labeled to assure proper identification and the item sealed. No identifying marks will be made directly on evidence. Selecting the proper type of container that will guard the specimen against damage or contamination will further protect evidence. If an item is too large or of a shape that does not lend itself to being sealed other measure to ensure protection of the evidence will be taken. After the article has been marked, placed in a container, and sealed, a label or tag will be affixed to include:

1. What the evidence is;
2. A case number;
3. Where it was located;
4. Date and time of sealing; &
5. Name and identification number of officer who sealed the evidence.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, or without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

All collected evidence will be logged in and placed in storage until requested for further processing. Evidence will be turned into the evidence custodian before end of shift, and officers will not retain evidence in their personal possession, vehicles, lockers, or desks after completion of the shift when the evidence was collected.

## Chain of Possession:

The chain of possession begins when the evidence is first discovered and continues until it is presented in court. Therefore, each officer is responsible for maintaining the chain of possession and protecting the integrity of the evidence. To further protect the integrity of the evidence, the storage officer will:

1. Limit the number of persons who handle evidence from the time it is turned-in until it is presented in court;
2. Complete an Evidence *Chain of Possession Form* any time evidence is released to any person;
3. Ensure that all persons handling evidence affix their name, identification, and assignment to the package;
4. Verify personal identification and ensure evidence is in the same condition when returned; &
5. Ensure evidence has not been altered as a result of laboratory analysis, and be prepared to report any changes.

## Storage of Evidence:

Due to their nature, certain items require specific handling. These items are to be stored in the following manner:

1. *Firearms* - Submitting officer will unload the gun and make a visual inspection to ensure the gun is safe. The firearm and ammunition will be stored in the same bag. Officers will mark the firearm in a manner that is not observable by a casual inspection. To accomplish this the grips or stocks may be removed and the marks placed inside.
2. *Alcoholic beverages* - open containers that cannot be sealed will be emptied after the liquid level has been marked on the outside and a paper towel will be placed in the container to prevent mold & mildew.
3. *Drugs and paraphernalia* - all drugs will be weighed and counted, before being placed in an airtight property bag. The count, if applicable, and weight (in grams) will be noted in the offense report. When submitting an unknown type of substance, officers will perform a presumptive test using test packets. The results of the test will be noted in the *offense or supplement report*. Each drug type seized will be placed in a separate bag. Drugs will be logged in separately from all other evidence seized. Hypodermic syringes will be logged into the property room as long as a needle cap is placed over the needle with "caution-needles" written on the outside of the evidence bag.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

4. *Chemicals and or hazardous materials* - explosives, flammable liquids, or chemicals from clandestine labs will not be brought into a department building for any reason. Such substances will be transported directly to the county service center or storage.

5. *Bloodstained items* - submitting officers are cautioned when handling bloodstained items due to the possibility of disease contamination. Bloodstained items will be allowed to dry before being placed in paper sacks. Plastic bags should not be used for bloodstained items. Officers should mark "caution" on sacks containing bloodstained items, and used rubber or plastic gloves when handling these items.

6. *Currency* - all currency will be counted by the submitting officer and a supervisor. The currency will then be turned over to the Sheriff to be placed in a designated safe. If the Sheriff is not available, the currency will be placed in an evidence bag and tagged. The submitting officer will fill out the evidence tag completely, showing the amount of currency involved. The storage officer will then place the currency into a secure evidence locker.

7. *Perishable items* - will be placed in a lab room refrigerator until returned to the rightful owner or destroyed.

8. *DWI & DUI blood samples* - in the event a blood sample is taken as the result of a DWI or DUI arrest, the officer will use a blood sample kit. The kit will be provided to hospital personnel taking the sample. The arresting officer will prepare the sample for mailing. If the sample is mailed, it will be mailed to the appropriate laboratory. The sample may be hand carried by to the lab by a designated staff member.

## Inspections of the Evidence Room:

On a monthly basis, the supervisor of the evidence custodian will inspect the evidence storage facilities to ensure adherence to appropriate policies and procedures. Additionally, unannounced inspections of evidence storage areas will be conducted semiannually by Chief Deputy.

An annual inventory of evidence held by the department will be conducted by a senior staff officer not routinely or directly connected with evidence control. Similar inventories will be conducted whenever a new evidence custodian is assigned.

## Outside Laboratory:

When evidence is sent to an outside laboratory the submitting officer will complete the required transmittal forms. After determining which laboratory facility the evidence will be submitted to, the property room custodian will mail or transport the material. The

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

property room custodian will keep a record of all evidence transmitted to an outside laboratory, and suspense the evidence item(s) for return. This record will include:

1. Name of the last officer having custody;
2. Date and time of submission or mailing and method of transmission;
3. Date and time of receipt at the laboratory;
4. Name and signature of the person in the laboratory receiving the evidence; &
5. Written test results.

## Evidence - After Use in Court:

The disposition of evidence following release by the court will be as follows:

1. Personal property will be returned to the owner.
2. Firearms or other weapons will be returned to their lawful owner after requesting and receiving permission from the court.
3. Evidence ordered destroyed will be destroyed and a certificate of destruction affixed to the order or placed in the case file. The certificate of destruction will be witnessed by a reliable disinterested person (druggist, physician, attorney, or any law abiding citizen) and at least one law enforcement officers. Destruction will be in compliance with Tennessee law.
4. Evidence of unknown ownership will be disposed of in accordance with Tennessee law.
5. Under no circumstances will any employee or officer convert any evidence, found or stored property, for personal possession or use without documented permission from the court. A copy of this judicial authority will be placed in the case file or attached to the incident report.
6. All drugs and narcotic evidence will be disposed of in a manner authorized by law or ordered by a court.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Evidence
## Chain Of Possession Form

Date out: _____Time out: _____

Case No: _____

Evidence No: _____

Out to: _____

_____

_____

_____

Evidence item(s): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Reason: _____

_____

_____

_____

_____

_____

_____

_____

_____

Returned date/time: _____

Returned by: _____

_____

Often the complainant wants responding officer(s) to make the alleged offender *behave,* and not *arrest him or her.* In other instances, the abusive pattern may have been occurring for some time and the victims are intimidated and fearful of retribution.

Responding officers will be tested at every turn in a domestic disturbance call. Officers need to exercise extreme caution in dealing with both complainants and alleged offenders.

More troubling, and difficult to handle are domestic disturbance calls involving law enforcement officers, or from a family member of an officer or department employee. In such instances, officer discretion may become skewed or influenced by factors that are not readily apparent. In such instances at least two officers will respond to the call, exercising extreme caution.

## Dispatch Procedures:

A dispatcher who receives a *domestic abuse* call can provide the responding officers with vital information that could save the victim's and the officer's life. The dispatcher will give domestic abuse calls the same priority as any other potentially life-threatening call and will, when reasonably available, dispatch two officers to reported location.

Dispatchers will not cancel law enforcement response to a domestic abuse complaint based solely on a follow-up call from the original complainant. Some form of secondary verification is required before the call for service will be cancelled.

The dispatcher will pass all critical information to responding officer(s) before arriving at the scene, to include:

1. Nature of the alleged conduct;
2. If the alleged offender is present and, if not, the actor's possible whereabouts;
3. If weapons are involved in the incident;
4. If the alleged offender is under the influence of drugs or alcohol;
5. If there are children present;
6. If any household member has undergone any recent traumatic experience such as *loss or job, death in the family,* etc.

## Responding Officer Procedures:

If the alleged offender is still at the scene of the incident, the responding officer(s) will:

1. Restore order by gaining control of the situation.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

enforcement. Officers will also conduct stationary overt observations in which their parked patrol vehicles will serve as a reminder for drivers to comply with traffic laws.

## Issuance of a Traffic Citation:

After stopping a traffic violator, the officer will:

1. Be alert for the unexpected;
2. Be certain the observations of the traffic violation are accurate;
3. Present a professional image in dress, grooming, language, bearing, and emotional stability;
4. Have all necessary equipment and forms to conduct the stop;
5. Decide on the appropriate enforcement action before making initial contact based upon the violator's driving behavior, rather than their attitude;
6. Greet the violator with an appropriate title and in a courteous manner;
7. Inform the violator what traffic law he has violated and the intended enforcement action;
8. Ask the violator for a driver's license, vehicle registration, and proof of vehicle insurance;
9. Allow the driver to discuss the violation while maintaining a positive attitude;
10. Use discretion and take action, explaining to the violator exactly what he is supposed to do in response to the action and how the action will affect him;
11. Be alert to any emotional stress exhibited by the driver, by repeating any pertinent information;
12. Return the violator's driver's license, registration, insurance information and a copy of the traffic or warning citation, if issued;
13. Assist the violator in safely re-entering traffic;
14. Not follow the violator; and
15. Turn in all citations after completion of a shift, maintaining a copy for future court use.

## Stopping the Traffic Violator:

The following steps in stopping and approaching a traffic violator are intended to provide maximum safety for the officer, the violator, and to other users of the roadway. Under ideal weather conditions, officers of Campbell County Sheriff's Department will:

1. Position themselves behind the violator;
2. Notify dispatch of the intended location of the traffic stop, the license number, vehicle description, and number of occupants within the vehicle;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Stop the violator in an appropriate location as to not impede traffic on the right side of the roadway;
4. Gradually change lanes to the right side of the road, on multi-lane roadways, to insure the safety of the violator and other drivers;
5. Instruct the violator to a safer location, either verbally or by public address, if stopped in an unsafe location;
6. Do not permit the vehicle to move if it is suspected the driver is impaired due to drugs or alcohol;
7. Position the police vehicle two feet outside and to the left, and approximately one-half to one car length behind the violator's vehicle;
8. Dismount from the patrol vehicle and watch for any suspicious movement or actions of the violator;
9. Approach the violator's car:

   a. Looking into the rear seat area if there are only occupants in the front seat of the vehicle; and
   b. At a point near the leading edge of the left front door if there are occupants in both the front and rear seats.

10. Give the responsibility of radio communication and observation of the scene to the backup officer, if one is available; and
11. Keep the patrol vehicle head lights on low beam for the safety of oncoming traffic during a night stop.

## Stopping a Known or Suspected Felon:

Special procedures will be followed in stopping the vehicle of a suspected felon to include:

1. Notifying the dispatcher immediately of location, description of the vehicle and occupants;
2. Waiting for the arrival of police support, before initiating the stop;
3. Stopping the suspect vehicle, using all necessary emergency equipment to warn other traffic, in a location which presents minimal danger to other citizens;
4. Having a firearm or other weapon easily accessible and ready for immediate use;
5. Dismounting the police vehicle quickly, but remaining behind the door for protection;
6. Commanding occupants of the vehicle, by public address system or by voice, to get out of the vehicle individually and into the appropriate search position;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 6

7. Using support officers as cover while arresting and searching the suspect;
8. Exercising extreme caution to not get within each other's line of fire;
9. Focus all lights on the interior of the suspect vehicle, including spotlights, at night.

## Revoked or Suspended Driver's License:

A traffic citation may be issued when an officer has stopped a vehicle and identified the driver as driving with a revoked or suspended license. If the officer is unable to stop the individual in a timely manner, he may swear out a warrant for the violator.

## Radar Unit:

The radar unit, found within all patrol vehicles of Campbell County Sheriff's Department, is an important instrument in verifying violations of the speed limit. However, several guidelines must be followed in order to effectively use the radar, including:

1. Understanding the effective range of the radar so visual observations can support the speed meter reading.
2. Properly calibrating the radar to insure accuracy in checking speed.
3. Establishing in court:

    a. The time, place, and location of the vehicle that was checked, the identity of the operator, the speed of the vehicle, and the visual and radar speed check;
    b. Officer qualifications and training in use of radar;
    c. The radar unit was operated properly, and tested for accuracy prior to the stop; and
    d. That speed limit signs were posted in the zone in which a violation occurred.

4. Maintaining proper care and maintenance off the radar unit.

## DWI Enforcement Procedures:

In order to effectively apprehend a person suspected of driving under the influence of alcohol or drugs, several guidelines will be followed:

1. Detecting driving behavior indicative of impairment, including:

    a. Sitting through a green light;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

      b. Weaving;

      c. Crossing the center-line and driving on road shoulder;

      d. Very slow or excessive speed;

      e. Disregard for stop signs or signals;

2. Use extreme caution when stopping a suspected intoxicated driver. When making contact:

      a. Be polite and business-like;

      b. Get the violator out of the vehicle and to a safe location, carefully observing all actions and statements;

      c. Obtain the violator's driver's license or other identification; and

      d. Request field sobriety test, and related test for proof of impairment of suspected drivers.

3. Arresting the violator on the basis of the test:

      a. Proceed to the hospital, when a traffic accident has occurred indicative of alcohol usage, and request the suspected violator submit to a blood test by hospital staff within two hours of the accident.

      b. Complete a departmental form for the incident and indicate the results of any tests that have been administered.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 6

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Search Warrants | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to:

1. Have sound knowledge of the legal requirements associated with obtaining a search warrant in order to prevent suppression of evidence;
2. Provide techniques to accomplish a thorough and legal search;
3. Observe the constitutional rights of the person(s) the warrant is being served upon;
4. Minimize the level of intrusion experienced by those who are having their premises searched;
5. Provide for the highest degree of safety for all persons concerned; and
6. Establish a record of the entire process.

### DEFINITIONS:

*Search Warrant:* A written order, in the name of the people, signed by a magistrate or other judicial authority, directing a peace officer to search for specified personal property and bring it before the magistrate.

### PROCEDURES:

### Warrant-less Searches:
The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches. Officers conducting searches without a warrant must prove that the search was reasonable. Therefore, officers should consider obtaining a search warrant whenever time and circumstances permit. A search warrant is not required if the officer is:

1. Securing weapons or evidence of a crime, incident to an arrest;

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 250 of 340    PageID #: 715

2. Assisting any individual under a life-threatening situation;
3. Protecting the public from harm;
4. Searching for additional victims at a crime scene;
5. Protecting vital evidence;
6. Pursuing a perpetrator;
7. Searching a vehicle, under probable cause, which he feels may reasonably contain contraband; and
8. Conducting a search of an individual under their voluntary, written consent.

## Legal Basis for Seeking a Search Warrant:

The following guidelines will be followed by all officials of Campbell County Sheriff's Department when obtaining a search warrant:

1. An officer must be able to show probable cause to believe that specific evidence, contraband, or fruits of a crime may be found at a particular location.
2. Any facts which, establish probable cause will be clear and specific. Officers will not rely solely on personal opinion, unauthenticated third-party information or hearsay. The officer will base all facts on:

   a. Personal observation or knowledge; or
   b. Information from a reliable source.

3. When informants are used, particularly confidential informants, specific information should be provided on their reliability.

## Affidavit Preparation:

Before executing a search warrant, an affidavit in support of that warrant will be prepared on the designated agency form. The accuracy of the affidavit is vital to the validity of the search warrant. Therefore, the affidavit should clearly and completely convey the following information.

1. The offense will be described with reference to the criminal code section, where possible.
2. The place or thing to be searched will be specifically described to include:

   a. The physical address of the location;
   b. A physical description of the premises;
   c. A legal description of the premises;
   d. The name of the owner or occupant;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

      e. The geographical location of the property;

      f. Map coordinates or distances from given reference points; and

      g. Photographs, maps or diagrams that help to specify the location in question.

