# Campbell County Sheriff's Department
## Policies and Procedures

| Subject: Use of Force & Deadly Force | Policy Number: |
|---|---|
| Issue Date: | Revision Date: |
| Approval Authority Title and Signature: | |

**Purpose:**
The purpose of this policy is to establish guidelines for officers when dealing with potentially volatile situations and to assist them in their burdensome task of decision making, under tense, uncertain, and rapidly evolving circumstances that may place human life and safety in jeopardy.

**Policy:**
Human life is of paramount importance in our society and the apprehension of criminal offenders must always be subservient to the protection of innocent human life, including the officer's own life.

Officers will maintain a constant readiness and capacity to act in instances where, in *their perception*, the use of force or deadly force may be appropriate. In maintaining readiness and capacity, officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind. While *officer discretion* is acknowledged as critical, at the same time, the need for accountability and control of police activities is also as necessary.

**Definitions:**
The following definitions apply to this policy & procedure manual:

*Authorized weapon* - a weapon approved by the department for sanctioned use by its officers. No weapon may be authorized for carry or use by an officer unless the department expressly approves it, and the officer has demonstrated proficiency with the weapon type in accordance with department guidelines.

*Baton or expandable baton* – an impact weapon capable of inflicting bodily injury by striking with a portion of the weapon. Only batons authorized by the department are authorized for carry and used. This department does not authorize the caring or use of *saps, billy clubs, or slapjacks*.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

*Chemical weapon* - a weapon capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

*Certification with weapon* - The officer has demonstrated proficiency with a particular weapon, and been tested in it's safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his official duties regardless of whether the officer is on-duty or off-duty. Without such certification, the officer will not carry or use this or a similar weapon.

*Deadly force* – that action that is intended or known by the person taking the action to cause death or serious bodily injury.

*Electronic weapon* - a weapon using small bursts of electrical energy to temporarily incapacitate a person without causing death or serious bodily injury.

*Firearm* - any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use; including all handguns, rifles, and shotguns.

*Force or non-deadly force* – that action that is not reasonably calculated under the circumstances to cause death or serious bodily injury.

*Physical strength and skill* - any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any authorized/other weapon.

*Probable cause* – the total set of apparent facts and circumstances based on reasonably trustworthy information, which would warrant a prudent person to believe something. Example: *that a particular person has committed some criminal offense.*

*Serious bodily injury* - harm that creates substantial risk of death; death, serious permanent disfigurement, or loss or impairment of any body function or organ.

**Procedure:**

**Use of Force & Deadly Force:**

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 11

| Policies and Procedures, Use of force & deadly force |
|---|

Use of force & deadly force by law enforcement officers comprises the basic elements of a *reasonable officer's perception* and a *reasonable officer's use of force & deadly force* to bring the situation, as they understand it to be, under control. To better understand and explain use of force and force issues officer perceptions and options are discussed in the form of *Use of Force Ladder* or *force continuum*.

A use of force & deadly force chart is provided as the last page of this policy section. There are five levels of *perception response*, and each level has its own distinctive *perception* and *response* characteristics. Each officer will be familiar with and know how to apply this response compendium. Refer to the enclosed <u>Use of Force Ladder</u>. Officer's general perception and corresponding force options are:

**Level 1** – If the suspect is perceived by the officer to be *compliant*, the appropriate level of response is *cooperative controls*, to include *officer presence, hand signals, verbal commands and instructions,* light touching or *patting*, etc. In other words cooperation at this level is a *two way street*.

**Level 2** – If the suspect is perceived by the officer to be *resistant – passive*, the appropriate level of response is *contact controls*, to include *strong or forceful soft hand, hand and arm holds, pressured physical movement of the suspect, removal,* etc.

**Level 3** – If the suspect is perceived by the officer to be *resistant – active*, the appropriate level of response is *compliance techniques*. <u>This is the threshold for any reasonable officer to consider this suspect to be a potential threat to himself, the officer or other citizens.</u> Compliance techniques may include *all reasonable* means to cause the *suspect to come into compliance as soon as reasonably possible*. These techniques may include *use of chemical weapons, use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, or using other forms of rough physical force,* etc. Once a suspect is perceived to have been *resistant – active* [or higher perceived threats], officers will not relax care or containment of this suspect until the contact is terminated.

