**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

APRIL ANN HARVEY, wife and
next of kin to her husband,
Ramsey Robert Harvey, deceased;
RYAN A. HARVEY, a minor child and next
of kin to his father Ramsey Robert Harvey,
deceased by and through his mother and
next friend, MISTY L. GILLIAM,

       Plaintiffs,

v.                                       No.  3:07-cv-0022

CAMPBELL COUNTY, TENNESSEE;
Former Campbell County Sheriff RON MCCLELLAN,
individually and in his official capacity as Sheriff;
Former Campbell County Chief CHARLES SCOTT,
individually and in his official capacity as chief deputy;
Campbell County Deputy Sheriff RICHARD LOWE,
individually and in his official capacity as a Campbell County Deputy Sheriff;
JEFF HALL as Mayor of Campbell County, Tennessee; and
SHERIFF GARY PERKINS, in his official capacity as
Sheriff of Campbell County, Tennessee,

       Defendants.

**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

    This action is predicated on 42 U.S.C. §1983, and various state law claims.  It was

filed in the Circuit Court for Campbell County, Tennessee, on December 21, 2006, and

properly removed to this court on January 19, 2007.

    The Complaint named as Defendants, Campbell, County, Tennessee, former

Campbell County, Tennessee, Sheriff Ron McClellan, in his individual and official

capacities, former Campbell County, Tennessee, Chief Deputy Charles Scott, in his individual and his official capacities, former Campbell County Sheriff's Deputy Richard Lowe, in both his individual and official capacities, former Campbell County, Tennessee, Mayor Jeff Hall, and current Campbell County, Tennessee, Sheriff Gary Perkins, in his official capacity only.

A suggestion of death was filed on behalf County Mayor Jeff Hall on February 19, 2007, after he passed away on February 17, 2007. Plaintiff took no action pursuant to Federal Rule of Civil Procedure 25, or any other action to continue whatever action they had against Mayor Hall, and accordingly, any claim, therefore, should be dismissed.

Counsel for Defendant, Richard Lowe, filed a Motion to Dismiss on October 24, 2007, pursuant to Federal Rule of Civil Procedure 4(m), alleging no service on Mr. Lowe. At a scheduling conference held on October 25, 2007, the court orally denied the Motion, granting Plaintiff an additional thirty (30) days to properly serve Mr. Lowe. No service was effected, and Defendant Lowe renewed his Motion to Dismiss on December 11, 2007. The court granted the Motion and dismissed Defendant Lowe in his individual and official capacities in an Order dated January 15, 2008.

The instant dispositive motion is filed by the remaining Defendants because no genuine issue of material fact exists that these Defendants are entitled to summary judgment as to all of Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 56.

## II.  PLAINTIFFS' ALLEGATIONS

According to the Complaint, on or about December 23, 2005, at approximately 2:30 a.m., Ramsey Robert Harvey, deceased, was a driver of a vehicle pursued by Campbell County Deputy Sheriff Richard Lowe.  See Complaint ¶9.  At approximately 2:34 a.m.,

2

Deputy Lowe called dispatch to inform them that he was involved in a pursuit of a vehicle, driven by the deceased. See Compliant ¶10. Plaintiffs' decedent stopped his vehicle in a yard at the corner of Mountain Drive and Indiana Avenue in LaFollette, Campbell County, Tennessee. See Complaint ¶11. At 2:35 a.m., Deputy Lowe allegedly called for backup assistance. See Complaint ¶12.

According to the Complaint, Deputy Lowe observed Plaintiffs' decedent exit his vehicle with some type of knife in his hand. Deputy Lowe advised Plaintiffs' decedent to stop, but he did not follow his instruction. See Compliant ¶13. As a result, Deputy Lowe shot and killed Plaintiffs' decedent. See Complaint ¶¶14, 16.

According to the Complaint, Deputy Lowe was placed on administrative leave pending an investigation into the events of the shooting. See Complaint ¶17. On December 29, 2005, Deputy Lowe failed a polygraph test administered by the Tennessee Bureau of Investigation ("TBI"). See Complaint ¶18. As a result, according to the Complaint, Deputy Lowe had planted a knife at the scene of the shooting. See Complaint ¶19. That same day, Deputy Lowe was terminated by the Sheriff's Department for "tampering with evidence at a crime scene". See Complaint ¶20.

