# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| APRIL ANN HARVEY, *next friend of* RAMSEY ROBERT HARVEY; and MISTY L. GILLIAM, *next friend of* R.H., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:07-cv-22 (Phillips) |
| CAMPBELL COUNTY, TENNESSEE, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendants' Campbell County, Tennessee; Ron McLellan, Charles Scott, and Gary Perkins's[1] Motion for Summary Judgment [Doc. 23] and supporting documents [Docs. 20, 21, 22, 24]. Plaintiffs responded in opposition but conceded summary judgment with regard to defendant Gary Perkins. For the reasons that follow, defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

The facts as follows are construed in the light most favorable to the nonmoving party, the plaintiffs.

---

[1] Defendant McClellan is the former Campbell County Sheriff and is sued in his individual and official capacities. Defendant Scott is the former Chief Deputy of the Campbell County Sheriff's Department and is also sued in his individual and official capacities. Finally, defendant Perkins is the current Sheriff of Campbell County, Tennessee.

-1-

Former Campbell County Deputy Sheriff Richard Lowe graduated from the police academy at Walter State Community College on September 6, 2002, and became certified as a law enforcement officer with the Peace Officer's Standards and Training Commission ("POST") on January 16, 2004. He applied to the Campbell County Sheriff's Department ("Sheriff's Department") on June 22, 2005, having previously worked at the City of Lafollette Police Department, the Union County Sheriff's Department, and the Knox County School system. He provided references, which were checked by Sheriff's Department personnel, all of whom recommended Mr. Lowe as a Deputy Sheriff. The Sheriff's Department obtained records from Mr. Lowe's previous employment at the City of Lafollette and their hiring process. Mr. Lowe was hired by the Sheriff's Department on July 18, 2005.

The incident giving rise to this suit occurred on or about December 23, 2005. At approximately 2:30 a.m., Ramsey Robert Harvey, deceased, was the driver of a vehicle pursued by then-Deputy Sheriff Lowe. The reason for the pursuit has not been made known to the court. At approximately 2:34 a.m., Deputy Sheriff Lowe called dispatch to inform them of his pursuit of the vehicle. Decedent Harvey stopped his vehicle at a corner, at which point Deputy Sheriff Lowe called dispatch for backup.

Here the facts diverge. Deputy Sheriff Lowe claimed, and defendants allege, that decedent Harvey exited his vehicle with a knife in hand. Defendants allege that Deputy Sheriff Lowe advised decedent to stop; when he did not follow this instruction, Deputy Sheriff Lowe shot and killed plaintiff's decedent. Plaintiffs deny that Mr. Harvey had any weapon in his hand and that the shooting was wholly unwarranted. The shooting and subsequent death of decedent Harvey is undisputed.

-2-

Case 3:07-cv-00022  Document 34  Filed 12/30/08  Page 2 of 13  PageID #: 880

Plaintiffs filed suit on December 21, 2006 in the Circuit Court for Campbell County, Tennessee under 42 U.S.C. § 1983 and the Tennessee Governmental Tort Liability Act. Plaintiffs sued Campbell County, Tennessee; former Campbell County Sheriff Ron McClellan, individually and in his official capacity as Sheriff; former Campbell County Chief Deputy Charles Scott, individually and in his official capacity as Chief Deputy; Deputy Sheriff Richard Lowe, individually and in his official capacity as a Campbell County Deputy Sheriff; Jeff Hall, as Mayor of Campbell County, Tennessee; and Sheriff Gary Perkins, in his official Capacity as Sheriff of Campbell County, Tennessee. The case was removed to this court on January 19, 2007.

Defendant Jeff Hall passed away on February 17, 2007. [Doc. 4]. Mr. Lowe, the person who shot plaintiffs' decedent, is no longer a party to this suit. A summons was issued for Mr. Lowe in December 2006, and an alias summons was issued on January 22, 2007. The 120-day deadline for service under Rule 4(m) of the Federal Rules of Civil Procedure passed without Mr. Lowe being served. At a scheduling conference held on October 25, 2007, this court orally denied Mr. Lowe's motion to dismiss on this basis and granted plaintiffs an additional thirty days to properly serve Mr. Lowe. [Doc. 13]. Plaintiffs again having failed to serve Mr. Lowe, on January 15, 2008, this court dismissed Mr. Lowe without prejudice, [Doc. 16], and he is no longer a party to this action.

