**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  11a0307n.06**

**No. 09-5041**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*May 10, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| APRIL ANN HARVEY, wife and next of kin to Ramsey Robert Harvey, deceased; and RYAN A. HARVEY, a minor child, by and through his mother and next friend, MISTY GILLIAM, | ) ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| CAMPBELL COUNTY, TENNESSEE; RON McCLELLAN, individually and in his official capacity as former Sheriff of Campbell County; and CHARLES SCOTT, individually and in his official capacity as former Deputy Sheriff of Campbell County, | ) ) ) ) ) ) ) | OPINION |
| Defendants-Appellants. | ) ) | |

**Before:  DAUGHTREY, SUTTON and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.**  In this civil rights action, presenting claims under 42 U.S.C.

§ 1983 and the Tennessee Governmental Tort Liability Act, defendants – Campbell County, former

Campbell County Sheriff Ron McClellan, and his former Chief Deputy, Charles Scott – appeal the

district court's order denying them summary judgment.  The litigation arises out of the death of

Ramsey Robert Harvey, who was shot and killed by Richard Lowe, then a Campbell County Sheriff's

Deputy.  The action is brought by Harvey's wife, April Ann Harvey, and his son, Ryan A. Harvey.

Liability is predicated on claims of inadequate screening of Lowe prior to hiring and failure to train

*Harvey v. Campbell County*
No. 09-5041

and supervise him in the use of deadly force.  The district court granted defendants summary judgment on the screening claim but denied summary judgment on the failure-to-train claim, finding that defendants had "failed to meet their burden of establishing an absence of genuine issues of material fact." The court also rejected the individual defendants' request for qualified immunity on the same basis.  Because we conclude that the district court's ruling is based in part on a misapplication of the standards governing summary judgment practice, we conclude that a pure question of law is presented over which we have jurisdiction.  We further conclude that this misapplication of law resulted in reversible error.  For the reasons more fully explained below, we reverse the denial of summary judgment to defendants on plaintiff's § 1983 failure-to-train claim.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Deputy Lowe began pursuing Harvey in his patrol car in the early morning hours on December 23, 2005, but the record fails to show why.  Lowe radioed the Sheriff's Department dispatch to report that he was in pursuit, and when Harvey stopped his car a few minutes later, Lowe called for backup.  Both Lowe and Harvey apparently got out of their vehicles and, within three minutes, during the ensuing encounter, Lowe shot Harvey in the head.  Harvey died two days later from the gunshot wound.  In the meantime, Lowe justified the shooting in a statement to a local newspaper reporter by explaining that Harvey was armed with a knife when he got out of his car and

---

[1]This summary of the facts is based on the allegations of the complaint and the parties' concise statements of material facts, largely undisputed, filed in the district court in conjunction with the motion for summary judgment.  R. 1, Complaint; R. 22, Defendants' Concise Statement of Material Facts; R. 28, Plaintiffs' Response to Defendants' Statement of Material Facts.

*Harvey v. Campbell County*
No. 09-5041

refused to stop or put the knife down in response to Lowe's instruction, forcing Lowe to shoot in self-defense. This statement turned out to be false, however.

As a result of the fatal shooting, the Campbell County Sheriff's Department placed Lowe on administrative leave, and the Tennessee Bureau of Investigation (TBI) was called in to investigate. Approximately one week after the incident, Lowe took and failed a polygraph test administered by the TBI. He then admitted that he had planted a knife at the scene of the shooting. The next day, Lowe was discharged from the Sheriff's Department for tampering with evidence at a crime scene. He was later indicted on three felony charges—fabricating evidence, making a false police report, and engaging in official misconduct—and pleaded guilty to all three offenses.

Plaintiffs, Harvey's wife and son, originally filed suit in the Circuit Court for Campbell County, Tennessee, stating claims under 42 U.S.C. § 1983 and the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated §§ 29-20-101 to -408, against Lowe and defendants Campbell County, former Sheriff McClellan, and former Chief Deputy Scott. Defendants removed the action to the District Court for the Eastern District of Tennessee. The district court dismissed Lowe from the suit, without prejudice, after three attempts to serve him proved unsuccessful. The court subsequently granted summary judgment to the remaining defendants on plaintiffs' claim that defendants inadequately screened Lowe before hiring him. However, the district court denied summary judgment on the claim that defendants failed to train Lowe adequately and on McClellan's and Scott's qualified immunity defense. The individual defendants now appeal, arguing that the district court erred in denying them qualified immunity. Recognizing that issues involving Campbell

-3-

*Harvey v. Campbell County*
No. 09-5041

County are not otherwise reviewable on an interlocutory basis, the County predicates pendent appellate jurisdiction on its contention that those issues are "inextricably intertwined" with the matter of qualified immunity, over which the court properly has jurisdiction.