3. If conducting a complete search of a home and its surroundings, the affidavit should specify a "premises" search and its "curtilage" and should identify any outbuildings such as garages, tool sheds or barns, where appropriate;

4. Any motor vehicles known to be on the premises that may be searched should be specified;

5. Anyone who is searched, besides being frisked for weapons, should be noted by name in the affidavit.

6. The specific items to be searched for will be detailed in the affidavit, including any alterations made to those items;

7. Any experts used for the search of computers and related high-technology equipment will be noted in the affidavit.

## Time Limitations – Execution of a Search Warrant:

It is the policy of Campbell County Sheriff's Department to execute a search warrant as soon as possible following the conditions of warrant. Often circumstances exist which delay execution of a search warrant. These conditions include, but are not limited to:

1. The seizable items have not arrived at the search site;

2. The probability that substantial resistance will be encountered; and

3. A particular person(s) is absent from the search site and it is determined that the search would best be conducted if that person were present.

## Preparation – Execution of a Search Warrant:

Prior to entering the premises, the supervisory officer will:

1. Conduct a pre-entry briefing of the execution process with all search team personnel to include:

      a. A review of the order of operations and procedures the search personnel will follow;

      b. A simulation of the conditions of the search using the appropriate maps, charts and diagrams; and

      c. Tactics and equipment to be used in the event of forced entry.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Emergency Call-Out Procedure | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority** <br> **Title and Signature:** | |

### POLICY:

It is the responsibility of all officials of Campbell County Sheriff's Department to work jointly in response to an emergency situation.

### PROCEDURES:

### Notification of Sheriff:
The Sheriff or designee will be notified concerning any major incident to include, but not limited to:

1. A police officer involved shooting;
2. Any serious physical injury to any officer or public employee;
3. Any homicide within the department's jurisdiction;
4. Any crime or incident involving a "gang" or other groups of people who have the potential for violating the law;
5. Any serious crime against a federal, state, or municipal government and/or employee;
6. Any crime in which an officer of Campbell County Sheriff's Department is a suspect;
7. Any civil unrest, natural disaster, or major accident;
8. Any crime so unusual that it would shock the conscience of the public; and
9. Any time that the shift supervisor determines that it is necessary to have the Sheriff present.

### General Guidelines:
It will be the responsibility of the shift supervisor on duty to utilize the services of specific departmental personnel, depending on the circumstances of an emergency situation, to include:

1. A criminal investigation division or officer to investigate:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 2

    a. Homicide;
    b. Felony Battery offenses;
    c. Major Thefts or Burglaries;
    d. Robbery; or
    e. Rape or sexual offenses.

2. Patrol personnel for incidents involving, but not limited to:

    a. Civil unrest;
    b. A natural disaster;
    c. Any major accident; or
    d. A search for missing persons.

3. A tactical unit for incidents involving, but not limited to:

    a. A hostage situation;
    b. Civil unrest;
    c. In search efforts following a major accident or natural disaster; or
    d. To issue a high risk felony warrant.

4. Canine [K-9] personnel for situations involving, but not limited to:

    a. Tracking suspects who have fled from major crime scenes;
    b. Tracking suspects who have escaped from custody; or
    c. Conducting drug searches.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 2

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and procedures

| Subject: Investigation of Missing Persons | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

## POLICY:

The effectiveness of statewide or National Crime Information Center communication networks as well as departmental liability issues depend on accurate and prompt entry of missing persons information, and immediate cancellation of entries when no longer required. It is the responsibility of each officer dealing with reports of missing persons to conduct a proper investigation, prepare necessary reports, and request appropriate statewide or National Crime Information Center entries. Each telecommunications operator making an actual entry must insure that the entry contains accurate and complete information and that unnecessary delays in making the entry are avoided.

## PURPOSE:

To provide employees with guidelines concerning the standard investigative procedures associated with a missing persons complaint.

## PROCEDURES:

### General Guidelines - Missing Persons:
All officials of Campbell County Sheriff's Department will adhere to the following guidelines regarding missing persons:

1. Any officer receiving a missing persons report will collect and evaluate information (pictures, descriptions, etc.), and investigate possible leads provided by the reporting person without delay.
2. In situations involving missing juveniles, the investigating officer should take immediate action to establish that a youth is missing (i.e. search of the residence, check schools, friend's homes, local stores, parks, etc.).
3. An entry/deletion form will be completed by each officer of Campbell County Sheriff's Department to ensure that all missing persons are entered into the

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

statewide or National Crime Information Center systems and then deleted once located. An entry/deletion form may be found at the end of this policy.

## Missing Persons – Receiving a Telephone Call:

Any officer of Campbell County Sheriff's Department receiving a missing persons call will utilize the following procedure:

1. Interview the reporting person and evaluate the information received.

    a. If the information fits the criteria for a missing person, complete an initial missing persons report.
    b. If the information does not fit the criteria for a missing person, offer referrals to the person reporting the incident. If in doubt, always make a report.

2. Should a report be made, get detailed information concerning associates, habits, locations frequented, clothing descriptions, etc. Also, obtain a recent photograph of the missing person if available.
3. Submit the initial report and a completed statewide or National Crime Information Center entry/deletion form to the appropriate official for review.
4. After review and approval, the reviewing authority will forward the report and the entry/deletion form to a certified statewide or National Crime Information Center operator.
5. The operator receiving these documents will enter the information into the system. A copy of the entry print-out will be attached to the other documents submitted.
6. The operator making the entry will then submit all the stated documents to the proper investigative authority for further follow up investigation.

## Missing Person Entries:

A missing person record may be entered into the statewide or National Crime Information Center for a person of any age for the following reasons:

1. The missing person is under proven physical/mental disability or is senile, thereby possibly subjecting self or others to personal and immediate danger.
2. The circumstances surrounding the missing person indicate a non-voluntary abduction or kidnapping.
3. The report regarding the missing person is declared un-emancipated.
4. The person is reported missing after a disaster.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Proper Documentation:

When a person is declared missing proper documentation verifying that fact must be established. Examples of acceptable documentation are:

1. A missing persons report, prepared as a result of investigation by a law enforcement officer.
2. A written statement from a physician or other authoritative source, which verifies a missing person's physical/mental disability.
3. A written statement from a parent, guardian, next of kin or other authoritative source advising that the missing person is in danger or that their disappearance was not voluntary.

## Missing Person Deletions:

When a missing person is located or information received requiring a state or National Crime Information Center deletion, the following procedures will be followed:

1. The officer locating the missing person or developing information which requires a deletion will be responsible for completing the deletion process.
2. The reporting person or the family of the missing person will be contacted and informed of the information obtained.
3. The officer will locate the initial report and complete the state or National Crime Information Center deletion form attached to the report. If the initial report is unavailable, the officer will prepare a separate deletion form.
4. The officer will submit the deletion form to a certified state or National Crime information Center operator for deletion from the system.
5. The telecommunications operator receiving notification that the missing person has been located, or that the investigating officer wants to clear or cancel the person, will follow state or National Crime Information Center guidelines and clear the entry from the system.
6. Once the entry has been deleted, the operator will attach a deletion print out to the submitted documents to be returned to the officer assigned to the investigation.
7. The assigned investigative officer will sign the deletion form after reviewing the case circumstances and submit the form to the appropriate supervisor who will also sign the deletion form.
8. Once the missing person report is cleared, it will be filed, along with all other documents, in accordance with Campbell County Sheriff's Department policy on records.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## State or National Crime Information Center Entry Form:
### MISSING PERSON

**Name:** _____

**D.O.B.:** _____

**Sex:** _____

**Race:** _____

**Hair:** _____

**Build:** _____

**Eyes:** _____

**Height:** _____

**Weight:** _____

**Clothing Description:**
_____

**Vehicle Description:**
_____

**Brief Summary of Disappearance:**




**Signature of Officer Preparing Report:**
_____

**Entry Made By:**
_____

**Date of Entry:** _____

**Investigating Officer assigned:**
_____

**Signature of Supervisor/Senior Officer:**
_____

## State or National Crime Information Center Deletion Form:
## MISSING PERSON

**Reason for Deletion:**

_____

**Signature of Officer Requesting Deletion:**

_____

**Signature of Employee Making Deletion:**

_____

**Date of Deletion:**_____ **Time of deletion:**_____

**Signature of Supervisor/Senior Officer:**

_____

## Campbell County Sheriff's Department
## Policies and Procedures

| | |
|---|---|
| **Subject:** Use of Force & Deadly Force | **Policy Number:** |
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### Purpose:
The purpose of this policy is to establish guidelines for officers when dealing with potentially volatile situations and to assist them in their burdensome task of decision making, under tense, uncertain, and rapidly evolving circumstances that may place human life and safety in jeopardy.

### Policy:
Human life is of paramount importance in our society and the apprehension of criminal offenders must always be subservient to the protection of innocent human life, including the officer's own life.

Officers will maintain a constant readiness and capacity to act in instances where, in *their perception*, the use of force or deadly force may be appropriate. In maintaining readiness and capacity, officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind. While *officer discretion* is acknowledged as critical, at the same time, the need for accountability and control of police activities is also as necessary.

### Definitions:
The following definitions apply to this policy & procedure manual:

*Authorized weapon* - a weapon approved by the department for sanctioned use by its officers. No weapon may be authorized for carry or use by an officer unless the department expressly approves it, and the officer has demonstrated proficiency with the weapon type in accordance with department guidelines.

*Baton or expandable baton* – an impact weapon capable of inflicting bodily injury by striking with a portion of the weapon. Only batons authorized by the department are authorized for carry and used. This department does not authorize the caring or use of *saps, billy clubs, or slapjacks*.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 11

*Chemical weapon* - a weapon capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

*Certification with weapon* - The officer has demonstrated proficiency with a particular weapon, and been tested in it's safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his official duties regardless of whether the officer is on-duty or off-duty. Without such certification, the officer will not carry or use this or a similar weapon.

*Deadly force* – that action that is intended or known by the person taking the action to cause death or serious bodily injury.

*Electronic weapon* - a weapon using small bursts of electrical energy to temporarily incapacitate a person without causing death or serious bodily injury.

*Firearm* - any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use; including all handguns, rifles, and shotguns.

*Force or non-deadly force* – that action that is not reasonably calculated under the circumstances to cause death or serious bodily injury.

*Physical strength and skill* - any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any authorized/other weapon.

*Probable cause* – the total set of apparent facts and circumstances based on reasonably trustworthy information, which would warrant a prudent person to believe something. Example: *that a particular person has committed some criminal offense.*

*Serious bodily injury* - harm that creates substantial risk of death; death, serious permanent disfigurement, or loss or impairment of any body function or organ.

## Procedure:

## Use of Force & Deadly Force:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Use of force & deadly force by law enforcement officers comprises the basic elements of a *reasonable officer's perception* and a *reasonable officer's use of force & deadly force* to bring the situation, as they understand it to be, under control. To better understand and explain use of force and force issues officer perceptions and options are discussed in the form of *Use of Force Ladder* or *force continuum*.

A use of force & deadly force chart is provided as the last page of this policy section. There are five levels of *perception response*, and each level has its own distinctive *perception* and *response* characteristics. Each officer will be familiar with and know how to apply this response compendium. Refer to the enclosed Use of Force Ladder. Officer's general perception and corresponding force options are:

> **Level 1** – If the suspect is perceived by the officer to be *compliant*, the appropriate level of response is *cooperative controls*, to include *officer presence, hand signals, verbal commands and instructions*, light touching or *patting*, etc. In other words cooperation at this level is a *two way street*.

> **Level 2** – If the suspect is perceived by the officer to be *resistant – passive*, the appropriate level of response is *contact controls*, to include *strong or forceful soft hand, hand and arm holds, pressured physical movement of the suspect, removal*, etc.

> **Level 3** – If the suspect is perceived by the officer to be *resistant – active*, the appropriate level of response is *compliance techniques*. This is the threshold for any reasonable officer to consider this suspect to be a potential threat to himself, the officer or other citizens. Compliance techniques may include *all reasonable means to cause the suspect to come into compliance as soon as reasonably possible*. These techniques may include *use of chemical weapons, use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, or using other forms of rough physical force*, etc. Once a suspect is perceived to have been *resistant – active* [or higher perceived threats], officers will not relax care or containment of this suspect until the contact is terminated.

> **Level 4** – If the suspect is perceived by the officer to be *assaultive – and a threat to bodily harm*, the appropriate level of response is immediate *defensive tactics*. The original assaultive behavior may have been directed at a fellow suspect, apparent

---

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

victim or the officer. The officer's response is *defensive tactics* that may include *use of impact weapons, hard fist, or any other reasonable means available* and at hand to stop the aggression, defend, against attack, and bring the suspect into compliance. It is contemplated and understood that reasonable officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

**Level 5** – If the suspect is perceived by the officer to be *assaultive – serious bodily harm or death,* the appropriate level of response is *use of deadly force.* Deadly force includes firearms, knives, or any other means immediately available to the officer(s) that a reasonable officer in the same circumstance would consider as potentially causing death or serious bodily injury.

In rare instances deadly force may be used to protect property; and only when there is a reasonable expectation that the property once altered or damaged may place other in imminent risk of death or serious bodily injury. For example, stopping a suspect from setting a fire, or throwing a bomb.

It is important to remember that almost all incidents faced by police are not scripted, easy to understand, or predictable as to outcome.

Officers will use their best effort in determining the level of threat posed by a suspect, and apply the corresponding response. Officers are cautioned to use care in evaluating a suspect's actions and perceived threat level. If there is reasonable doubt and time permits, seek assistance before acting. Where there is a doubt as to the perceived threat level, opt for the *higher level* and respond accordingly.

Justification for the use of force and deadly force must be limited to what appears to be the reasonable facts *known or perceived* by an officer at the time he decides to use such force. Facts unknown to an officer at the time force is used, no matter how compelling, cannot be considered later in determining whether the force was justified.

An officer will not intentionally use more force than is necessary and reasonable under the circumstances. An officer will never use force in response to mere verbal provocative or abusive language directed at the officer. An officer will never use deadly force except as in situations identified by this policy.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Procedures:**

In considering the use of any force, officers must strive to achieve the following lawful objectives:

1. To preserve the peace.
2. To defend themselves, or others, against unlawful violence.
3. To prevent the commission of offenses, self-inflicted injury, or suicide by any person.
4. To make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody.
5. To prevent or interrupt an intrusion on, or interference with, the lawful possession of property.
6. To prevent roaming at large by obviously mad or vicious animals; to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering.

Before using any force against a suspect, and time permits, an officer will:

1. Have probable cause to arrest that suspect.
2. State his intentions to arrest, and identify himself as a peace officer
3. State the reason for the arrest.

The amount and degree of force, which an officer may use to achieve an objective, will take into consideration the following possible issues, if time and circumstances allow:

1. The nature and seriousness of the original offense committed by the suspect.
2. The nature and seriousness of the risk of injury to the officer or others.
3. The age, physical condition, and behavior of the suspect.
4. Relevant actions by any third parties.
5. Physical conditions (e.g., visibility) at the scene.
6. The feasibility and availability of alternative actions.
7. The opportunity and actual ability of the suspect to injure the officer, himself, or others.

Before an officer uses force (but not deadly force) against a person for the purpose of protecting that person from bodily injury caused by himself [suicide attempt] or another, or from uncontrollable circumstances, the officer will consider other reasonable means to

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 5 of 11

protect that person from harm.

An officer may use an unauthorized object as a weapon, or use a weapon in an unauthorized manner if emergency circumstances make it necessary to protect human life and prevent serious injury.

An officer may draw and ready any of his authorized weapons for use only when he reasonably anticipates that he may have to use such weapon(s). This does not require the officer to use the weapon once it is readied for use.