**Level 4** – If the suspect is perceived by the officer to be *assaultive – and a threat to bodily harm*, the appropriate level of response is immediate *defensive tactics*. The original assaultive behavior may have been directed at a fellow suspect, apparent

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

victim or the officer. The officer's response is *defensive tactics* that may include *use of impact weapons, hard fist, or any other reasonable means available* and at hand to stop the aggression, defend, against attack, and bring the suspect into compliance. It is contemplated and understood that reasonable officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

**Level 5** – If the suspect is perceived by the officer to be *assaultive – serious bodily harm or death,* the appropriate level of response is *use of deadly force.* Deadly force includes firearms, knives, or any other means immediately available to the officer(s) that a reasonable officer in the same circumstance would consider as potentially causing death or serious bodily injury.

In rare instances deadly force may be used to protect property; and only when there is a reasonable expectation that the property once altered or damaged may place other in imminent risk of death or serious bodily injury. For example, stopping a suspect from setting a fire, or throwing a bomb.

It is important to remember that almost all incidents faced by police are not scripted, easy to understand, or predictable as to outcome.

Officers will use their best effort in determining the level of threat posed by a suspect, and apply the corresponding response. Officers are cautioned to use care in evaluating a suspect's actions and perceived threat level. If there is reasonable doubt and time permits, seek assistance before acting. Where there is a doubt as to the perceived threat level, opt for the *higher level* and respond accordingly.

Justification for the use of force and deadly force must be limited to what appears to be the reasonable facts *known or perceived* by an officer at the time he decides to use such force. Facts unknown to an officer at the time force is used, no matter how compelling, cannot be considered later in determining whether the force was justified.

An officer will not intentionally use more force than is necessary and reasonable under the circumstances. An officer will never use force in response to mere verbal provocative or abusive language directed at the officer. An officer will never use deadly force except as in situations identified by this policy.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Procedures:**
In considering the use of any force, officers must strive to achieve the following lawful objectives:

1. To preserve the peace.
2. To defend themselves, or others, against unlawful violence.
3. To prevent the commission of offenses, self-inflicted injury, or suicide by any person.
4. To make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody.
5. To prevent or interrupt an intrusion on, or interference with, the lawful possession of property.
6. To prevent roaming at large by obviously mad or vicious animals; to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering.

Before using any force against a suspect, and time permits, an officer will:

1. Have probable cause to arrest that suspect.
2. State his intentions to arrest, and identify himself as a peace officer
3. State the reason for the arrest.

The amount and degree of force, which an officer may use to achieve an objective, will take into consideration the following possible issues, if time and circumstances allow:

1. The nature and seriousness of the original offense committed by the suspect.
2. The nature and seriousness of the risk of injury to the officer or others.
3. The age, physical condition, and behavior of the suspect.
4. Relevant actions by any third parties.
5. Physical conditions (e.g., visibility) at the scene.
6. The feasibility and availability of alternative actions.
7. The opportunity and actual ability of the suspect to injure the officer, himself, or others.

Before an officer uses force (but not deadly force) against a person for the purpose of protecting that person from bodily injury caused by himself [suicide attempt] or another, or from uncontrollable circumstances, the officer will consider other reasonable means to

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency  Data subject to this restriction is contained throughout this publication.

protect that person from harm.

An officer may use an unauthorized object as a weapon, or use a weapon in an unauthorized manner if emergency circumstances make it necessary to protect human life and prevent serious injury.

An officer may draw and ready any of his authorized weapons for use only when he reasonably anticipates that he may have to use such weapon(s). This does not require the officer to use the weapon once it is readied for use.

**Weapons Control & Issue:**
Officers will register all duty firearms carried on-duty or off-duty with the department and will only carry or use authorized duty weapons, firearms and ammunition under these standards:

1. Firearm is registered with the department.
2. Firearm and ammunition are approved for use by the Sheriff.
3. Firearms have been inspected, fired, and certified safe by the department's firearms instructor.
4. The officer has demonstrated proficiency and been certified in the last twelve [12] months in the use of all weapons and ammunition he carries on-duty or off-duty.
5. Officer qualify with the same weapon and type of specific ammunition [caliber, bullet weight, bullet design, and powder load] actually carried.
6. If a different firearm is carried off-duty, the conditions of 1-5 above apply to the off-duty weapon(s).