Interestingly, the Complaint alleges Deputy Lowe violated the training, policies and procedures of Campbell County, Tennessee, through its Sheriff's Department, in his shooting of Plaintiffs' decedent. See Complaint ¶26.

Notwithstanding at allegation, Plaintiffs' claims against the remaining Defendants are summarized below as follows:

3

## Campbell County, Tennessee

Essentially, Plaintiffs' federal claims against Defendant, Campbell County, Tennessee[1], failed to adequately train Deputy Lowe in use of force. <u>See</u> Complaint ¶30, ¶31. Plaintiffs' state law claim against Campbell County, Tennessee, is brought pursuant to T.C.A. §8-8-302, as a result of the alleged breach of duty by former Sheriff Ron McClellan and former Chief Deputy Sheriff Charles Scott with regard to the subject matter of Plaintiff's Complaint. <u>See</u> Complaint ¶37.

## Ron McClellan

Apparently, Plaintiffs' federal claims against former Sheriff McClellan concerns his alleged failure to investigate the background of Deputy Lowe prior to Mr. Lowe's hiring. See Complaint ¶29. Also, his alleged failure to supervise and discipline Deputy Lowe. <u>See</u> Complaint ¶32, and otherwise generically failing to perform statutory duties required of him as Sheriff of Campbell County, Tennessee. <u>See</u> Complaint ¶34, 35.

## Charles Scott

Likewise, Plaintiffs' federal claims against former Chief Charles Scott concerns his alleged failure to investigate the background of Deputy Lowe prior to Mr. Lowe's hiring. See Complaint ¶29. His alleged failure to supervise and discipline Deputy Lowe. <u>See</u> Complaint ¶32 and otherwise generically failing to perform statutory duties required of him as Chief Deputy of Campbell County, Tennessee. <u>See</u> Complaint ¶34, 35.

---

[1] Campbell County Sheriff's Department is not a sueable entity. It is merely a department within Campbell County, Tennessee.

4

**Gary Perkins**

Plaintiffs' claim against the current Sheriff, Gary Perkins, are in his official capacity only, in fact, Perkins is only named in the style of the Plaintiffs' Complaint, and not specifically listed as a Defendant under the "**PARTIES**" section of the Complaint. Nevertheless, well established §1983 law provides that an official capacity suit against an individual is nothing more than a suit against the governing entity. In this case, Campbell County, Tennessee. Thus, Sheriff Perkins is an unnecessary party and should be dismissed. Furthermore, Perkins did not become Sheriff of Campbell County, Tennessee, until September 1, 2006, and accordingly, no possible basis of liability exists against Sheriff Perkins for the alleged acts and omissions of Deputy Lowe, which occurred December 23, 2005.

### III.  FACTS

At this point, however, Plaintiffs' allegations do not matter, it is incumbent upon Plaintiff to set forth admissible facts in the record establishing that a genuine issue of material fact exists for trial. This Plaintiff cannot do. As the Affidavits of Ron McClellan and Charlie Scott, and the exhibits attached thereto, establish Plaintiffs' claims against the remaining Defendants are utterly without merit.

First, Deputy Lowe's employment record simply does not support the allegations of Plaintiffs' Complaint. According to the Sheriff's Department records, Lowe was hired on July 18, 2005. He previously worked at the City of LaFollette Police Department, the Union County Sheriff's Department, and as a school officer with Knox County Schools. He graduated from the police academy at Walter State Community College on September 6,

5

2002, and became certified as a law enforcement officer with Tennessee's Peace Officer's Standards and Training Commission ("POST") on January 16, 2004.

Lowe filled out an application with the Sheriff's Department on June 22, 2005. No adverse information was listed by him. Moreover, references were provided and checked by Campbell County Sheriff's Department personnel. All were good and recommended Lowe as a Deputy. The Sheriff's Department even obtained records from Lowe's previous employment at the City of LaFollette, and the employment process the city undertook prior to hiring Lowe.