Defendants Campbell County, Ron McClellan, Charles Scott, and Gary Perkins now move for summary judgment on all claims.

## II.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion—in this case, the plaintiff. *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The sufficiency of the evidence at summary judgment is guided by the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Because the instant case is governed by the preponderance of the evidence standard, this court must ask itself "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252. This does not mean that the evidence must dictate a verdict for plaintiff; rather, a genuine issue of material fact exists if there is sufficient evidence, beyond a "mere scintilla," that a jury *could* return a verdict for plaintiff. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to demonstrate the existence of genuine issues of material fact. *Id.* at 324. The nonmoving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file ....' " *Id.* If the nonmoving party fails to meet this burden, the moving party is entitled to summary judgment.

## III. ANALYSIS

### A. Defendant Sheriff Gary Perkins

Plaintiffs concede summary judgment as to defendant Sheriff Gary Perkins, [Doc. 24 at 2], and accordingly defendants' motion is granted with regard to all claims against him.

### B. 42 U.S.C. § 1983

The person responsible for shooting plaintiffs' decedent, Mr. Lowe, has been dismissed without prejudice from this suit due to plaintiffs' failure to serve him. [*See* Doc. 16]. Plaintiffs allege, however, that Campbell County and Mr. Lowe's supervisors, Ron McClellan and Charles Scott, are nevertheless liable for Mr. Harvey's death, due to their failure to adequately train and supervise Mr. Lowe in the use of deadly force and their inadequate screening of Mr. Lowe's background prior to hiring him.

> Section 1983 provides in pertinent part,
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (2006). In *Monell v. Department of Social Services of New York*, the Supreme Court held that a municipality may be sued under § 1983 where its officially adopted custom or policy caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). This creates liability where the municipality was directly responsible for the violation; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. There are several ways of demonstrating that a municipality's policy or custom caused the deprivation of plaintiff's constitutional rights; here, plaintiffs have alleged that defendants inadequately trained and supervised Mr. Lowe and failed to adequately screen his background prior to hiring him.

-5-

### *1.     Failure to Train or Supervise*

In *City of Canton, Ohio v. Harris*, the Supreme Court held that "inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  489 U.S. 378, 388 (1989).  This is in keeping with the rule under *Monell* that a city may only be liable where its policy caused the constitutional deprivation.  While

> [i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees ... it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 390.  "[T]he identified deficiency in a city's training program must be closely related to the ultimate injury."  *Id.* at 391.

Accordingly, in order to establish a failure-to-train claim, plaintiff must "prove three elements: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the County's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury."  *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quotations omitted); *accord, e.g.*, *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006).

"The deliberate indifference standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 611 (6th Cir. 2007) (quotation omitted).  The Supreme Court has imposed such a stringent standard to prevent a municipality from being held liable for actions solely attributable to its employee and not to the municipality's own culpable conduct.  *See Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 406-09 (1997).  There are two ways of

demonstrating deliberate indifference:

> To show deliberate indifference, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). In the alternative, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d. 626 (1997).

*Plinton*, 540 F.3d at 464. Plaintiffs are proceeding on the latter theory.

The court finds that defendants have failed to meet its burden of demonstrating an absence of genuine issue of fact regarding this claim. First, defendants assert that the training program was adequate and that Mr. Lowe was adequately trained because Mr. Lowe "was given, and had access to, all of the policies and procedures of the Campbell County Sheriff's Department," [Aff. of Ron McClellan, Doc. 20 at 3], a copy of which defendants submitted with their motion, [Exh. B to Doc. 20]. Defendants also submitted a copy of the Sheriff Department's policy regarding the use of force in effect at the time of Mr. Harvey's shooting. [Exh. C to Doc. 20]. Finally, defendants assert that Mr. Lowe had completed the requisite forty hours of in-service training each year following his POST certification.