## II. JURISDICTION

We have appellate jurisdiction over final decisions of the district court under 28 U.S.C. § 1291. A denial of summary judgment is not ordinarily considered a final decision, but a denial of summary judgment to a defendant raising the defense of qualified immunity is appealable on an interlocutory basis under the collateral order doctrine "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). *See also Chappell v. City of* Cleveland, 585 F.3d 901, 905 (6th Cir. 2009); *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008); *Leary v. Livingston County*, 528 F.3d 438, 447 (6th Cir. 2008). This exception is narrow, however. Appellate jurisdiction exists "only to the extent that a summary judgment order denies qualified immunity based on a pure issue of law." *Leary*, 528 F.3d 447-48 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006)). A defendant may not appeal the denial of qualified immunity if the district court's order was based on a question of "evidence sufficiency" rather than "the application of 'clearly established' law to a given (for appellate purposes undisputed) set of facts." *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

Here, the district court granted summary judgment to defendants in part, but denied summary judgment on plaintiffs' claim that defendants had failed to train and supervise Lowe in the use of deadly force. The court held that defendants had "failed to meet their burden of establishing an

-4-

*Harvey v. Campbell County*
No. 09-5041

absence of genuine issues of material fact." In so ruling, the court misapplied the Supreme Court's teaching on summary judgment practice. It is not for the moving party to establish the *absence* of a triable fact issue, but for the nonmovant to establish the *existence* of one. Yes, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original).

Contrary to the district court's reasoning in this case, *Celotex* teaches that the moving party need not "show the absence of a genuine issue of material fact," but discharges its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party moving for summary judgment has satisfied its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Here, as more fully explained below, defendants carried their initial burden by pointing out an absence of evidence tending to satisfy any of three essential elements of plaintiffs' claim, i.e., that Lowe's training was inadequate, that any inadequacy resulted from defendants' deliberate

-5-

*Harvey v. Campbell County*
No. 09-5041

indifference, and that the inadequacy was closely related to plaintiffs' injury.  Plaintiffs, in responding, did not present *any* evidence of specific facts tending to establish any off these three elements.  Instead, they argued simply that the defendants' showing of the adequacy of Lowe's training is inconclusive and therefore insufficient to demonstrate the absence of a genuine issue of material fact.  Though this is precisely the argument rejected in *Celotex*, the district court accepted it as persuasive.

We acknowledge that the denial of summary judgment *appears* to be based on factual issues, not a pure question of law.  "Yet, the district court's characterization of the basis for its ruling does not necessarily dictate the availability of appellate review."  *Chappell*, 585 F.3d at 906; *see also Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 402-03 (6th Cir. 2007); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005).  "If, apart from impermissible arguments regarding disputes of fact, defendants raise purely legal issues bearing on their entitlement to qualified immunity, then there are issues properly subject to appellate review."  *Chappell*, 585 F.3d 906.  "Hence, the district court's determination that there is a factual dispute does not necessarily preclude appellate review where the ruling also hinges on legal errors as to whether the factual disputes (a) are *genuine* and (b) concern *material* facts."  *Id.*

The district court here committed legal error not unlike the error committed by the Eleventh Circuit in *Scott v. Harris*, 550 U.S. 372, 378-80 (2007), where the Court reversed denial of qualified immunity because the lower court had erred in finding a genuine issue of material fact.  As we explained in *Chappell*:

-6-

*Harvey v. Campbell County*
No. 09-5041

> In *Scott*, the Eleventh Circuit was held to have erred by accepting the plaintiff's version of the facts as true even though that version was so conclusively contradicted by the record that no reasonable jury could believe it. . . . In other words, the court is not obliged to, and indeed should not, rely on the nonmovant's version where it is "so utterly discredited by the record" as to be rendered a "visible fiction." . . . The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence. . . . This is so because the nonmovant, in response to a properly made and supported motion for summary judgment, cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial.

*Chappell*, 585 F.3d at 906.

The district court here, too, erred as a matter of law in determining that plaintiffs' claim could withstand a properly supported motion for summary judgment through reliance on the allegations of their complaint alone without any supporting factual evidence. Defendants' appeal from this ruling therefore implicates a question of law. Defendants are not "merely quibbling with the district court's reading of the factual record," but have identified a legal issue that is subject to interlocutory appellate review. *Id.* (quoting *Leary*, 585 F.3d at 441). It follows that, to this extent, we have jurisdiction to review the district court's denial of summary judgment. Further, insofar as Campbell County's liability is dependent on the same showing that defendants McClellan and Scott were deliberately indifferent to Lowe's need for additional training, we conclude that we have pendent appellate jurisdiction over its appeal, too, as the issues are inextricably intertwined. *See Bates v. Dura Automotive Systems, Inc.*, 625 F.3d 283, 286-87 (6th Cir. 2010).