## Weapons Control & Issue:
Officers will register all duty firearms carried on-duty or off-duty with the department and will only carry or use authorized duty weapons, firearms and ammunition under these standards:

1. Firearm is registered with the department.
2. Firearm and ammunition are approved for use by the Sheriff.
3. Firearms have been inspected,.fired, and certified safe by the department's firearms instructor.
4. The officer has demonstrated proficiency and been certified in the last twelve [12] months in the use of all weapons and ammunition he carries on-duty or off-duty.
5. Officer qualify with the same weapon and type of specific ammunition [caliber, bullet weight, bullet design, and powder load] actually carried.
6. If a different firearm is carried off-duty, the conditions of 1-5 above apply to the off-duty weapon(s).

Without departmental approval, no officer will in any material way, modify or alter an authorized weapon.

## Discussion - Use of Non-Deadly Force:
To the extent necessary and reasonably possible, an officer will only use physical strength and skill, restraint devices, chemical weapons, electronic weapons, or a baton to apply non-deadly force.

An officer has no obligation to *retreat* or *back down* before resorting to approved use of force, including deadly force. However, if in the officer's discretion, it does not increase the risks to himself or others, an officer may consider retreat or withdrawal where delay

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

could make a more peaceable arrest or stop likely. In some cases, an increased show of force may reduce the amount of force necessary to accomplish the officer's objective.

Unless there are no reasonable alternatives, an officer alone will not attempt to affect an arrest if there is substantial risk to himself from the arrestee or another party.

An officer will use handcuffs or other restraining devices on all arrestees unless it is unnecessary or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects). An officer will reasonably protect an arrestee from injury caused by handcuffs or other restraining devices. Only restraining devices and techniques approved by the department may be used.

An officer may use a chemical weapon to protect him or another from assault or to subdue a person unlawfully resisting arrest. Any person on which a chemical weapon has been used, will be treated or decontaminated for exposure to the chemical agent as soon as practical, and thereafter monitored for possible latent effects.

Officer may use an approved electronic weapon in accordance with this policy. An electronic weapon may only be used to protect persons from assault or to subdue a person unlawfully resisting arrest.

An officer may use his baton to protect himself or another from assault or to arrest a person who unlawfully and violently resists arrest if lesser methods have failed, or if circumstances warrant the immediate use of the baton. However, an officer should:

1. Try to avoid making baton blows that are capable of inflicting serious bodily injury.
2. Not raise the baton above the head to strike someone or use the baton as a club or bludgeon.
3. Deliver only short snappy body blows, to vulnerable areas, in an effort to temporarily incapacitate a subject.
4. Not deliberately strike the *face, head, neck, collarbone, spine, kidney area, solar plexus, knees,* or *elbows.*

Officers who are not trained and currently certified with a baton are not authorized to use a flashlight or other similar device as a substitute, except in an extreme life-threatening emergency.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 266 of 340   PageID #: 731

## Discussion - Use of Deadly Force:

To the extent necessary and reasonable, and in accordance with this policy, an officer will apply deadly force only by using an authorized weapon.

To the extent an officer has reasonable time for consideration, he will never use deadly force which creates a greater risk of causing death or serious bodily injury to himself or others than if he did not use such force. Deadly force may only be used under the following circumstances:

1. To immediately stop the perceived life threatening actions of the suspect.
2. When immediately necessary to protect human life.
3. When destroying a mad or extremely vicious animal that creates a substantial risk of bodily injury to persons, only after other reasonable methods have failed.
4. At a properly equipped training facility.

Deadly force may not be used under the following circumstances:

1. As a warning or threat.
2. With the intent to maim or cripple a person.
3. On a person who has not caused or threatened to cause serious bodily injury to another person including the officer.
4. On a person who simply flees or evades arrest.
5. At or from a moving vehicle.
6. Merely to prevent the destruction or theft of property.
7. When the officer has some doubt as to the justification of using deadly force.

## Firearms & Weapons Certification:

The department's firearms & weapons instructor will certify all officers in the use of their primary and secondary firearms, as well as any off-duty firearms, and other weapons carried in the performance of their official duties. The certification for all weapons [firearms, batons, expandable batons, control sticks, chemical agents, electronic devices, special munitions delivery systems, etc.] authorized and carried by department officers will be conducted at least every twelve [12] months.

An officer who fails to certify with their primary and secondary firearm the first time will be given two [2] additional opportunities to certify over the next 30-day grace period. If the officer fails to certify by the end of the grace period, disciplinary procedures will be initiate,

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

and the officer will be reassigned to non-sworn employee duties.

Certification will consist of demonstrating proficiency in both technical and physical aspects of the weapons use, along with demonstration of a thorough understanding of the laws, general orders, and other regulations regarding the use of force, deadly force, and weapons.

Under no circumstance will an officer that is not certified with their weapons be allowed to carry that particular weapon without certification. In particular, to carry and *use handguns, shotguns, OC spray, straight baton, PR-24, expandable baton, electronic device* officers must annually demonstrate proficiency to the weapons instructor. Otherwise, the office will not carry or use that particular weapon, until certified.

The firearms and weapons instructor will prepare and publish a written course of fire, and weapons exam no less that four [4] months prior to the annual certification. Additionally, the firearms and weapons instructor will offer remedial courses, and schedule practice sessions in each weapon at least 30 days prior to the annual certification date.

## Reporting the Use of Force:

An officer who discharges a firearm; uses a chemical weapon, an electronic weapon, or baton; special munitions, or who causes bodily injury or death to another person by the use of force or deadly force will notify his direct supervisor immediately.

The officer will also be required to complete a report in writing detailing the circumstances surrounding the use of force incident. This written use of force report requirement will be met even though other required reports may have already covered the situation.

In incidents where an officer causes serious bodily injury or death to another through the application of deadly force, he will first call for appropriate necessary medical assistance, secure the scene as well as possible, then notify his direct supervisor. Upon his arrival, the supervisor will take charge of the scene along with any investigation concerning the incident and report the incident to the Sheriff.

In any incident involving the use of force, all officers will assist in every way possible with the investigation. Any report required by this policy will receive executive review in an effort to:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and Will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Protect the integrity of the facts and the evidence.
2. Ensure that the officer's use of force complied with all appropriate state and federal laws, and department policy.
3. Determine if the officer's use of force indicates a need for special counseling, training, or disciplinary action.
4. Determine whether the situation requires further action.

## Reporting Requirements:
The Sheriff will be notified immediately when any type deadly force is used, and there are resulting *serious physical injuries or death.*

Each officer who witnessed the incident or responded to the scene will complete a written report. These witness reports will be completed no later than the conclusion of the shift in which the incident occurred, and filed with the Chief Deputy.

The officer(s) who actually used or employed the deadly force will be relieved of duty and sent back to the department. At the time the officers are relieved of duty the weapon(s) used in the incident will be collected and tagged as evidence. The Chief Deputy or next senior supervisor at the scene will instruct the officer(s) who used deadly force to:

1. Refrain from making any statements to the news media, other officers, or supervisors.
2. Refrain from discuss the matter between themselves [if more than one officer].
3. Return directly to the department headquarters.
4. Refrain from completing any reports or statements for at least twelve [12] hours.

When the officer arrives at the department, investigators will conduct a debriefing of the officer and advise Chief Deputy of their findings. Thereafter the officer(s) will be sent home. Upon return to duty the next day the officer(s) involved in the deadly force incident will complete his report and make all required statements. The officer(s) will provide all required information as if a witness to the incident, first hand *perception of events* at the time, and the *corresponding force options used.* Special attention will be given to any deviation from this policy.

All reports completed by the officers using force, other officers, or witnesses will include the following:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and WilI not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. An accounting of the events leading to the use of force & deadly force;
2. The original offense or *probable cause* for the stop or action;
3. An accurate description of the incident and reasons for employing force;
4. A description of the weapon or device used and the manner in which it was used;
5. A description of the injuries suffered, and the treatment given or received;
6. A list of all participants and witnesses to the incident; and
7. A copy of all incident reports compiled as a result of the incident.

The Sheriff will formalize criteria for reporting incidents. Reports of all injuries are filed in the central file and the employee's personnel record.

## Allegations Against Staff:

The Chief Deputy will investigate all allegations of improper use of force & deadly force, after notifying the Sheriff. In cases where possible criminal acts are involved, the appropriate law enforcement agency or prosecutor office will be notified.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 11 of 11

# Use Of Force Ladder



**Enforcement Options**



## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Emergency Vehicle Warning Devices | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

The purpose of this policy is to establish guidelines for the use of emergency vehicle warning devices.

### POLICY:

It is the purpose of Campbell County Sheriff's Department to ensure that all members of this law enforcement agency adhere to statutory restrictions on the use of emergency warning devices and that such devices are employed only in prescribed conditions and circumstances and in ways that will minimize the risk of accidents or injuries to employees or the public.

### DEFINITIONS:

*Emergency Vehicle:* An authorized law enforcement vehicle equipped with emergency lights (red/blue/white), siren, and other emergency warning devices required by law and used for emergency response situations.

*Emergency Warning Devices:* Devices placed in/on each agency emergency vehicle that emit audible or visual signals in order to warn others that law enforcement services are in the process of being delivered.

### PROCEDURES:

### Assigning/Determining Response Modes to Calls for Assistance:
Field supervisors and/or communications personnel assigning officers to respond to calls for assistance will authorize which response mode will be utilized.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Field supervisors are responsible for monitoring response modes for calls for assistance and will have the authority to upgrade or downgrade assigned response modes.

In instances where an officer wishes to initiate the emergency vehicular response mode in response to a sudden occurrence unbeknown to communications personnel, field supervisors, or the Sheriff, or to upgrade a routine response assignment, the field unit will inform communications personnel as soon as possible of:

1. The nature of the situation.
2. The location and destination of the field unit.

## Use of Emergency Warning Devices While in Emergency Response Mode:

1. During an emergency response, emergency lights and/or siren and other emergency signal devices will be activated as required by law.
2. When responding in the emergency mode, the headlights of the emergency vehicle will be activated to augment the emergency vehicle's visibility.
3. During an emergency response, four-way flashers will not be used when the emergency vehicle is in motion because they may interfere with brake lights and turn signals.
4. The spotlight is primarily utilized to facilitate building and stationary vehicle checks and will at no time be directed at the windshield or vision of oncoming traffic.
5. When responding in an emergency response mode, emergency signal devices may be deactivated at a distance from the scene (to be determined by the vehicle operator) so as to not alert subjects to law enforcement proximity.
6. When emergency signal devices are deactivated, the operator of the emergency vehicle will comply with posted speed limits, obey all traffic control devices and signals, and proceed in a manner consistent with normal traffic flow.

## Use of Emergency Warning Devices While Conducting Vehicle Stops:

Audible and/or visible warning devices will be used to make adequate notice of intent to stop a motor vehicle and to provide a safe environment for the vehicle operator, officer, and public.

## Discretionary Use of Emergency Warning Devices:

Officers may activate emergency signal devices when required to assist in handling any perceived emergency situation. The officer will advise communications personnel of the

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

nature of the emergency and the emergency response mode that has been taken.

In other than emergency situations, when expediency is required to effectively eliminate a potential hazard to the public or fellow officers, law enforcement officers may activate emergency warning devices to allow orderly and safe transit through heavily congested roadways. Examples of permissible uses of emergency warning devices during non-emergency response situations include, but are not limited to:

1. Using emergency lights as "beacons" to protect disabled motorists.
2. Using emergency lights when it is necessary to use agency vehicles as protective barriers.

Operators of emergency vehicles will deactivate emergency warning devices as soon as possible.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Vehicle Pursuit [Limited] | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### PURPOSE:
This policy establishes guidelines for making key decisions regarding initiation, termination, monitoring, and supervision of vehicle pursuits.

### POLICY:
The Sheriff has determined that all vehicle pursuits are *critical incidents*, and as such are strictly regulated in the manner they are undertaken, performed, monitored, terminated, and supervised.

### DEFINITIONS:

*Vehicular Pursuit:* An active attempt by an officer in an authorized emergency vehicle to apprehend a fleeing suspect who is actively attempting to elude the police.

*Authorized emergency vehicle:* A vehicle of this agency equipped with operable emergency equipment as designated by state law, to include a siren and emergency signaling lights.

*Primary unit:* The police unit that initiates a pursuit or any unit that assumes control of the pursuit.

*Secondary unit:* Any police vehicle that becomes involved as a backup to the *primary unit* and follows the primary unit at a safe distance.

### DISCUSSION:

All vehicle pursuits are *critical incidents*. Vehicular pursuit of fleeing suspects can present an uncontrollable danger to the lives of the public, officers, and suspects involved in the pursuit. Just as critical is the possibility of unintended collateral damage or injury to members of the public who are not involved in the pursuit. Considering the Sheriff's commitment to the protection of the public in general, and the protection of

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

innocent life in particular, vehicle pursuits will be conducted only under the guidelines of this policy. It is the wise and prudent officer who decides to terminate a vehicle pursuit rather than unreasonably risk a threat to human life.

## PROCEDURES:

### Initiation of Pursuit:

1. Any on-duty law enforcement officer in an authorized emergency vehicle intending to initiate a vehicle pursuit will, prior to initiation of the pursuit, request and receive permission from an authorized supervisor of the department.
2. Only officers who have been trained in *pursuit driving* may request initiation of, or actively participate in a vehicle pursuit.
3. The decision to initiate pursuit is based on:
    a. Officer's conclusion that the immediate danger to the public or the officer created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large;
    b. The original offense of the actor was a felony, or potentially life-threatening; and
    c. Suspect exhibits the intention to avoid apprehension by refusing to stop when properly directed to do so.
4. In deciding whether to initiate pursuit, the officer will consider:
    a. Road, weather, and environmental conditions;
    b. Population density and vehicular and pedestrian traffic;
    c. Relative performance capabilities of the pursuit vehicle and the vehicle being pursued;
    d. Seriousness of the offense;
    e. Presence of other persons in the police vehicle and vehicle being pursued;
    f. Skill, training, and experience of the pursuing officer;
    g. Alternative means and opportunity of apprehending the suspect.

### Pursuit Officer Responsibilities:

1. Activate appropriate warning equipment, at a minimum to include audible siren and emergency signaling lights.
2. The pursuing officer will immediately notify communications center (dispatch) personnel that a pursuit is underway. The officer will provide communications personnel with the following information:
    a. Unit identification;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

b. Initial offense and reason of the stop;
c. Location, speed and direction of travel of fleeing vehicle;
d. Description and license plate number, if known, of fleeing vehicle;
e. Number of occupants in the fleeing vehicle, and descriptions, where possible; and
f. Reasons supporting the decision to pursue.
   1. Failure to provide this information to communications personnel may result in an immediate decision by a supervisor assigned to monitor the pursuit to order its termination.
   2. Officer will keep communications updated on the progress of the pursuit.
   3. All emergency vehicle operations will be conducted in strict conformity with traffic laws and regulations.
   4. When engaged in pursuit, officers will not drive with *reckless disregard for the safety and welfare* of others.
   5. Unless otherwise directed by a supervisor, a pursuit will consist of no more than two police vehicles, a primary and a secondary unit. All other personnel will stay clear of the pursuit unless instructed to participate by a supervisor.
   6. Any primary or backup unit sustaining damage to, or failure of essential vehicular equipment during pursuit will not be permitted to continue in the pursuit. The unit will notify communications so that another unit may be assigned to the pursuit.
   7. The primary pursuit unit will become secondary when the fleeing vehicle comes under air surveillance, or when another unit has been assigned primary responsibility.