Without departmental approval, no officer will in any material way, modify or alter an authorized weapon.

**Discussion - Use of Non-Deadly Force:**
To the extent necessary and reasonably possible, an officer will only use physical strength and skill, restraint devices, chemical weapons, electronic weapons, or a baton to apply non-deadly force.

An officer has no obligation to *retreat* or *back down* before resorting to approved use of force, including deadly force. However, if in the officer's discretion, it does not increase the risks to himself or others, an officer may consider retreat or withdrawal where delay

RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 11

Case 3:07-cv-00022   Document 21-3   Filed 09/26/08   Page 6 of 12   PageID #: 811

could make a more peaceable arrest or stop likely. In some cases, an increased show of force may reduce the amount of force necessary to accomplish the officer's objective.

Unless there are no reasonable alternatives, an officer alone will not attempt to affect an arrest if there is substantial risk to himself from the arrestee or another party.

An officer will use handcuffs or other restraining devices on all arrestees unless it is unnecessary or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects). An officer will reasonably protect an arrestee from injury caused by handcuffs or other restraining devices. Only restraining devices and techniques approved by the department may be used.

An officer may use a chemical weapon to protect him or another from assault or to subdue a person unlawfully resisting arrest. Any person on which a chemical weapon has been used, will be treated or decontaminated for exposure to the chemical agent as soon as practical, and thereafter monitored for possible latent effects.

Officer may use an approved electronic weapon in accordance with this policy. An electronic weapon may only be used to protect persons from assault or to subdue a person unlawfully resisting arrest.

An officer may use his baton to protect himself or another from assault or to arrest a person who unlawfully and violently resists arrest if lesser methods have failed, or if circumstances warrant the immediate use of the baton. However, an officer should:

1. Try to avoid making baton blows that are capable of inflicting serious bodily injury.
2. Not raise the baton above the head to strike someone or use the baton as a club or bludgeon.
3. Deliver only short snappy body blows, to vulnerable areas, in an effort to temporarily incapacitate a subject.
4. Not deliberately strike the *face, head, neck, collarbone, spine, kidney area, solar plexus, knees,* or *elbows.*

Officers who are not trained and currently certified with a baton are not authorized to use a flashlight or other similar device as a substitute, except in an extreme life-threatening emergency.

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 7 of 11

### Discussion - Use of Deadly Force:

To the extent necessary and reasonable, and in accordance with this policy, an officer will apply deadly force only by using an authorized weapon.

To the extent an officer has reasonable time for consideration, he will never use deadly force which creates a greater risk of causing death or serious bodily injury to himself or others than if he did not use such force. Deadly force may only be used under the following circumstances:

1. To immediately stop the perceived life threatening actions of the suspect.
2. When immediately necessary to protect human life.
3. When destroying a mad or extremely vicious animal that creates a substantial risk of bodily injury to persons, only after other reasonable methods have failed.
4. At a properly equipped training facility.

Deadly force may not be used under the following circumstances:

1. As a warning or threat.
2. With the intent to maim or cripple a person.
3. On a person who has not caused or threatened to cause serious bodily injury to another person including the officer.
4. On a person who simply flees or evades arrest.
5. At or from a moving vehicle.
6. Merely to prevent the destruction or theft of property.
7. When the officer has some doubt as to the justification of using deadly force.

### Firearms & Weapons Certification:

The department's firearms & weapons instructor will certify all officers in the use of their primary and secondary firearms, as well as any off-duty firearms, and other weapons carried in the performance of their official duties. The certification for all weapons [*firearms, batons, expandable batons, control sticks, chemical agents, electronic devices, special munitions delivery systems*, etc.] authorized and carried by department officers will be conducted at least every twelve [12] months.

An officer who fails to certify with their primary and secondary firearm the first time will be given two [2] additional opportunities to certify over the next 30-day *grace period*. If the officer fails to certify by the end of the grace period, disciplinary procedures will be initiate,

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

and the officer will be reassigned to non-sworn employee duties.