Thus, not only was Lowe a POST certified officer at the time of his hiring, and this incident, he had been fully trained by several law enforcement agencies, including the Campbell County Sheriff's Department policies and procedures[2]. Further, no evidence exists that he had not had his standard forty (40) hours of in-service training each year. Otherwise, he would have lost his certification. Frankly, absolutely no evidence of adverse information appeared concerning Lowe at any time prior to the subject incident. When Campbell County Sheriff's Department obtained credible information indicating that Lowe had tampered with evidence at the scene, he was fired. Accordingly, nothing in the record supports Plaintiffs' claims of a flawed hiring or supervision process with respect to Lowe.

With respect to the personal involvement of former Sheriff McClellan and former Chief Deputy Scott, the undisputed record is that neither of these gentleman were present at the shooting. In fact, no basis of supervisory exist against either individual. Specifically, no facts exists that either McClellan or Scott encouraged this specific incident of

_____

[2] A copy of Campbell County's Use of Force policy is attached an Exhibit to Sheriff McClellan's Affidavit. As the court can see, it is clearly a constitutional policy.

6

misconduct or someway directly participated in it.  In other words, no facts exist that either man implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of Lowe or anyone else.  In fact, when the alleged wrongdoing by Lowe became apparent, these Defendants acted appropriately and terminated his employment.

Moreover, no facts exist that either of these Defendants did anything to inhibit the TBI investigation into the shooting or Mr. Lowe's subsequent criminal prosecution.  In fact, the record reflects that Mr. Lowe was subsequently indicted on July 9, 2007[3], and on September 24, 2007, was sentenced to judicial diversion pursuant to T.C.A. §40-35-313 for three (3) years as a result of fabricating evidence, filing a false police report and official misconduct.

### III.  LAW AND ARGUMENT

Section 1983 does not create any constitutional rights.  Braley v. City of Pontiac, 906 F.2d 220, 223 (6th Cir., 1990).  It does provide "a remedy for depravation of rights secured by the Constitution and laws of the United States."  Lugar v. Edmondsen Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744 (1982).  In order to prevail under a Section 1983 claim, a Plaintiff must establish that (1) that he or she was deprived of rights secured by the Constitution or the laws of the United States; (2) by a person acting under color of state law.  Black v. Barberton Citizens Hosp., 134 F.3d 1265, 1267 (6th Cir., 1998). Violations of state law are not redressable under Section 1983.  Elder v. Holloway, 510 U.S. 510, 515, 114 S.Ct. 1019 (1994); and a state statute or local policy guideline or regulation cannot

---

[3]  The grand jury had no billed the charges against Lowe on January 8, 2007.

"create a federal constitutional right".  Ceg Harrill v. Blount County, Tennessee, 55 F.3d 1123, 1125 (6th Cir., 1995).

Plaintiffs' Complaint concerns Plaintiffs' decedents death, and the various roles of Defendants named in the Complaint.  However, when roles of the Defendants are analyzed in conjunction with Section 1983 principles, it is clear that summary judgment is indicated and this case should be dismissed.

### I.  Supervisory Liability.

Even assuming Plaintiff has plead a violation of his constitutional rights, Plaintiff cannot attach liability to Defendants, McClellan and Scott.  Any claim against McClellan and Scott, predicated upon the actions of subordinates, must be analyzed under §1983 supervisory liability principles articulated by established precedent.  In that regard, the courts recognize that:

Supervisory liability cannot attach where the allegation is predicated upon the "mere failure to act." Bass v. Robinson, 167 F.3d, 1041, 1048 (6th Cir., 1999).  The doctrine of respondeat superior is unapplicable to entities, as well as supervisors.  Morrell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Miller v. Calhoun County, 408 F.3d 803, 817 n.3 (6th Cir., 2005).  "Rather, liability of supervisory personnel must be based upon more than the right to control employees." Hays v. Jefferson Cty., KY, 668 F.2d 869-872 (6th Cir., 1982).  To establish supervisory liability in a §1983 action, "there must be a showing that the supervisor encouraged the specific incident of misconduct or in some way directly participated in it.  At a minimum, a §1983 Plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. Bellamy v. Bradley, 729 F.2d, 416,