The court finds, however, that these submissions are insufficient to demonstrate whether the Sheriff's Department's training program is adequate to the tasks performed. Defendants have merely indicated that Mr. Lowe was given a copy of the department's policy regarding the use of deadly force, without any further indication as to the full extent of his training. Moreover, defendants have submitted no specific evidence regarding the nature and extent of Mr. Lowe's POST training, except that he successfully completed whatever was required. As the court must resolve all inferences in favor of the plaintiffs, *e.g.*, *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986), the court finds that defendants have failed to meet their initial

-7-

burden of demonstrating the absence of a genuine issue of fact.

Moreover, given the question of fact regarding the adequacy of the Sheriff Department's training program, defendants have likewise failed to demonstrate the absence of material fact regarding the second and third elements. With regard to the second element, the deliberate indifference of the municipality, in the Sixth Circuit, " a failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction" is a situation "justifying a conclusion of deliberate indifference in claims of failure to train or supervise." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 , 700-01 (6th Cir. 2006) (quotations omitted). The use of deadly force is a special duty requiring the utmost caution in its exercise. Given that the severity of the foreseeable consequences of the misuse of deadly force is of the harshest nature, a question of fact regarding whether the training program was adequate naturally leads to a question of fact regarding whether the Sheriff's Department was deliberately indifferent to the consequences of an inadequate program. Inadequacy of training regarding the use of deadly force "present[s] an obvious potential for ... a violation" such that the municipality could be said to be deliberately indifferent thereto. *Plinton*, 540 F.3d at 464. Finally, it likewise follows that if the adequacy of the training program remains a question of fact, whether it was "closely related to or actually caused the injury" remains a question of fact.

Accordingly, the court finds that defendants have failed to meet their burden of establishing an absence of genuine issues of material fact. Defendants' Motion for Summary Judgment is denied with regard to whether defendants failed to properly train or supervise Mr. Lowe, and plaintiffs may proceed to trial on that theory.

## 2. *Inadequate Screening*

Plaintiffs have also alleged that defendants Charles Scott and Ron McClellan failed to properly investigate Mr. Lowe's background prior to hiring him. [Compl., Doc. 1, Attach. #1, at ¶ 33]. Defendants argue that nothing in Mr. Lowe's background should have alerted the defendants to potential future problems such that they should be liable for failing to screen his background. Defendants point out that Mr. Lowe did not list any adverse information; indeed, "references were provided and checked by Campbell County Sheriff's Department personnel. All were good and recommended Lowe as a deputy." [Doc. 24 at 6]. Defendants also obtained records from Mr. Lowe's previous employment, none of which contained adverse information.

Because "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause," *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 415 (1997), the Supreme Court has required that "rigorous standards of culpability and causation ... be applied to ensure that the municipality is not held liable solely for the actions of its employees," *id.* at 405. Accordingly, with regard to potential liability for failure to adequately review an officer's background, "a finding of culpability ... must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation must be strong." *Id.* at 412. The court "must ask whether a full review of [Lowe's] record reveals that [defendants Scott and McClellan] should have concluded that [Lowe's] use of excessive force would be a plainly obvious consequence of the hiring decision." *Id.*

Plaintiffs' claims that defendants McClellan and Scott did not adequately investigate Mr.

-9-

Lowe's background must fail as a matter of law because Mr. Lowe's background did not make it "plainly obvious" that he would inflict the particular injury, namely, that he would shoot Mr. Harvey. Nothing in Mr. Lowe's record indicates that he had any propensity for violence. He indicated that he had never been convicted of a felony, [Exh. A to Doc. 21, at 4]; indeed, he had never been convicted of any violation of the law other than a minimum traffic violation, [*id.* at 9]. The only potential problem in his file indicated that pornography was found on a computer to which Mr. Lowe had access; the computer, however, was located in the library of the middle school at which Mr. Lowe worked and was accessible by other people. There was no indication that Mr. Lowe was involved with the pornography found on the computer. [*Id.* at 24]. Even assuming *arguendo* he were involved, however, an individual's use of pornography on a public computer at a middle school, while perhaps demonstrating abhorrently poor judgment, does not make it "plainly obvious" that he would be likely to use excessive force in shooting a suspect in the head.