-7-

*Harvey v. Campbell County*
No. 09-5041

# III.  ANALYSIS

## A.  Governing Legal Standards

Where a motion for summary judgment is denied on the basis of a genuine issue of material fact, review is for an abuse of discretion.  *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 235 (6th Cir. 2003).  Where the denial is based solely on legal grounds, review is de novo.  *Id*. at 235-36.  A motion for summary judgment permits a movant to challenge the opposing party to present its evidence on a critical issue.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  The movant bears the initial burden of "pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Id.* at 1479.  Thereafter, the claim will only survive summary judgment if the nonmovant can adduce "more than a scintilla of evidence" in support of the claim; it cannot rely on "the hope that the trier of fact will disbelieve the movant's denial of a disputed fact."  *Id.*  Further, not just any factual dispute will defeat a properly supported motion for summary judgment; the dispute must present a genuine issue of material fact.  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party" . . . and "[a] factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law."  *Gallagher v. C.H. Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (citations omitted).

-8-

*Harvey v. Campbell County*
No. 09-5041

In terms of the substantive law, a plaintiff, to prevail on a § 1983 claim, must establish a deprivation of a constitutional or other federally protected right by a person acting under color of state law.  The apprehension of a suspect "by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). A claim that an officer used excessive force during the course of a seizure is evaluated under an "objective reasonableness" standard. *Chappell*, 585 F.3d at 908 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The use of deadly force is reasonable only if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Id.* (quoting *Garner*, 471 U.S. at 11).  Accepting the incomplete but undisputed facts, we presume that Lowe acted under color of state law and unreasonably used deadly force to restrain the apparently unarmed Harvey.

Yet, neither the County nor Lowe's superiors, defendants McClellan and Scott, can be held liable for Lowe's acts on a theory of *respondeat superior.  Phillips v. Roane County, Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008); *Miller v. Calhoun County*, 408 F.3d 803, 817, n.3 (6th Cir. 2005).  The County may, however, be held liable under § 1983 if it maintained a policy or custom that caused the violation of Harvey's rights. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). The County may be held liable if Lowe's actions can be attributed to its failure to adequately train Deputy Lowe *and* this failure amounts to "deliberate indifference" to the rights of members of the

-9-

*Harvey v. Campbell County*
No. 09-5041

public like Harvey. *See City of Canton*, 489 U.S. at 388. Specifically, as the district court observed, plaintiffs must show three elements: (1) that Lowe's training was inadequate to prepare him for the tasks that officers in his position must perform; (2) that the inadequacy persisted due to the County's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiffs' injury. *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).

In *Plinton*, we identified two ways of demonstrating the second element, deliberate indifference. First, plaintiffs could show deliberate indifference through evidence of prior instances of unconstitutional conduct demonstrating that the County had notice that the training was deficient and likely to cause injury but ignored it. *Id.* (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Alternatively, plaintiffs could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the County had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Id.* (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)). Here, plaintiffs rely on the second alternative.

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. —, 131 S.Ct. 1350, 1360 (2011) (quoting *Bryan County*, 520 U.S. at 410). While it may seem contrary to common sense to conceive of the County having a "policy" of not taking reasonable steps to train its employees, if the need for more or different training is so obvious that the County

-10-

*Harvey v. Campbell County*
No. 09-5041

policymaker, i.e., then-Sheriff McClellan or potentially former Chief Deputy Scott, is shown to have been deliberately indifferent to the need, then the County may be deemed to have had a policy of deliberate indifference. *Id.*; *Miller*, 408 F.3d at 815-16. However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference. *Id.* at 816.

Further, whereas the County's liability may be premised on its policymaker's deliberate indifference, neither of the individual defendants, McClellan or Scott, can be held liable in his individual capacity unless he "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips*, 534 F.3d at 543 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). To hold either individual defendant liable, plaintiffs, at a minimum, must show that McClellan or Scott "at least implicitly authorized, approved, or knowingly acquiesced" in Lowe's shooting of Harvey. *Id.* Plaintiffs have neither alleged nor presented any evidence to support a finding of McClellan's or Scott's personal involvement in the shooting. The attempt to hold McClellan and Scott liable in their individual capacities for their alleged failure to adequately train employees in Lowe's position "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Id*; *see also Miller*, 408 F.3d at 817 n.3 (absent evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county). To the extent plaintiffs have adduced evidence supporting findings that McClellan or Scott was a County policymaker on matters of training and was so deliberately

-11-

*Harvey v. Campbell County*
No. 09-5041

indifferent to the need for more comprehensive training as to render the training deficiency a matter of *de facto* County policy, he would be liable, if at all, in his *official* capacity, i.e., rendering the County liable.  *See Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 n.21 (6th Cir. 2000).

### B.  Qualified Immunity Framework

Qualified immunity does not protect municipalities, *see id.*, but shields government officials performing discretionary functions from individual-capacity liability if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).  "Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful."  *Chappell*, 585 F.3d at 907.  "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).  Qualified immunity protects officials from liability for mistakes of judgment whether the error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.  *Pearson*, 129 S.Ct. at 815.