**Communications Center Responsibilities:**

1. Upon notification that a pursuit is in progress, communications personnel will immediately advise a field supervisor of essential information regarding the pursuit.
2. Communications personnel will carry out the following activities and responsibilities during the pursuit:
   a. Receive and record all incoming information on the pursuit and the pursued vehicle;
   b. Control all radio communications and clear radio channels of all non-emergency calls;
   c. Obtain criminal record and vehicle checks of the suspects;

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

    d. Coordinate and dispatch backup assistance and air support units under the direction of the field supervisor; and

    e. Notify neighboring jurisdictions, where practical, when pursuit may extend into their locality.

    f. If circumstances warrant, place emergency medical, fire, or hazardous materials responders on stand-by for rapid response in case of injury to persons, fire, or hazardous materials incident.

## Supervisory Responsibilities:

1. Consider all available information and make a determination to authorize initiation of a pursuit or terminate.
2. Monitor incoming information, coordinate and direct activities as needed to ensure that proper procedures are used, and have the discretion to terminate the pursuit for any reason.
3. Where possible, a supervisor will respond to the location where a vehicle has been stopped following a pursuit.

## Pursuit Tactics:

1. Officers will not normally follow the pursuit on parallel streets unless authorized by a supervisor, or when it is possible to conduct such an operation without unreasonable hazard to other vehicular or pedestrian traffic.
2. When feasible, patrol units having the most prominent markings and emergency lights will be used to pursue, particularly as the primary unit.
3. Motorcycles may be used for pursuit in exigent circumstances and when weather and related conditions allow. Motorcycles will disengage when direct support from marked patrol units becomes available.
4. Intervention tactics short of deadly force [*spike strips, low speed tactical intervention techniques, low speed channeling (with appropriate advance warning), etc.*] will be used when possible, but only by officers trained in these tactics.
5. *Spike strips* and similar devices will not be used on fleeing motorcycles unless deadly force is otherwise authorized by the department's *use of force* policy.
6. Ramming, bumping, or any other intentional contact between vehicles is not authorized unless deadly force is otherwise justified by the department's *use of force* policy.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

7. Decisions to discharge firearms at or from a moving vehicle, or to use roadblocks, require authorization by a supervisor involved in the incident, and in strict compliance with the department's *use of force* policy.
8. In planning roadblocks supervisors will consider *visibility* and *escape routes* as a part of the blocking plan.
9. Once the pursued vehicle is stopped, officers will utilize appropriate officer safety tactics, and will be aware of the necessity to utilize only reasonable and necessary force to take suspects into custody.
10. When reasonably feasible, the back-up officer will affect the arrest with the pursuing officer assuming the role of backup.

## Termination of the Pursuit:

1. Any officer engaged in or supporting the pursuit may terminate the pursuit at anytime.
2. A pursuit may be terminated if the suspect's identity has been determined; immediate apprehension is not necessary to protect the public or officers; and apprehension at a later time is reasonably feasible.
3. Primary pursuing unit and supervisor will continually re-evaluate and assess the evolving pursuit situation, including initiating factors, and terminate the pursuit whenever he or she reasonably believes the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.
4. In the event of a collision with the suspect vehicle, pursuing officer will immediately summon medical assistance for any injured parties.
5. In the event of a collision involving any third-party vehicle or persons, the back-up vehicle will stop and render assistance, including calling for medical assistance if necessary.

## Inter-jurisdictional Pursuits:

1. Pursuing officer will notify communications when it is likely that a pursuit will continue into a neighboring jurisdiction or across the county or state line.
2. Pursuit into a bordering state will conform to the law of both states and any applicable inter-jurisdictional agreements.
3. When a pursuit enters this jurisdiction, the action of officers will be governed by the policy of the officers' own agency, specific inter-local agreements, and state law.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 279 of 340    PageID #: 744

## After-Action Reporting:

1. Whenever an officer engages in a pursuit, the officer will file a written report on the appropriate form detailing the circumstances.
2. All officers engaged in a pursuit or responding to the pursuit will also complete a full report of their actions, and observations.
3. Supervisors will determine if policy has been complied with, and identify any training deficiencies or areas needing attention.
4. The department will periodically analyze police pursuit activity and identify any additions, deletions, or modifications warranted in departmental pursuit procedures.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

# PURSUIT DECISION MATRIX



| | LOW RISK TO PUBLIC | MODERATE RISK TO PUBLIC | HIGH RISK TO PUBLIC |
|---|---|---|---|
| **IMMINENT LIFE THREAT** | May Pursue | May Pursue | May Pursue |
| **VIOLENT FELONY** | May Pursue | May Pursue | **May Pursue With Caution** |
| **PROPERTY FELONY** | May Pursue | **May Pursue With Caution** | |
| **MISDEMEANOR** | **May Pursue With Caution** | | |
| **MINOR INFRACTIONS** | | | |

Seriousness of Original Offense



Operational Support Services, Inc.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Internal Affairs | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Campbell County Sheriff's Department will make consistent and expeditious investigations of complaints from citizens against agency employees. This department protects the rights of each employee during an investigation, and will make the investigation without prejudice.

### PURPOSE:

This department must maintain an open channel of communication with the citizens of our community to process complaints of substandard service or alleged misconduct by department employees. It is the purpose of this policy to provide a citizen complaint processing procedure, which is fair, objective, impartial, and aimed at determining the facts. The department will investigate all complaints so there is no doubt as to the integrity of the agency. This policy will also provide employees with information concerning their rights and obligations if confronted with allegations of misconduct or substandard service.

### PROCEDURES:

### Internal Affairs Function:
Internal Affairs investigations will be conducted by the Sheriff or assigned by the Sheriff to a Board Of Internal Affairs who will investigate the complaint. The Sheriff will review these findings and make the final decision.

### Internal Affairs Activities:
Internal Affairs activities include:

1. External complaints: Recording and investigating complaints against agency employees made by persons outside the agency;
2. Internal complaints: Recording and investigating alleged or suspected misconduct by agency employees from within the department; and
3. Confidentiality: Maintaining confidential investigations and records.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Classification of Complaints:**

Class One: Serious or criminal misconduct complaints that allege needless or excessive force, brutality, violations of criminal law, corruption, breach of civil rights, abuse of authority, intentional discrimination, and others so classified by the Sheriff.

Class Two: Complaints that allege inadequate public service, discourtesy, improper procedure, and other less serious and non-criminal conduct as directed by the Sheriff.

Class Three: A use of deadly force by any officer of this agency will be investigated regardless of whether or not a formal complaint is filed.

**Due Process:**

This department will investigate both formal and informal complaints. Investigators will follow proper procedures when interviewing an accused employee and will uphold and defend the legal rights of employees as afforded by due process of law. If it is determined that accusations may be malicious and false, the Sheriff may limit the investigation to substantiating a false report.

The Sheriff will issue a written statement of allegations and employee rights and responsibilities to each employee that becomes the subject of an internal affairs investigation. The Sheriff will withhold this notice in cases of alleged corruption or felony law violations.

Employees will be notified in writing of the final disposition of a complaint for which he/she is the accused.

**Taking a Complaint:**

Any employee of this department who receives a complaint of substandard service or misconduct will provide the complainant with procedures to follow in processing the complaint.

No employee will attempt to discourage a citizen from filing a complaint. Regarding complaints, employees will:

1. Take the information necessary for compiling a report, only if of supervisory status;
2. Immediately refer the citizen to the police department to file the complaint with the Sheriff, if of non-supervisory status;
3. Take complaints, if of supervisory status, on a standard citizen complaint form;
4. Never advise a complainant to make the complaint at a later time;
5. Make arrangements for the complainant to talk to the Sheriff, if the complainant so wishes;
6. Request identification and phone number information from the complainant to be

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

forwarded to the Sheriff;

7. Advise the complainant that the report will be forwarded to the Sheriff, (or his designee during absence), who will either investigate the complaint or assign other personnel the responsibility;

8. Inform the complainant that he will be contacted within five [5] days concerning further procedures;

9. Establish if the complainant is a suspect or defendant in the event from which the complaint originated through reading the report;

10. If it is determined that the complainant is or possibly could be, a suspect or defendant in the event immediately read the complainant a Miranda rights warning, utilizing a standard rights form attached to the complainants report;

11. Finalize all complaints within thirty [30] days from the date filed unless circumstances hinder this time limit, if in charge of the investigation;

12. Notify the complainant in writing if an investigation is not completed within the thirty [30] day time limit, if in charge of the investigation;

13. Cooperate fully with any investigation of a complaint made concerning their actions or conduct to include: truthfully answering all questions asked, appearing in line-ups, consenting to and submitting to test such as polygraph examinations, medical tests such as providing urine for drug screening, or a breath sample for blood/alcohol testing; and

14. Subject themselves to dismissal from the department if they do not cooperate fully with an investigation of this type.

## Relief From Duty:

It is sometimes in the best interest of the community and all parties concerned if an employee, who is the subject of an internal affairs complaint, is immediately relieved from duty.

The highest ranking supervisor on duty at the time a complaint is received will have the authority to relieve an employee of duty, with pay, pending further investigation of the complaint or incident.

If the incident, for which the employee is being relieved, involves an intoxicated or impaired employee, an on duty police officer (preferably a supervisor) will provide transport for the employee.

## Information on the Complaint Report:

The Sheriff will record all complaints in a permanent record and assign an internal affairs report number. Reports will include the following information:

1. Name of complainant;
2. Name of accused;
3. Date received;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 284 of 340    PageID #: 749

4. Type of complaint;
5. Internal affairs number; and
6. Final disposition.

## Disposition of Complaints:

Types of dispositions include:

1. Unfounded - Allegation is false or not factual;
2. Sustained - Enough evidence to prove allegation;
3. Not Sustained - Not enough evidence to prove or disprove allegation;
4. Exonerated - Incident happened, but employee's actions were lawful and proper.
5. Sustained /Other - The investigation revealed that there was misconduct by the employee other than that which was alleged.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 285 of 340    PageID #:
750

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Corruption Prevention | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### PURPOSE:

The purpose of this policy is to prevent corruption in Campbell County Sheriff's Department and to prescribe actions to be taken in the event that corruption is alleged and/or identified.

### POLICY:

It is the policy of Campbell County Sheriff's Department to establish proactive procedures to prevent corruption, to investigate complaints or allegations of corruption, and to administer appropriate administrative punishment or criminal prosecution where corrupt acts are confirmed.

### DEFINITIONS:

*Corruption:* Corruption is defined as "acts involving the misuse of authority by a police officer in a manner designed to produce personal gain for the officer or others."

*Supervisor:* Employees assigned to a position having day-to-day responsibility for management and oversight of subordinates and/or who are responsible for commanding a work element.

### PROCEDURES:

### Establishment and Maintenance of Professional Standards:
*Philosophy, Goals, and Values:* Campbell County Sheriff's Department will maintain, periodically review, and update a statement of its goals, values, and general philosophic approach to policing. This statement will appear in the policy manual and will be taught to all new employees. Supervisors will periodically review this statement

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

with subordinates.

*Code of Ethics*: This agency will maintain, periodically review, and update a code of ethics. Each new employee will be required to read and sign a copy of the code of ethics upon employment.

*Rules of Conduct*: The Rules of Conduct will be included in the agency policy manual. New employees will be expected to read and adhere to these rules.

## Proactive Prevention Measures:

Specific officers will be appointed or a separate unit will be established to manage corruption prevention measures. Responsibilities include the following:

1. Review of citizen and internal complaints for indicators of misuse of police powers for personal gain.
2. Review of the findings of internal affairs investigations for patterns that are indicative of corrupt police behavior.
3. Review duty assignments to ensure that periodic rotations are occurring according to agency policy.
4. Investigate any citizen complaint in which corruption is suspected.
5. Where consistent with state law, review overtime pay assignments, employee income and, in special cases, employee federal income tax returns to investigate suspected or reported instances of corruption or determine if patterns emerge indicative of corrupt activities.
6. Review the findings of inspection reports to identify indicators of corruption.
7. Provide effective means for citizens and department employees to report behavior indicative of corruption.
8. Provide reports to the agency chief executive and to the community with regard to the number of corruption cases investigated and the number sustained.
9. Provide public education necessary to promote citizen awareness of corruption and to assist the agency in maintaining the integrity of the police service.

## Responsibilities of Supervisors:

1. Supervisors play a key role in preventing corruption and therefore, to the degree reasonable and appropriate, will be held accountable for corruption that occurs under their assigned area of supervision or command.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. Supervisors are responsible for reporting any suspicious behaviors of employees, which may indicate corruption, including on and off duty activities.
3. The associated performance of supervisors and higher level supervisors will also be reviewed when a subordinate is charged with a corruption violation.
4. The internal affairs investigator will ensure that a reasonable portion of the inspection is directed towards discovering corruption violations.
5. The internal affairs authority is required to immediately notify the Campbell County Sheriff's Department when serious corruption is suspected.
6. The personnel officer will provide an annual report of duty assignments to the Chief Deputy indicating the longevity of assignments in the units listed below:

    a. Organized crime, vice, drug enforcement;
    b. Property room; or
    c. Internal affairs, inspections, corruption prevention officers.

7. Assignments in these units will be rotated periodically according to agency policy or at the discretion of the Chief Deputy.

## Responsibilities of Higher Level Supervisors - Chief Deputy:

Chief Deputy are responsible for the following:

1. Being aware of the impression or image they present to subordinates by either word or deed. Corruption violations on the part of managers will be vigorously prosecuted.
2. Responsible for monitoring the activities of their subordinate supervisors and will be especially cautious with regard to supervisors' concern for responsibility and integrity within their respective units.
3. Conduct the recruitment, selection, and training processes with an acute awareness that integrity in the workplace correlates with the quality of the employee.
4. Provide an award process to recognize those employees who exemplify the high ideals and integrity of police service and the professionalism of the agency.

## Responsibilities of All Employees:

1. The code of ethics will be regarded as a working and applicable document.
2. Employees are responsible for providing information in a timely manner to their

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

supervisor or a command-level officer when corrupt practices are suspected or known to have taken place.

3. Employees will be trained in the areas of corruption prevention, ethics, integrity, and professional standards for all levels of the department.

## Specific and Critical Policies and Procedures - Narcotics Enforcement:

1. Two or more officers should be present during any arrest resulting from a planned drug operation.
2. All confidential informants and drug buys will conform to control, bookkeeping, and accountability procedures detailed in this agency's policies and procedures.
3. All evidence will be processed strictly according to the policies and procedures governing the property and evidence functions.

## Response to Corruption Allegations:

Whenever there is a suspicion that a complaint or an internal investigation will result in a charge of corruption, the following procedures will be followed:

1. The Sheriff will be notified immediately and will be responsible for notifying appropriate city officials.
2. Information will be released to the public as determined by the Sheriff. If a complaint is prosecuted criminally, the Sheriff will authorize release of information appropriate to the public.
3. Any criminal investigation will receive full cooperation of this agency and all employees, to the extent permitted by law.
4. An after-action review will be conducted to determine the cause(s) of corruption and to recommend any system changes or modifications designed to prevent recurrence.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 4

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Post-Shooting Incident Procedures | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

The purpose of this policy is to provide guidelines that will be uniformly applied following any officer-involved shooting incident that has resulted in death or serious bodily injury, in order to minimize the chances that involved personnel will develop or suffer from post-traumatic stress disorder.

### POLICY:

Law enforcement duties can often expose officers and support personnel to mentally painful and highly stressful situations that cannot be resolved through normal stress coping mechanisms. Unless adequately treated, these situations can cause disabling emotional and physical problems. It has been found that officer-involved shootings resulting in death or serious bodily injury to a citizen or a fellow officer may precipitate such stress disorders. It is the responsibility of this law enforcement agency to provide personnel with information on stress disorders and to guide and assist in their deterrence. Therefore, it will be the policy of this agency to take immediate action after such incidents to safeguard the continued good mental health of all involved personnel.