Certification will consist of demonstrating proficiency in both technical and physical aspects of the weapons use, along with demonstration of a thorough understanding of the laws, general orders, and other regulations regarding the use of force, deadly force, and weapons.

Under no circumstance will an officer that is not certified with their weapons be allowed to carry that particular weapon without certification. In particular, to carry and *use handguns, shotguns, OC spray, straight baton, PR-24, expandable baton, electronic device* officers must annually demonstrate proficiency to the weapons instructor. Otherwise, the office will not carry or use that particular weapon, until certified.

The firearms and weapons instructor will prepare and publish a written course of fire, and weapons exam no less that four [4] months prior to the annual certification. Additionally, the firearms and weapons instructor will offer remedial courses, and schedule practice sessions in each weapon at least 30 days prior to the annual certification date.

**Reporting the Use of Force:**
An officer who discharges a firearm; uses a chemical weapon, an electronic weapon, or baton; special munitions, or who causes bodily injury or death to another person by the use of force or deadly force will notify his direct supervisor immediately.

The officer will also be required to complete a report in writing detailing the circumstances surrounding the use of force incident. This written use of force report requirement will be met even though other required reports may have already covered the situation.

In incidents where an officer causes serious bodily injury or death to another through the application of deadly force, he will first call for appropriate necessary medical assistance, secure the scene as well as possible, then notify his direct supervisor. Upon his arrival, the supervisor will take charge of the scene along with any investigation concerning the incident and report the incident to the Sheriff.

In any incident involving the use of force, all officers will assist in every way possible with the investigation. Any report required by this policy will receive executive review in an effort to:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

1. Protect the integrity of the facts and the evidence.
2. Ensure that the officer's use of force complied with all appropriate state and federal laws, and department policy.
3. Determine if the officer's use of force indicates a need for special counseling, training, or disciplinary action.
4. Determine whether the situation requires further action.

**Reporting Requirements:**
The Sheriff will be notified immediately when any type deadly force is used, and there are resulting *serious physical injuries or death*.

Each officer who witnessed the incident or responded to the scene will complete a written report. These witness reports will be completed no later than the conclusion of the shift in which the incident occurred, and filed with the Chief Deputy.

The officer(s) who actually used or employed the deadly force will be relieved of duty and sent back to the department. At the time the officers are relieved of duty the weapon(s) used in the incident will be collected and tagged as evidence. The Chief Deputy or next senior supervisor at the scene will instruct the officer(s) who used deadly force to:

1. Refrain from making any statements to the news media, other officers, or supervisors.
2. Refrain from discuss the matter between themselves [if more than one officer].
3. Return directly to the department headquarters.
4. Refrain from completing any reports or statements for at least twelve [12] hours.

When the officer arrives at the department, investigators will conduct a debriefing of the officer and advise Chief Deputy of their findings. Thereafter the officer(s) will be sent home. Upon return to duty the next day the officer(s) involved in the deadly force incident will complete his report and make all required statements. The officer(s) will provide all required information as if a witness to the incident, first hand *perception of events* at the time, and the *corresponding force options used*. Special attention will be given to any deviation from this policy.

All reports completed by the officers using force, other officers, or witnesses will include the following:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

| Policies and Procedures, Use of force & deadly force |
|---|

1. An accounting of the events leading to the use of force & deadly force;
2. The original offense or *probable cause* for the stop or action;
3. An accurate description of the incident and reasons for employing force;
4. A description of the weapon or device used and the manner in which it was used;
5. A description of the injuries suffered, and the treatment given or received;
6. A list of all participants and witnesses to the incident; and
7. A copy of all incident reports compiled as a result of the incident.

The Sheriff will formalize criteria for reporting incidents. Reports of all injuries are filed in the central file and the employee's personnel record.

**Allegations Against Staff:**
The Chief Deputy will investigate all allegations of improper use of force & deadly force, after notifying the Sheriff. In cases where possible criminal acts are involved, the appropriate law enforcement agency or prosecutor office will be notified.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

# Use Of Force Ladder



## Enforcement Options