8

421 (6th Cir., 1984) (citing <u>Hays</u>, 668 F.2d at 872-4). Moreover, an allegation that a supervisor was aware of an actionable wrong committed by subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under §1983." <u>Poe v. Haydon</u>, 883 F.2d, 429 (6th Cir., 1988). Again, in <u>Poe</u> the court reiterated that an actual claim arises against a supervisor if, and only if, Plaintiff alleges the supervisor "either encouraged the specific incident, or in some other way directly participated in it." <u>Haydon</u>, 853 F.2d at 429. In other words, Plaintiff must show "active unconstitutional behavior." <u>Greene v. Barber</u>, 310 F.3d, 889, 898 (6th Cir., 2002).

Simply put, Plaintiff has failed to establish that McClellan and Scott authorized, approved of or knowingly acquiesced in any unconstitutional conduct of any subordinate. Accordingly, Plaintiff's actions against McClellan and Scott should be dismissed.

## II. Qualified Immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) "The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." <u>Garvie v. Jackson</u>, 845 F.2d 647, 649 (6th Cir. 1988).

In order to determine whether an official is entitled to qualified immunity, a court must first consider, "whether, based on the applicable law, a constitutional violation occurred.' <u>Dickerson v. McClellan</u>, 101 F.3d 1151, 1157 (6th Cir. 1996) (citing <u>Centanni v. Eight Unknown Officers</u>, 15 F.3d 587, 589 (6th Cir. 1994)). If the Court finds a

9

constitutional violation, the inquiry proceeds to an examination of whether it involved the

"'clearly established constitutional rights of which a reasonable person would have known.'"

Id. at 1158 (quoting Christopher v. Kukulinsky, 61 F.3d 479, 485 (6th Cir. 1995)).  The issue

is thus whether Plaintiff has alleged sufficient facts supported by sufficient evidence to

indicate what the official allegedly did was objectively unreasonable in light of [plaintiffs]

clearly established constitutional rights." Adams v. Metiva, 31 F.3d 375, 387 (6th Cir.1994).

Stated differently, a Plaintiff must show that the "official knew or reasonably should have

known that the action he [or she] took within his [or her] year of official responsibility would

violate the constitutional rights of the [Plaintiff] . . ." Harlow, 457 U.S. at 816, 102 S. Ct.

2727.

As a result, to defeat qualified immunity, the Plaintiff must demonstrate that any

official in the Defendants position, measured objectively, would have clearly understood

that he was under an affirmative duty to have refrained from such conduct. Dominque v.

Telb, 831 F.2d 673, 676 (6th Cir. 1987).  In other words, "the contours of [the] right must be

sufficiently clear that a reasonable official would understand that what he is doing violates

that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

Stated differently,"In light of pre-existing law, the unlawfulness must be apparent." Id. See

also Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir. 1989).

In the face of a qualified immunity defense, Plaintiff must put forth "specific, non-

conclusory factual allegations" that would defeat the immunity. Siegart v. Gilley, 500 U.S.

226, 236 (1991) (Kennedy, J., concurring).   Likewise, in determining whether the

Defendant was entitled to qualified immunity, the district court should "set forth with

precision the basis for its decision." Poe v. Haydon, 853 F.2d 418, 426 (6th Cir. 1988).

10

Under Section 1983, an official capacity suit "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 105 S.Ct. 3099, 3104 (1985) (quoting <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n.55, 98 S.Ct. 2018, 2035, n.55 (1978). Because the real party in interest in an official-capacity suit is a governmental entity and not the named official, "the entities 'policy or custom' must have played a part in the violation of federal law." <u>Graham</u>, *supra* at 166, 105 S.Ct. at 3105 (quoting <u>Monell</u>, *supra*, 436 U.S. at 694, 98 S.Ct. at 2037).