By all indications on his application, Mr. Lowe was qualified for his position. [*E.g.*, *id.* at 42]. As nothing in his record made it "plainly obvious" or indeed appear even remotely possible that Mr. Lowe would inflict the particular injury suffered by Mr. Harvey, plaintiffs' claims that defendants Scott and McClellan failed to adequately investigate Mr. Lowe's background prior to hiring him must fail as a matter of law. Defendants' Motion for Summary Judgment is therefore granted insofar as it pertains to such theory.

### C.     State Law Claims

Having argued that they are entitled to summary judgment on plaintiffs' federal claims, defendants move the court to decline to exercise its supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(c). *See* 28 U.S.C. § 1367(c)(3) (authorizing district courts "to

-10-

Case 3:07-cv-00022   Document 34   Filed 12/30/08   Page 10 of 13   PageID #: 888

decline to exercise supplemental jurisdiction" in federal question cases over related state law claims where "the district court has dismissed all claims over which it has original jurisdiction"). In the alternative, defendants argue simply that no genuine issue of material fact exists, without any further legal or factual development of this argument.

Because the court has found that plaintiffs may proceed to trial on their § 1983 claim on a theory of failure to adequately train or supervise, the court finds no basis under 28 U.S.C. § 1367(c) to decline to exercise its supplemental jurisdiction over plaintiffs' state law claims. Furthermore, defendants have failed to meet their burden under summary judgment of demonstrating why they are entitled to judgment on the merits with regard to plaintiffs' state law claims. Accordingly, defendants' motion is denied with regard to plaintiffs' state law claims.

**D. Qualified Immunity**

Finally, defendants Ron McClellan and Charles Scott assert the affirmative defense of qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court therefore first asks whether the facts demonstrate that the officers' conduct violated a constitutional right; if the court finds such a violation occurred, the court determines whether the constitutional right that was violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also, e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006). Plaintiffs assert that the shooting of decedent Harvey was a violation of his constitutional right and that defendants McClellan and Scott were responsible for this violation, as

they failed to adequately train or supervise Mr. Lowe regarding his use of excessive force. Finally, plaintiffs argue that it is clearly established that a failure to adequately train or supervise constitutes a constitutional violation.

The court finds that defendants McClellan and Scott are not entitled to qualified immunity. First, Mr. Harvey's death clearly constituted a violation of a constitutional right. *E.g.*, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) ("[I]t goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.'" *(*quoting *Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir. 1987) (en banc))). While defendants McClellan and Scott were not directly responsible for the shooting, plaintiffs argue that they are nevertheless liable for this violation because they failed to adequately train or supervise Mr. Lowe. As the court discussed above, it is clearly established that a failure to train or supervise constitutes a violation of constitutional rights when it amounts to deliberate indifference to those rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Accordingly, as identified above, there remain important questions of fact: did defendants McClellan and Scott fail to adequately train or supervise Mr. Lowe in the use of deadly force, and did such inadequate training amount to deliberate indifference to plaintiffs' constitutional rights? If these factual questions were answered in the affirmative, then defendants would not be entitled to qualified immunity, given that deliberate indifference to the adequacy of officer training is a

clearly established violation of constitutional rights. Given the existence of these important questions of fact,[2] the court finds that defendants are not entitled to qualified immunity, and the court therefore denies defendants' motion insofar as it asserts such entitlement.

IV.     **CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment is **GRANTED IN PART** with regard to all claims against defendant Sheriff Gary Perkins and with regard to plaintiffs' allegations that defendants Charles Scott and Ron McClellan inadequately screened Mr. Lowe prior to hiring. The motion is **DENIED** with regard to all remaining claims and defendants.

Accordingly, plaintiffs may proceed on their claims under 42 U.S.C. § 1983 on a theory of failure to train or supervise, as well as under Tennessee state law. The parties shall prepare the case for trial.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge

---

[2] Moreover, defendants' discussion of qualified immunity consisted merely of a conclusory assertion, following a brief recitation of case law, that "the facts and circumstances of this case" entitle defendants to qualified immunity, without any discussion thereof. The court finds that this does not satisfy defendants' burden of proof in asserting the affirmative defense of qualified immunity. In any event, as determined above, defendants are not entitled to qualified immunity due to the important factual questions which remain in this case.