Plaintiffs bear the burden of showing that the individual defendants are not entitled to qualified immunity. *Chappell*, 585 F.3d at 907.  They must show, viewing the evidence in the light most favorable to them, both that a constitutional right was violated *and* that the right was clearly established at the time of the violation.  *Id.*  They must show that the right allegedly violated was

-12-

*Harvey v. Campbell County*
No. 09-5041

clearly established in a particularized sense, such that a reasonable official confronted with the same situation would have known that his or her actions would violate that right.  *Id.*

### C.  Essential Elements of Deliberate Indifference Claim

The district court correctly recognized that plaintiffs' success in holding the County liable for Lowe's shooting of Harvey based on a failure-to-train theory is dependent on their ability to adduce evidence of deliberate indifference on the part of Sheriff McClellan or Chief Deputy Scott as policymaker for the County.  As explained above, however, any such showing of deliberate indifference by McClellan or Scott will not—because of the utter absence of evidence of their personal involvement in Lowe's shooting of Harvey—support a judgment against either of them in his individual capacity.  Although plaintiffs have alleged undisputed facts tending to show that Harvey was subject to an unreasonable seizure, they have neither alleged facts nor adduced evidence that would support a finding that McClellan or Scott was personally involved in the shooting or approved of or acquiesced in the shooting.  It follows that McClellan and Scott can only be held liable in their official capacities and the action against them is properly deemed to be against the County.  Plaintiffs have not, therefore, carried their burden of showing that the individual defendants are not entitled to qualified immunity from liability in their individual capacities.  The denial of the individuals defendants' motion for summary judgment based on qualified immunity must be reversed.  As to whether plaintiffs have adduced sufficient evidence to create a triable question on

-13-

*Harvey v. Campbell County*
No. 09-5041

the County's liability for McClellan's or Scott's deliberate indifference, three elements must be satisfied, as outlined in *Plinton*.

## 1. *Adequacy of Lowe's Training*

First, plaintiffs must come forward with evidence tending to show that Lowe's training was inadequate. Although defendants were not required to support their motion for summary judgment with evidence negating plaintiffs' claim, both individual defendants filed affidavits attesting to the adequacy of Lowe's training. Also attached to each affidavit is a copy of Lowe's personnel record and a copy of the Campbell County Sheriff's Department Policies and Procedures Manual.

According to Lowe's personnel file, he worked for the Campbell County Sheriff's Department for less than six months before he was terminated. Before he was hired in Campbell County, Lowe had been a reserve police officer with the City of LaFollette (Tennessee) Police Department for less than six months (January 2005 to June 2005); had been employed by the Union County (Tennessee) Sheriff's Department as a school security officer and patrol officer for sixteen months (August 2003 to January 2005); and prior thereto had served for approximately four years as a school security officer for the Knox County (Tennessee) School Division.

The file further shows that Lowe had received police officer training in the form of a seven-week course at the Walters State Community College Law Enforcement Academy in 2002. In January 2004, Lowe earned certification as a law enforcement officer from the State of Tennessee's Peace Officer Standards and Training Commission ("POST"). Defendants McClellan

-14-

*Harvey v. Campbell County*
No. 09-5041

and Scott stated in their affidavits that Lowe "obtained his forty (40) hours of in-service training each and every year following his POST certification, otherwise, his POST certification would have been revoked." The record does not detail the substance of the original POST training or post-certification training Lowe received. In regard specifically to Lowe's training in the use of deadly force, his personnel record indicates that he received "training in the constitutional application of force by a law enforcement officer" before he was hired. Both McClellan and Scott stated in their affidavits that Lowe was "trained by the Campbell County Sheriff's Department in the use of force." Neither affiant attested to having personally trained Lowe, but both confirmed that when he was hired, Lowe was given a copy of and had access to the Sheriff's Department Policies and Procedures Manual. The 340-page manual includes a 12-page Policy on the "Use of Force & Deadly Force."

Plaintiffs have offered no evidence disputing these sworn statements and have not identified any particular deficiency in the training. Instead, they claim that the *absence* of facts in the record regarding the precise nature and contents of Deputy Lowe's training in the constitutional use of force shows that the training was inadequate. They cite McClellan's and Scott's failure to describe their personal training of Lowe and their own personal unfamiliarity with Lowe's understanding of use-of-deadly-force policies as evidence that the training was inadequate. They argue that the inadequacy of the training is further demonstrated by the fact that Lowe was acting within the scope of his employment when he shot and killed the unarmed Harvey.