### DEFINITIONS:

*Post-Traumatic Stress Disorder:* An anxiety disorder that can result from exposure to short-term severe stress, or the long-term buildup of repetitive and prolonged milder stress.

*Officer-Involved Shooting Incident:* A line-of-duty incident where a shooting causes death or serious bodily injury to an officer or other person.

### PROCEDURES:

### Handling of Officers at Scene of Shooting Incident:

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

The supervisor dispatched to the scene of the incident will be responsible for:

1. Notifying medical personnel to the scene;
2. Moving the officers involved to a quiet location where a peer counselor may be available;
3. Prohibiting the use of caffeine or other stimulants or depressants by the officers involved unless directed by medical personnel;
4. Interviewing the officers involved on the facts of the incident, although a more detailed debriefing will be conducted at a later time;
5. Notifying the officers involved that an investigation will occur concerning the incident, and they may seek legal counsel;
6. Advising the officers involved to refrain from discussing the incident with anyone except a personal or agency attorney, union representative, or departmental investigator, until the conclusion of the preliminary investigation;
7. Determining whether the circumstances of the incident require that the officer's duty weapon be taken for laboratory analysis. Where the duty weapon is taken, the supervisor will:

   a. Take custody of the officer's weapon in a discrete manner.
   b. Replace the officer's weapon with another weapon, or advise the officer that it will be returned or replaced at a later time, as appropriate.

8. Allow the involved officers to notify their families about the incident as soon as possible. Where an officer is unable to do so, an agency official will personally notify his family, and arrange for their transportation to the hospital.

## Post-Incident Procedures:

All officers directly involved in the shooting incident will be required to contact an agency designated specialist for counseling and evaluation as soon as practical after the incident. Involved support personnel should also be encouraged to contact such specialists after a shooting incident. After the counseling sessions, the specialist will advise the agency:

1. Whether it would be in the officers' best interest to be placed on administrative leave or light duty, and for how long;
2. When the officer's duty weapon should be returned, if it was ever taken; and
3. What will be the best continued course of counseling.

It will be the responsibility of the agency to:

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Remove involved officers from their duties pending evaluation while maintaining their availability for any necessary administrative investigations;
2. Encourage the families of the involved officers to take advantage of available counseling services;
3. Investigate the incident as soon as practical;
4. Brief other agency members concerning the incident so that rumors are kept to a minimum. Agency members are encouraged to show the involved officers their concern;
5. Advise all involved officers to refrain from speaking with the media about the incident. Any inquiries from the media will be received by the designated agency spokesperson, unless a statement pertaining to the incident is authorized for release;
6. Advise officers involved to have phone calls answered by someone else for several days if their names are released to the public; and
7. Advise involved officers that they are required to requalify as soon as practical.

## Daily Stress Recognition:

As post-traumatic stress disorders may not arise immediately, or the officers may attempt to hide the problem, each supervisor is responsible for:

1. Monitoring the behavior of unit members for symptoms of the disorder.
2. Ordering an officer to seek assistance or counseling from a mental health specialist upon a reasonable belief that stress may be disrupting the officer's job performance.

## Training:

The agency will provide employees with training pertaining to post-traumatic stress disorders on a regular basis. Supervisors are responsible for making available to their unit members information about the agency's peer counseling group and mental health services.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Insubordination | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

The organizational structure of Campbell County Sheriff's Department lists the Sheriff as the leading authority within the chain of command. This authority is delegated downward to the next level of authority and continues throughout the entire chain to the lowest level. It is mandatory that employees of this department understand the rank structure and carry out their duties and responsibilities as directed by their supervisors. Any form of insubordination, unless otherwise justified, will not be tolerated and will be subject to disciplinary action up to and including dismissal.

### PURPOSE:

To provide guidelines for employees of Campbell County Sheriff's Department to follow concerning alleged acts of insubordination.

### DEFINITION:

*Insubordination:* is any act of defiance, disobedience, dissension or resistance to authority.

### PROCEDURES:

### General Guidelines:

In maintaining the structural order of Campbell County Sheriff's Department all departmental officials will:

1. Follow the instructions and orders issued by supervisory personnel unless the order would jeopardize their health and safety, violate any federal, state, county, or municipal laws or departmental procedures;
2. Not use profane or obscene language toward any supervisor or public official;
3. Be immediately relieved of duty and dealt with according to department policy for

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 293 of 340    PageID #: 758

any physical assault, attempt or threat of a physical assault of any supervisor or public official; and

4. Request an opportunity to discuss any situations, in private, which they believe are in non-compliance with departmental policy or federal, state, county, or municipal law.

## Supervisor Responsibilities:

Any instance of insubordination will be fully documented by the supervisor involved. Documentation will consist of an incident report, which will be submitted to the Sheriff. The officer cited for insubordination will be advised to contact the Sheriff on the following workday with specific instructions to avoid any further disciplinary action.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Bail Bonds | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department that no employee will become involved directly or indirectly in recommending or arranging for a bondsman or posting bond for any person charged with a criminal or traffic offense. The only exception to this rule is if the arrested person is a member of the employee's family.

### PROCEDURES:

Bail bond procedures will be established by the Judges of the Circuit and Municipal Courts. Should any question arise concerning bond procedures, including recognizance bonds, law enforcement officers will contact their immediate supervisor for guidance.

A complete list of all licensed/practicing bail bond companies will be updated and kept in the booking/processing area for incoming arrestee's or incarcerated individuals who are eligible to post a bond. The list is not to be removed from the booking/processing area.

Under no circumstances will a bail bond person be allowed to remain on departmental property for any reason other than official business. Official business includes speaking to an individual concerning a bond or actually writing a bond. The only exception to this rule is if the bail bond person is visiting a family member or acquaintance during regular visiting hours.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 1

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Off-Duty Conduct & Powers of Arrest | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### PURPOSE:

This policy provides guidelines to police officers regarding acceptable conduct and criteria for affecting an off-duty arrest.

### POLICY:

In order to promote safety and efficiency, it is the policy of Campbell County Sheriff's Department to determine and regulate those situations and locations in which a sworn member is department is permitted to make an arrest while *off-duty.*

### DEFINITIONS:

*Off-duty:* Not assigned or working a prescribed shift or duty. Further in the process of conducting personal business, leisure activities, or working for another person or business other.

*Personally Involved:* An officer is deemed personally involved when the off-duty officer, a family member, or a friend becomes engaged in a dispute or incident involving a personal matter with the person being arrested or any other person connected with the incident, or the officer is accepting money for law enforcement or security duties from other than this department. This does not apply to situations where the police officer is a victim of crime.

### DISCUSSION:

*Off-duty officers* are often faced with situations involving criminal conduct that they are neither equipped, nor prepared to handle, in the same manner as if they were while *on duty.* This may lead to unnecessary injuries to officers or others, and initial confusion

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

for those on-duty officers arriving at the scene trying to correctly assess the facts. If reasonably possibly off-duty officers will report observed crime, and allow on-duty officers to respond. The major exception to this policy is when an off-duty officer, in his discretion, decides to intervene to protect human life.

Peace officers performing official acts under *color or law, and applying reasonably good judgment* are generally immune from civil liability or criminal prosecution. However, this conditional protection does not extend to acts intended to cause injury or damage, or to those actions that the officer knew, or reasonably should have known, were in conflict with the law or the established policies of this department. As a result, officers must exercise discretion when taking action where there is a perceived conflict of interest.

## PROCEDURES:

The following procedures apply to all officers of this department:

### Permitted Off-Duty Arrests:

When off-duty and within the legal jurisdiction of this law enforcement agency, an officer may make an arrest only when:

1. Officer is not *personally involved* in the incident underlying the arrest;
2. There is an immediate need for the prevention of a serious crime or apprehension of a felony or violent suspect;
3. The crime involved is a jailable offense requiring a full custodial arrest;
4. Officer is in possession of appropriate police identification; &
5. There are no on-duty officers present or capable of responding in a reasonable period of time.

### Permitted Off-Duty Arrests When Working In Private Employment:

When engaged in off-duty employment not associated with the police department, the officer should not make arrests that solely, or primarily serve the interests of the employer as opposed to the public in general.

### Off-duty responsibilities:

While off-duty, it is the responsibility of the police officer to:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Immediately report any suspected or observed criminal activities to on-duty authorities.
2. Refrain from enforcing summary offenses or minor violations such as harassment, disorderly conduct or other quality-of-life offenses. Instead, on-duty personnel will be contacted to respond to such situations.
3. Abide by all departmental policies and procedures when affecting the arrest.

## Non-Permitted Off-Duty Arrests:

Officers of this agency may not make an arrest off-duty:

1. When the arresting officer is personally involved in the incident underlying the arrest.
2. When engaged in off-duty employment and the officer's actions are only in furtherance of the interests of the private employer.
3. As enforcement of a minor traffic regulation, code, administrative matter.
4. When the officer has custody or responsibility for minor children in his immediate charge, the officer's immediate responsibility will always be to the protection of the minor children in his immediate charge, and not to affect an arrest.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 3

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Conduct: Abuse of Position | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is the policy of all officials of Campbell County Sheriff's Department to refuse any special privileges or exemptions for themselves or for any:

1. Spouse
2. Child
3. Parent
4. Other family member or relative
5. Friend
6. Acquaintance
7. Non-acquaintance

### PURPOSE:

The purpose of this policy is to provide guidelines for officers confronted with situations, which, if not managed properly, would result in abuse of an authoritative position.

### DEFINITIONS:

*Authoritative position:* All police officers have a position of authority, which is afforded to him or her by society. Because of this authority, police officers are in a position to influence the citizens within a community.

*Conflict of interest:* An individual involving oneself in a situation for which the individual will have a specific self interest in the outcome.

### PROCEDURE:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 2

## Abuse of Position:

In compliance with departmental procedure, all members of Campbell County Sheriff's Department will consider the following situations abuses of position:

1. Becoming involved in a situation, which is a conflict of interest.
2. Use of authority for the purpose of financial gain.

## Conflict of Interest Regarding Abuse of Position:

All officers of Campbell County Sheriff's Department will avoid becoming involved in any situation, either on or off duty, for which a conflict of interest is present. If an officer responds to a call for which a conflict of interest presents itself, the officer will control the situation, request a supervisor to respond, and cease any further involvement in the situation after being properly relieved.

## Financial Gain Regarding Abuse of Position:

All officers of Campbell County Sheriff's Department will maintain the following guidelines:

1. No officer of Campbell County Sheriff's Department will accept payment of cash or property for services delivered in their capacity as a police officer. Any officer confronted with such a situation will immediately complete a report to be forwarded to the Sheriff.
2. An officer will never attempt to negotiate any payment of cash or property from another person or institution in their capacity of official police business. Any abuse of this authority will be subject to disciplinary action.
3. Officers will never accept any gift or gratuity from a subordinate, unless approved by the Sheriff.
4. Officers, while in their official police capacity, will never:

   a. Solicit subscriptions; or
   b. Sell books, papers, tickets, merchandise, or any other items of value.

5. Officers will never give testimony or use their name or photograph regarding commercial advertising, unless approved by the Sheriff.
6. Officers will not seek personal publicity, either directly or indirectly, in the course of their employment.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

# Campbell County Sheriff's Department
## Law Enforcement
### Policies and Procedures

| **Subject:** Special Weapons & Tactics Team, [S.W.A.T.] | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

### POLICY:

Campbell County Sheriff's Department will utilize a Special Weapons And Tactics [S.W.A.T.] Team and tactics in high-risk situations involving threat of human life.

### PURPOSE:

The purpose of this policy is to outline recruitment, responsibilities, standards, and tactics for S.W.A.T. Team training and operations.

### DEFINITIONS:

*Inner Perimeter:* A containment area immediately surrounding the situation location that minimizes and controls movement of suspects within that area. Inner perimeter should be sufficiently large to reasonably limit threats to human life, yet small enough to facilitate control and management of the threat.

*Outer Perimeter:* A large area that surrounds the inner perimeter and prohibits unauthorized vehicular and pedestrian traffic from reaching the inner perimeter. The outer perimeter should be configured to afford protection and safety to those outside the perimeter boundaries.

*Control Zone:* The space between the outer perimeter and the inner perimeter. Officers manning the outer perimeter may allow authorized persons into the *control zone* for restricted purposes as authorized by the incident commander. Depending upon the specific geographic circumstances, unauthorized persons, including bystanders, residents, merchants, non-involved police officers, and others, are evacuated from the inner perimeter and the control zone, or sheltered in place if evacuation is not possible or

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

desired.

*Debriefing:* The presenting of all pertinent information for a formal report.

## PROCEDURE:

### Response Situations:
Following authorization of the Sheriff, S.W.A.T. team members will respond to the following high-risk situations, to include, but not limited to:

1. Barricaded person;
2. High-risk arrest;
3. High-risk search;
4. Hostage situation;
5. Personal security;
6. Search & rescue;
7. Special event;
8. Stake outs;
9. Terrorist threat or attack;
10. Threatened suicide intervention; or
11. Any other activity or situation deemed appropriate.

### Selection of S.W.A.T. Members:
Any officer wishing to work as a part of the S.W.A.T. team must:

1. Have two years experience within Campbell County Sheriff's Department;
2. Be able to function effectively as an integral part of a law enforcement team;
3. Be able to follow orders without hesitation or delay;
4. Submit a written request for consideration to the S.W.A.T. team leader which contains:

   a. Reason for requesting assignment; &
   b. An outline of specialized skills, interests, or training that would benefit the team.

5. Achieve an overall rating of at least *good*, as adjusted for age, on the department

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022   Document 21-2   Filed 09/26/08   Page 302 of 340   PageID #: 767

physical fitness evaluation;
6. Have *unrestricted duty and training* medical status;
7. If meeting the above requirements, request an oral interview with the S.W.A.T. team leader and Sheriff; &
8. If selected, voluntarily submit to increased random drug testing and an annual medical examination.

## Training:
Specialized training of team members will include:

1. A minimum of eight [8] hours per month. Plans are evaluated and approved by the Chief Deputy at least fifteen [15] days prior to each training session.
2. Members participate in the department physical fitness program, and those who fail to meet the fitness standards will be prohibited from participating in S.W.A.T. activities. Any member who has not passed the physical standards within 60 days after initial failure is removed from the team.
3. The *negotiation officer* will, at least monthly, attend or conduct training in negotiations of incidents, verbal skills, and entry team drills.

S.W.A.T. operations are a team effort, and teamwork is critical to the safe and efficient accomplishment of assigned missions. All members of the team, without exception will attend training. Any officer unable to complete required training will be placed on probation from team assignments until the training deficiency is corrected, or permanent reassignment is made. During training or exercise session the team will work, and function as a team. Training will be recorded in a monthly report and kept on permanent file.

## Firearms:
The use of and proficiency of firearms is an integral part of S.W.A.T. training, therefore, the following guidelines will be maintained:

1. Team members will maintain an award rating of expert, and proficiency with all personal firearms carried during S.W.A.T. operations.
2. Only approved weapons and ammunition will be carried during S.W.A.T. operations.

## Equipment:
Specialized equipment is an integral part of the S.W.A.T. mission. To ensure a successful

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 6

resolution of tactical operations and the safety of officers, the department will provide individual and team equipment. Issued equipment will be stored at Campbell County Sheriff's Department and inspected monthly by the team leader or his designee to ensure operational readiness. Any personal equipment not issued by the department must first be approved by the team leader, and note of this approval will be placed in the individual officers personnel file.