It is respectfully submitted that Defendants, McClellan and Scott are entitled to qualified immunity based on the facts and circumstances of this case.

### III. Municipal Liability.

A local government is liable as an entity only when the government itself has committed a constitutional violation, not when the violation was committed by one of its employees. <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 478-79, 106 S.Ct. 1292 (1986). <u>See</u> <u>also</u> <u>Feliciano v. City of Cleveland</u>, 988 F.2d 649, 654 (6th Cir. 1993). The principle of respondeat superior is inapplicable in Section 1983 cases because the statute extends liability only to persons who "cause" constitutional violations, and local governments do not "cause" constitutional violations solely be having employed a constitutional tortfeasor. <u>Feliciano</u>, 988 F.2d at 654-55 (6th Cir. 1993); <u>see</u> <u>also</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824, 105 S.Ct. 2427 (1995).

Moreover, a §1983 Plaintiff must establish an affirmative causal link between the alleged unconstitutional policy and the specific constitutional violation allegedly suffered. <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. at 813. Simply stated, in a §1983 case, Plaintiff

11

must show that the "person who violated his constitutional rights was the [local government]." (Id. at 828). As stated in Tuttle:

> Obviously, if one retreats far enough from a constitutional violation some municipal "policy" can be identified behind almost any such harm inflicted by a municipal official; for instance Rotrammell would never have killed Tuttle if Oklahoma City did not have a "policy" of establishing a police force, but Monell must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was "caused" by the municipal "policy". At the very least, there must be an affirmative link between a policy and a particular constitutional violation alleged.

471 U.S. 808, 823 (1995).

"Policy" for purposes of §1983, concerns situations where a "deliberate choice to follow a course of action is made from among various alternative by the official or the officials responsible for establishing final policy with respect to the subject matter in question." Pembauer, 475 U.S. at 483. Before a "custom" can be the basis for a civil rights violation, the custom must be "so permanent and well settled as to constitute a custom or usage with the force of law." Feliciano, 988 F.2d at 654-55.

It is respectfully submitted that Plaintiffs have failed to present relevant facts that any policy or custom of Campbell County, Tennessee, was the moving force behind his violation of the decedents federal constitutional rights.[4] In fact, the contrary is true. The record clearly reflects that Lowe was an adequately trained, certified law enforcement officer at the time of the shooting. Nothing in the record shows otherwise. Certainly, there is no facts indicating any "deliberate indifference or that any act or omission by the County

---

[4]  In fact, dismissal is warranted for the failure to submit any proof of a violation of Plaintiff's federal constitutional rights.

was a proximate cause of decedent's death. Accordingly, Plaintiffs action against Campbell County, Tennessee and all official capacity actions should be dismissed.

## IV. STATE LAW CLAIMS

Respectfully, Plaintiffs have failed to adequately allege any facts of record demonstrating that they are entitled to any relief against any Defendant under state law. These Defendants respectfully request that the court exercise it discretion under 28 U.S.C. §1367 and refuse to address Plaintiffs' state law claims. However, to the extent the court feels otherwise, these Defendants respectfully submit that absolutely no facts of record that any genuine issue of material fact exists as to any state law claim which the court could construe Plaintiffs have pled in their Complaint. Accordingly, to the extent the court wishes to exercise its discretion and assert supplemental jurisdiction, these Defendants are entitled to summary judgment as no facts demonstrate any wrongdoing, much less negligence, on the part of any of these Defendants.

## V. CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully request that the court GRANT their Motion for Summary Judgment and dismiss Plaintiff's case in its entirety.

RESPECTFULLY SUBMITTED this 26th day of September, 2008.

s/Arthur F. Knight, III
Arthur F. Knight, III, BPR #016178
Becker, Fleishman & Knight, P.C.
Post Office Box 1710
Knoxville, Tennessee  37901-1710
Phone: 865/522-5057
Fax: 865/522-6743
sjohnson@bfk-law.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26th, 2008, a copy of the foregoing Memorandum of Facts and Law in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail. Parties may access this filing through the Court's electronic filing system.

s/Arthur F. Knight, III
Arthur F. Knight, III