-15-

*Harvey v. Campbell County*
No. 09-5041

Plaintiffs' position is thus based not on evidence in the record that shows their cup is half-full, but on the failure of defendants to show conclusively that their cup is full to the brim. Plaintiffs would have us draw inferences that are not reasonably supported by the record evidence. As indicated above, our duty to view the facts in the light most favorable to plaintiffs does not require or permit us to accept as true mere allegations that are not supported by factual evidence. *Leary*, 528 F.3d at 443-44. Plaintiffs, in response to a properly supported motion for summary judgment, cannot rely merely on allegations and arguments, but must set out specific facts showing a genuine issue for trial. *Id.* at 444. Plaintiffs have not done so. They have presented no facts. In fact, it appears they have not even conducted discovery designed to uncover facts supporting their allegations. They rely instead on speculative, unsupported allegations to create metaphysical doubt, which clearly does not amount to a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The district court overlooked these shortcomings in plaintiffs' case, concluding that *defendants* had not met *their* burden. The court held that defendants had failed to conclusively show that Lowe's training was so adequate to the tasks performed as to demonstrate the absence of any genuine issue of material fact. In so ruling, the court did not identify a single item of evidence supporting plaintiffs' allegation that the training was inadequate. The district court thus improperly excused plaintiffs from their burden of coming forward with specific facts demonstrating a triable fact issue.

-16-

*Harvey v. Campbell County*
No. 09-5041

Comparing the facts of this case with those presented in *Plinton* further illustrates the error in the district court's ruling.  In *Plinton*, the plaintiff sued the county, asserting that an officer's training was inadequate, and that this caused the officer to improperly investigate and maliciously prosecute the plaintiff's son, causing him to commit suicide. 540 F.3d at 461.  The officer had not received his department's written policies, though he professed to know them and to have received on-the-job training.  *Id.*  He had been with the department for two years and had been a police officer for six.  *Id.*  The plaintiff argued that the department's failure to provide the written policies and formal orientation or training in those policies constituted inadequate training, and presented a report conclusorily stating that training on written policies is the "foundation to police performance" that county officials failed to provide.  *Id.* at 464.  The court held that although the plaintiff "may" have shown a genuine issue of material fact on the inadequacy prong, he had failed to show any evidence of deliberate indifference because the officer in question was already a trained and experienced officer, had testified that he knew the policies and could ask questions of supervisors if he had any, and the department had not encountered any bad outcomes in the past six years which would have put them on notice of the potential for unconstitutional behavior.  *Id.* at 464-65.  The plaintiff's assertions of the "obvious" need for more training and the "conclusory remarks" of the report on police training were held not to satisfy the "stringent" deliberate indifference standard, which requires more than "even heightened negligence."  *Id.* at 465.  The court thus affirmed the award of summary judgment to the defendant county.

-17-

*Harvey v. Campbell County*
No. 09-5041

Plaintiffs in this case have presented even less evidence than the plaintiff in *Plinton*. Unlike the officer in *Plinton*, Lowe had actually received the Campbell County Sheriff's Department Policies and Procedures, including the Policy on the Use of Deadly Force. While Lowe had not been on the job as long as the officer in *Plinton*, he still had significant experience as a police officer, having served with three different police departments and two school systems. Further, the record shows that Lowe had completed police academy training and POST training before he was hired by the Campbell County Sheriff's Department. Here, plaintiffs have not produced any affirmative evidence refuting, impugning or challenging this showing. Hence, whereas the *Plinton* plaintiff's claim "may" have survived summary judgment on the issue of inadequacy of training—before losing for lack of evidence of deliberate indifference—the Harvey plaintiffs' claim falls short in both respects. Deputy Lowe received arguably more training than the officer in *Plinton*, and the plaintiffs have not produced even a scintilla of affirmative evidence tending to show this training was so inadequate as to evidence deliberate indifference.

Moreover, plaintiffs' argument and the district court's ruling completely ignore the fact that it was manifestly *not* the defendants' duty to show that Deputy Lowe's training was adequate; it was plaintiffs' burden to show that such training was *inadequate*. Plaintiffs were obligated to come forward with affirmative evidence above and beyond the pleadings to show that the training Lowe received was not sufficient. But when defendants challenged plaintiffs to present their evidence of deficient training, plaintiffs' only response has been to argue essentially that defendants' affidavits are insufficient to rebut plaintiffs' unsupported allegations. This is not enough. For lack of evidence

-18-

*Harvey v. Campbell County*
No. 09-5041

of inadequate training alone, defendants are entitled to summary judgment.  Yet, the factual support

for the remaining two elements of plaintiffs' deliberate indifference theory is just as lacking.

### 2. *Deliberate Indifference and Causation Elements*

Plaintiffs have proffered even less evidence to support the second and third prongs of the

*Plinton* test.  They have provided no evidence that any inadequacy, if one indeed existed, was the

result of defendants' deliberate indifference.  Evidence that a particular officer was unsatisfactorily

or even negligently trained will not suffice to attach liability to a municipality unless the failure to

train is shown to have been the product of deliberate indifference.  *City of Canton*, 489 U.S. at 388-

89.   Plaintiffs have offered no evidence to refute defendants' sworn statements that Lowe received

training in the constitutional use of force through his POST certification, the provision of

departmental procedures, and from the Campbell County Sheriff's Department.  There is no evidence

that defendants were or should have been aware that the training Deputy Lowe received was

inadequate, necessitating additional instruction.  There is no evidence that other police departments

in Tennessee routinely provide additional training for their officers in the constitutional use of force.