## Jurisdictional Responsibilities:

Any high-risk situation in which a hostage victim is a *foreign official* or an *official guest of the United States,* or commission of a federal crime is involved may involve concurrent jurisdiction between a federal agency and our department. During operations where responsibility is *concurrent,* every effort should be made to insure mutual agreement prior to conducting tactical operations. In those instances where a question of *tactics, approach,* or *civil rights* cannot be resolved, the incident commander will relinquish control of the situation to federal agents and withdraw department forces from the scene. Under no circumstance will department S.W.A.T., patrol, or other officers perform any act at the direction of Federal officers that violate department general orders or codes of ethics.

## Responsibilities - Initial Scene Supervisor:

Before S.W.A.T. responses to high-risk situations, the on-scene supervisor will:

1. Notify dispatch of the situation and request back-up units including *patrol, S.W.A.T., fire department,* and *emergency medical services*;
2. Attempt voice contact with the suspects or endangered parties to collect critical information about the situation;
3. Evacuate injured parties and bystanders, unless evacuation attempts are likely to result in a greater risk of injury to citizens or officers;
4. Establish *an inner perimeter, outer perimeter,* and *control zone*;
5. Establish a *command post* and *staging area(s);*
6. Relay information about the situation to dispatch including, but not limited to, *location of possible hostages, description of suspects and their weapons, possible avenues of escape, land safe locations for additional units to respond*;
7. Instruct the police dispatcher to begin the notification of appropriate personnel advising them to report to the command post location.
8. Direct all responding personnel to the command post for assignment.
9. Remain at the command post to:

    a. Supervise officers assigned outer perimeter duties; and

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

b. Assist in documentation of official reports.

10. Detain all witnesses for debriefing.

## Responsibilities - Special Weapons & Tactics Officers:
Arriving to the scene of a high-risk incident, S.W.A.T. team members will:

1. Relieve other officers on the inner-perimeter;
2. Evaluate the threat, and prepare verbal or written intelligence and scouting reports for the S.W.A.T. team leader;
3. Locate and isolate suspects;
4. Assist in removal of non-essential persons out of zones of danger;
5. Carry out *containment, assault, arrest, negotiation, or other* plans as directed by the S.W.A.T. team leader, with minimal injury to officers, citizens, or suspects;
6. Relocate perimeter containment if the suspect, accompanied by a hostage moves; &
7. Employ minimum levels of force and deadly force necessary to accomplish the assigned mission, as directed.

## Responsibilities - S.W.A.T. Team Leader:
In response to high-risk situations, it will be the responsibility of the S.W.A.T. team leader to:

1. Debrief incident upon arrival;
2. Debrief officers, witnesses and other responders, and relocate key individuals for later access or assistance;
3. Take command of inner perimeter, limiting access to authorized personnel;
4. Establish a mobile command post with necessary equipment;
5. Develop plans for *containment, negotiations,* or *decisive action* as the situation warrants;
6. Determine short and long term objectives and mission requirement.
7. Direct operations regarding the employment of S.W.A.T., department, and support units, to include minimum levels of force and deadly force necessary to accomplish the mission; &
8. Ensure proper documentation of all events through conclusion.

## Responsibilities - Sheriff:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

The Sheriff or his designee is the final authority at the scene of high-risk incidents. His responsibilities include:

1. Maintaining liaison with other concerned agencies and jurisdictions;
2. Gathering intelligence from debriefings and scouting reports;
3. Authorizing the use of deadly force, and discharge of firearms;
4. Ensuring departmental resources are available for the successful conclusion of the mission;
5. Assisting the S.W.A.T. team leader in developing and analyzing strategy or contingency plans;
6. Requiring, collecting, and analyzing *incident* and *supplemental reports* from all S.W.A.T., and other officers a the scene; &
7. Conducting *critical incident review analysis*, and revisions to policies & procedures, as discretion dictates.

## Critical Incident Review:

S.W.A.T. actions will be critiqued and evaluated at a debriefing immediately following the incident, and in a critical incident review analysis conducted by Sheriff. The purpose for these evaluations will be to improve law enforcement services to the community, while minimizing the threat to innocent life.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Hostage or Barricaded Subject Incidents | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### PURPOSE:

It is the purpose of this policy to provide general guidelines for handling hostage or barricaded subject situations.

### POLICY:

In hostage or barricaded subject situations it will be the policy of Campbell County Sheriff's Department to:

1. Consider the lives of the officers, hostages, and civilians involved to be of the utmost importance;
2. Peacefully resolve the incident through communication with the suspect;
3. Develop and maintain the ability to use alternative approaches to resolve the incident should communications fail; and
4. Make every reasonable effort to effect the safe release of the hostages.

### DEFINITIONS:

*Barricaded Subject:* Any individual who is reasonably believed to be a threat to commit serious bodily injury or death to hostages, officers or others in the community and who is in a stronghold position.

*Hostage:* Any person held by another against his will by force or threat of force, expressed or implied.

### PROCEDURES:

**Patrol Officers:**
Patrol officers confronting hostage or barricaded subject incidents will not initiate tactical actions other than those necessary to protect the lives and safety of

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022    Document 21-2    Filed 09/26/08    Page 307 of 340    PageID #: 772

themselves or others consistent with this department's use of force policy. Officers will then:

1. Notify a supervisory officer of the incident and circumstances;
2. Contain and isolate the incident scene, establishing an inner containment perimeter to provide a reasonable degree of safety while maintaining contact with the incident scene and—as time and resources permit— establish an outer containment perimeter to control pedestrian and vehicular traffic into the area; and
3. Evacuate occupants of affected residences and businesses to a point beyond the perimeter.

## Officer in Charge (OIC):

The ranking officer at the scene will be in charge until specifically relieved by a superior. The OIC will:

1. Delegate the tactical mission to the commander of the tactical response team;
2. Ensure development of a communications and negotiations process and an emergency response team reaction;
3. Ensure establishment of an inner and outer perimeter, command post, tactical operations center, negotiations center and a staging area for officers and others arriving for assignment;
4. Assign a press center and an officer for press liaison;
5. Ensure that responsibility for traffic and crowd control is established, and that routes for emergency vehicles have been designated;
6. Make provisions for recording personnel assignments and developing a chronological record of events at the command center and tactical operations center;
7. Ensure that necessary equipment from the fire department is made available at the staging area together with any other units or equipment such as canine teams, aviation, or marine units; and
8. Ensure that emergency medical services are available at the site.

## Tactical Response Team Commander:

The commander of the tactical response team will assist the OIC in:

1. Determining equipment needs and assigning personnel to control and contain the inner perimeter;
2. Designating marksmen and entry teams if necessary;
3. Ensuring that personnel manning the inner perimeter maintain firearms discipline and are provided with periodic relief by appropriate tactical response team members;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

4. Preparing appropriate logistical plans to include diagrams of the location in question;
5. Ensuring the establishment of a tactical operations center if necessary; and
6. Maintaining contact with and keeping the command post informed of all developments and operations.

## Hostage Communications Team:

The individual in charge of communicating with the barricaded subject will:

1. Provide any requested assistance to the OIC;
2. Provide trained primary and secondary negotiators and, if available and necessary, a negotiations investigator;
3. Obtain all pertinent information about the hostage taker, the hostages, hostage site and other barricaded subjects;
4. Designate a location to interview witnesses, released hostages, and others; and
5. Debrief hostages following the incident.

## General Rules of Negotiation:

When the officer in charge attempts to make contact with the barricaded subject, he should:

1. Avoid soliciting demands;
2. Listen carefully for clues regarding the subject's emotional state;
3. Avoid bargaining or making concessions;
4. Reassure the subject that police will not storm the building;
5. Never offer the subject anything;
6. Minimize the seriousness of subject's crimes;
7. Never refer to people being held as "hostages";
8. Avoid tricks and try to be honest;
9. Never say "No" to a demand (you do not have to say "Yes", either);
10. Never make suggestions; and
11. Never use "outsiders" to talk to subjects.

## Psychological Services:

Psychological services will serve as a resource to the hostage communications team to:

1. Monitor communications between the negotiators and subjects and provide negotiators with assessments of effectiveness, recommended strategies, and other relevant information;
2. Assist in interviewing witnesses and debriefing hostages; and

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

3. Provide professional assistance to hostages, witnesses and others as may be necessary.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Case 3:07-cv-00022     Document 21-2     Filed 09/26/08     Page 310 of 340     PageID #: 775

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Civil Litigation | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

### POLICY:

Campbell County Sheriff's Department takes proactive measures to limit the causes and impact of civil litigation filed against officers, supervisors, and management of this department. The distractions caused by civil litigation will be minimized through the triad of *personnel training, supervision,* and *adherence policy & procedures.* Supporting this triad is the requirement to reasonably document our decisions and actions.

### DEFINITIONS:

*Civil Law:* The law of civil or private rights. Sometimes called a *tort case.* In the case of civil lawsuits brought against officers or administrators, these cases ask the court to:

1. Award money damages to be paid by the officer, administrators, or county, for the wrongs done to them.
2. Force the department to make changes in the way it operates by paying punitive damages, entering into a consent decree [agreement to change], or simply ordering the change.

*Discovery:* The judicial process for compelling production of written records or other evidence for use in civil litigation.

*In-camera Inspection:* Judicial inspection of allegedly privileged information to determine whether the need to present such information as part of the essential proof of the case outweighs the interest in maintaining its confidentiality.

*Plaintiff:* A person or persons who brings a civil case. A plaintiff may be an inmate, detainee, citizen, group of citizens, or another governmental body.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 6

## PROCEDURES:

### High-Risk Incidents:

The following is a listing of the *deadly dozen.* These categories of cases are those tort and criminal cases that create the larges amount of loss to public sector insurance companies, and governmental entities, as complied by public sector insurance experts.

1. Use-of-force
2. Firearms and less lethal weapons
3. Vehicular pursuits
4. Patrol driving and response
5. Domestic violence
6. Arrest procedures
7. Investigatory stops
8. Searches
9. Motor vehicle stops and searches
10. Police canines
11. Workplace harassment
12. Transportation of prisoners
13. Secondary employment and off-duty powers

### Response to High-Risk Incidents:

When responding to or on the scene of a high-risk incident:

1. Secure the scene and all evidence;
2. Record the names and addresses of all witnesses on the scene;
3. Obtain a statement at the scene from a relevant source, and from ambulance and emergency room personnel, if applicable;
4. Note all necessary information regarding the incident;
5. Request a supervisor be dispatched to the scene:

   a. To conduct an independent review of all relevant information prior to *release of the scene*; or
   b. To review a search or arrest which may have been handled improperly.

6. Request an investigator be dispatched to process the crime scene according to departmental procedure, including:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

a. Taking color photographs or video from different angles;
b. Photographing all witnesses.
c. *Insure that each suspect is read their rights to include Miranda, Juvenile Warnings, and any other required readings.*

7. Document all necessary information when making an arrest, to include:

a. Whether medical treatment was necessary, was requested, or received;
b. Suspect's general mental and physical health, and presence of any specific health problems requiring special treatment;
c. Any medical or psychological services the suspect has requested, or is in apparent need of attention.
d. Photographs of suspect and victims to include any specific injuries.

## Post-Incident Procedures:

All law enforcement personnel responding to or involved in a high-risk incident will submit a report fully documenting the incident to their supervisor before concluding their shift. Supervisors will review the reports, requesting any necessary supplemental information, and forward the reports to Sheriff as soon as practicable. The Sheriff or designee will prepare and submit a confidential memo to the department's legal counsel providing an assessment of the incident. Depending on the need, the Sheriff or his designee will meet with legal counsel.

Officers working or involved in the case are cautioned to understand and comply with the following instructions:

1. Any internal investigation initiated does not necessarily imply misconduct; &
2. Officers are not to discuss the incident with reporters or attorneys not associated with the department without prior approval of the Sheriff, or court order.

## Responsibilities of the Sheriff:

With the aid of department's legal counsel, the Sheriff will coordinate all responses to pending or potential litigation against the department. Supplementary information, which will aid in this process includes:

1. Development of litigation file with:

a. Copies of relevant departmental policies pertaining to the incident;

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 6

b. Copies of relevant radio communications, computer, or telephone records or tapes;
c. Relevant photographs pertaining to the incident;
d. Copies of the disciplinary and training records of all involved personnel; &
e. Criminal docket, where applicable, from any criminal case arising from the incident.

2. Establishment of an accounting process to ensure:

a. Documents are routed to appropriate parties for resolution;
b. Documents are processed and completed by due dates; &
c. Records are kept detailing information released in each case and purpose for its release.
d. Policies & procedures are protected from release in accordance with *stated warnings*.

3. Conduct audits and semi-annual reviews of departmental litigation to determine whether a need for *policy and procure* revision, or training exists.
4. Dissemination, to departmental employees, of any updated *policies & procedures* resulting from new case law and statutes relevant; &
5. Notification to effected employees involved in civil litigation, which has been concluded or settled.

## Responsibilities of Employees:

Any employee named, as a party in a civil action for acts or omissions allegedly arising out of their *scope authority* or *official duties* will:

1. Immediately notify the Sheriff and department's legal counsel;
2. Request representation from departmental legal counsel, if eligible; or as an option secure representation from a private attorney at own expense, if desired;
3. Maintain accurate and detailed reports; &
4. Refrain from making public statements as an employee of the department concerning the litigation without prior approval of the Sheriff.

## Response to Subpoenas and Discovery Requests:

Employees of Campbell County Sheriff's Department follow these guidelines regarding subpoenas in matters arising out of their official capacity:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 6

1. When receiving a subpoena to testify, provide deposition, or documents employees will immediately notify the Sheriff and the department's legal counsel. A copy of the subpoena will be provided with the notice.
2. All discovery requests or subpoenas for department records, reports, or officer notes will be complied with as directed by the department's legal counsel and state law.
3. With regards to *discovery requests*, the following information may be released to a judge for in-camera inspection:

   a. *Policy & procedure* sections, governing the alleged misconduct
   b. Personnel records
   c. Citizen complaints
   d. Internal investigation files related to the incident
   e. Responses to requests for past internal investigations into alleged misconduct of officers
   f. Responses to requests for internal investigations into officer alleged misconduct or misconduct similar to that being litigated

4. The following information may or may not be fully discoverable:

   a. Records of official review boards
   b. Departmental policies and procedures
   c. Training records
   d. Internal memos or notes that do not fall within *attorney work product privilege*

5. Privileged material generally not subject to discovery:

   a. Names of *confidential informants* or *citizens who wish to remain anonymous*
   b. Records of ongoing internal investigations that would be jeopardized by disclosure
   c. Investigative files relating to ongoing criminal investigations
   d. Communications subject to any legal privilege

## Response to Media:

The Sheriff or his designee is the sole individual responsible for authorizing or coordinating all statements pertaining to any incident or litigation involving the department. The Sheriff will work with legal counsel to present fair and accurate media statements pertaining to testimony, legal issues, or other concerns arising from litigation or any other incident involving the department. Employees asked to comment

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.



or talk with representatives of the news media, will prior to such a meeting or discussion secure permission form the Sheriff.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 6

### Campbell County Sheriff's Department
### Law Enforcement
### Policies and Procedures

| **Subject:** Emergency Management | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### POLICY:

It is the policy of Campbell County Sheriff's Department to plan for unforeseen events and circumstances. This objective is supported by maintaining emergency plans; training staff in their responsibilities and duties regarding these plans; and coordinating with local emergency service agencies.

### PURPOSE:

To provide guidelines for procedures in emergency situations such as riots, escapes, hostage incidents, bomb threats, and adverse job actions.