Moreover, here, as in *Plinton*, the record is devoid of evidence of prior misuses of deadly

force that could be deemed to have put McClellan and Scott on notice of any deficiency in training.

Plaintiffs have not even alleged that the County ignored a history of excessive force by Lowe or other

deputies.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 131

-19-

*Harvey v. Campbell County*
No. 09-5041

S.Ct. at 1360 (quoting *Bryan County*, 520 U.S. at 409).    For liability to attach in the instance of a single violation, the record must show "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1987) (internal citations omitted).

In *City of Canton*, the Court hypothesized that a history or pattern of prior violations might not be necessary to show deliberate indifference if the need for more or different training were "obvious." *See Connick*, 131 S.Ct. at 1360-61.  However, the Court's hypothesis was premised on the assumption that the municipality had decided *not* to train its officers about the constitutional limits of the use of force.  *Id.* at 1361.  Under such circumstances, the highly predictable consequence that deadly force could be misused in violation of citizens' rights could be deemed so obvious as to reflect deliberate indifference.  *Id.*  Here, however, unlike the *City of Canton* hypothetical, it is undisputed that Lowe had received *some* training in the use of deadly force.  Plaintiffs therefore had to show that the County, through its policymaker(s), was on notice that, absent additional training, it was so highly predictable that sheriff's deputies would misuse deadly force as to amount to conscious disregard for citizens' rights.  Plaintiffs, like Connick, *see id.* at 1365, failed to make this showing.

Furthermore, outside plaintiffs' bare assertions, there is not even a scintilla of evidence that defendants' deliberate indifference created a training regimen so deficient that it was the actual *cause*

-20-

*Harvey v. Campbell County*
No. 09-5041

of Lowe's apparently unreasonable decision to fatally shoot Harvey. What specifically transpired between Lowe and Harvey immediately before the fatal shooting is unknown. The record is devoid of information explaining what motivated Lowe to use deadly force in response to the actions of the apparently unarmed Harvey. It may be that Lowe reasonably apprehended that Harvey threatened him with imminent and serious bodily harm even though he had no gun or knife. Lowe may have made some mistake of law or fact that resulted in his use of greater force than necessary. Lowe may have acted out of sheer unmitigated malice, without any justification whatsoever—an intentional crime that no amount of training would have prevented. It is simply impossible to reasonably conclude, based on the present record, that Harvey's death can somehow be traced back to a particular inadequacy in Lowe's training to which defendants had been deliberately indifferent.

To reiterate, it is not reasonable to draw inferences—as the district court appears to have done—of inadequate training, deliberate indifference and causal effect from the mere fact that, given the training he had, Lowe still shot and killed Harvey. Because plaintiffs have thus utterly failed to put forth any evidence to support reasonable jury findings that the training program was inadequate, that McClellan or Scott was deliberately indifferent to the deficiency, and that the deficiency was causally related to Lowe's shooting of Harvey, we conclude that defendants are entitled to summary judgment.

-21-

*Harvey v. Campbell County*
No. 09-5041

### D.  State-Law Claim

The parties have not—either in the district court or in their appellate briefing—separately addressed the factual support for plaintiffs' state-law claim for negligence.  In their motion for summary judgment, defendants asked for summary judgment on plaintiffs' § 1983 claim and asked the court to decline to exercise continuing supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367.  The district court denied both requests.  Hence, while we reverse the denial of defendants' motion for summary judgment, no question has been presented regarding the state-law claim and we express no opinion on its merits.

### IV.  CONCLUSION

This action stems from a tragic loss of life, caused by a sheriff's deputy's apparent misuse of power.  Despite our sympathies for the family members of the decedent, however, we hold, for the reasons set forth above, that plaintiffs have not adduced sufficient evidence to justify further proceedings on their claim that defendants are liable under a failure-to-train theory.  Accordingly, the district court's interlocutory order denying defendants' motion for summary judgment is **REVERSED**. The matter is **REMANDED** to the district court for entry of judgment in favor of defendants on plaintiffs' § 1983 failure-to-train claim and for further proceedings as appropriate on plaintiffs' state-law claim.

-22-

*Harvey v. Campbell County*
No. 09-5041

**MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.** Quoting Celotex Corp. v. Catrett, 477 U.S. 317(1986), the majority recognizes:

> A party seeking summary judgment *always* bears the *initial* responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the *absence* of a genuine issue of material fact."

Id. at 323 (emphasis added). The movant may discharge that duty by showing "an absence of evidence to support the nonmoving party's case." Id. at 325. The nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (citation and internal quotation marks omitted). The defendants in this case did not meet their initial burden of showing an absence of evidence supporting the plaintiff's claims. And, in any event, the plaintiffs identified information that, when viewed in the light most favorable to the non-movants, clearly highlights genuine issues of material fact for trial. Because the district court denied the defendants' motion for summary judgment due to the existence of such factual disputes, I believe that we are without jurisdiction at this time to rule upon the plaintiffs' failure-to-train claim. See Johnson v. Jones, 515 U.S. 304 (1995). I respectfully dissent from that portion of the majority opinion that concludes to the contrary.