### PROCEDURE:

### Emergency Plans:
The Sheriff is responsible for formulating emergency plans, and integrating these plans into departmental policies and procedures. These plans involve:

1. Bomb threats
2. Escape routes and movement
3. Evacuation
4. Fire
5. Natural Disaster
6. Hazardous Material
7. Hostage
8. Medical Emergency
9. Employee Work Stoppage

### Contents:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| Policies and Procedures, Emergency Management |

Each emergency plan contains:

1. Discretionary reaction options for staff first becoming aware of the emergency.
2. Supervisory notification procedures, to include:

   a. Name and title
   b. Telephone numbers in the department, at home, and pager number of:
      i.    shift supervisor
      ii.   Chief Deputy
      iii.  Sheriff, &
      iv.   Other personnel as specified in the individual plan.

3. Command responsibilities when supervisory personnel are unavailable, include:

   a. Senior staff member on duty assuming command until the arrival of Sheriff or designee;
   b. Sheriff or designee assuming charge for the duration of the crisis; and
   c. In the event of a prolonged crisis, a relief schedule for command staff will be established.

4. Establishing an emergency command post at the site. Location will provide:

   a. Radio and telephone to staff;
   b. Sufficient space for tactical planning; and
   c. Safe area location.

5. Emergency staff call-up procedures. Off-duty officers may be called in when additional support is needed.
6. Time keeping procedures established early in the crisis. As soon as possible, staff will be assigned specific duties in the emergency response.
7. Description of special equipment needs. Depending on the type of emergency, reliance on outside sources of equipment may be involved.
8. Description of special communication needs. Radio frequencies for local fire department and emergency services, monitors for civil defense or weather warnings will be included.
9. Procedures for information release to the media. News releases will only be done with the approval of the Sheriff.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 3

A follow-up investigation and report will be prepared for the Sheriff and Chief Deputy, including an assessment of the effectiveness of the plan and staff response.

## Training:

In preparation for emergencies, employees of Campbell County Sheriff's Department will receive:

1. Initial training at the time of hiring;
2. Refresher training not less than annually;
3. Specialty training for staff with critical roles; &
4. Joint or cross training with community and other government resources upon which the department will draw in an emergency.

Conduct of training for emergencies will be based on the plans developed at the direction of Sheriff, and carried out by the Training Officer.

## Review of Plans:

Once developed, the plans will be maintained in a ready status for reference, consulted periodically, and distributed to the following.

1. Sheriff
2. Chief Deputy
3. countyFire Department and Emergency Medical Service

Employees are required to review emergency plans at least once a year for accuracy and updating. New employees will familiarize themselves with the plan and their individual roles.

## Revision:

Review and revision of emergency plans will be on an annual basis or as circumstances [e.g., new phone numbers or staff changes] dictate. As political and crime indicators dictate, plans will be adjusted and added in an effort to keep pace with evolving threats.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Special Munitions Distraction Devices | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority Title and Signature:** | |

### Purpose:

The purpose of this policy and associated procedures is to establish guidelines governing the use of *special munitions*, commonly referred to as *distraction devices,* as used during pre-planned law enforcement operations of this department.

### Policy:

It is the policy of this department to employ *special munitions distraction devices* when the application of such devices will aid in the accomplishment of the mission without unreasonable risk to human life.

### Distraction Devices:

Distraction devices are usually considered *less-than-lethal,* and are employed to distract attention. Both hand-thrown and shoulder fired weapons delivery systems are covered by this policy. This includes shotgun and 37mm gun rounds, which produce a sudden loud noise or a flash of light. These devices, whether fired from a weapon or hand thrown may also be referred to as *flash-bang* systems. These tools are to be used to provide diversion or to mask law enforcement personnel movement activities.

### Safety Precaution:

All munitions, including special munitions are employed within the guidelines of the departmental *use of force* policy. Such devices are not designed to produce shrapnel or expelled particles. However, these munitions are capable of causing bodily injury, serious bodily injury, or death in some circumstances, especially if not employed properly. Manufacturer's recommendations may require larger clearance or safety zones. If so, these recommendations replace the following. Flash-bang devices are:

a) Deployed in a manner that will not injure human life.
b) Not to be used within a 20-foot radius of any individual, unless a substantial wall or safety barrier protects all persons.
c) Not to be used in enclosed structures when individuals inside the structure are at

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

risk from shrapnel, expelled particles, fire, or burn caused by the devices.
d) Not to be used in the proximity of flammable materials.

## Deployment:

a) During normal operations distraction devices will be secured in munitions lockers at the department, or transported in secured container by supervisory personnel with the rank of sergeant or above.
b) Distraction devices are used consistent with department training and manufacturers' instructions.
c) Distraction devices may be used in emergencies that require deployment of personnel in dangerous situations, or as an alternative to the use of more lethal force.
d) Distraction devices are normally used in planned assaults, which require the temporary disorienting or confusion of individuals without risk or injury to human life.
e) Only personnel trained in the use of distraction munitions and under direct supervision will employ these devices.
f) When practical, staff assigned to deliver distraction devices should be backed up by other staff armed with conventional weapons to provide protection to human life.
g) When practical, medically trained officers or medical personnel will be present during the deployment of distraction devices to provide emergency first aid.
h) Regardless of the level of support available, officers will render first aid to any injured person as soon as practical after the situation is stabilized.

## Reporting:

After employment of special munitions in a tactical incident a report will be completed that includes:

a) Supervisor authorizing use of special munitions;
b) Identification of officers deploying munitions;
c) Number and types of rounds expended;
d) Effects on targeted person(s) and any injuries;
e) Secondary or unintended injury or damage;
f) Attachment of any associated medical or damage reports.

This data may be described in the incident or investigative report, and does not have to be reported by means of a special document.

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Special Munitions – Less Lethal | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### Purpose:
The purpose of this policy and associated procedures is to establish guidelines governing the use of *special munitions* as used during pre-planned law enforcement operations.

### Policy:
It is the policy of this department to employ *less lethal special munitions* in those instances where the application of such devices will aid in the accomplishment of the mission while reducing risk to human life.

### Special Munitions Devices:
This policy addresses the use of munitions usually considered *less-than-lethal.* For purposes of this policy, these munitions include hand thrown [grenade] devices, shotgun, or 37mm rounds loaded with *rubber sabots, rubber pellets, beanbags, gas, stains, oleoresin capsicum,* or *similar* projectiles.

### Precaution:
All special munitions are employed within the guidelines of the department *use of force* policy. These munitions may be capable of causing bodily injury, serious bodily injury, or death in some circumstances. Special munition rounds will not be deliberately fired or thrown at the face, neck, or spine of any individual. Special munitions may come with manufacturer recommendations and guidelines. Officers designated to employ these special munitions will be familiar with, and trained in the application of these recommendations and guidelines, before deployment.

### Deployment:
a) During normal operations, special munitions will be secured in munitions lockers at the department, or transported in secured containers by supervisory personnel with the rank of sergeant or above.
b) Special munitions are used consistent with department training and manufacturers' instructions.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

c) Special munitions are used in emergencies that require deployment of personnel in dangerous situations, or as an alternative to the use of more lethal force.

d) Special munition rounds are normally used in planned assaults which require the temporary disabling of target individuals, facilitate maneuver, or capture of individuals.

e) Only personnel trained in the use of special munitions, and under direct supervision, will employ these devices.

f) When practical, staff assigned to deliver these rounds should be backed up by other staff armed with conventional weapons to provide protection for human life.

g) When practical, medically trained officers or medical personnel will assist in the deployment of special munitions to provide emergency first aid.

h) Regardless of the level of support available, officers will render first aid and decontaminate those exposed to the effects of gas, chemicals, or OC as soon as practical after the situation is stabilized.

## Reporting:

After employment of special munitions in a tactical incident, a report will be completed that includes:

a) Supervisor authorizing use of special munitions;

b) Identification of officers deploying munitions;

c) Number and types of rounds expended;

d) Effects on those targeted and any injuries;

e) Secondary or unintended injury or damage; and

f) Attachment of any associated medical or damage reports.

This data may be described in the incident or investigative report, and does not have to be reported by means of a special document.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and shall not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Civil Rights & United States Constitutional Warnings | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

It is a primary responsibility of Campbell County Sheriff's Department to be the protector and defender of the civil rights of all persons within the jurisdiction of this department. As such, officers of this department will, without exception provide appropriate warnings and the corresponding protection to all suspects.

### PROCEDURE:

### The Warnings:

The Supreme Court of the United States provides *concrete constitutional guidelines for law enforcement officers on required* warnings. These *warnings and the corresponding rights all apply before any questioning of a suspect*. The rights of an accused suspect or person in custody are:

1. Right to remain silent;
2. A clear understanding that anything he says may be used against him in a court of law;
3. Right to an Attorney before any questioning; &
4. If he can't afford an Attorney, one will be appointed, and provided before any questioning.

After reading a suspect their rights, the suspect will be ask *Do you understand your rights?* If the answer is yes, the officer will question the suspect to test their understanding such by asking: *Do you understand you have a right to any attorney? Do you understand that you don't have to speak or provide your side of the story?* By this process the officer can confirm the suspect's comprehension of his rights.

All officers of the department under the following guidelines will read these rights to any and all suspects:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| Law Enforcement Policies and Procedures, Civil Rights and Constitutional Warnings |
| --- |

1. <u>Before</u> any *interrogation, interview, or questioning* regardless of whether the suspect has been arrested or not. A clear rule of thumb is . . . if the officer has a suspicion that this individual has committed a specific crime, the officer must stop the investigation or inquiry and read the suspect their rights.
2. Officers will read the warnings from a form or pocket card approved from the department. Officers <u>will not</u> recite the warnings from memory.
3. Arresting officers will always read a suspect their rights at the earliest possible opportunity, after the suspect and the crime scene is secured.
4. Officers will not assume that a suspect has had their rights read to them, or that they comprehend their rights, regardless of the number of officers that have handled the suspect under this case or previous arrests.
5. All written statements or confessions of a suspect will bear a written confirmation of the suspect's rights, and an understanding of their rights, and the suspects witnessed signature.
6. The reading of these warnings will be given in addition to any other required warning such as *juvenile warnings, magistrate warnings*, or *warnings by any other law enforcement agency*.

**Stop Action:**

Any suspect, may at any time exercise their constitutional rights, to have legal representation or to not speak, even after the individual has previously waived their constitutional rights. This may occur during a conversation, interview, interrogation, or lineup. It is immaterial whether the person is in or out of custody. When a suspect states a desire to exercise their rights, the interrogation or interview. will stop, and no force or coercion will be used to dissuade the suspect from exercising their rights. No further interviews or interrogations will be made of the suspect until the suspect has had access to legal counsel, or a written request has been received from the suspect requesting to speak to officer, without the presence of an attorney. There are no exceptions. The exercise of constitutional rights by a person or suspect is not an admission or indications of guilt.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Civil Disturbances | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### PURPOSE:

The purpose of this policy is to establish guidelines to effectively deal with crowds engaged in or posing a significant threat of engaging in violence, property damage or breaches of the peace.

### POLICY:

The manner in which law enforcement officers deal with unruly crowds and illegal gatherings has direct bearing on their ability to control and defuse the incident and contain property damage, injury or loss of life. Officers confronting civil disturbances and those called upon to assist in these incidents will follow the procedures of containment, evacuation, communication, use of force, and command and control as enumerated in this policy.

### DEFINITION:

*Civil Disturbance:* An unlawful assembly that constitutes a breach of the peace or any assembly of persons where there is imminent danger of collective violence, destruction of property or other unlawful acts.

### PROCEDURES:

The first officer to arrive on the scene of a civil disturbance will do the following:

1. Observe the situation from a safe distance to determine if the gathering is currently or potentially violent.
2. Notify the communications center of the nature and seriousness of the disturbance, particularly the availability of weapons. Request the assistance of a

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 4

supervisor and any necessary backup and advise as to the present course of action. If approaching the crowd would not present unnecessary risk, instruct the gathering to disperse.
3. Attempt to identify crowd leaders and any individuals personally engaged in criminal acts.

The ranking officer at the scene will be the officer in charge (OIC). The OIC or other higher ranking officer assuming command at the scene will take the following steps:

1. Assess the immediate situation for seriousness and its potential for escalation. If the disturbance is minor in nature and adequate resources are available, efforts should be made to disperse the crowd.
2. Establish the number of personnel and equipment necessary to contain and disperse the disturbance and relay this information to the communications center.
3. Where necessary, ensure that appropriate notification is made to outside agencies to include the fire department, rescue squads, state and local law enforcement agencies, departmental officials, public information officer, the agencies' legal advisor and the local detention center.
4. Establish a temporary command post based on proximity to the scene, availability of communications, available space and security from crowd participants.
5. Establish an outer perimeter sufficient to contain the disturbance and prohibit entrance into the affected area.
6. Ensure that, to the degree possible, innocent civilians are evacuated from the immediate area of the disturbance.
7. Ensure that surveillance points are established to identify agitators, leaders and individuals committing crimes, and to document and report on events as they happen. Photographic and videotape evidence of criminal acts and perpetrators will be generated whenever possible.
8. Ensure establishment and sufficient staffing of a press area.

## Command Options:

When adequate personnel and resources are in place, the OIC will establish communications with leaders of the disturbance and discuss actions necessary to disperse the crowd. Should the crowd fail to disperse in the prescribed manner, the OIC should be prepared to implement one of the following options:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Containment and dialogue. The objective of containment and dialogue measures is merely to disperse the crowd. In so doing the OIC should:

   a. Establish contact with crowd leaders to assess their intentions and motivation and develop a trust relationship.
   b. Communicate to the participants that their assembly is in violation of the law and will not be tolerated, that the department wishes to resolve the incident peacefully and that acts of violence will be dealt with swiftly and decisively.

2. Physical arrest. When appropriate, the OIC will order the arrest of crowd leaders, agitators or others engaged in unlawful conduct and will:

   a. Ensure the appropriate use of tactical formations and availability of protective equipment for officers engaged in arrest procedures.
   b. Ensure the availability of transportation for arrestees.
   c. Ensure that a backup team of officers is readily available, should assistance be required.

3. Nonlethal force. When physical arrest of identified leaders and agitators fails to disperse the crowd, the OIC may use nonlethal force to accomplish these ends. In so doing, the OIC will ensure that:

   a. A clear path of escape is available for those who wish to flee the area.
   b. The use of tear gas, smoke or other nonlethal devices is coordinated and controlled.
   c. Canine teams are restricted from all enforcement actions.

4. Use of deadly force. The use of deadly force in the control and dispersement of civil disturbances as in other circumstances is governed by this department's use-of-force policy. Specifically:

   a. Law enforcement officers are permitted to use deadly force to protect themselves or others from what is reasonably believed to be an immediate threat of death or serious bodily injury.
   b. Particular caution should be taken when using firearms during civil disturbances— the arbitrary use of return fire in crowds is prohibited.
   c. Where sniper fire is encountered or hostages taken, this department's policy on hostage and barricaded subjects will be followed.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Mass Arrest:

During the course of civil disturbances, it may be necessary to make arrests of numerous individuals over a relatively short period of time. In order for this process to be handled efficiently, safely and legally, the OIC should ensure that:

1. An arrest team is designated to process all prisoners for purposes of transportation.
2. An adequate number of vehicles are made available to remove the prisoners to the detention center.
3. An adequate secure area is designated in the field for holding prisoners after initial booking and while awaiting transportation.
4. All arrested individuals are searched, photographed and properly identified prior to transportation to the detention center for formal booking.
5. All injured prisoners are provided medical attention prior to being booked.
6. All arrested juveniles are handled in accordance with this department's procedures for the arrest, transportation and detention of juveniles.
7. All evidence and weapons taken from arrestees are processed in accordance with this department's policy on the preservation and custody of evidence.