-23-

*Harvey v. Campbell County*
No. 09-5041

To buttress its decision in this matter, the majority asserts that the plaintiffs "have not identified any particular deficiency in [Lowe's] training," but have instead, in order to establish that such training was inadequate, relied only upon the *absence* of facts in the record regarding the training Lowe received.  Maj. Op. at 15.  To require the plaintiffs to do more in this case would, however, paint the litigants into a corner from which there is no logical escape.  The plaintiffs were not involved in the "training" given to Lowe, and they thus have no first-hand knowledge of the efforts undertaken by the defendants.  Instead, by necessity, they must rely upon the information provided by the individuals and entities familiar with the instruction offered.  To press upon the plaintiffs the onus of establishing the deficiencies in the instruction given to Lowe when the defendants failed to divulge the content of that instruction is not only illogical but manifestly unjust.

What information then *did* the defendants deign to divulge during discovery?  The record before us on appeal contains only the following tidbits:

•    Lowe had served as a Campbell Country sheriff's deputy for only six months at the time he killed Harvey.

•    Prior to his service with the Campbell County's Sheriff's Department, Lowe was a *reserve* police officer in LaFollette, a small Tennessee community.[2]

---

[2]According to the most recent edition of the Tennessee Bluebook, LaFollette had a population of 7,977 in 2009.  See Tennessee Blue Book (2009-2010), available at http://state.tn.us/sos/bluebook/.

-24-

*Harvey v. Campbell County*
No. 09-5041

• Before his stint with the LaFollette Police Department, Lowe served for 16 months as a school security officer and patrol officer in Union County (Tennessee) and for approximately four additional years as a school security officer in another jurisdiction.

• Lowe completed a seven-week law-enforcement course three years prior to killing Harvey.

• Lowe received 40 hours of in-service training in 2004 and, presumably, in 2005, even though no information was provided as to the content of that training.

• Lowe's personnel record indicates only that he received "training in the constitutional application of force by a law enforcement officer." Again, however, the record gives no indication about the content of that "training."

• Defendants McClellan and Scott stated, without further elaboration, in identical affidavits -- identical even in misspellings and typographical errors contained therein -- that Lowe was "trained by the Campbell County Sheriff's Department in [the] use of force." McClellan and Scott did not, however, indicate whether they had been personally involved in training Lowe.

-25-

*Harvey v. Campbell County*
No. 09-5041

•     When hired by the sheriff's department, Lowe received a 340-page policies-and-procedures manual, a manual that discussed "deadly force" in little more than one page and that focused more on procedures than on actual training.

•     No one individual actually ensured that Lowe understood the intricacies of the department's deadly-force policies. Instead, Lowe's personnel file merely included a form that Lowe signed indicating that he had read and understood the manual and that his supervisor had been available to answer any questions he may have had.

The defendants' bald assertions that Lowe was certified as a law enforcement officer and that he himself had indicated that he had read and understood a manual provided to him do not, in the absence of any mention of exactly what standards were required for certification, negate any element of the plaintiffs' case. Moreover, the information before the district court went further and actually validated the plaintiffs' claims by showing both that the 340-page manual was actually what it purported to be – a mere explanation of departmental policies, and that no county official was able to testify to the actual "training" that Lowe received. Viewing this information in the light most favorable to the plaintiffs, I do not believe we can legitimately dispute that the plaintiffs have highlighted a genuine factual issue regarding the adequacy of the defendant county's training program.

-26-

*Harvey v. Campbell County*
No. 09-5041

Unlike the majority, I also believe that the plaintiffs have satisfied their burden of proposing a nexus between the alleged lack of training and the shooting and killing of Ramsey Robert Harvey.  It is true, as stated by the majority, that "[w]hat specifically transpired between Lowe and Harvey immediately before the fatal shooting is unknown." Maj. Op. at 21.  It is equally as true, however, that we, as a reviewing court, are not required to know with certitude what precipitated the senseless killing.  Instead, we are asked at this stage of the litigation only whether the information contained in the record raises the possibility that Lowe, a person who has to-date successfully eluded process servers, killed an unarmed man whom he stopped during the course of his police duties, and whether that killing could be attributable to a lack of proper training -- a deficiency evidenced by the fact that no individual has yet detailed the nature of any training Lowe received.  In my view, the answer to those questions is an unqualified "yes."  I thus firmly believe that the plaintiffs have established genuine issues of material fact regarding the first and third elements of their cause of action as set forth in our prior decision in Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008).