## Deactivation:

When the disturbance has been brought under control the OIC will ensure that the following measures are taken:

1. All law enforcement officers engaged in the incident will be accounted for and an assessment made of personal injuries.
2. All necessary personnel will be debriefed as required.
3. Witnesses, suspects and others will be interviewed or interrogated.
4. All written reports will be completed as soon as possible following the incident to include a comprehensive documentation of the basis for and the department's response to the incident.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| **Subject:** Strikes and Labor Disputes | **Policy Number:** |
|---|---|
| **Issue Date:** | **Revision Date:** |
| **Approval Authority**<br>**Title and Signature:** | |

### PURPOSE:

The purpose of this policy is to define the proper role of Campbell County Sheriff's Department in dealing with labor disputes.

### POLICY:

The parties involved in a labor dispute have rights as well as responsibilities. Strikers may assemble and demonstrate peacefully to bring attention to their cause, but they do not have the right to intimidate non-strikers or to impede business. The employer has a right to keep the business open and free from undue interference, intimidation, damage or destruction. It is the policy of Campbell County Sheriff's Department for officers assigned to strikes and labor disputes to deal fairly with the involved parties while upholding their sworn responsibilities to protect life, property, and the rights of those involved.

### PROCEDURES:

### Command Authority:

Operational control of officers assigned to a labor strike is the responsibility of the Sheriff or his designee. The Officer-In-Charge (OIC) of the strike will contact the business and labor unions involved in order to:

1. Inform them that the police agency is aware of the strike (or impending strike) and advise them of agency policy relating to the enforcement of law and protection of personal and corporate rights;
2. Emphasize to the union the importance of a peaceful demonstration, that their rights to legally assemble and protest will not be interfered with so long as it does not interfere with the legal rights of the company to transact business; and
3. State the agency's position on warning and arresting demonstrators, and the need to maintain communication at all times between police personnel and strike

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

leaders.

If an insufficient number of officers are available to man the strike detail, permission may be sought from the Sheriff or designee to request assistance under this agency's mutual assistance agreement. In no case will non-sworn personnel, reserve, or auxiliary officers be utilized in strike details.

In determining manpower and equipment needs, the OIC will consider:

1. The number of pickets, their attitude, and organization;
2. The number of non-strikers, anti-strikers, and bystanders;
3. Whether the striking company will attempt to stay open and whether non-striking employees will attempt to enter the premises; and
4. The cooperation of all parties involved in the strike.

## Duties and Responsibilities of Assigned Personnel:
It is the responsibility of officers assigned to labor strikes to:

1. Protect life and prevent personal injury;
2. Protect the statutory and constitutional rights of all parties involved;
3. Protect personal and public property;
4. Maintain public peace;
5. Refrain from fraternizing or engaging in any unnecessary conversation with picketers, management personnel, or bystanders;
6. Refrain from entering the company property except to conduct necessary police acts;
7. Keep arrests for minor law violations to a minimum, controlling such conduct through conversation with picket captains, union representatives, or management personnel;
8. Warn picket captains or management representatives that recurrence of law violations will result in arrest;
9. Refrain from arresting picketers for verbal abuse if unaccompanied by threats against officers. Language that incites violence or other unlawful acts will form the basis for physical removal and/or arrest of those responsible;
10. Discourage picketers from drinking alcoholic beverages, and persons who fail to abide with open container, public consumption, public inebriation, or related laws will be subject to arrest with supervisory approval.

## Operation of Picket Lines:

1. Strikers have the right to peacefully picket and to persuade others to honor their picket line as long as their activities do not violate statutes such as trespass, disturbance of the peace or disorderly conduct, among others. As such, officers

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. Non-striking employees, customers, and members of the public have the right to enter or leave the site of the strike.

3. Officers will take all reasonable measures to protect the rights of the above parties. Attempts by either labor or management personnel to prevent the free exercise of these rights will first be brought to the attention of the appropriate strike captain or management supervisor.

4. Officers will advise persons attempting to cross hostile or potentially hostile picket lines of the possible danger involved; if appropriate, attempt to dissuade them of such action and advise them that they must follow police instruction if they choose to cross.

5. Officers will provide necessary breaches in picket lines to allow interested parties to cross and will personally escort pedestrian traffic across the line to a safe distance.

6. Vehicular traffic will be provided access through picket lines after having been given appropriate warnings. The volume, rate of passage, and speed of vehicles crossing picket lines will be determined by the OIC.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Bomb Threats & Mass Destruction Disasters | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

All bomb and mass destruction threats received by Campbell County Sheriff's Department will be regarded as valid and responded to accordingly. Response my include deployment of personnel and resources and/or investigations.

### PROCEDURES:

#### Prior Planning:

When planning a response to a bomb threat or disaster, there are a number of factors, which must be considered. The preservation of life and property is certainly the most important consideration. There is no single course of action that will always be suitable. Each situation must be evaluated individually. Immediate and total evacuation of an area may appear to be the obvious solution; however, if handled incorrectly this can be both ineffective and dangerous. Some planning is necessary so that the response will be orderly and efficient.

The County Executive be responsible for coordinating emergency services, as well as establishing a control center for planning and initiating any action relating to bomb threats or disaster planning. The Sheriff is designated as the field commander for law enforcement and security purposes. In his absence, his designee will assume command until relieved.

#### Control Center Responsibilities:

Access to the control center is limited to authorize emergency personnel who have a specific function at the center, and a *need to know*. A number of duties and procedures are the responsibility of control center staff. These include:

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 6

1. Initiating a planned response to bomb threats and other potentially threatening disasters;
2. Notifying and coordinating the activities of other personnel;
3. Releasing authorized information to the news media;
4. Deciding factors for evacuation, search, and continuation of business;
5. Vulnerability and accessibility of target area;
6. Probable risks involved;
7. Courses of action including evacuation, selective evacuation, or no evacuation; &
8. Searches to be implemented.

## Receiving a Bomb Threat:

A majority of bomb threats are made by telephone or fax, although occasionally a bomb threat will be received in written note or through the mail. All written material and any envelopes or containers should be treated as *physical evidence* and not subjected to any unnecessary handling.

Any member of Campbell County Sheriff's Department who receives a bomb or disaster threat call by telephone will handle the situation by:

1. Maintaining a calm, professional demeanor;
2. Staying on the phone and fully engaged in the conversation with minimal distractions;
3. Wave a piece of paper or colored flag over your head until another employees sees and responses with assistance
4. Try to Maintain contact with the caller talking as long as possible;
5. Completing a threat checklist, which asks the caller a number of questions [See: Attachment I to this policy].
6. Not using radio transmission equipment until authorized by a supervisor;
7. Immediately completing and submitting a report of the incident to a shift supervisor upon termination of the bomb threat.
8. Not using the telephone the call was received on until a phone technician has determined that the calling number cannot be determined.

## Evaluation and Search:

Having evaluated the credibility of the threat, it is necessary to decide what action to take. This may include *search without evacuation, initiate a partial evacuation, or conduct a complete evacuation and search.* If the decision to evacuate is made, all

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

non-essential persons will be evacuated to a location at least 300 yards from the area. Regardless of the extent of the evacuation, a physical search is always advisable.

## Covert and Overt Searches:

Circumstances of a partial or no evacuation will often necessitate a covert search. A covert search is conducted to avoid both panic and the interruption of business operations, and is normally executed by a few supervisory or management personnel, without arousing employee suspicions.

In the event of a full evacuation, an overt search will be performed. This will be accomplished by asking all persons in the building to first conduct a *360° search* of their immediate area before exiting the building. In conducting this *360° search* those in the building are simply as to look for anything out of the ordinary, and report it. They are not to touch, handle or open any suspected or questionable device or package. Once the *360° searches* are completed all non-essential personnel will evacuate the building, without carrying any objects or personal effects out of the building.

If during the process of a search a suspect device, box, sack, or other container is located, *do not touch it*, and do not assume it to be the only device. Rather, clear and secure the area, notify the control center, and continue searching the entire facility for other devices. If a prolonged search is unavoidable, the search team should be given a break period every three (3) hours. Six (6) hours is about the maximum time a search team can function effectively. In the event no explosive device is found, the decision to reenter will be influenced mostly by the confidence in the search procedure.

## Building Search Procedures:

Campbell County Sheriff's Department does not have a bomb disposal unit; rather, personnel and equipment from a professional EOD will be utilized in the disposal of bombs or explosives. Be aware that Bomb Disposal Technicians do not conduct searches for potential bombs. They respond to suspicious packages or devices once they have been located, and render the item(s) safe. Campbell County Sheriff's Department personnel will be responsible for following a number of procedures for safely searching for a suspected bomb. These procedures will include the following:

1. **Exterior or Public Area Search:** Search will begin at ground level extending outward from the building to some natural divider (curb or wall, usually 25 to 50 yards or paces). Close attention should be given to piles of leaves and refuse, shrubbery, trashcans, parked vehicles, and any public access areas.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

2. **Interior Search:** Special attention should first be given to utility rooms, waiting areas, rest rooms, and areas where access is unlimited. As a practical matter, search secured areas, where entry would be more difficult last. Begin at the lowest level and work upward, making a complete search before changing floors. It is important to check all items within a facility when conducting a bomb search. These items will include, but not be limited to:

   i. Underneath chairs;
   ii. In or on desks;
   iii. In trash cans;
   iv. Behind pictures;
   v. In or behind cabinets;
   vi. Objects hanging on walls;
   vii. In light fixtures; &
   viii. Any item suspended from the ceiling (heater ducts, ceiling fans).

3. When first entering a room, remain completely calm and immobile. Listen for any unusual sounds. Many times such actions will pick up sounds indicating a device.

4. Never assume or advise that an area is completely safe and free of any.

5. Do not medically treat injured persons at the scene except in unusual circumstances. Remove them as soon as possible to a secure location, at least 300 yards away from the incident location and turn them over to medical personnel.

6. Note license tags of all vehicles around or near the facility and initiate checks to determine if any of the vehicles are rented or stolen.

7. Photograph all casual observers or those that appear interested in the facility, and secure proper identification if possible.

8. If a suspected explosive device is found in an occupied building, evacuate the building immediately

## Action to be Taken Upon Location of a Suspected Bomb:

If a suspected explosive device is located, leave it untouched. At no time will any unqualified officer attempt to move or render safe any suspected explosive device. Employees will evacuate at least 300 yards around the suspect device and request assistance from an experienced explosives agency or team. Upon arrival, the Bomb Technician and/or EOD (Explosives Ordinance Disposal Squad) instructions will control operations as it relates to this incident location.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

All responding emergency vehicles should be kept outside the perimeter. Private provider vehicles, such as those from gas, electric or telephone companies, should be assigned to a staging area if possible so they can be easily called upon as necessary.

Using caution, secure the scene so later it can be processed by evidence recovery personnel. Leave bodies of bomb blast victims who are obviously deceased in place, to allow for the collection of debris that may have forensic value.

## Conclusion of a Bomb Threat:
After a building has been searched, the supervising officer at the scene will notify the owner/person in charge of the building of the results of that search, complete required reports, and return police personnel to routine duties. In the event of an explosion, minimal information will be given to the news media, and then only through approved channels.

In the event of a death, no names will be released until the next of kin has been officially notified.

Control of the crime scene will transfer to the investigation division, who will gather any available evidence. The investigation division may request additional specialized assistance in completing their investigation as determined necessary by the senior staff supervisor on duty.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Attachment I

## Bomb Threat Questions

The following questions should be asked of anyone calling in a bomb or mass destruction device threat. Do not expected that the caller will not answer all of the questions you ask. If asked, but not answered, continue to ask additional question, and keep the caller talking as long as possible. Questions include:

1. When is the device going to explode?
2. Where is it now?
3. What does it look like?
4. What kind of bomb is it?
5. What type of explosive was use in making the bomb?
6. What will cause it to explode?
7. Did you place the bomb?
8. Why?
9. Where do you live?
10. What is your address?
11. What is your name?

During the progress of the call or immediately thereafter, try to answer the following questions yourself as best you can. Report the call to your superior.

1. Exact wording of the threat
2. Sex of caller
3. Race (sound of voice)
4. Age, approximate (sound of voice)
5. Length of call
6. Name of person receiving the call
7. Number at which call is received
8. Time the call was received
9. Date the call was received

After the call is terminated. Do not use the telephone until a phone technician has determined that the calling number cannot be determined.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

## Campbell County Sheriff's Department
## Law Enforcement
## Policies and Procedures

| Subject: Chemical Agent – Oleoresin Capsicum (OC) | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

### POLICY:

Following approval by the Sheriff and satisfactory completion of qualification training, law enforcement officers may be armed with the Chemical Agent OLEORESIN CAPSICUM (OC) and projector. OC (Pepper Spray) used in compliance with Campbell County Sheriff's Department policy is a non-deadly force. OC used in compliance with these procedures is authorized to affect a lawful arrest, to prevent escape from lawful custody, to defend the officer or another from what the officer reasonably believes is the imminent use of physical force, or to restore institutional integrity in a detention facility.

### PROCEDURES:

1.  The OC device is designed to be worn externally and in a holster. An OC device will not be pocketed or otherwise concealed by a certified user since one of the purposes of OC is to create a visible deterrent to potential offenders.
2.  The OC will not be drawn and used against an individual holding a deadly weapon. OC is not intended to be an alternative to the use of deadly force when such is clearly authorized and is necessary.
3.  When all reasonable efforts have failed to calm a person who is acting violently and presenting a definite danger to himself or others, a minimum stream may be fired at the person in accordance with manufacturers recommendations and departmental training received.
4.  The OC weapon will be used only to terminate violent behavior, or the threat of violent behavior, which could result in injury to the officer, other persons, or the violent individual.
5.  The OC weapon will not be discharged in the immediate vicinity of an infant, unless the infant's life is endangered, since their respiratory system is small

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

and especially sensitive to irritating vapors.

6. The OC device weapon will normally be discharged from a distance of at least six (6) feet.

7. The aiming point is the eyes.

8. Firing will be limited to one successful hit, not exceeding one (1) full second on target and the termination of the violent or threatening behavior.

9. Following use, the person exposed to OC will be handcuffed when:

   a. Resisting voluntary detention;
   b. Acting in a belligerent or combative manner; and
   c. Considered to be threatening or violent behavior.

10. The sprayed individual will be assisted to a wash-up area to flush contaminated area with water within fifteen minutes of exposure.

11. Only under conditions which represent an extreme hazard (immediate threat of serious injury or death to the officer or others) will the OC be used:

   a. On a person already incapacitated, unless he is not responding to normal application of the chemical agent formulation and is continuing a physical assault, which may result in serious injury.
   b. In a confined space such as a small room or closed automobile.
   c. In the close proximity of an infant.

12. No officer will apply, nor permit another person to apply oil or grease medications such as butter, cold cream, lanolin, Vaseline, lotion, or salves, which could trap the irritant to the skin and thereby cause blistering unless authorized by a physician.

13. Exposed areas should not be bandaged; the areas should be exposed to fresh air for evaporation.

14. If a person exposed to OC requests to be taken to a doctor, the person will be transported for examination by a doctor as soon as possible.

15. Officers utilizing the OC device will prepare a use of force incident report and the use of chemical irritant report will cite:

   a. Justification for use.
   b. Date and time of exposure.
   c. Time lapse before wash-up.
   d. Any injuries observed during wash-up procedure.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.