The remaining element of a failure-to-train claim – whether the inadequate training can be traced to the county's deliberate indifference – also does not present an insurmountable hurdle for the plaintiffs *at the summary judgment stage* of these proceedings.  It is indeed true that proof of "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for

-27-

*Harvey v. Campbell County*
No. 09-5041

purposes of failure to train." Connick v. Thompson, 563 U.S. ___, 2011 WL 1119022, at

*8 (Mar. 29, 2011) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409

(1997)).  However, as the Supreme Court recognized in Connick:

> In Canton [v. Harris, 489 U.S. 378 (1989)], the Court left open the
> possibility that, "in a narrow range of circumstances," a pattern of similar
> violations might not be necessary to show deliberate indifference.  Bryan
> Cty,, supra, at 409, 117 S.Ct. 1382.  The Court posed the hypothetical
> example of a city that arms its police force with firearms and deploys the
> armed officers into the public to capture fleeing felons without training the
> officers in the constitutional limitation on the use of deadly force.  Canton,
> supra, at 390, n. 10, 109 S.Ct. 1197.  Given the known frequency with which
> police attempt to arrest fleeing felons and the "predictability that an officer
> lacking specific tools to handle that situation will violate citizens' rights," the
> Court theorized that a city's decision not to train the officers about
> constitutional limits on the use of deadly force could reflect the city's
> deliberate indifference to the "highly predictable consequence," namely,
> violations of constitutional rights.  Bryan Cty., supra, at 409, 117 S.Ct. 1382.
> The Court sought not to foreclose the possibility, however rare, that the
> unconstitutional consequences of failing to train could be so patently obvious
> that a city could be liable under § 1983 without proof of a pre-existing pattern
> of violations.

Id.

Although  the  Court  in  Connick  distinguished  the  situation  before  it  from  the

hypothetical  situation  posed  in  Canton,  the  majority  opinion  in  Connick  did  speak

forebodingly about the issue now facing us.  The Court stated:

> *There is no reason to assume that police academy applicants are familiar
> with the constitutional constraints on the use of deadly force.  And, in the
> absence of training, there is no way for novice officers to obtain the legal*

-28-

*Harvey v. Campbell County*
No. 09-5041

> *knowledge they require*.  Under those circumstances there is an obvious
> need for some form of training.

Id. (emphasis added).

The majority opinion in this case accuses the district court of misapplying the standards  governing summary-judgment practice in the federal courts.  See Maj. Op. at 2.  As I read the record in this matter, however, it is actually the majority opinion that misapplies settled summary-judgment law.  That opinion bases its conclusion that the plaintiffs did not establish the deliberate indifference necessary to support a failure-to-train cause of action on its understanding that the "[p]laintiffs have offered no evidence to refute defendants' sworn statements that Lowe received training in the constitutional use of force through his POST certification, the provision of departmental procedures, and from the Campbell County Sheriff's Department."  Maj. Op. at 19.  Of course, the plaintiffs have no basis for disputing that Lowe received POST certification or that he was provided a departmental  policies-and-procedures  manual  by  the  Campbell  County  Sheriff's Department.  What the plaintiffs alleged in this suit, however, is that the information provided to Lowe was insufficient to apprise him of the limits of the use of deadly force in confrontations with unarmed citizens.  In response to this claim, it is the defendants who have failed to offer any evidence whatsoever regarding the content of the deadly-force training that Lowe received.

-29-

*Harvey v. Campbell County*
No. 09-5041

At the summary judgment stage of the proceedings, it is incumbent upon the non-moving party not to establish conclusively the validity of the assertions made in its complaint but, rather, merely to raise a genuine issue of fact regarding those assertions. Once such an issue has been identified, our procedures call for resolution of factual disputes to be made by a jury empaneled for that purpose. Because the district court in this matter recognized the presence of genuine issues of material fact regarding the establishment of the elements of a failure-to-train claim, it denied the defendants' motion for summary judgment. I am convinced the district court was correct in doing so and therefore believe that we do not have jurisdiction over this appeal at this time. I respectfully dissent from the majority's ruling to the contrary.

-30-

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Leonard Green<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed: May 10, 2011

Kristie N. Anderson
Law Office of Kristie N. Anderson
P.O. Box 196
Jacksboro, TN 37757

Ms. Tracey Alice Berry
Law Office
208 E. Holston Avenue
Johnson City, TN 37601

Mr. Arthur F. Knight III
Taylor, Fleishman & Knight
800 S. Gay Street
Suite 600
Knoxville, TN 37929

Mr. Richard A. Spivey
Law Office
142 Cherokee Street
Kingsport, TN 37660

Mr. William T. Wray Jr.
Wray Law Firm
P.O. Box 1303
Kingsport, TN 37662

Re:  Case No. 09-5041 , *April Harvey, et al v. Campbell County, TN, et al*
Originating Case No. : 07-00022

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Nancy Barnes for Cheryl Borkowski
Case Manager
Direct Dial No. 513-564-7022

Enclosure

Mandate to issue